**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-2822

SANDY PHILLIPS, individually and as surviving parent
of Jessica Ghawi, decedent; LONNIE PHILLIPS,
individually and as surviving parent of Jessica Ghawi,
decedent.

Plaintiffs,

v.

LUCKY GUNNER, d/b/a/ BULKAMMO.COM,
THE SPORTSMAN'S GUIDE,
Brian Platt, d/b/a/ BTP ARMS,
Gold Strike E Commerce LLC d/b/a/
BULLETPROOFBODYARMORHQ.COM,
and JOHN DOES 1 through 10, unknown individuals.

Defendants.

---

**DEFENDANT LUCKYGUNNER'S RULE 12(b)(6) MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT**

---

Defendant, LuckyGunner, LLC ("LG"), by its undersigned attorneys, pursuant to Fed. R.

Civ. P. 12(b)(6), moves this Court to dismiss Plaintiffs' Amended Complaint.  In support, LG

states as follows:

## I.  INTRODUCTION

This case arises from the July 20, 2012 shooting at the Aurora Century 16 movie theatre,

in which James Holmes shot and killed 12 persons and injured 58 more.  Plaintiffs' daughter,

Jessica Ghawi, was one of his victims.  The Defendants are online sellers of products allegedly

used by Holmes during the commission of his crime, including ammunition purchased from

BulkAmmo.com, a domain operated by LG.  Plaintiffs seek to enjoin all of the Defendants from

lawful online sales activities until their business practices are changed in unspecified ways.

Plaintiffs' unprecedented allegations raise threshold legal issues of federal and state statutory immunity, and common law duty, all of which require dismissal of Plaintiffs' Amended Complaint ("Am. Compl."). Plaintiffs' allegations suffer from other defects that are not curable by amendment, including (a) they have not and cannot allege irreparable harm from LG's online sales of ammunition, a prerequisite to injunctive relief, and (b) that Holmes' criminal acts under Colorado law were the predominant, if not the sole, cause of the injuries sustained by Plaintiffs' daughter. Neither the legal requirements for injunctive relief nor Colorado tort law can be stretched to accommodate Plaintiffs' allegations without making the law unrecognizable. This lawsuit should be dismissed.

## II.  PLAINTIFFS' AMENDED COMPLAINT

LG operates a website, BulkAmmo.com, from which James Holmes allegedly purchased ammunition prior to the shooting. (Am. Compl. ¶¶ 1, 10, 44.)  LG is alleged to have (1) negligently made an online sale to Holmes, (2) negligently entrusted ammunition to Holmes, and (3) created a public nuisance. (*Id*. at Counts I, V and VII.)  The crux of the claims against LG is its alleged failure to "make reasonable inquiries into Holmes' purchases" and failure to "implement any reasonable safeguards to prevent dangerous people from obtaining" ammunition and selling the ammunition "without any human interaction or screening." (*Id*. ¶ 5.)

Plaintiffs further contend that LG's failure to prevent Holmes from purchasing the ammunition and ultimately using the ammunition to harm their daughter was the proximate cause of her death. (Am. Compl. ¶¶ 196, 229 and 250.)  Plaintiffs seek "injunctive relief to ensure [LG's] businesses practices change and to stop their commercial activities until such changes are

implemented." (*Id.* ¶¶ 197, 230 and 255.)[1]

## III. LEGAL STANDARDS

A complaint that fails to state a claim upon which relief can be granted should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). "In reviewing a motion to dismiss, this court must look for plausibility in the complaint." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (citations and internal quotation marks omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Neither "'naked assertion[s]' devoid of 'further factual enhancement,'" nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory allegations . . . suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Indeed, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Nor is it "proper to assume that [a plaintiff] can prove facts that it has not alleged." *Associated Gen. Contractors of Calif. V. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

"Plausibility" in the context of determining sufficiency of a complaint "refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins*, 519 F.3d at 1247-48 (quoting *Twombly*, 550 U.S. at 570). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of

---

[1] This lawsuit was originally pleaded as a putative class action seeking, among other things, compensatory and punitive damages. (ECF 1-1, Original Complaint at ¶¶ 193-206.) Plaintiffs do not seek monetary damages for the death of their daughter in their Amended Complaint.

the actual grounds of the claim against them." *Id.* at 1248.  In short, under *Iqbal* and *Twombly*, a complaint should be dismissed, when, on its face, it is devoid of facts necessary for the plaintiff to prevail under the causes of action asserted, or when the complaint itself discloses facts that necessarily defeat the causes of action pled.

## IV.  LAW AND ARGUMENT

There are multiple grounds for dismissal of Plaintiffs' Amended Complaint. However, the Court need not reach each ground for dismissal because, as a threshold matter, Plaintiffs' claims against LG are barred under both Colorado and federal immunity statutes.  Immunity from civil lawsuits, such as those afforded to firearms and ammunition sellers, is a threshold question of law appropriately decided under Fed. R. Civ. P. 12(b)(6).  *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 44 (D.D.C. 2013).

### A.    Civil Tort Actions Against Ammunition Dealers Arising from the Discharge of Ammunition Are Generally Barred under Colorado Law.

In 2000, the Colorado General Assembly declared the policy of the state that "civil actions in tort for any remedy arising from physical or emotional injury, physical damage, or death caused by the discharge of a firearm or ammunition shall be based only upon an actual defect in the design or manufacture of such firearm or ammunition or upon the commission of a violation of a state or federal statute or regulation and not upon any other theory of liability." C.R.S. § 13-21-501(1). This policy was codified in C.R.S. § 13-21-504.5, which provides:

> (1)  A person or other public or private entity may not bring an action in tort, other than a product liability action, against a firearms or ammunition manufacturer, importer, or dealer for any remedy arising from physical or emotional injury, physical damage, or death caused by the discharge of a firearm or ammunition.

