**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

SANDY PHILLIPS, individually and as     :
surviving parent of Jessica Ghawi, decedent;   :
LONNIE PHILLIPS, individually and as     :
surviving parent of Jessica Ghawi, decedent   :
                                   :
           Plaintiffs               :   Civil Action No. 1:14-cv-02822-RPM
                                     :
           v.                      :
                                     :
BRIAN PLATT, d/b/a BTP Arms, *et al.*     :
                                     :
           Defendants            :
------------------------------------------------------------------

## DEFENDANT PLATT'S MOTION TO DISMISS AND MEMORANDUM OF LAW

      The Defendant, Brian Platt d/b/a BTP Arms ("BTP Arms"), through counsel,

pursuant to Fed. R. Civ. P. 12(b)(6), moves this Court to dismiss Plaintiffs' Amended

Complaint for these reasons:

### I.     SUMMARY STATEMENT

      Plaintiffs' action against BTP Arms is based on the sale of two canisters of tear

gas over the Internet two and one half months before the Aurora Century 16 shootings.

Plaintiffs seek injunctive relief based on claims sounding in negligent entrustment,

negligence and public nuisance.

      But as to negligent entrustment, Plaintiffs have not alleged any facts showing that

BTP Arms knew or had reason to know that it was likely that Holmes would use the tear

gas in a criminal enterprise involving mass murder.

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 2

Furthermore, BTP Arms owed Plaintiffs no duty in negligence to investigate Holmes's intentions or create a website to ferret out his actual plans. There are no facts provided showing that the use of tear gas was a but for cause of the death of Plaintiffs' daughter or has been the cause of any crime in any public space in Colorado.

The allegations also do not constitute a public nuisance. Even if they did, Plaintiffs have no right to bring an action for public nuisance.

Finally, Plaintiffs do not satisfy the requirements for an injunction – there is no irreparable harm and they have an adequate remedy at law.

These failures and omissions require dismissal of the claims against BTP Arms.

## I.	THE ALLEGATIONS

### A.	INTRODUCTION

Plaintiffs' claims against BTP Arms rest on the premise that the sale of tear gas to anyone other than the police could have no purpose other than to assist in the perpetration of a crime. But in many states, including Colorado, it is not a crime to sell, possess or even use tear gas. Other states permit its possession or use, in varying quantities, for self-defense and other purposes[1].

---

[1]	The possession or use of tear gas (as opposed to tear gas guns or explosive devices) has received a wide variety of treatment by those states that have elected to regulate tear gas. Some states have criminalized the possession, sale or use of tear gas in some contexts while allowing it to be used in self-defense. See, e.g., Ark. Code Ann. §5-73-124, Cal. Pen. Code §§375, 22810 and 22900 (2014); Burns Ind. Stat. Ann. §35-31.5-2-83(2) (2013); Kan. S Ann. §21-6302 (2013); Ann. L. Mass., ch. 269, §10C (2014), Minn. Stat. §624.731 (2014); Nev. Rev. Stat. Ann. §202.375 (2014; N.J. Stat. §2C:39-9 (2014), NY CLS Penal §265.20 (2014); N.C. Gen. Stat.

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 3

Tear gas can be composed of pepper spray (Oleoresin capsicum), "CS" (chlorobenzalmalononitrile), CN (chloroacetophenone) or other agents. Mace is one such combination. Tear gas is sold online by many retailers, including Amazon and Grainger.[2]

Plaintiffs do not seek to regulate the general sale of tear gas, just its online sale by BTP Arms. Plaintiffs want this Court to regulate how an out-of-state defendant sells its products to inquiring purchasers, regardless of their location.

B.    THE AMENDED COMPLAINT

Plaintiffs assert that on May 10, 2012, James Holmes ("Holmes") purchased two 6 oz. tear gas canisters from BTP Arms (a sole proprietorship of Brian Platt), which contained pepper spray and CS. (¶ 39).

Plaintiffs do not allege that Holmes exhibited signs of "dangerousness" or "mental instability" before May 10, 2012, except to claim a student at the University of California, Riverside thought he was "a little strange;" that after an interview he was rejected for

---

§14-401.6 (2013); Ohio Rev. Code Ann. §2909.07 (2014); 21 Okla. Stat. §1272.3 (2014); Ore. Rev. Stat. §163.212 (2013); R.I. Gen. Laws §28-10-7 (2013) (use during labor strike lockouts); S.C. Code Ann. §16-23-470 (2013) (self-defense and permissible use for destruction of insects or rodents); Va. Code Ann. §18.2-312 (2014); Ann. Rev. Code Wash. §9.9 1.160 (2013); Wis. Stat. §941.26 (2014).

