**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-02822 - RPM

SANDY PHILLIPS, individually and as surviving
parent, of Jessica Ghawi, decedent;

LONNIE PHILLIPS, individually and as surviving
parent of Jessica Ghawi, decedent,

Plaintiffs,

v.

LUCKY GUNNER d/b/a/ BULKAMMO.COM,
THE SPORTSMAN'S GUIDE,
BRIAN PLATT d/b/a/ BTP ARMS,
GOLD STRIKE E COMMERCE LLC d/b/a/
BULLETPROOFBODYARMORHQ.COM, and
JOHN DOES 1 through 10, unknown individuals,

Defendants.

---

**DEFENDANT THE SPORTSMAN'S GUIDE'S RULE 12(b)(6) MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT THEREOF**

---

Defendant The Sportsman's Guide, Inc. ("Sportsman's Guide') moves this Court to

Dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of

Procedure. Sportsman's Guide submits this Memorandum in support of its Motion to Dismiss.

## INTRODUCTION

This case arises from the heinous criminal acts perpetrated by James Holmes ("Holmes")

at the Aurora Century 16 movie theater on July 20, 2012, during which Holmes killed twelve

(12) movie-goers and injured at least fifty-eight (58) others. (Amended Complaint ("Am.

Compl.") at ¶ 1.) The Plaintiffs are citizens of the state of Texas and the parents of one of the

shooting victims killed by Holmes during that incident, Jessica Ghawi. (*Id*. at ¶¶ 8-9.)

Sportsman's Guide is an online retailer of outdoor sporting products, including ammunition allegedly used by Holmes during his criminal actions. (*Id*. at ¶¶ 12, 88.)

Plaintiffs allege that Sportsman's Guide is liable in negligence (Count 5), negligent-entrustment (Count 2) and public nuisance (Count 7). Plaintiffs base their claims on allegations that Holmes was mentally ill and a drug user, and purchased ammunition and other items from Sportsman's Guide via its website. (*Id*. at ¶¶ 43, 221-222.) Tellingly, nowhere in their twenty-seven (27) page, two hundred fifty-six (256) paragraph Amended Complaint, do Plaintiffs allege any facts showing or even suggesting that Sportsman's Guide had any actual knowledge of Holmes' mental illness or alleged drug use. On the contrary, Plaintiffs specifically allege that Holmes purchased the items from Sportsman's Guide's internet website "without any human interaction." (*Id*. at ¶ 5.) In addition, Plaintiffs do not seek monetary damages in their claims; instead, they ask that the Court enjoin Sportsman's Guide from "their commercial activities." (Am. Compl. at ¶¶ 203, 230, 255.)

Plaintiffs' claims fail for multiple reasons. First, the federal Protection of Lawful Commerce in Arms Act ("PLCAA") specifically bars claims against businesses engaged in the sale of ammunition in interstate commerce. The PLCAA explicitly states that such businesses "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse…ammunition products." 15 U.S.C. § 7901(a)(5).

Second, Plaintiffs' claims are also precluded by Colorado statute C.R.S. § 13-21-501, which limits civil-tort claims against ammunition sellers to only those "based upon an actual defect in the design or manufacture of such…ammunition." Because there is no allegation in

Plaintiffs' Amended Complaint that the ammunition sold to Holmes was defective, C.R.S. § 13-21-501 applies and bars Plaintiffs' claims.

Finally, Plaintiffs have not alleged sufficient facts to show they are entitled to injunctive relief. Plaintiffs have not pled facts sufficient to show a reasonable likelihood of success on the merits, and do not face the threat of irreparable harm since Holmes is incarcerated and the Colorado legislature has enacted new laws prohibiting the sale of large-capacity magazines. Accordingly, Plaintiffs' allegations must be dismissed for failure to state a claim.

## FACTS

Sportsman's Guide is a Minnesota-based online and catalog retailer of hunting and outdoor gear, shooting supplies, military surplus, and survival gear. (Am. Compl. at ¶ 12.) According to the Amended Complaint, on June 13, 2012, Holmes purchased a high-capacity magazine, ammunition, hearing protection and a laser sight via the Sportsman's Guide's website. (*Id*. at ¶ 43.) Plaintiffs claim that Holmes used this equipment during his July 20, 2012 criminal attack at the Aurora theatre. (*Id*. at ¶ 88.) Plaintiffs do not allege that Sportsman's Guide had any direct, personal contact with Holmes. On the contrary, the only connection Plaintiffs allege between Holmes and Sportsman's Guide is through Holmes' online purchase. (*Id*. at ¶¶ 5 and 43.) The Amended Complaint does not identify or allege any facts showing that Sportsman's Guide knew, or had reason to know, of Holmes' psychiatric problems or his alleged prescription drug use (or of any criminal conviction that would disqualify him from owning or using a firearm).