> (2)  In no type of action shall a firearms or ammunition manufacturer, importer, or dealer be held liable as a third party for the actions of another person.

(3) The court, upon the filing of a motion to dismiss pursuant to rule 12 (b) of the Colorado rules of civil procedure, shall dismiss any action brought against a firearms or ammunition manufacturer, importer, or dealer that the court determines is prohibited under subsection (1) or (2) of this section. Upon dismissal pursuant to this subsection (3), the court shall award reasonable attorney fees, in addition to costs, to each defendant named in the action.

(4) Notwithstanding the provisions of subsection (1) of this section, a firearms or ammunition manufacturer, importer, or dealer may be sued in tort for any damages proximately caused by an act of the manufacturer, importer, or dealer in violation of a state or federal statute or regulation. In any action brought pursuant to the provisions of this subsection (4), the plaintiff shall have the burden of proving by clear and convincing evidence that the defendant violated the state or federal statute or regulation.

C.R.S. §13-21-504.5 (2000).

Words and phrases utilized in a statute should be given effect according to their plain and ordinary meaning. *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542, 545 (Colo. 1995). Where the language of a statute is plain and the meaning is clear, courts need not resort to interpretive rules of statutory construction, but must apply the statute as written. *Id*.

Exceptions to the broad immunity provided to ammunition dealers are ***only*** (1) a product liability action based on a defect in the ammunition, and (2) an action in tort for damages proximately caused by the violation of a state or federal statute or regulation. Plaintiffs have not pleaded a product liability action against LG under the first exception. And although Plaintiffs' have attempted to plead, albeit inadequately, that LG violated a federal statute prohibiting ammunition sales to unlawful drug users under the second exception, their action is not for "damages" but for injunctive relief. As a result, Plaintiffs' negligence, negligent entrustment and public nuisance claims are barred and "shall" be dismissed. C.R.S. § 13-21-504.5(3).

**B.    The Protection of Lawful Commerce in Arms Act Generally Prohibits Actions Against Ammunition Sellers for Injunctive Relief Arising From the Criminal Misuse of Ammunition by Third Parties.**

Federal law also bars Plaintiffs' claims against LG. The Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901 *et seq.* (hereafter "PLCAA") provides ammunition sellers immunity. Enacted in 2005, the PLCAA essentially accomplishes at the federal level what C.R.S. §13-21-504.5 accomplishes at the state level—it generally prohibits claims against firearms and ammunition manufacturers, distributors, dealers, and importers for damages and injunctive relief arising from the criminal misuse of firearms and ammunition. 15 U.S.C. § 7903(5)(a).  Among the findings made by Congress was that "[t]he manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State and local laws" and those engaged in firearms and ammunition sales "are not, and should not be, liable for the harm caused by those who criminally misuse" firearms and ammunition. 15 U.S.C. §§ 7901(a)(4) & (a)(5).[2]

The operative language of the PLCAA states that "[a] qualified civil liability action may not be brought in any Federal or State court" against, *inter alia,* any seller of ammunition and

---

[2]    Every federal and state appellate court to address the constitutionality of the PLCAA has found it constitutional. *See Ileto v. Glock*, 565 F.3d 1126, 1138-42 (9th Cir. 2009), *cert denied*, 130 S.Ct. 3320 (2010); *City of New York v. Beretta*, 524 F.3d 384, 392-98 (2nd Cir. 2008), *cert denied*, 129 S. Ct. 3320 (2009); *District of Columbia v. Beretta*, 940 A.2d 163, 172-82 (D.C. 2008), *cert denied*, 129 S. Ct. 1579 (2009); *Estate of Kim ex rel v. Coxe*, 295 P.3d 380, 382-92 (Alaska 2013); *Adames v. Sheehan*, 909 N.E.2d 742, 764-65 (Ill. 2009), *cert denied*, 130 S.Ct. 1014 (2009). In addition, at least two trial courts have issued opinions affirming the PLCAA's constitutionality. *See Estate of Charlot v. Bushmaster Firearms, Inc.*, 628 F. Supp. 2d 174, 182-86 (D.D.C. 2009); *Gilland v. Sportsmen's Outpost, Inc.*, 2011 WL 2479693, *16-23 (Conn. Super. May 26, 2011). And numerous courts have applied the PLCAA to dismiss lawsuits without confronting challenges to its constitutionality. *See, e.g.*, *Al-Salihi v. Gander Mountain, Inc.*, 2013 WL 5310214 (N.D.N.Y. Sept. 20, 2013); *Jeffries v. District of Columbia*, 916 F. Supp. 2d 42 (D.D.C. Jan. 8, 2013); *Bannerman v. Mountain State Pawn, Inc.*, 2010 WL 9103469 (N.D.W.Va. Nov. 5, 2011); *Ryan v. Hughes-Ortiz*, 81 Mass.App.Ct. 90 (Mass. App. 2012).

"shall be immediately dismissed[.]" 15 U.S.C. § 7902.  Congress defined a "qualified civil liability

action" as:

> [A] civil action or proceeding or an administrative proceeding brought by
> any person against any manufacturer or seller of a qualified product, or a
> trade association, for damages, punitive damages, injunctive or declaratory
> relief, abatement, restitution, fines, penalties, or other relief, resulting from
> the criminal or unlawful misuse of a qualified product by the person or by
> a third party…."

15 U.S.C. § 7903(5)(A).[3]

Certain narrow exceptions to the definition of a "qualified civil liability action" and

immunity under the PLCAA were created by Congress.  *See* 15 U.S.C. § 7903(5)(A)(i)-(vi).  The

exceptions to ammunition seller immunity *do not* include claims for ordinary negligence or public

nuisance, two of the claims asserted by Plaintiffs in this case.