[2]    http://www.amazon.com/SABRE-Pepper-Spray-Advanced-Protection/dp/B0007VM8UC/ref=sr_1_2?ie=UTF8&qid=1413220044&sr=8-2&keywords=tear+gas+grenade (CS and pepper spray) and http://www.grainger.com/product/GUARD-DOG-SECURITY-Pepper-Spray-31DV55?s_pp=false&picUrl=//static.grainger.com/rp/s/is/image/Grainger/31DV55_AW01?$smthum (pepper spray)

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 4

admission to the graduate program at the University of Iowa (although he was admitted

to the University of Colorado at Denver); and that on "information and belief" Holmes

spoke to a classmate in March 2012  about wanting to "kill people" when his "life was

over."  (¶s 19-22).

Weeks after the purchase of the tear gas canisters, Holmes bought firearms,

ammunition, body armor, a knife and other equipment from local brick and mortar

retailers and from other online sellers.  (¶s 40-49).

More than a month after the purchase of the tear gas canisters, on several

occasions Holmes essentially "cased" the Aurora Century 16 movie theater,

photographing various areas and purchasing a ticket for the showing of *The Dark Night*

on July 20, 2012.  (¶s 51-55).

According to Plaintiffs, Holmes had at least three tear gas canisters.  He threw

two canisters into the audience at the beginning of his rampage.  (¶ 71).  Another tear

gas canister was found in an ammunition pouch in Holmes' vehicle.  (¶ 82).

After throwing the tear gas canisters into the movie theater, Holmes began

shooting people using a shotgun, a semi-automatic rifle (AR-15) and a handgun (¶s 73-

74).  Bullets penetrated into the adjacent theater, causing injuries there.  (¶ 75).

Altogether, 12 people were killed and 58 people suffered gunshot wounds and/or other

injuries.  (¶s 88-161).

Plaintiffs do not allege facts indicating that

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 5

- the tear gas canisters purchased from BTP Arms were those thrown into the theater;

- that anyone was injured by the tear gas;

- that there are persons who would not have been shot had tear gas not been used;

- that the decedent Ghawi was injured by the tear gas or would have avoided being shot and killed had tear gas not been used; or

- that had BTP Arms made some inquiry of Holmes about the reason for his purchase that he would have provided information that would have made the sale illegal or inappropriate (as opposed to reporting that he wanted the canisters for "self-defense" or to eradicate rodents or insects[3] or was working as a security guard).

Notably, Plaintiffs have not brought any action against the brick and mortar retailers who sold Holmes firearms, ammunition, ballistic chaps, gunpowder, rifle scopes, and knives, including the Gander Mountain stores and Bass Pro Shops, or against other Internet sellers such as the International Armor Corporation and TacticalGear.com. (¶s 40-49). Curiously, Plaintiffs do not allege that any of these retailers knew or should have known of Holmes' mental instability or dangerousness.

---

[3]     See, e.g., Cal. Pen. Code §22810 (2014) and S.C. Code Ann. §16-23-470 (2013).

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 6

## II.    THE CLAIMS

Plaintiffs contend that BTP Arms did not make "reasonable inquiries" or take "extra precautions" or ask Holmes why he "wanted the items" (¶ 168) and that its website did not provide for "reasonable inquiries" into purchases that "posed unreasonable risk of harm to others." (¶ 172).

Plaintiffs also assert that BTP Arms knew or should have known that selling tear gas to a private citizen "without inquiry" poses an unreasonable risk of harm to others. (¶ 175).  Although Plaintiffs richly embellish their claims by citing other mass shootings in the U.S. and elsewhere, in none of those instances was the act perpetrated through the use of tear gas.  (¶ 181-185).