<u>**ARGUMENT**</u>

I. **PLAINTIFFS' COMPLAINT IS SUBJECT TO THE HEIGHTENED PLEADING STANDARD OF *IQBAL*/*TWOMBLY*.**

A complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted)). "Factual allegations must be enough to raise a right to relief above the speculative level," and "'the pleading must contain something more … than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed. 2004)). "The cases make clear that it is facts, not conclusions, that must be pled." *Map v. Bd. of Trs.*, 2014 U.S. Dist. LEXIS 104021, *9 (D. Colo. July 29, 2014) (citing *Iqbal*, 129 S.Ct. at 1949-1950).

The facts set forth in the complaint must also be sufficient to "nudge the [] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 540; *Iqbal*, 556 U.S. at 678 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' - 'that the pleader is entitled to relief.'") "[T]he complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)

When confronted with conclusory allegations, a court can apply the plausibility standard in this manner:

> "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them. Then, faced with only well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Map v. Bd. of Trs.*, 2014 U.S. Dist. LEXIS 104021 at *10 (dismissing § 1983 (constitutional tort) claim because the complaint lacks any specific allegations "which delineate in any meaningful way what Defendant [] knew, when he knew it, whether whatever he knew was focused on [Plaintiff] or on a risk to him, or how it related to the cause of his injury. What exists, and all that exists, are general conclusory allegations.")

## II. PLAINTIFFS' AMENDED COMPLAINT AGAINST SPORTSMAN'S GUIDE IS BARRED UNDER THE PLCAA.

On October 26, 2005, Congress enacted the PLCAA. 15 U.S.C. §§ 7901-03. The PLCAA's primary purpose is:

> To prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.

15 U.S.C. § 7901(b)(1). Congress found that businesses engaged in the sale of ammunition in interstate commerce "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse...ammunition products." 15 U.S.C. § 7901(a)(5). "The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, [and] erodes public confidence in our Nations laws...." 15. U.S.C. § 7901(a)(6). Congress also intended the PLCAA to curb liability actions commenced by

"private interest groups and others [ ] based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law." 15 U.S.C. § 7901(7).[1]

The PLCAA requires immediate dismissal of "qualified civil liability action[s]" brought against ammunition retailers. 15 U.S.C. § 7902(b). The PLCAA defines a "qualified civil liability action" as:

> a civil action or proceeding ... brought by any person against a manufacturer or seller of a qualified product ... for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party….

15 U.S.C. § 7903(5)(A). A "qualified product" under 15 U.S.C. § 7903(4) is defined to include ammunition, or "a component part of the firearm or ammunition," as defined in 18 U.S.C. § 921(a)(17)(A).[2] Based on these definitions,[3] it is clear that Sportsman's Guide is entitled to the immunity protection of the PLCAA and the entire case against it must be immediately dismissed. *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 404 (2d. Cir. 2008) (applying PLCAA to bar claims against sellers of firearms under New York's criminal nuisance statute).

---

[1] As noted by Defendant Lucky Gunner ("LG") it its Memorandum in Support of Motion to Dismiss, the PLCAA has been found to be constitutional by every federal and state appellate court to address its constitutionality. (LG Memo. (ECF 3), at 6, n. 2.)

[2] In that section, ammunition is defined to mean "ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm." 18 U.S.C. § 921(a)(17)(A). Clearly, the products sold by Sportsman's Guide as alleged in the Amended Complaint fall within the PLCAA's definition of "qualified products," as they are either ammunition or a component part of the firearm or ammunition.

[3] A "seller" is defined under 15 U.S.C. § 7903(6)(C) to include a person "engaged in the business" of selling ammunition in interstate commerce at the wholesale or retail level. The term, "engaged in the business," as applied to a seller of ammunition, means a person who "devotes time, attention, and labor to the sale of ammunition as a regular course of trade or business with the principal objective of livelihood and profit." 15 U.S.C. § 7903(1).

Notwithstanding the broad scope and clearly stated purpose of the statute, the Plaintiffs are likely to claim that dismissal is not required under the PLCAA because the case fits in one of the narrow exclusions from the PLCAA's coverage. *See* 15 U.S.C. § 7903(5)(A)(i)-(vi). Those exceptions include actions brought for "negligent entrustment or negligence *per se*," and actions where the seller "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought…." 15 U.S.C. § 7903(5)(A)(ii) and (iii). However, a review of the caselaw, and the statute itself, shows that none of these exceptions apply here, and dismissal is required.