### 1.   Ammunition Sellers Are Immune from Ordinary Negligence Claims under the PLCAA.

The clear and unambiguous language of the PLCAA demonstrates that Congress did not

create an exception to ammunition seller immunity for ordinary negligence claims.  *See* 15 U.S.C.

§ 7903(5)(A)(i)-(vi); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135-36 (9th Cir. 2009) ("Congress

clearly intended to preempt common-law claims, such as general tort theories of liability[,]"

including "classic negligence" claims).  If the patent omission of ordinary negligence from the

enumerated exceptions were not enough to reach that conclusion, Congress's enumeration of two

---

[3]      A "qualified product" includes ammunition as defined in 18 U.S.C. § 921(a)(17)(A) ("The
term 'ammunition' means ammunition or cartridge cases, primers, bullets, or propellant powder
designed for use in any firearm.").  A "seller" includes a person "engaged in the business" of
selling ammunition in interstate commerce at the wholesale or retail level. 15 U.S.C. § 7903(6)(C).
"'Engaged in the business'… as applied to a seller of  ammunition, means a person who devotes
time, attention, and labor to the sale of ammunition as a regular course of trade or business with
the principal objective of livelihood and profit." 15 U.S.C. § 7903(1).  Thus, LG is unquestionably
a "seller" of a "qualified product" under the PLCAA and entitled to immunity.

exceptions with a basis in negligence law—negligent entrustment and negligence *per se*—should end any debate. *See Ileto*, 565 F.3d at 1135 n. 6 ("That exception demonstrates that Congress consciously considered how to treat tort claims. While Congress chose generally to pre-empt all common-law claims, it carved out an exception for certain specified common-law claims (negligent entrustment and negligence *per se*)."); *see also Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013) ("The statutory exceptions [under the PLCAA] do not include general negligence, and reading a general negligence exception into the statute would make the negligence per se and negligent entrustment exceptions a surplusage."); *Jeffries*, 916 F. Supp. 2d at 46, 48 (PLCAA "unequivocally" bars plaintiff's negligence claim); *Gilland v. Sportsmen's Outpost, Inc*., 2011 WL 2479693, *16 (Conn. Super. May 26, 2011) ("[I]t is clear that . . . a 'qualified civil liability action' . . . includes cases where it is alleged that gun sellers negligently cause harm.").

Any attempt by Plaintiffs to shoehorn their ordinary negligence claim into one of the six enumerated exceptions to immunity should be rejected.  As the court in *Ileto* observed, Congress consciously decided what types of negligence claims survived the immunity provisions of the PLCAA and created exceptions for negligence *per se* and negligent entrustment. 565 F.3d at 1135 n. 6.  There is no catch-all exception to immunity. And although there is an exception for an action based on a "knowing" violation of a state or federal statute applicable to the sale or marketing of firearms or ammunition, it cannot be read to open the door to an ordinary negligence claim based on a duty of ordinary care. 15 U.S.C. § 7903(5)(A)(iii).   There is simply no basis in in the plain language of the statute or the rules of statutory construction on which to conclude that Congress intended one of six enumerated exceptions to a "qualified civil liability action" to open the door to other exceptions not enumerated. The language and structure of the PLCAA dictates that

exception (iii) be seen for what Congress plainly intended—just one of six narrow exceptions to ammunition seller immunity, based on knowing violation of a statute addressing the sale or marketing of firearms or ammunition.

Nevertheless, LG anticipates Plaintiffs will argue that LG's alleged violation of 18 U.S.C. § 922(d)(3) creates a duty that is broader than the statute's standard and includes a duty to exercise ordinary care in the sale of ammunition. (*See* Am. Compl. ¶ 221.)   Their argument is without merit.

Section 922(d)(3) states:

> It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person – is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)).

18 U.S.C. § 922(d)(3).   Even assuming, for argument sake, that pleading a statutory violation under exception (iii) opens the door to an ordinary negligence claim based on a duty of ordinary care, Plaintiffs' negligence claim still should be dismissed because they have not adequately pleaded that LG knew James Holmes was an unlawful drug user or that Holmes gave LG "reasonable cause to believe" he used drugs.   Plaintiffs have not pleaded facts demonstrating how or when LG became aware of Holmes' drug use; and allegations demonstrating how and when Holmes gave LG "reasonable cause to believe" he used unlawful drugs are absent from the Amended Complaint. Indeed, "[t]he *Twombly* Court was particularly critical of complaints that 'mentioned no specific time, place, or person involved in the alleged'" harmful conduct of the defendant. *Robbins*, 519 F.3d at 1248.  And it is simply not "proper to assume that [a plaintiff] can prove facts that it has not alleged."  *Associated Gen. Contractors of Calif.*, 459 U.S. at 526.