Plaintiffs claim that acts of negligent entrustment, negligence and public nuisance by BTP Arms (causes of action 4, 5 and 7) provide a basis for injunctive relief. According to Plaintiffs, as a civilian, Holmes had no "legitimate use" for tear gas (apparently disagreeing with numerous state legislatures that have concluded otherwise) and that he was *likely* to use the tear gas in a way that created an unreasonable risk of harm to others.  (¶s 211-216).  Further, that the "circumstances of the purchase" of the tear gas – which are not in any way described in the Amended Complaint – would have informed a "reasonable business" that Holmes had "illegal or unreasonable intent."  (¶ 226).

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 7

Plaintiffs also contend sales of this kind interfere with the use of Colorado public spaces and "public property," thereby creating a public nuisance (¶ 241). But this incident did not occur on "public property" or in a "public space." Plaintiffs do not allege that they use Colorado public spaces or public property (they are residents of San Antonio, Texas (¶s 8, 9)). Plaintiffs provide no facts to support the assertion that the sale of tear gas by BTP Arms has increased the number or severity of crimes in Colorado. (¶ 246).

While Plaintiffs allege that BTP Arms has interfered with the use of public facilities (¶ 248), it is clear that it has done no such thing. Rather, it is the use of tear gas by a third person in a non-public space that forms the basis for their "interference" and "public nuisance" claim.

## III.    STANDARD OF REVIEW

The sufficiency of the Amended Complaint must be evaluated under the "plausibility standard" articulated in the *Iqbal*[4] and *Twombly*[5] cases. Under this standard, to survive a motion to dismiss, a complaint must contain sufficient factual matter to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. It is well-pleaded factual allegations, not legal conclusions, that must give rise to a plausible entitlement to relief. *Iqbal,* 129 S.Ct. at 1950. Rule 8 "does

---

[4]        *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

[5]        *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007).

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 8

not unlock the doors of discovery for plaintiff armed with nothing more than

conclusions." *Id.* at 129 S.Ct. at 1950.

IV.    ARGUMENT

      A.    **THE AMENDED COMPLAINT DOES NOT STATE A
            CLAIM AGAINST BTP ARMS FOR NEGLIGENT
            ENTRUSTMENT**

Colorado recognizes the tort of negligent entrustment.  *Casebolt v. Cowan,* 829

P.2d 352 (Colo. 1992).  It has adopted section 390 of the Restatement (Second) of

Torts as a "useful framework" for resolving what duty is owed by a supplier of chattels.

*Peterson v. Halsted*, 829 P. 2d 373, 377 (Colo. 1992).  Section 390 provides:

> One who supplies directly or through a third person a chattel for the
> use of another whom the supplier knows or has reason to know to
> be likely because of his youth, experience, or otherwise, to use it in
> a manner involving unreasonable risk of physical harm to himself or
> others whom the supplier should expect to share in or be
> endangered by its use, is subject to liability for physical harm
> resulting to them.

The tort of negligent entrustment at minimum requires that the Defendant either

know or have reason to know of <u>some condition</u> of the entrustee that makes it <u>likely</u> that

the chattel supplied by the Defendant will be used by the entrustee in a way that

involves an unreasonable risk of harm to those that the defendant <u>should expect</u> to be

endangered by its use.

The Amended Complaint contains no facts to suggest that BTP Arms knew or

had reason to know that Holmes was *likely* to use the tear gas to assist in carrying out a

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 9

mass homicidal criminal enterprise – i.e., in a way that involved an unreasonable risk of harm to persons like the Plaintiffs' daughter. Plaintiffs blanket assertion that there were circumstances of the sale that made it <u>likely</u> that the tear gas was going to be used to injure people is not a substitute for facts that must be alleged to support that conclusion.

Negligent entrustment focuses on what the supplier knew. *Baker v. Bratrsovsky,* 689 P.2d 722, 723-724 (Colo. App. 1984) (entrustor must have actual knowledge of condition or facts from which such knowledge can reasonably be inferred; no "reason or duty to investigate"). In the context of this case, the supplier must either know that Holmes had a condition that made it *likely* that he was going to use the tear gas to kill and maim people through the use of firearms, or have facts that would cause a reasonable person to come to that conclusion. There are no facts to support that claim.

It is clear that under Colorado law, the tort of negligent entrustment does not impose any duty on the part of the supplier to conduct an investigation to *discover a condition* that would make it <u>likely</u> that the supplied chattel will be used in a way that involves an unreasonable risk of harm to others. *Liebelt v. Bob Penkhus Volvo-Mazda, Inc.*, 961 P.2d 1147, 1149 (Colo. App. 1998) (refusing to apply Restatement 308 to a supplier of chattels, noting the distinction between "knows or should know" and "reason to know" – "should know" imposes a duty of diligence, "reason to know" does not).