### A. Plaintiffs' Negligence Claim is Barred by the PLCAA.

Plaintiffs' negligence claim against Sportsman's Guide is set forth in Count 5 of the Amended Complaint. (Am. Compl. at ¶¶ 218-230.) Notably, it does not profess to be a claim of negligence *per se*. Rather, it is styled as a straight-forward negligence claim founded on the conclusory allegation that Sportsman's Guide "knew or had reason to know" that Holmes was a drug user or "posed an unreasonable risk of harm to others." (Id. at ¶¶ 221-222.) As such, the explicit language of the PLCAA requires that Count 5 be immediately dismissed. *See* 15 U.S.C. § 7903(5)(A)(i)-(vi); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135-36 (9th Cir. 2009) ("Congress clearly intended to preempt common-law claims, such as general tort theories of liability.")

Despite this, it is possible that Plaintiffs may argue that, even though Count 5 is not styled or captioned as a negligence *per se* claim, it should nevertheless be treated as a negligence *per se* claim—and therefore should be considered a claim fitting within one of the exemptions in the PLCAA—based on the allegation that Sportsman's Guide violated 18 U.S.C. § 922(d)(3) ("Section 922(d)(3)"). (Am. Compl. at ¶ 221.) This argument is unavailing.

Unlike an allegation of negligence, a claim of negligence *per se* "occurs when the defendant violates a statute adopted for the public's safety and the violation proximately causes the plaintiff's injury." *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1166 (Colo. 2002). As a result, in a negligence *per se* claim, "the standard of care [is] set forth in the statute or ordinance." *Dolin v. Contemporary Fin. Solutions, Inc.*, 622 F. Supp. 2d 1077, 1084 (Colo. 2009); *Neiberger v. Hawkins,* 208 F.R.D. 301, 309 (D. Colo. 2002) (citing *Largo Corp. v. Crespin,* 727 P.2d 1098, 1107 (Colo. 1986)); *see also Wallman v. Kelley,* 976 P.2d 330, 333 (Colo. App. 1998).

Under Section 922(d)(3), it is unlawful to sell ammunition to a person "knowing or having reasonable cause to believe" that the person is an unlawful user of, or addicted to, any controlled substance. As such, the standard of care required for a showing of a violation of § 922(d)(3) is "reasonable cause to believe"; i.e., in order to establish a violation of Section 922(d)(3), a plaintiff must show that the seller sold ammunition to a person it knew or had "reasonable cause to believe" was a drug user.

This standard is different—and much higher—than the standard required in a simple negligence claim. In fact, unlike the simple negligence standard, which allows a plaintiff to meet his or her pleading requirements by alleging that the defendant had reason to believe that harm might occur in some foreseeable future, under the "reasonable cause to believe" standard, the plaintiff must allege facts showing that a reasonable person "knowing the same things, [would] conclude that the other person was in fact" a prohibited purchaser. *Knight v. Wal-Mart Stores*, 889 F. Supp. 1532, 1536 (S.D. Ga. 1995). As stated in *Knight*, "the standard … is more favorable to dealers than the common law negligence standard—it requires reason to believe that a particular event occurred in the past, *not* reason to believe that harm might occur in some

foreseeable future." *See also United States v. Fifty-Two Firearms*, 362 F. Supp. 2d 1308, 1313 (M.D. Fla. 2005) ("To have 'reasonable cause to believe' that someone is a convicted felon means to have knowledge of facts which, although not amounting to direct knowledge, would cause a reasonable person, knowing the same things, to reasonably conclude that the other person was in fact a convicted felon.")

Here, Plaintiffs have asserted that Sportsman's Guide "knew or should have known" that Holmes "was prohibited from possessing or receiving ammunition." (Am. Compl. at ¶ 221.) In addition, they have premised their negligence claim on the "general duty imposed on all persons not to expose others to reasonably foreseeable risks of injury." (Am. Compl. at ¶ 219.) Critically, however, they have not alleged any facts showing that Sportsman's Guide had "reasonable cause to believe" Holmes was a drug user. In fact, nowhere in their Amended Complaint do Plaintiffs allege when or how Sportsman's Guide knew of Holmes' alleged drug use. This lack of knowledge is made all the more apparent by the fact that Plaintiffs' own allegations regarding Holmes' alleged drug use can only be made "[u]pon information and belief." (Am. Compl. at ¶ 221.) As such, regardless of how the claim is styled, Count 5 cannot be viewed as a negligence *per se* claim based on the allegation that Sportsman's Guide violated Section 922(d)(3). Instead, it can only be viewed as what it is—a straightforward negligence claim that must be immediately dismissed pursuant to the PLCAA.