Plaintiffs have not only failed to plead facts showing a knowing violation of § 922(d)(3),

the facts they have pleaded undercut a plausible claim that the statute was violated.  Plaintiffs first contend that ammunition was sold to Holmes over the internet "without any human interaction" with LG. (Am. Compl. ¶ 5.)  This allegation alone demonstrates that Plaintiffs cannot plausibly plead that LG knew Holmes used unlawful drugs or that he gave LG reasonable cause to believe he was an unlawful drug user.  Plaintiffs' theory of liability and their allegations are demonstrably at odds.  As a result, the Plaintiffs have fallen well short of "nudg[ing]" their claims "across the line from conceivable to plausible[,]" as required to survive a motion to dismiss. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Twombly*, 550 U.S. at 570).[4]

An action based on an alleged violation of § 922(d)(3) cannot be treated as an ordinary negligence claim for an additional reason. The "reasonable cause to believe" standard found in §922(d)(3) "does not simulate the common law duty of ordinary care." *Knight v. Wal-Mart Stores*, 889 F.Supp. 1532, 1536 (S.D. Ga. 1995).  To establish a seller had "reasonable cause to believe" a person was a prohibited purchaser, there must be allegations that the seller had "knowledge of facts which, although not amounting to direct knowledge, would cause a reasonable person, knowing the same things, to conclude that the other person was in fact" a prohibited purchaser. *United States v. Fifty-Two Firearms*, 362 F.Supp. 2d 1308, 1313 (M.D. Fla. 2005). The standard is a subjective inquiry and requires the defendant's "scienter to be evaluated through the lens of

---

[4]     Plaintiffs also plead extensive details regarding Holmes' psychological problems, and allege "Defendants … knew, should have known, or knew that it was substantially certain, that in his state of mental instability Holmes would present a danger to society…." (Am. Compl. ¶ 38.) Setting aside the insufficiency of this hollow allegation, it presumes Defendants were aware of Holmes' "state of mental instability" and disregarded his condition. Nowhere in their Amended Complaint, however, do Plaintiffs allege that Defendants had such knowledge.  And like their allegations suggesting Defendants' knowledge of Holmes' drug use, Plaintiffs cannot plausibly make such an allegation given that their claims are fundamentally premised on Defendants' lack of knowledge about Holmes.

the particular defendant, rather than from the perspective of a hypothetical reasonable man."

*United States v. Munguia*, 704 F.3d 596, 603 (9th Cir. 2012).[5]

The kind of allegations and proof required to show "reasonable cause to believe" is not substantially different from actual knowledge. *United Sates v. Johal*, 428 F.3d 823, 828 (9th Cir. 2005). Both standards "turn[] on the facts actually known by the defendant in a particular case." *Id.* The "reasonable cause to believe" standard "when used for civil liability, is more favorable to [defendants] than the common law negligence standard" because it requires a reason to believe that a fact exists, not merely reason to believe that a fact might exist on further inquiry. *Knight*, 889 F.Supp. at 1536-37 ("[A] dealers' duty of care under general principles of negligence . . . varies substantively" from "the specific requirements of the Gun Control Act.").

The cases addressing the "reasonable cause to believe" standard in the context of firearms and ammunition sales focus on what a defendant actually knew at the time of the sale and what reasonable inferences could be drawn from those subjectively known facts. *See, e.g.*, *United States v. Collins*, 350 F.3d 773, 777 (8th Cir. 2003) (Gun Control Act § 922(d)(3) requires an evaluation of transferor's knowledge of the transferee's status as an unlawful drug user "at the time" of transfer).

*Heatherton v. Sears, Roebuck and Co.*, 445 F.Supp. 294, 304-05 (D. Del. 1978), *rev'd on other grounds*, 593 F.2d 526 (3d. Cir. 1978), further illustrates the point. There, Sears was alleged to have negligently sold a firearm to a convicted felon, who used the firearm to injure the plaintiff. Plaintiff claimed Sears violated § 922(b)(2) of the Gun Control Act and was guilty of common law

---

[5]     The "reasonable cause to believe" standard "is present in numerous federal statutes." *United States v. Saffo*, 227 F.3d 1260, 1268 (10th Cir. 2000) (prosecution for possession with intent to distribute pseudoephedrine under 21 U.S.C. § 841(d)(2)) (collecting federal statutes, including the Gun Control Act).

negligence because it did not investigate the truthfulness of the purchaser's answer on the Form 4473 that he had not been convicted of a felony.   According to the plaintiff, Sears would have discovered the felony conviction "merely by making one phone call" to the local police department. *Id.* at 310.[6]   The court, however, refused to recognize a common law duty on the part of a firearm seller to investigate purchasers.   Relying on sections 308 and 390 of the *Restatement (Second) of Torts* dealing with negligent entrustment of chattels, the court observed that "the comments to the sections do not suggest that the controller or supplier has any duty to make an investigation of the background of the person to whom he entrusts the item." *Id.* at 302.[7]   The court reasoned:

> This Court feels some reluctance to create new standards of conduct for sellers when legislators have declined to incorporate such standards into the statutory schemes. Finally, it is difficult to define the limits of a possible duty to investigate on the part of firearms sellers. Plaintiffs urge that they would expect a seller only to take steps which are "reasonable" in light of the possible risk to human life. However, they do not suggest any way to define the amount of effort which would be reasonable.

*Id.* at 304-05

In *Heatherton*, Sears "had no actual knowledge" of the purchaser's criminal record, and there was nothing else alleged that "gave Sears reason to know" the purchaser lied on the Form 4473 about his criminal history, such as "conversation or demeanor." *Id.* at 304. With regard to the claim that Sears violated § 922(b)(2) of the Gun Control Act by not confirming that sale was in compliance with state law, the court similarly held that when a dealer is "unaware of circumstances that would detract" from the conclusion that a purchase is in compliance with the

---

[6]   The *Heatherton* case was decided before federal law required that all firearms purchasers be subjected to law enforcement background checks.

[7]   Restatement (Second) Torts §§ 308 and 390 have been relied on by Colorado state courts. *Casebolt v. Cowan*, 829 P.2d 352, 358 (Colo. 1992).

law, compliance with the regulatory "mechanics" of firearms sales (*i.e.*, completion of forms, background checks, waiting periods, etc.) "constitutes sufficient proof that a dealer has 'reasonable cause to believe' that a purchase is not in violation" of § 922(b)(2) of the Gun Control Act. *Id*. at 300-01.[8]

Thus, whether a seller acted with "ordinary care" to independently and affirmatively discover a purchaser's lack of qualifications is irrelevant to liability under § 922(d)(3). And any assertion that LG violated § 922(d)(3) because it did not undertake an investigation of Holmes to confirm whether he unlawfully used drugs has no basis in the law.