Plaintiffs have not alleged a claim for negligent entrustment.

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 10

### B.   THE AMENDED COMPLAINT DOES NOT STATE A CLAIM IN NEGLIGENCE AGAINST BTP ARMS

#### 1.   BTP Arms Owed Plaintiffs/Decedent No Duty

Plaintiffs assert that BTP Arms owed them and/or their deceased daughter the tort duty to (1) inquire why Holmes wanted to purchase the tear gas; (2) create a website design to "screen for unlawful and dangerous purchasers," and (3) recognize "other indicia" that Holmes posed an unreasonable risk of harm to others.  (¶ 224).

Whether a duty exists and the scope of that duty are questions of law for the court.  *Perreira v. State,* 768 P.2d 1198, 1208 (Colo. 1989).

The essence of Plaintiffs' claims is that BTP Arms owed the decedent or them a duty to protect them from harm by Holmes by discovering his murderous intent and declining to sell him two canisters of tear gas.[6]  It has long been the law in Colorado that absent a special relationship or circumstances, the law does not impose a duty on a person to take action for the protection of another even if it is reasonably apparent that action is necessary to protect the other from injury or peril.  *Id.*  Plaintiffs do not allege

---

[6]   It is not the sale, per se, of which the Plaintiffs complain – it is the failure to investigate before making a sale.  Put differently, Plaintiffs complain of a "negligent failure to act, rather than negligent action."  *University of Denver v. Whitlock*, 744 P.2d 54, 59 (Colo. 1987).

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 11

the existence of any recognized "special relationship" between BTP Arms and either

Holmes or the decedent/Plaintiffs.[7]

BTP Arms had no duty to protect Plaintiff from the misuse of the tear gas canister

even if it could have designed a different website or made inquiries.  Courts in other

states have rejected similar claims that the Defendant owed a duty of care to an

indeterminate – world at large – number of people.  For example, in *Valentine v. On

Target*, 353 Md. 544, 727 A.2d 947 (1999), the Maryland Court of Appeals rejected a

claim against a gun store owner for allegedly negligently failing to prevent the theft of a

handgun that was later used in a murder.  The Court observed:

> One cannot be expected to owe a duty to the world at large to
> protect it against the actions of third parties, which is why the
> common law distinguishes different types of relationships when
> determining if a duty exists.  The class of persons to whom the duty
> would be owed under these bare facts would encompass an
> indeterminate class of people, known and unknown.  When
> balancing the burden on the shop owner with the benefit to society
> at large clearly this imposition of duty would be a tremendous
> burden on shop owners while providing only a hypothetical benefit
> to the public at best.
>
> ….
>
> [T]hat although the inherent nature of guns suggests that their use
> may likely result in serious personal injury or death to another this
> does not create a duty of gun dealers to all persons who may be
> subject of the harm.  If we would hold today that gun merchants
> owe an indefinite duty to the general public effectively we would be

---

[7]     *Whitlock*, 744 P.2d at 58 provides a list of such special relationships.  None of them apply here.
There was no "special relationship" between BTP Arms and either the Plaintiffs/decedent or
Holmes.

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 12

> regulating the merchants. This type of regulation is the realm of the
> legislature and is not appropriate as a judicial enactment.

*Id.* at 553, 556, 527 A.2d at 951, 953.

Similarly, in *Hamilton v. Beretta USA Corp.*, 96 N.Y.2d 222, 750 N.E.2d 1055, 727 N.Y.S.2d 7 (2001), the New York Court of Appeals rejected claims against firearm manufacturers for failing to implement safe marketing and distribution procedures thereby creating and bolstering an illegal underground handgun market. The Court pointed out two general negligence principles equally applicable in Colorado: (1) the injured party must show a specific duty owed to the Plaintiff, not just a general duty to the public at large ("without a duty directly running to the injured person there is no liability, regardless of the carelessness of the conduct or the foreseeability of the harm"); and (2) a defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others even where the defendant has the ability to exercise such control. *Id.* at 232-33, 750 N.E.2d at 1060-61, 727 N.Y.2d at 12-13.