**B. Plaintiffs' Public Nuisance Claims Are Precluded by the PLCAA.**

Plaintiffs purport to assert a "public nuisance" claim against Sportsman's Guide under Colorado state and local law in Count 7 of the Amended Complaint. (Am. Compl. at ¶¶ 240-256.) However, as noted above, only certain claims are exempted from the PLCAA's mandatory

dismissal language. 15 U.S.C. § 7903(5)(A)(ii)-(iii). The PLCAA does not include any exception for claims of "public nuisance."

Nonetheless, Plaintiffs are likely to argue that their public nuisance allegations fall under the PLCAA's exception for knowing violations of State or Federal statutes that are "applicable to the sale or marketing of the product, and [where] the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). "This exception has come to be known as the 'predicate exception,' because a plaintiff not only must present a cognizable claim, he or she also must allege a knowing violation of a 'predicate statute.'" *Ileto*, 565 F.3d at 1132. Plaintiffs will likely contend that they have pleaded the predicate exception here because they alleged that Sportsman's Guide, through its one-time online sale to Holmes, knowingly violated Colorado law and Aurora municipal code by "creating and maintaining an unreasonable interference with the use and enjoyment of public spaces and the rights held in common by the general public, constituting a public nuisance…." (Am. Compl. at ¶ 241.)

Plaintiffs' expected reliance on the predicate exception, however, is not supported by the plain language of the PLCAA and falls short. First, in order to meet the predicate exception under the PLCAA, Plaintiffs must allege facts showing that Sportsman's Guide "knowingly violated" the Colorado and Aurora nuisance statutes. 15 U.S.C. § 7903(5)(iii). Here, although Plaintiffs summarily allege that Sportsman's Guide "knowingly violated Colorado's and Aurora's public nuisance laws" and knew or had reason to know that its acts and omissions caused "substantial and unreasonable interferences with the public's health, safety, and convenience," they have not alleged any actual *facts* showing how Sportsman's Guide knew that its actions interfered with the public's health and safety, or what precautions it chose not to take.

(Am. Compl. at ¶¶ 247, 250.)  As such, there are no particular allegations of *fact* in the Amended Complaint showing how Sportsman's Guide had the requisite knowledge to meet the predicate exception.  *Compare with, City of New York v. Bob Moates' Sport Shop, Inc.*, 253 F.R.D. 237, 241 (E.D.N.Y. Sep. 29, 2008) (applying the predicate exception where the City "alleged and proffered evidence" showing the defendants engaged in sales with straw buyers in violation of 18 U.S.C. §§ 922-924).

Second, Plaintiffs have not alleged facts sufficient to meet the "proximate cause" requirement of the predicate exception.  Indeed, the gravamen of Plaintiffs' claim is that Holmes, not Sportsman's Guide, committed the acts which directly caused the injury to the Plaintiffs' daughter.  Under Colorado law, "[t]he manufacturer's, importer's, or distributor's placement of a firearm or ammunition in the stream of commerce, even if such placement is found to be foreseeable, shall not be conduct deemed sufficient to constitute the proximate cause of injury, damage, or death resulting from a third party's use of the product."  C.R.S. § 13-21-504(2); *see also Hook v. Lakeside Park Co.*, 351 P.2d 261, 265 (Colo. 1960) ("[W]here … several events may have brought about the harm to plaintiff, and an event other than the defendant's negligence appears predominant, the alleged negligence cannot be considered a substantial factor.")  Here, given that Holmes' intervening criminal acts unquestionably were the predominant and direct cause of the injury to Plaintiffs' daughter, the allegations in the Amended Complaint do not meet the proximate cause element for the predicate exception.

Third, even assuming Plaintiffs' allegations were sufficient (which they are not), the nuisance claims themselves do not fall within the predicate exception.  The Colorado and Aurora nuisance statutes are general regulations that relate to standard property-based nuisance claims.

Colorado's statute refers to conduct at a building, vehicle or other real property and defines nuisance to include, among others, the following: prostitution, gambling, child prostitution, use for commission of theft or felony, gaming, and abuse of an elderly person. C.R.S. 16-13-303(1)(a)-(n). Similarly, the Aurora code proscribes, among others, the following activities: prostitution, gambling, manufacture of controlled substances, prostitution of a child, violation of the Colorado Liquor Code, violation of Colorado Escort Service Code, conducting business so as to create an offensive smell in the neighborhood, throwing or depositing dead animals in water sources or public places, and maintaining an attractive nuisance. Aurora code § 62-26(1-25). These nuisance statutes unquestionably are not intended to address the "sale or marketing" of ammunition products. 15 U.S.C. § 7903(5)(A)(iii). As such, the Colorado and Aurora nuisance statutes do not fall within the predicate exception.