### 2. Ammunition Sellers Are Immune from Public Nuisance Claims under the PLCAA.

The PLCAA does not provide a public nuisance exception to the definition of a "qualified civil liability action." Plaintiffs' public nuisance claim is therefore a qualified civil liability action subject to dismissal under the PLCAA.

Nevertheless, LG anticipates Plaintiffs will argue that their public nuisance claim should fit within the § 7903(5)(A)(iii) exception for "actions in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product." (*See* Am. Compl. ¶ 250 (referencing Colorado and Aurora public nuisance statutes).) They will likely contend that the Colorado and Aurora public nuisance statutes (1) are the type of statutes Congress contemplated in creating exception (iii), and (2) are capable of being applied to LG's particular online ammunition sales.[9]   This argument is without merit.

_____

[8]      Sales to felons is also prohibited under § 922(d)(1) of the Gun Control Act.

[9]      Neither the Colorado nor the Aurora public nuisance statutes expressly provide for private civil remedies. The Colorado statute provides that "[i]t is the duty of the District Attorney in each judicial district of this state to bring and maintain an action" for abatement of a public nuisance. C.R.S. § 16-13-302(1). The Aurora City Code provides that "[t]he city attorney is authorized to institute suit in the municipal court or other competent court of record, to abate any nuisance at

Plaintiffs' attempt to shoehorn a public nuisance claim into exception (iii) should be rejected, as the Ninth Circuit did in *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009). There, the court affirmed the trial court's dismissal under the PLCAA of a similar nuisance claim against a retail seller of a firearm used in a criminal shooting. The issue was whether the California nuisance statute was "applicable to the sale or marketing of firearms" within the meaning of exception (iii). The California statute broadly defined a nuisance as:

> Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

Cal. Civ. Code § 3479.

The *Ileto* court first looked to the plain language of the PLCAA for the meaning of "applicable." 565 F. 3d at 1133-35. It found the text of the statute to be inclusive, so it then examined additional indicators of congressional intent. Based on congressional findings, the *Ileto* court found the California nuisance statute not "applicable to the sale or marketing of firearms" because Congress "had in mind . . . only statutes that regulate manufacturing, importing, selling, marketing and using firearms," not statutes that merely codified general common law theories. *Id*. at 1136.

An identical attempt to characterize a state nuisance statute as a statute "applicable to the

---

common law or as enumerated" in the ordinance. Aurora City Code § 62-29. Under Colorado law, a private right of action will not be inferred unless a clear legislative intent to create such a cause of action can be discerned. *See Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 922 (Colo. 1997). One of the factors Colorado courts consider is whether the plaintiff is within the class of persons intended to benefit from the legislative enactment. *Id*. at 923. Given that neither nuisance statute proscribes online ammunition sales, persons who claim injury as the result of such sales would not logically be within the class of persons the legislature intended to benefit.

sale or marketing of firearms or ammunition" was also rejected in *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d. Cir. 2008), *cert denied*, 129 S.Ct. 1579 (2009). There, the court examined the word "applicable" in the context of the surrounding language and the statute as a whole. 524 F.3d at 400.  Two rules of statutory construction controlled: *noscitur a scosiis* – the meaning of words may be determined by reference to associated word and phrases; and *ejusdem generis* – where general words are accompanied by specific enumeration, the general words should be limited to the specific things enumerated. *Id*. at 401. Because exception (iii) enumerated two examples of statutes "applicable to the sale or marketing of firearms" in subsections (I) ands (II), both of which regulated the activities of firearm licensees, the court held that Congress intended to only embrace statutes "similar to those enumerated." *Id*. at 402.  The court rejected the argument that the New York nuisance statute could serve as a predicate statute under exception (iii) and reasoned that any other result would allow the exception to "swallow the statute," eliminate the protections afforded by the PLCAA, and violate the principle that statutory exceptions are to be construed narrowly in order to preserve the statute's primary purpose. *Id*. at 403.[10]

Here, the Colorado and the Aurora public nuisance statutes proscribe specific activities as public nuisances, many of which are tied to the land, including places of prostitution (C.R.S. § 16-13-303(1)(a)) and certain gambling premises (C.R.S. § 16-13-303(1)(b)).  Other specifically proscribed acts include unlawful production of controlled substances (Aurora City Code § 62-26(c)(3)), sexual exploitation of children (Aurora City Code § 62-26(c)(7)), and violations of the

---

[10]      In *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. 2007), an Indiana appellate court found the Indiana nuisance statute applicable to the sale or marketing of firearms but did so without analysis of exception (iii) or the PLCAA generally.  Instead, the court simply relied on an earlier ruling by the Indiana Supreme Court, before the PLCAA was enacted, and held the plaintiffs' claim stated a cause of action under the nuisance statute and therefore survived defendants' motion to dismiss.  This ruling has no impact on the instant action.