In this case, like *Hamilton*, the "pool of possible plaintiffs" arising from Internet sales is very large and the connection between the purchase of tear gas and the perpetration two months later of mass murder and the wounding or injuring of 58 people (some of whom were in an adjacent theater and would have been unaffected by any tear gas) is remote. Furthermore, as observed in *Hamilton*, no facts are presented in the Amended Complaint to suggest that any change in marketing techniques would have "likely prevented their injuries" or that their risk of injury "was enhanced by the

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 13

presence of negligently marketed and distributed [teargas]." *Id.* at 235, 750 N.E.2d at

1062, 727 N.Y.2d at 14.

Furthermore, under Colorado law, a person has no responsibility to foresee

intentional violent acts by others. See, e.g., *Sanders v. Acclaim Entertainment, Inc.*,

188 F.Supp.2d 1264 (Colo. 2002)(video game makers had no reason to assume that

users would murder or injure classmates and teachers or that it was the probable or

likely consequence of the use of video games); *Walcott v. Total Petroleum, Inc.*, 964

P.2d 609 (Colo. App. 1998) (no duty to foresee that pumped gasoline would be thrown

on victim who was set afire).

BTP Arms did not owe Plaintiffs a duty to control or regulate the conduct of

Holmes even if it was practical to make revisions to its website and to ask questions

about the purpose for which the teargas was being purchased. It did not owe a general

duty to the public at large, as asserted by Plaintiffs, to screen and prevent persons with

murderous intent from purchasing products with both beneficial and harmful uses.

> **2.      No Facts Are Alleged Showing That the Alleged
> Negligence of BTP Arms Caused
> Plaintiffs/Decedent's Injuries**

Even where negligence exists, there is no liability unless that negligence caused

the Plaintiff's injury. *Reigel v. SavaSeniorCare, L.L.C.,* 292 P.3d 977, 985 (Colo. App.

2011), *cert. denied* (Colo. 2012); *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464

(Colo. App. 1987).

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 14

While ordinarily the question of causation is for the jury, if reasonable minds could draw but one inference from the facts, causation is a question of law for the court. *Reigel,* 292 P.3d at 985-86.

Colorado continues to adhere to a but-for test for factual causation. *Id*. at 987. Even where there are other potential causes for the injury, the defendant's conduct must still be a cause without which the injury would not have occurred. Consequently, the Plaintiff must show that but for the alleged negligence, the injury would not have occurred. Even if a defendant's conduct increases the victim's risk of injury, that does not mean that the defendant's conduct was a but-for cause of the injury or was a necessary element in the causal set of events that caused injury. Put differently, causation is not established if the victim's injury would have occurred anyway even though the defendant's conduct increased the risk that it would occur. *Id*.

The Amended Complaint does not allege that (1) the tear gas canisters purchased from BTP Arms were those thrown into the theater; (2) that anyone was injured by the tear gas; (3) that there is any evidence that persons who were shot would not have been shot had tear gas not been used; (4) that the decedent Ghawi was injured by the tear gas or would have avoided being shot and killed had tear gas not been used; or (5) that had BTP Arms made some inquiry of Holmes about the reason for his purchase that he would have said something or provided any information that

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 15

would have made the sale illegal or inappropriate (as opposed to saying that he wanted the canisters for "self-defense" or other accepted uses).

More importantly, even accepting Plaintiff's argument that by failing to conduct some type of pre-sale screening of Holmes, it allowed him to purchase two canisters of tear gas, and that in turn increased the risk that Holmes would carry out mass murder more than two months later, all of the facts set forth in the Amended Complaint demonstrate and argue for the fact that the "victim's injury" would have occurred regardless of that fact.[8]

### C. THE AMENDED COMPLAINT FAILS TO ALLEGE AN ENTITLEMENT TO RELIEF FOR PUBLIC NUISANCE

A public nuisance is the doing or failure to do something that injuriously affects the safety, health or morals of the public or works some substantial annoyance, inconvenience or injury to the public. *Department of Health v. The Mill,* 887 P.2d 993, 1002 (Colo. 1994). It has also been defined as a "substantial and unreasonable interference with the right held in common by the general public, in the use of public facilities, in health, safety and convenience." Dobbs, Hayden & Bublick, *The Law of Torts* §403 at 636 (2nd edition 2011), citing Restatement (Second) of Torts §821B (1979).