Other courts that have analyzed this issue have come to similar conclusions. For example, in *Ileto* the court considered whether California's nuisance statute was "'applicable' to the sale or marketing of firearms." *Ileto,* 565 F.3d at 1137. After conducting a statutory construction analysis which focused on the definition of the term "applicable" in the predicate exception, the *Ileto* court concluded that it was "more likely that Congress had in mind … statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry—rather than general tort theories that happened to have been codified by a given jurisdiction." *Id.* at 1136. The Court also noted that the legislative history of the PLCAA confirms that the California tort claims are preempted by the PLCAA and do not fall under the scope of the predicate exception. *Id.* at1138. As such, the California nuisance statute

was held to be inapplicable to the sale or marketing of firearms within the meaning of the PLCAA, and the nuisance claim against the retail seller of the firearm was dismissed.

Similarly, in *Beretta*, 524 F.3d 384, 404 (2d Cir. 2008), the court considered—and rejected—whether New York Penal Law § 240.45, Criminal Nuisance 2nd Degree, falls within the predicate exception.[4] There, the City of New York sought injunctive relief requiring the firearms suppliers to carry out assorted actions that would curb the distribution of firearms into illegal markets. *Beretta*, 524 F.3d at 391. Like the *Ileto* court, the court in *Beretta* examined whether the New York nuisance statute was covered by the term "applicable to" in the predicate exception. *Id.* at 402. The *Beretta* court rejected the City's argument for a broad definition of "applicable to," finding that the City's argument "would allow the predicate exception to swallow the statute, which was intended to shield the firearms industry from vicarious liability for harm caused by firearms that were lawfully distributed into primary markets." *Id.* at 403. Consequently, the *Beretta* court held that "New York Penal Law § 240.45 is a statute of general applicability that does not encompass the conduct of firearms manufacturers of which the City complains" and as a result does not "fall within the predicate exception to the claim restricting provisions of the PLCAA." *Id.* at 400, 404.

Based on the above, it is clear that Plaintiffs' public nuisance claim does not fit within the predicate exception of the PLCAA. As such, it must be dismissed.

---

[4] The New York Penal Law § 240.45, Criminal Nuisance 2nd Degree, made it a crime to "knowingly or recklessly create[] or maintain[] a condition which endangers the safety or health of a considerable number of persons." N.Y. Penal Law § 240.45.

### C. Plaintiffs Do Not Allege Facts Sufficient to Support Their Negligent Entrustment Claim.

Finally, Plaintiffs are likely to argue that the PLCAA does not mandate dismissal because the PLCAA contains an exemption for "negligent entrustment" claims,[5] and they have alleged such a claim against Sportsman's Guide in Count 2. (Am. Compl. at ¶¶ 198-203.) However, in order to fit within the confines of the "negligent entrustment" exclusion, Plaintiffs must also allege well-pleaded factual allegations sufficient to support the claims. *Iqbal,* 556 U.S. at 678; *Ridge at Red Hawk,* 493 F.3d at 1177. "[C]onclusory statements" and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Iqbal*, 556 U.S. at 678. Plaintiffs have not met that requirement here.

Initially, it should be noted that Colorado does recognize a cause of action for negligent entrustment. As articulated by the Colorado Supreme Court in 1992, the theory of negligent entrustment is based on Section 390 of the Restatement (Second) of Torts:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Casebolt v. Cowan, 829 P.2d 352, 357 (Colo. 1992) (*adopting Section 390 of the Restatement (Second) of Torts*).* In addition, the PLCAA contains a specific definition of negligent entrustment, which provides as follows:

> As used in subparagraph (A)(ii), the term "negligent entrustment" means the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is

---

[5]   See 15 U.S.C. § 7903(5)(A)(ii).

> supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.

15 U.S.C. § 7903(5)(B). Thus, under both Colorado law and the PLCAA, to assert a viable negligent entrustment action the plaintiff must allege facts showing that the supplier of the instrumentality entrusted had "'*actual knowledge*' of the individual's recklessness or incompetence or of facts from which such knowledge could reasonably be inferred." *Baker v. Bratrsovsky*, 689 P.2d 722, 723 (Colo. Ct. App. 1984) (emphasis added) (affirming trial court's directed verdict in negligent entrustment case where defendant car salesman had no actual knowledge of the purchasers' pattern of reckless or incompetent driving prior to the sale); *see also Hilberg v. F.W. Woolworth Co.,* 761 P.2d 236, 238 (Colo. Ct. App. 1988), *overruled on other grounds by Casebolt,* 829 P.2d. at 360 (affirming summary judgment where defendant firearm sellers had no knowledge of purchaser's "supervision habits, shortcomings, or qualities as a parent.")