Colorado Liquor Code (Aurora City Code § 62-26(c)(8)). *See generally* C.R.S. § 16-13-302 *et seq.* and Aurora City Code § 62-26 *et seq.* None of the proscribed activities identified in the statutes address the online sale of ammunition. And neither nuisance statute has the type of broad prohibitory language found in the California statute that the plaintiffs in *Ileto* and *City of New York* unsuccessfully argued was capable of being applied to ammunition sales. No matter how hard Plaintiffs push, they cannot stretch these public nuisance statutes into exception (iii) to avoid the impact of PLCAA immunity.[11]

### C. Plaintiffs Have Not Adequately Pleaded and Cannot Plausibly Plead the Elements of Injunctive Relief.

Assuming, *arguendo*, that Plaintiffs can somehow avoid the immunity provisions of C.R.S. § 13-21-504.5 and the PLCAA, dismissal is required for another reason:  they have not pleaded a viable claim for injunctive relief.   To enjoin Defendants from conducting business and mandating changes to their business practices, Plaintiffs must plead and prove "(1) actual success on the merits of their claims; (2) irreparable harm to them unless the injunction is issued; (3) the threatened injury to them outweighs the harm the injunction may cause to the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F. 3d 818, 822 (10th Cir. 2007).[12]

Here, Plaintiffs allege that "Defendants' actions continue to cause real, immediate, and irreparable injury" to them (Am. Compl. ¶ 252), and that "[t]he public interest would be served by enjoining further disturbances by Defendants." (*Id.* at ¶ 254.)[13]   Plaintiffs' allegation that they are

---

[11]     The proximate cause analysis in Section IV.E., below, also requires dismissal of Plaintiffs' public nuisance claim.

[12]     Colorado law requires a plaintiff to establish the same elements to obtain injunctive relief. *Dallman v. Ritter*, 225 P.3d 610, 621 n. 11 (Colo. 2010).

[13]     These allegations are made only in Plaintiffs' public nuisance count. In Plaintiffs' six other counts, they merely allege that "[i]t is appropriate for the Court to award injunctive relief to ensure

threatened by real and immediate irreparable harm from Defendants' business practices is implausible on its face. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). "[S]peculative harm does not amount to irreparable injury." *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). Rather, a plaintiff must show that an actual injury "will surely result" unless an injunction is issued. *Schrier v. University of Colorado*, 427 F. 3d 1253, 1267 (10th Cir. 2005) (citing *Heideman*, 348 F.3d at 1189)).

Irreparable harm "is the single most important prerequisite" for injunctive relief, and it must first be demonstrated before the other requirements are considered. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004). Here, Plaintiffs cannot plausibly plead that they face an actual, imminent threat of being injured by a criminal using one of LG's products. Any fear they may have of being victimized is speculative at best.

Plaintiffs also cannot plausibly plead that the injury they fear outweighs the harm the injunction may cause to LG. *See Prairie Band*, 476 F. 3d at 822. Here, Plaintiffs have not and cannot plausibly allege an actual, imminent threat of injury resulting from LG's alleged business activities. In a balancing of harms, an injunction requiring LG to stop doing business and change its business practices outweighs the entirely speculative harm to Plaintiffs. Indeed, the potential harm to LG is not just to its business interests. Selling ammunition is a constitutionally protected activity under the Second Amendment to the U.S. Constitution. *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (Second Amendment right to possess firearms implies a right to sell and obtain the ammunition necessary to use them); se*e also Elrod v. Burns*,

---

Defendants' business practices change and to stop their commercial activities until such changes are implemented." (Am. Compl. ¶¶ 197, 203, 209, 217, 230, 239.)

427 U.S. 347, 373 (1976) (the loss of constitutional rights constitutes irreparable injury).   Should

an injunction issue, the harm to LG's business and its constitutional rights will be both actual and

immediate.   Should an injunction not issue, Plaintiffs will remain the same—with no actual,

imminent threat of injury.

An injunction prohibiting LG from engaging in the lawful sale of ammunition will also

adversely affect the interest of the public, which has a constitutional right to purchase ammunition

to make its core constitutional right to possess firearms effective. *Jackson*, 746 F.3d at 967; *see*

*McDonald v. City of Chicago*, 130 S.Ct. 3020, 3036 (2010) (the right to keep and bear arms is

fundamental to our system of ordered liberty).   A restriction on the public's right to purchase

ammunition is an infringement of that right and militates against the very equitable relief Plaintiffs

attempt to seek.

### D.   LG Did Not Owe A Duty of Ordinary Care to Protect Against Holmes' Criminal Acts.

Assuming, *arguendo*, that Plaintiffs can somehow avoid the immunity provisions found in

C.R.S.   §13-21-504.5 and the PLCAA, and assuming that they have adequately pleaded the

elements of injunctive relief, Plaintiffs' negligence claim should still be dismissed.   Under long-

standing Colorado law, LG did not owe a duty in the operation of its online business to protect

against Holmes' criminal acts.

Whether a defendant owes a duty of care to prevent an injury to another is a threshold

question of law. *Smith v. City & County of Denver*, 726 P. 2d 1125 (Colo. 1986).   Colorado law

"has long recognized a distinction between action and a failure to act – 'that is to say between

active misconduct working a positive injury to others [misfeasance] and passive inaction or a

failure to take steps to protect them from harm [nonfeasance].'" *University of Denver v. Whitlock*,

744 P. 2d 54, 57 (Colo. 1987) (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, PROSSER AND

KEETON ON THE LAW OF TORTS § 56 at 373 (5th ed. 1984)); *Lewis v. Emil Clayton Plumbing Co.*, 25 P. 3d 1254, 1255 (Colo. App. 2000) (defendant's failure to inspect faulty gas connector an allegation of nonfeasance); *Hilberg v. F.W. Woolworth Co.*, 761 P. 2d 236, 239 (Colo. App. 1988), *reversed on other grounds*, *Casebolt v. Cowan*, 829 P. 2d 352, 359-60  (Colo. 1992) (defendant gun seller's failure to inquire into the competence of parent buying a rifle for a 14 year-old an allegation of nonfeasance).