---

[8]     Notably, Plaintiffs allege that through Internet and local brick and mortar retailers Holmes bought firearms, ammunition, ballistic chaps, gunpowder, rifle scopes, and knives.

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 16

The public nuisance described by the Plaintiffs, arising from the sale of two canisters of tear gas by BTP Arms (which were then used during a homicidal rampage on private property), is that people are worried about being in public spaces and BTP Arms has increased the number of "criminal attacks in a nonpublic facilities," and the number of people in public spaces "illegally armed with weapons."  (¶s 241-244). Plaintiffs do not cite a single instance where tear gas has been used in a crime in a public space in Colorado.   Similarly, Plaintiffs do not recite any facts showing that the tear gas actually used by Holmes was sold by BTP Arms.

These allegations do not state a claim for relief for public nuisance.  Plaintiffs do not allege and likely cannot allege any facts demonstrating that these events have substantially interfered with the use of any public space – i.e., that any public spaces are avoided or unavailable for use because buyers of tear gas on the Internet are not being adequately screened.

Lastly, even assuming arguendo that Plaintiffs did allege a public nuisance in Colorado, they have no right by statute or otherwise to bring an action for public nuisance.[9]

---

[9]    See, C.R.S. §§16-13-307(4)(action to abate public nuisance brought by district attorney or attorney general with the consent of the district attorney); Aurora Code of Ordinances, §62-29 (city attorney authorized to institute suit for common-law nuisance or as enumerated in section 62-26).  See also, Dobbs, Hayden & Bublick, The Law of Torts §403 at 639 (2nd edition 2011)("in the absence of a statute allowing citizens to enforce the public's rights, those rights are normally enforced only by public authorities"), citing Restatement (Second) of Torts §821B (1979).

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 17

### D.    PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

The Amended Complaint does not allege facts that satisfy the required elements to obtain injunctive relief.  Moreover, Colorado provides an adequate remedy at law for the death of a third person.

There is no substantive conflict between Colorado and federal law on the entitlement to equitable relief.  In essence, Plaintiffs must satisfy a four factor to obtain a permanent injunction: (1) that they have suffered an irreparable injury [i.e., success on the merits]; (2) the remedies available at law, such as monetary damages, are inadequate to compensate for that injury [i.e., irreparable injury will result without an injunction]; (3) that in balancing the hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 156-57, 130 S.Ct. 2743, 2756 (2010).[10]

It has long been the law in Colorado that an injunction is an extraordinary and discretionary equitable remedy that becomes available when there is no adequate

---

[10]    The formulation for a permanent injunction under Colorado decisions is: (1) actual success on the merits; (2) irreparable harm will result without an injunction; (3) the threatened injury outweighs the harm that an injunction may impose on the opposing party; and (4) an injunction will not adversely affect the public interest.  *Dallman v. Ritter,* 225 P.3d 610, 621 n.11 (Colo. 2010).  At the same time, one of the elements for a preliminary injunction is the absence of a "plain, speedy, and adequate remedy at law" and with the exception of likelihood of success versus actual success, the legal criteria and analytical process for preliminary and permanent injunctions "are essentially the same." *Id.*

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 18

remedy at law or when authorized by statute. *May Dept. Stores Co. v. State,* 863 P.2d

967, 978 (Colo. 1993). But differently, in Colorado, equity will not act if there is a plain,

speedy, and adequate remedy at law. *Szaloczi v. John R. Behrmann Rev. Trust*, 90

P.3d 835, 842 (Colo. 2004).

The two specific injuries claimed by the Plaintiffs are: (1) the death of their

daughter and (2) impingement on the right to use public spaces.

Irreparable harm is an injury that is certain, great, actual, and not theoretical.

*Schrier v. University of Colorado*, 427 F.3d 1253, 1267 (10th Cir. 2005). The irreparable

harm must be immediate -- the injury complained of is of such imminence that there is a

clear and present need for equitable relief to prevent it. *Id.* The purpose of injunctive

relief is not to remedy past violations, but to protect plaintiffs from irreparable injury that

will surely result without its issuance. *Id.*

The death of Plaintiffs daughter involves an alleged past violation. That is not the

basis for an injunction[11]. Plaintiffs have not provided facts showing that they "surely" will

be the victim of the illegal and criminal use of tear gas absent an injunction.