Here, as noted above, there are no factual allegations in the Amended Complaint showing or even asserting that Sportsman's Guide actually knew or had reason to know that Holmes would use the ammunition as part of his criminal plans. Plaintiffs' pleadings only recite the legal formulation that Sportsman's Guide "knew or in the exercise of ordinary care should have known or knew" of Holmes' criminal intentions. (Am. Compl. at ¶¶ 198-203.) The allegations do not identify any information Sportsman's Guide obtained before, or during, Holmes' one-time purchase from Sportsman's Guide that would have advised it of Holmes' intentions. Plaintiffs' transparent attempt at avoiding dismissal under the PLCAA by pleading conclusory allegations should not be countenanced. "[T]he complaint must give the court reason to believe that this

plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red*

*Hawk,* 493 F.3d at 1177. Plaintiffs' allegations here do not meet the standard for pleading and as

such, their negligent entrustment claim must be immediately dismissed under the PLCAA.

### III. PLAINTIFFS' AMENDED COMPLAINT AGAINST SPORTSMAN'S GUIDE IS BARRED UNDER THE PROTECTION OF COLORADO STATUTE § 13-21-501.

Before Congress enacted the PLCAA, in 2000, the Colorado Legislature enacted similar

civil-tort limitations on claims against ammunition sellers. C.R.S. § 13-21-501. The Colorado

legislature declared that "it shall be the policy of this state that a civil action in tort for any

remedy…shall be based only upon an actual defect in the design or manufacture of

such…ammunition." C.R.S. § 13-21-501(2). In relevant part, C.R.S. § 13-21-504.5 provides as

follows:

> (1) A person or other public or private entity may not bring an action in tort, other than a product liability action, against a firearms or ammunition manufacturer, importer, or dealer for any remedy arising from physical or emotional injury, physical damage, or death caused by the discharge of a firearm or ammunition.

> (2) In no type of action shall a firearms or ammunition manufacturer, importer, or dealer be held liable as a third party for the actions of another person.

> (3) The court, upon the filing of a motion to dismiss pursuant to rule 12 (b) of the Colorado rules of civil procedure, shall dismiss any action brought against a firearms or ammunition manufacturer, importer, or dealer that the court determines is prohibited under subsection (1) or (2) of this section. Upon dismissal pursuant to this subsection (3), the court shall award reasonable attorney fees, in addition to costs, to each defendant named in the action.

> (4) Notwithstanding the provisions of subsection (1) of this section, a firearms or ammunition manufacturer, importer, or dealer may be sued in tort for any damages proximately caused by an act of the manufacturer, importer, or dealer in violation of a state or federal statute or regulation. In any action brought pursuant to the provisions

of this subsection (4), the plaintiff shall have the burden of proving by clear and convincing evidence that the defendant violated the state or federal statute or regulation.

C.R.S. § 13-21-504.5 (2000).

As can be seen, Section 13-21-504.5—like the PLCAA, its federal counterpart—provides broad immunity to ammunition dealers for physical injury or death claims arising out of the discharge of a firearm or ammunition. It specifically states that "no type of action" shall be permissible against a firearms or ammunition manufacturer, importer, or dealer as a result of the actions of a third party. C.R.S. § 13-21-504.5(2). The only exemptions in the statute apply to cases in which a claim is made based on an alleged defect in the design or manufacture of the ammunition, or in cases in which the dealer violated a state or federal regulation and the plaintiff is seeking "damages." Since the former is not at issue here, Plaintiffs' sole argument for avoiding dismissal is under the "state or federal statute" exemption. However, that exemption does not apply here.

First, the Plaintiffs in the instant case are not seeking "damages." On the contrary, they have instead specifically limited their requested relief to an injunction. (Am. Compl. at ¶ 255-256 and WHEREFORE clause.) The Colorado legislature specifically limited suits against ammunition sellers to those where the plaintiff requests "damages" for relief. This is in contrast to Section 13-21-504.5(1), which prescribes that a product liability claim can be pursued against an ammunition seller for "any remedy." In addition, Plaintiffs have failed to allege facts sufficient to establish that Sportsman's Guide's conduct was the proximate cause of their injury. Based on these deficiencies alone, it is clear that Plaintiffs' claims must be dismissed under C.R.S. § 13-21-504.5.