In nonfeasance cases, like this case, the existence of a duty to protect someone from the actions of a third party is recognized only in certain "special relationships" involving dependence or mutual dependence, including common-carrier/passenger, innkeeper/guest, business-owner/invitee, employer/employee, parent/child and hospital/patient. *Whitlock*, 744 P. 2d at 58 (citations omitted). In the absence of a special relationship between the defendant and the wrongdoer or the defendant and the victim, there is no duty to take affirmative steps to prevent a third person from harming another. *Leake v. Cain*, 720 P. 2d 152 (Colo. 1986).

The distinction between an allegation of nonfeasance and misfeasance was underscored in *Ir. v. Jefferson County Sheriff's Department*, 193 F.Supp. 2d 1201 (D. Colo. 2002), a case arising from the 1999 shooting at Columbine High School. The case against the operator of the gun show where the assailants purchased a firearm used in the crime was based on the operator's alleged nonfeasance – failure "to guard against the foreseeable risk of minors purchasing and/or obtaining firearms at the gun show." *Id*. at 1231.  The absence of a special relationship required dismissal. *Id*. at 1230.  In contrast, the case against the seller of the firearm at the gun show survived dismissal, because it was based on the seller's misfeasance:  He allegedly sold the firearm to the assailants with knowledge they were minors and affirmatively instructed them how to saw off the barrel of the firearm. *Id*. at 1229.

Plaintiffs here have attempted to plead a nonfeasance case against LG. That is, LG is allegedly responsible for Holmes' actions because of *what it allegedly did not do*—make an inquiry into Holmes' character, habits and mental health before selling him ammunition. Liability for alleged nonfeasance of this kind requires a special relationship between either Plaintiffs' daughter or Holmes, and LG. Such a relationship has not and cannot be alleged.

### E.   LG's Alleged Conduct Was Not the Proximate Cause of Plaintiffs' Daughter's Death as a Matter of Law.

Assuming, *arguendo*, that (1) LG is not entitled to immunity for Plaintiffs' negligence and public nuisance claims under either state or federal law, (2) LG is found to have owed a duty of ordinary care to Plaintiffs' daughter, and (3) the elements of injunctive relief have been pleaded, Plaintiffs run head-long into the law of proximate cause in Colorado. "Colorado's proximate cause rule is intended to ensure that casual and unsubstantial causes do not become actionable." *North Colorado Medical Center v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996). To constitute proximate cause, alleged tortious conduct must be a "substantial factor in producing the injury." *Id.* "If an event other than the defendant's alleged conduct appears predominant, the defendant's conduct cannot be a substantial factor. *Id.*; *see Castaldo v. Stone*, 192 F.Supp. 2d 1124, 1171 (D. Colo. 2001) (assailants' actions were the predominant, if not sole, cause of the injuries inflicted in the Columbine High School shooting); *accord Jefferson County Sheriff's Department*, 193 F.Supp. 2d 1201 (dismissing action against gun show operator for injuries sustained in Columbine High School shooting).

Indeed, Colorado public policy is that the proximate cause of an injury resulting from a third party's use of a firearm or ammunition shall not be the seller's mere "placement of the firearm or ammunition in the stream of commerce." C.R.S. § 13-21-504. Although this policy is expressed in the Colorado product liability statute, its application is not limited to cases pleaded as product

liability actions.  For example, in *Hilberg*, 761 P. 2d 236 (Colo. App. 1988), the court answered the question of whether an allegedly negligent firearm seller owed a duty "to ascertain whether the product may be used by a child and to take further precautions or provide further instructions to the consumer?" *Id.* at 239.  In finding no duty, the court relied, in part, on the policy expressed in § 13-21-504. This Court should likewise rely on that policy and find that LG's sale of ammunition was not a substantial cause and thus not a proximate cause of Plaintiffs' daughter's death.

While causation is generally a question of fact for a jury, a court may decide the issue as a matter of law where the alleged chain of causation is too attenuated to impose liability. *Largo Corp. v. Crespin*, 727 P.2d 1098, 1103 (Colo. 1986). Here, there can be no question that the predominant cause of Plaintiffs' daughter's death was the deliberate, premeditated criminal acts of Holmes.   Holmes meticulously prepared for his crime and he arrived at the theatre equipped with multiple firearms and ammunition allegedly purchased from at least five different business entities, a Bass Pro Shop, two different Gander Mountain stores, Sportsman's Guide and LG. (Am. Compl. ¶¶ 40-45, 49). Neither the online nor the face-to-face sales of ammunition to Holmes can plausibly constitute a substantial factor in Holmes' decision to deliberately kill innocent persons. A finding that Holmes' heinous and senseless criminal actions were anything but the predominant cause of the deaths and injuries he inflicted would turn the law of proximate cause on its head. [14]

### F.      Plaintiffs Have Not Adequately Pleaded and Cannot Plausibly Plead a Negligent Entrustment Claim.

If the Court concludes that (1) C.R.S. §13-21-504.5 does not bar Plaintiffs' negligent entrustment claim, (2) Plaintiffs have adequately pleaded the elements required for injunctive relief, and (3) Holmes' criminal conduct was not, as a matter of law, the predominant cause of

---

[14]      Lack of proximate cause is also basis on which to dismiss Plaintiffs' public nuisance and negligent entrustment claims.

Plaintiffs' daughter's death, the question then becomes whether Plaintiffs' negligent entrustment claim survives.

One exception to PLCAA immunity is an action for negligent entrustment. 15 U.S.C. § 7903(5)(B). Although the PLCAA identifies negligent entrustment as an exception to immunity, it does not create the cause of action. 15 U.S.C. § 7903(5)(C) (PLCAA does not create "public or private cause[s] of action or remed[ies]."). A negligent entrustment claim must be examined under state law.