As to the use of public spaces, Plaintiffs do not live in Colorado. There are no

facts offered to show that an injury from the use of tear gas is so imminent that there is

a clear and present need for injunction. A theoretical fear of others in not using public

spaces is not a certain, great and actual injury to the Plaintiffs.

---

[11]     *May Dept Stores Co., supra,* 863 P.2d at 978 ("An injunction is intended to prevent future harm").

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 19

As to whether there is an adequate remedy at law, Colorado provides money damages when the death of a person is caused by a "wrongful act, neglect or default of another." C.R.S. §13-21-202 (2014). In fact, that is the only remedy to which Plaintiffs are entitled for the death of their daughter. Plaintiffs have an adequate remedy at law.

Finally, Plaintiffs are not entitled to injunctive relief because they cannot prevail on their underlying claims for negligence, negligent entrustment and public nuisance.

## V.     CONCLUSION

Plaintiffs have not alleged actionable claims in negligent entrustment, negligence or for public nuisance. Plaintiffs offer no facts showing that BTP Arms knew or had reason to know that it was likely that Holmes would use the tear gas in a criminal enterprise involving mass murder. BTP Arms owed Plaintiffs no duty in negligence to investigate Holmes's intentions or create a website to ascertain his true plans. Plaintiffs have not alleged facts showing that the use of tear gas was a but for cause of the death of Plaintiffs' daughter or has been the cause of any crime in any public space in Colorado. The Amended Complaint does not allege a public nuisance and Plaintiffs have no right to bring an action for public nuisance. Finally, Plaintiffs do not satisfy the requirements for an injunction – there is no irreparable harm and they have an adequate remedy at law.

These failures and omissions require dismissal of the claims against BTP Arms.

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 20

Respectfully submitted,


___/s/___Phillip R. Zuber_____
Phillip R. Zuber, Esquire
Sasscer, Clagett & Bucher
5407 Water Street, Suite 101
Upper Marlboro, MD 20772
(301) 627-5500/ (301) 627-4156 fax
pzuber@scblawyers.com


___/s/___Bruce A. Montoya_(w/consent)_____
Bruce A. Montoya, Esq.
Messner Reeves, LLP
1430 Wynkoop St., Suite 300
Denver, CO 80202
(303) 623-1800
bmontoya@messner.com

*Attorneys for Defendant Brian Platt, d/b/a BTP*
   *Arms*

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 21

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 22nd day of October 2014, I electronically filed

the foregoing **Defendant Platt's Motion to Dismiss and Memorandum of Law** with

the Clerk of the Court using the CM/ECF system which will send notification of such

filings to the following:

> Thomas W. Stoever, Jr., Esq.
> Paul W. Rodney, Esq.
> Arnold & Porter, LLP
> 370 Seventeenth St., Suite 4400
> Denver, CO 80202
> *Counsel for Plaintiffs*
>
> Andrew A. Lothson, Esq.
> Swanson, Martin & Bell, LLP
> 330 North Wabash, Suite 3300
> Chicago, IL 60611
> *Counsel for Lucky Gunner*
>
> Marc F. Colin, Esq.
> Bruno, Colin & Lowe, P.C.
> 1999 Broadway, Suite 3100
> Denver, CO 80202
> *Counsel for Lucky Gunner*
>
> Patrick J. Rooney, Esq.
> Donald Chance Mark, Jr., Esq.
> Peter A.T. Carlson, Esq.
> Fafinski, Mark & Johnson
> 775 Prairie Center Dr., Suite 400
> Eden Prairie, MN 55344
> *Counsel for The Sportsman's Guide, Inc.*

and hereby certify that I have mailed via U.S. mail, postage prepaid, to the following

non-CM/ECF participants:

*Phillips v. Platt, et al.*
Defendant Platt's Motion to Dismiss and Memorandum of Law
Page 22

Jonathan E. Lowy, Esq.
Elizabeth Burke, Esq.
Kelly Sampson, Esq.
Brady Center to Prevent Gun
  Violence
840 First St., N.E., Suite 400
Washington, D.C. 20005
*Counsel for Plaintiffs*



_____/s/____Phillip R. Zuber_____
Phillip R. Zuber, Esquire