Second, Plaintiffs have not alleged sufficient facts under *Twombly*/*Iqbal* to state a claim against Sportsman's Guide for violating a State or Federal statute on any basis, let alone on a "clear and convincing basis."  Plaintiffs assert conclusory and hollow allegations against Sportsman's Guide contending that it sold ammunition to Holmes in violation of Section 922(d)(3), and that it violated Colorado and the City of Aurora's nuisance statutes.  However, Plaintiffs have not alleged any particularized facts showing that Sportsman's Guide actually knew or had reason to know Holmes was prohibited from possessing ammunition because of his alleged use and/or abuse of controlled substances.  (*See* Am. Compl. at ¶ 221.)  Nor have Plaintiffs identified facts showing that Sportsman's Guide's sale of ammunition to Holmes, or others in Colorado, violated the Colorado and Aurora nuisance statutes.

In support of their public nuisance allegations, Plaintiffs generically assert that Sportsman's Guide's sale of large quantities of ammunition, high capacity magazines and other material interferes with the public's use and enjoyment of public facilities, including "by contributing to and causing the mass attack at the Aurora movie theater."  (Am. Compl. at ¶¶ 241-242.)  However, not only have Plaintiffs not asserted specific facts that demonstrate the plausibility of these allegations, but they seek to impose liability on Sportsman's Guide for Holmes' conduct.  The Colorado legislature expressly stated that "[i]n no type of action shall a firearms or ammunition…dealer be held liable as a third party for the actions of another person."  C.R.S. § 13-21-504.5(2).  Simply put, Plaintiffs have not alleged facts showing clear and convincing evidence that Sportsman's Guide violated a State or Federal statute and Plaintiffs' claims must be dismissed.

Sportsman's Guide further requests that it be awarded its attorneys' fees pursuant to C.R.S. § 13-21-504.5(3) for defending and obtaining dismissal of Plaintiffs' claims pursuant to a Rule 12 motion for dismissal.

## IV. PLAINTIFFS HAVE NOT PROPERLY ALLEGED ANY OF THE NECESSARY FACTORS FOR INJUNCTIVE RELIEF TO BE GRANTED.

Even if Plaintiffs claims are not barred under the PLCAA or C.R.S. § 13-21-504.5, they must be dismissed because Plaintiffs have failed to allege sufficient facts to show that injunctive relief of the type requested would be appropriate. To obtain a permanent injunction, a party must prove: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Wyoming v. USDA*, 661 F.3d 1209, 1272 (10th Cir. 2011) (vacating permanent injunction issued by district court because the plaintiff did not prevail on the merits of its claims.)

Issuance of an injunction "based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, (2008) (reversing issuance of preliminary injunction which enjoined Navy from conducting sonar training). A request for injunctive relief must be specific enough to meet the threshold of notice pleading standards. *Francis v. Mead Johnson & Co.*, 2010 U.S. Dist. LEXIS 137630, *8 (D. Colo. Dec. 17, 2010).

Here, Plaintiffs have not adequately pleaded, and cannot adequately plead, any of the factors necessary for the issuance of an injunction. First, they have not pled facts showing they are likely to have actual success on the merits. On the contrary, all of their claims are subject to

immediate dismissal under the PLCAA and C.R.S. § 13-21-504.5. In addition, even if the Plaintiffs can somehow avoid the immunity provisions of these statutes, Plaintiffs have utterly failed to allege facts sufficient to establish that Sportsman's Guide owed a duty of care to ensure the safety of Plaintiffs' daughter.[6]

It has long been established that under common law, "the universally accepted rule ... is that a private person has no duty to act affirmatively to protect another from criminal attack by a third person absent a 'special relationship' between the parties." *Vesely v. Armslist LLC*, 2014 U.S. App. LEXIS 15478, *4 (7th Cir. August 12, 2014); *see also Molosz v. Hohertz*, 957 P.2d 1049, 1050 (Colo. Ct. App. 1998) ("Generally, there is no duty to control the conduct of a third person so as to prevent him or her from causing physical harm to another unless a special relationship exists between the actor, here, the landlord, and the third person, which imposes a duty upon the actor to control the third person's conduct.") Here, Plaintiffs have not alleged a "special relationship" between Sportsman's Guide and Holmes.