The Colorado Supreme Court has held that *Restatement (Second) of Torts*, § 390, provides the basis for "the standard of care (the criteria for assessing reasonable care in light of the apparent risk) in the context of supplying chattels for the use of others." *Casebolt*, 829 P.2d 352, 357 (Colo. 1992). Section 390 states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Restatement (Second) of Torts*, § 390 (1965). Thus, negligent entrustment, under Colorado law, requires that "the supplier of the instrumentality entrusted must have actual knowledge either of the user's propensity to misuse the instrumentality or of facts from which such knowledge could be reasonably inferred." *Hilberg*, 761 P. 2d 236, 238 (Colo. App. 1988) (defendant firearm sellers had no knowledge of purchaser's "supervision habits, shortcomings, or qualities as a parent').

Colorado courts have rejected claims that the standard of care in negligent entrustment cases includes a duty to investigate the background of the person to whom chattel is entrusted. *See, e.g.*, *Connes v. Molalla Transport Systems, Inc*., 817 P.2d 567, 570-71 (Colo. 1991) (no duty to investigate employee driver's non-vehicular criminal record), *affirmed*, 831 P. 2d 1316 (Colo.

1992); *Liebelt v. Bob Penkhus Volvo-Mazda, Inc.*, 961 P.2d 1147, 1171 (Colo. 1998) (no duty to inquire whether potential automobile purchasers have liability insurance); *accord Heatherton*, 445 F.Supp. 294, 304-05 (D. Del. 1978), *rev'd on other grounds*, 593 F.2d 526 (3d. Cir. 1978) (no duty on firearm seller to investigate background of purchaser). Any liability LG may have for negligent entrustment can only be based on the knowledge it had, not on a hollow allegation of "knowledge" it allegedly failed to acquire.

In analogous cases, automobile rental companies have uniformly been held to not owe a duty to independently investigate the driving record of their customers for essentially the same reason. *See, e.g.*, *Osborn v. Hertz Corp.*, 205 Cal. App. 3d 703, 711 (Cal. App. 1988) ("By enactment of various provisions of the Vehicle Code, the Legislature has carefully delineated according to the seriousness of the offense, the disabilities that are to be suffered by those convicted of drunken driving."); *Nunez v. A & M Rentals, Inc.*, 63 Mass.App.Ct. 20, 25 (Mass. App. 2005) ("We conclude that the Commonwealth does not require license verification beyond G.L. c. 90, § 32C, given that the Legislature has chosen not to speak on the issue"); *Cowan v. Jack*, 922 So.2d 559, 570 (La. App. 2005) (no liability for failure to investigate driving history of prospective customer who presents facially valid driver's license); *Boutilier v. Chrysler Insurance Co.*, 2001 U.S. Dist. LEXIS 5526 (MD. Fla. Jan. 31, 2001) (car dealer may rely on driver's license as evidence of competency, rejecting duty to investigate); *Dunn v. Madera*, 2006 U.S. Dist. 90999 (N.D. Tex. Dec. 18, 2006) (no duty to ask person renting automobile about his driving record or insurance status).

Neither automobile rental companies nor ammunition sellers can ignore knowledge they have about a particular customer or reasonable inferences that can be drawn from that knowledge. But the law does not require them to investigate, inquire or take other affirmative steps to acquire

information. The consequence of placing a duty to investigate on ammunition sellers and the burden of guarding against harm caused by persons who deliberately misuse ammunition are both substantial and would create an unreasonable risk of liability. *See English v. Griffith*, 99 P.3d 90, 94 (Colo. 2004).

Regardless, Plaintiffs have not (and cannot) plead facts in support of their conclusory allegation that LG knew or was given reason to believe Holmes was a drug user, had mental health issues or otherwise posed a risk to others. And as discussed above, Plaintiffs' theory of liability— that LG failed to acquire this information from Holmes—precludes a plausible allegation that LG had the information and entrusted the ammunition to him anyway.  Plaintiffs' allegations amount to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, supported by "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' . . . ." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).   At bottom, no "set of facts consistent with the allegations," *Twombly*, 550 U.S. at 563, could entitle Plaintiffs to any relief from LG.

## V.  CONCLUSION

For all of the above reasons, Plaintiffs' Amended Complaint should be dismissed. LuckyGunner, LLC requests that attorney's fees and costs be awarded pursuant to C.R.S. § 13-21-504.5 and C.R.S § 13-17-201.

**DATED:  October 16, 2014**

Respectfully submitted,

**LUCKYGUNNER, LLC**

By: */s/ Andrew A. Lothson*
      One of Defendant LuckyGunner, LLC's
      Attorneys

Marc Colin
Bruno, Colin & Lowe, P.C.

1999 Broadway, Suite 3100
Denver, Colorado 80202
(303) 831-1099
(303) 831-1088 FAX
MColin@brunolawyers.com

Andrew A. Lothson
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
(312) 321-0990 FAX
alothson@smbtrials.com

**Attorneys for Defendant, LuckyGunner, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of October, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

None

and hereby certify that I have mailed or served the document to the following non-CM/ECF participants in the manner (U.S. mail, hand delivery, etc.) indicated by the non-participants' names:

1. Jonathan E. Lowy **(via U.S. Mail)**
  Elizabeth Burke **(via U.S. Mail)**
  Kelly Sampson **(via U.S. Mail)**
  Brady Center to Prevent Gun Violence
  840 First Street, NE, Suite 400
  Washington, DC 20005

2. Thomas W. Stoever, Jr. **(via U.S. Mail)**
  Paul W. Rodney **(via U.S. Mail)**
  Arnold & Porter LLP
  370 Seventeenth Street, Suite 4400
  Denver, CO 80202

*/s/  Andrew A. Lothson*
Andrew A. Lothson