In addition, the courts have generally declined to find a duty on the part of retailers, including retailers in the gun industry, to investigate their customers. *See Heatherton v. Sears, Roebuck and Co.*, 445 F. Supp. 294, 304-05 (D. Del. 1978), *rev'd on other grounds*, 593 F.2d 526 (3d. Cir. 1978)(finding that Sears "did not have a duty to investigate [its customer's] background above and beyond the procedures required by statute"); *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1065 (N.Y.S 2d 2001) (finding that gun manufactures had no

---

[6] Under Colorado law, whether a particular defendant owes a legal duty to a particular plaintiff is a question of law. *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980). ("The court determines, as a matter of law, the existence and scope of the duty -- that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection.")

affirmative duty to investigate and identify corrupt dealers.)  As such, even apart from the PLCAA and C.R.S. § 13-21-504.5, Plaintiffs have not established facts sufficient to show that they would be likely to prevail on the merits.

Second, Plaintiffs have not adequately pleaded any facts sufficient to establish irreparable harm.  On the contrary, the facts which Plaintiffs have pled—including the fact that Holmes was identified by the police and arrested in the parking lot behind the Theater minutes after the incident—suggest that Holmes is likely to be incarcerated for the remainder of his life and does not pose a serious risk of ongoing harm to the Plaintiffs.  (Am. Compl. at ¶ 78.)  In addition, Plaintiffs' claim for irreparable harm is severely undercut by the fact that the Colorado legislature recently enacted gun and ammunition control legislation which prohibits the transfer of a large-capacity magazine after July 1, 2013 (subject to certain limited exceptions for, *inter alia*, firearm dealers and government officials) and imposes background check requirements on certain private transfers of firearms.  *See* C.R.S. §§ 18-12-302 and 18-12-112; *see also Colo. Outfitters Ass'n v. Hickenlooper*, 2014 U.S. Dist. LEXIS 87021, *8-9 (D. Colo. June 26, 2014) (upholding the constitutionality of the newly enacted legislation).  In light of this legislation, there can be no threat of irreparable harm to Plaintiffs based on sale of "high capacity magazines, including 100 round drum magazines."  (Am. Compl. at ¶ 241.)

Third, with regard to the balancing of the harms, Plaintiffs cannot plausibly allege that the harm they will likely suffer, particularly in light of Holmes' incarceration and the recently passed Colorado statutes, outweighs the risk of harm posed to Sportsman's Guide's business if the requested injunction to "stop their commercial activities" is granted.  (Am. Compl. at ¶ 255.)  The harm that would be created by such an injunction, including the loss of jobs to people

working at Sportsman's Guide, would clearly be greater than the vague and speculative risk of harm facing the Plaintiffs. The disproportionate burden that would be imposed on Sportsman's Guide is underscored by the fact that injunctive relief would not eliminate the risk of harm alleged because ammunition would continue to be available from other sources not subject to the selective injunctive relief sought against Sportsman's Guide. (*See* Am. Compl. at ¶ 41, 42, 49.) In addition, there can be no question that the interests of the law-abiding public in obtaining ammunition for hunting, target shooting, self-defense and other lawful purposes would be affected by the injunction requested by the Plaintiffs. As such, Plaintiffs have failed to aver allegations sufficient for which to obtain injunctive relief and their Amended Complaint must be dismissed accordingly.[7]

## CONCLUSION

For the foregoing reasons, Defendant Sportsman's Guide, Inc. requests that the Court grant its Motion to Dismiss in its entirety, and enter an Order immediately dismissing all claims against it. In addition, pursuant to C.R.S. § 13-21-504.5(3) and C.R.S § 13-17-201, Sportsman's Guide requests that it be awarded its attorneys' fees for defending and obtaining dismissal of Plaintiffs' claims.

---

[7] To the extent not addressed herein, Sportsman's Guide adopts and reincorporates the arguments made by Defendant LG in support of their motion to dismiss Plaintiffs' Amended Complaint (ECF 3).

**FAFINSKI MARK & JOHNSON, P.A.**

Dated:  October 23, 2014

s/ Patrick J. Rooney
_____

Donald Chance Mark, Jr. (MN #67659) (Admitted in Dist. of Colorado)

Patrick J. Rooney (MN #198274) (Admitted in Dist. of Colorado)

Peter A. T. Carlson (MN #0350448) (Admitted in Dist. of Colorado)

Flagship Corporate Center

775 Prairie Center Drive, Suite 400

Eden Prairie, MN  55344

(952) 995-9500

*donald.mark@fmjlaw.com*

*patrick.rooney@fmjlaw.com*

*peter.carlson@fmjlaw.com*

and

Ronald L. Wilcox

**PETERS MAIR WILCOX**

1755 Blake Street, Suite 240

Denver, CO  80202

(303) 393-1704

*rwilcox@peterslaw.net*

**Attorneys for The Sportsman's Guide, Inc.**