**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  14-cv-2822-RPM

SANDY PHILLIPS, individually and as surviving parent
of Jessica Ghawi, decedent; LONNIE PHILLIPS,
individually and as surviving parent of Jessica Ghawi,
decedent,

Plaintiffs,

v.

LUCKYGUNNER, d/b/a/ BULKAMMO.COM,
THE SPORTSMAN'S GUIDE,
Brian Platt, d/b/a/ BTP ARMS,
Gold Strike E Commerce LLC d/b/a/
BULLETPROOFBODYARMORHQ.COM,
and JOHN DOES 1 through 10, unknown individuals,

Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

---

Plaintiffs Sandy Phillips and Lonnie Phillips ("Plaintiffs") respectfully submit this

consolidated opposition to the Motions to Dismiss (the "Motions") filed by Defendants

LuckyGunner d/b/a BulkAmmo.com (Dkt. No. 3), The Sportsman's Guide (Dkt. No. 22), and

Brian Platt d/b/a BTP Arms (Dkt. No. 21) (collectively, "Defendants").

## INTRODUCTION

Plaintiffs are the parents of Jessica Ghawi, a victim of the shooting at the Aurora Century

16 Theater on July 20, 2012.  Out of concern for public safety, Plaintiffs have filed this action for

negligence, negligent entrustment, and public nuisance seeking an injunction that would require

reasonable changes to the way Defendants sell ammunition, body armor, and tear gas online. Defendants have established and maintain online businesses by which virtually anyone, including people with the intent to do harm to others, can obtain an arsenal of military and para-military weaponry. Plaintiffs have alleged that it was foreseeable to Defendants that they would supply and facilitate crime; that Defendants could and should have instituted reasonable business practices to prevent the materiel they sell from ending up in the hands of people who would do harm to others; and that Defendants maintain a sales model that allows them to remain willfully blind of such risks.

Defendants moved to dismiss for failure to state a claim, arguing that federal and state statutes provide them immunity and that Plaintiffs have failed to plead their causes of action adequately. Defendants make the broad argument that they cannot be subjected to any civil liability whatsoever for their sale of unlimited amounts of ammunition, high-capacity ammunition magazines, body armor, and tear gas, regardless of their lack of care or the foreseeability of the harm. Neither federal nor state statutes immunize retailers from their own negligent actions. The immunity statutes that Defendants invoke[1] are premised on the fact that gun and ammunition dealers cannot be held liable solely for the actions of those who criminally use their products; gun dealers still are obligated to "carefully sell"[2] their products, and they are liable for harm arising out of their failure to do so. Defendants claim that they can avoid that

---

[1] Defendants LuckyGunner and The Sportsman's Guide claim immunity under the PLCAA and the Colorado statute as ammunition sellers. *See* LuckyGunner Motion to Dismiss at 4-17; The Sportsman's Guide Motion to Dismiss at 5-13. Defendant Platt does not raise these statutes as a defense because he did not sell products encompassed by either statute. *See generally* Platt's Motion to Dismiss.

[2] 151 Cong. Rec. S. 9226 (July 28, 2005) (statement of Sen. Graham) (emphasis added).

obligation and ask the Court to let them remain willfully ignorant of the threats posed by certain purchasers.

The Motions fail to acknowledge a crucial fact that sets this action apart from the reported cases that have addressed similar liability issues:  Defendants are retailers that have chosen to conduct business solely online, without any human interaction, and without any attempt to obtain any information about their purchasers, their experience, or their intended uses of the highly dangerous materiel that Defendants sell.  That form of transaction has none of the safeguards inherent in a traditional face-to-face transaction.  As a result, the case law Defendants point to is inapposite, and it would be inappropriate to grant dismissal on the pleadings without allowing further development of the facts.  The Motions should be denied, Defendants should be required to answer the Amended Complaint, and Plaintiffs should be allowed to develop their claims through the discovery process.

### STANDARD OF REVIEW

On a motion to dismiss, the court must accept all allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A complaint need not contain detailed factual allegations, but only a short, plain statement of the claim sufficient to provide the defendant with notice of the claim.  *Twombly*, 550 U.S. at 555.  The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable; instead, the complaint need only be plausible enough to raise "a reasonable expectation that discovery will reveal

evidence." *Id*. at 556. A motion to dismiss is viewed with disfavor and is "rarely granted." *Lauer v. Thelin*, 433 F. App'x 686, 686 (10th Cir. 2011) (citing *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992).

## ARGUMENT

Defendants claim that as a matter of law they cannot be held liable when they turn a blind eye to the possibility that their customers may do harm to others, regardless of the facts established in discovery, regardless of expert testimony showing that their business practices are unreasonable, and regardless of whether their business practices could easily be altered. The Motions fail under the circumstances of this case. First, neither Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901 *et seq*. (the "PLCAA"), nor C.R.S. § 13-21-504.5 immunize Defendants against the claims in this case. Those statutes were never intended to shield retailers from their own negligence or misconduct. If Defendants' broad reading of the PLCAA and C.R.S. § 13-21-504.5 is accepted, the statutes are unconstitutional. The doctrine of constitutional avoidance counsels this Court to reject that reading and adopt Plaintiffs' interpretation. Second, Plaintiffs have adequately stated each of their causes of action and are entitled to pursue discovery to develop their claims. Third, Plaintiffs have properly pleaded their request for injunctive and equitable relief.

## I. NEITHER FEDERAL NOR STATE STATUTES GIVE DEFENDANTS IMMUNITY FROM PLAINTIFFS' CLAIMS.

Neither the PLCAA nor C.R.S. § 13-21-504.5 bar this action. The statutes do not shield ammunition retailers from their own negligence or misconduct. The statutes also suffer from constitutional infirmities that prevent their application here.

**A.     The PLCAA Does Not Provide Gun Retailers Immunity from their Own
             Misconduct**

      **1.     The plain language of the PLCAA does not immunize gun dealers for
                       their own misconduct**

This action is not barred by the PLCAA because Plaintiffs' claims relate to Defendants'

negligent sales practices and are not solely based on the conduct of other parties.  While

Defendants' conduct contributed to the foreseeable events at the Aurora Century 16 Theater, the

claims in this action are rooted in Defendants' own conduct rather than the accused killer's.

The PLCAA bars "qualified civil liability actions" against gun and ammunition dealers.

The PLCAA does not prohibit actions, like this one, involving negligent entrustment or knowing

violations of applicable laws (*see infra* Part I.B).  But even the general definition of "qualified

civil liability actions" is limited to

> a civil action or proceeding or an administrative proceeding
> brought by any person against a manufacturer or seller of a
> qualified product, or a trade association, for damages, punitive
> damages, injunctive or declaratory relief, abatement, restitution,
> fines, or penalties, or other relief, ***resulting from the criminal or
> unlawful misuse of a qualified product by the person or a third
> party*** . . . .

15 U.S.C. § 7903(5) (emphasis added).  This case is not the kind of qualified civil liability action

for which gun or ammunition dealers can claim immunity because their own misconduct, rather

than the conduct of a third party, gives rise to the claims.  The case arises from Defendants' sales

practices, not the shooting that followed those sales.

The meaning of the key phrase in Section 7903(5) — "resulting from the criminal or

unlawful misuse" of a firearm — is made clear in the first "Purpose" listed in the statute:  "To

prohibit causes of action [against manufacturers and retailers] for the harm ***solely caused*** by the

criminal or unlawful misuse of firearm products . . . by others . . . ." 15 U.S.C. § 7901(b)(1) (emphasis added). The findings reiterate that the PLCAA prevents "[t]he possibility of imposing liability on an entire industry for harm that is **_solely caused by others_**." 15 U.S.C. § 7901(a)(5) (emphasis added). There is nothing in the statute that says that these defendants cannot be held liable for harm caused by their own conduct **_and_** the conduct of the alleged killer.

The purposes specified in 15 U.S.C. § 7901 inform the meaning of the phrase "resulting from the criminal or unlawful misuse" in 15 U.S.C. § 7903(5)(A) and reflect that this phrase means "solely caused by" that criminal misuse. *See Conroy v. Aniskoff*, 507 U.S. 511, 515-16 (1993) ("the cardinal rule that a statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context") (internal citations omitted); *see also St. Luke's Hospital v. Industrial Com. of Colorado*, 349 P.2d 995, 997 (Colo. 1960) ("[w]hen the purpose of an act is expressed in clear and unambiguous terms, this must be accepted as the solemn declaration of the sovereign. The public policy of the state is a matter for the determination of the legislature and not for the courts") (internal citations omitted). The Motions ask the Court to ignore this basic tenet of statutory construction and expand the reach of the statute's immunity provisions.

   **2.**  **The legislative history of the PLCAA confirms the statute does not bar actions such as this one**

The PLCAA's legislative history makes clear that the law does not bar actions like this one. In this respect, the word "solely" was of particular importance. After the PLCAA failed to pass in the 108th Congress, the text of the legislation was changed to add the word "solely"

before "caused" in the Purposes section.  *Compare* 15 U.S.C. § 7901(b)(1) and S. 397 (2005) with S. 1805, 108th Cong. § (b)(1) (2003).[3]  It was this revised bill that was enacted as law.

The "heart of the bill" was that while it "doesn't relieve you of duties that the law imposes upon you to safely manufacture and to ***carefully sell***," Congress was "not going to extend it to a concept where you are responsible, ***after you have done everything right***, for what somebody else may do who bought your product . . . ."  151 Cong. Rec. S. 9226 (July 28, 2005) (statement of co-sponsor Sen. Graham) (emphasis added).  The law was intended to distinguish those dealers who carefully sell their products from those who do not.

Senator Craig, the legislation's author, lead Senate sponsor, and floor leader,[4] made clear that "this legislation will not bar the courthouse doors to victims who have been harmed by the negligence or misdeeds of anyone in the gun industry . . . . *If manufacturers or dealers break the law or commit negligence, they are still liable.*"  151 Cong. Rec. S. 9089 (July 27, 2005) (emphasis added).  Senator Craig further stated that

> What all these nonprohibited lawsuits have in common is that they involve actual misconduct or wrongful actions of some sort by a gun manufacturer, a seller or a trade association. Whether you support or oppose the bill, I think you can all agree that individuals should not be shielded from the legal repercussions of their own lawless acts. The Protection of Lawful Commerce in Arms Act expressly does not provide such a shield.
>
> *       *       *       *
>
> If manufacturers or dealers break the law ***or commit negligence***, they are still liable.

---

[3] The text of S. 1805 (2003) is available at http://thomas.loc.gov/cgi-bin/query/z?c108:S.1805:.

[4] Senator Craig introduced a predecessor of the Act (S. 2270) on March 22, 2000, in the 106th Congress, 146 Cong. Rec. S1598-1601 (2000); introduced another version (S. 2268) in April 2002, in the 107th Congress, 148 Cong. Rec. S3434 (2002); introduced another (S. 659) in March 2003, in the 108th Congress, 149 Cong. Rec. S4507-08 (2003); before introducing S. 397 in February 2005, in the 109th Congress, 151 Cong. Rec. S1529-30 (2005).

*Id.*[5]  Senator Craig's comments were echoed by other co-sponsors of the bill.  *See, e.g.*, *id.* at S. 9077 (remarks of sponsor Sen. Hatch) ("this bill carefully preserves the right of individuals to have their day in court with civil liability actions where negligence is truly an issue");  *id.* at S. 9107 (remarks of  sponsor Sen. Baucus) ("[t]his bill . . . will not shield the industry from its own wrongdoing or from its negligence"); 151 Cong. Rec. S. 9389 (July 29, 2005) (remarks of sponsor Sen. Allen) ("[t]his legislation does carefully preserve the right of individuals to have their day in court with civil liability actions for injury or danger caused by negligence on [*sic*] the firearms dealer or manufacturer").  As Senator Craig summarized, "This is not a gun industry immunity bill. This bill stops only one *extremely narrow* category of lawsuits, lawsuits that attempt to force the gun industry to pay for the crimes of third parties over which they have no control."  151 Cong. Rec. at S. 9087.

In contrast, "[t]he only lawsuits this legislation seeks to prevent are novel causes of action that have no history or grounding in legal principle."   151 Cong. Rec. S. 9089.[6]  Senator Sessions, another sponsor, stated:  "*That* is what we are trying to do here, to pass some

---

[5]  Senate Sponsor Craig's statements were similar when championing S. 1805, the virtually identical bill that failed to pass in the 108th Congress, of which he was also the lead sponsor and floor leader.  *See* 150 Cong. Rec. S. 1862 (Feb. 27, 2004) ("It does not prevent them from being sued for their own misconduct.  Let me repeat that.  It does not prevent them — 'them,' the gun industry — from being sued for their own misconduct.").

[6]  Unlike the actions barred by the PLCAA, here the harms were caused by Defendants' negligence and creation of a public nuisance.  Therefore, the claims are not "based on theories without foundation in hundreds of years of the common law."  15 U.S.C. § 7901(7).  It is well-established that negligent actors may be liable for the foreseeable consequences of their own misconduct, even when those consequences are the criminal acts of third parties.  This principle has long been part of the *Restatement of Torts* and has been applied to gun makers and retailers for many years.  *See, e.g.*, *Restatement (Second) of Torts*, § 449 (1965); *Brown v. Wal-Mart Stores, Inc.*, 976 F. Supp. 729, 736 (W.D. Tenn. 1997); *Pavlides v. Niles Gun Show, Inc.*, 637 N.E.2d 404 (Ohio Ct. App. 1994); *Montgomery Ward & Co. v. Cooper*, 339 S.E.2d 755, 757 (Ga. Ct. App. 1986); *Angell v. F. Avanzini Lumber Co.*, 363 So.2d 571, 572 (Fla. Dist. Ct. App. 1978); *Franco v. Bunyard*, 547 S.W.2d 91, 92- 93 (Ark. 1977); *Semenuik v. Chentis*, 117 N.E.2d 883 (Ill. App. Ct. 1954).

legislation that does nothing more than restore the classical understanding of American civil liability." *Id*. at S. 9094.[7]

The plain language of the statute makes clear that (a) it prohibits novel causes of action not based in the traditions of the common law and (b) the kinds of actions it prohibits are those based solely on a third party's use of a firearm. The legislative history confirms that the PLCAA was not intended to prevent plaintiffs from holding gun dealers accountable for their own misdeeds. The statute must be read in light of the legislative intent. "[N]othing is better settled, than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." *Johnson v. United States*, 529 U.S. 694, 707 (2000) (citing *In re Chapman*, 166 U.S. 661, 667 (1897)). "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). Interpreting the PLCAA to permit gun dealers to avoid liability for their own misconduct would "thwart the obvious purpose of the statute" and the court has authority to avoid such a result. *Id*. at 571 (citing *Commissioner v. Brown*, 380 U.S. 563, 571 (1965)).

The only reading of the PLCAA that properly "would effectuate the legislative intention" is one where the harm "resulting from" criminal misuse refers only to cases where the harm was

---

[7] The sponsors made the same point in arguing for the virtually identical predecessor bill, S. 1805: "Does the bill wipe out century-old tort law principles? The answer is quite simply, no. The bill reinforces the century-old legal tenet of personal responsibility that underlies all of our judicial system. Individuals and businesses are responsible for the harm they cause." 150 Cong. Rec. S. 1532 (Feb. 25, 2004) (statement of Sen. Craig discussing S. 1805); *see also* 150 Cong. Rec. S. 1548 (Feb. 25, 2004) (statement of co-sponsor Sen. Sessions on S. 1805) ("What it says is, classical rules of law ought to be enforced.").

"solely caused" by that misuse and that are not supported by the common law. Cases such as this one, where seller's negligence was a cause of the harm, are preserved.

**B.      Plaintiffs' Claims Fall Under Exclusions to the PLCAA and Are Not Barred**

Even if the PLCAA's general definition of "qualified civil liability action" is read to encompass this case, Plaintiffs' claims are not barred because they fall under exclusions to the immunity conferred by the PLCAA.

**1.      The PLCAA permits actions for negligent entrustment**

An "action brought against a seller for negligent entrustment" is expressly excluded from the immunity provided by the PLCAA. 15 U.S.C. § 7903(5)(A)(ii). In fact, Congress crafted its own definition of "negligent entrustment," which means "supply[ing] a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others." *Id*. at § 7903(5)(B).

This definition is similar to the one recognized by Colorado courts. *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 499 (Colo. App. 2011) ("specific knowledge is not required if the supplier of a chattel had reason to know . . . that the entrustee was likely to use the chattel in a manner involving an unreasonable risk of physical harm") (citing Restatement of Torts (Second) § 390); *see also Casebolt v. Cowan*, 829 P.2d 352, 357 (Colo. 1992) ("electing to utilize sections 308 and 390 of the Restatement [of Torts] to guide us in our analysis"); *Payberg v. Harris*, 931 P.2d 544, 545 (Colo. App. 1996) (using Restatement of Torts Section 308 to evaluate negligent entrustment claim). Here, Plaintiffs have alleged facts that state exactly such

a negligent entrustment claim; this claim is plausible on its face and must survive the Motions. *See also infra* Part II (addressing sufficiency of the claim).

### 2. The PLCAA excludes actions where defendants have violated state or federal law

An action brought against a seller for public nuisance is excluded from the PLCAA's immunity provisions where the complaint alleges that the seller "violated a State or Federal statute applicable to the sale or marketing of the product." 15 U.S.C. § 7903(5)(A)(iii). If a manufacturer or seller knowingly violates an applicable law, it receives no protection from PLCAA. *See, e.g., City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1241 (Ind. 2003); *see also Norberg v. Badger Guns, Inc.*, Case No. 10CV020655, Order Denying Mot. Dismiss (Wisc. Cir. Ct. Aug. 9, 2011*)* (denying motions to dismiss negligence and other claims where defendant alleged to knowingly violate applicable law).

Plaintiffs have alleged multiple violations of federal and state laws. First, Defendants sold ammunition to the accused killer in violation of federal law: 18 U.S.C. § 922(d)(3) provides that "[i]t shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person — is an unlawful user of or addicted to any controlled substance." The accused killer was an unlawful user of controlled substances at the time of the purchase, and the Amended Complaint alleges that the sale of ammunition to him was illegal. *See, e.g.*, Am. Compl. ¶¶ 33-36, 186-188, 221. Defendants cite cases from other jurisdictions dealing with traditional in-person sales for the general proposition that the determination of "reasonable cause to believe" is based on the

seller's knowledge at the time of the sale.[8]  But such an inquiry is by its nature fact-specific.

Plaintiffs' claims must survive dismissal and Plaintiffs should be permitted to proceed to

discovery precisely to address issues such as Defendants' knowledge of its purchasers at the time

of online sales.

Second, Defendants violated state and municipal nuisance laws.  Under Colorado

common law, a public nuisance is "[t]he doing of or failure to do something that injuriously

affects the safety, health or morals of the public, or works some substantial annoyance,

inconvenience, or injury to the public."  *Docheff v. City of Broomfield*, 623 P.2d 69, 71 (Colo.

App. 1980) (quoting *Echave v. City of Grand Junction*, 193 P.2d 277, 280 (Colo. 1948)).  The

City of Aurora Municipal Code has adapted this definition:  "A public nuisance, as defined in

section 62-26, or any other violation of this Code which adversely affects the health, safety, or

welfare of the residents of the city is prohibited within the city and is a crime punishable by the

general penalty provisions of section 1-13 of this Code."  Aur. Mun. Code § 62-27.  In addition,

under the Aurora Municipal Code (the "Code") a public nuisance encompasses any of an

enumerated list of "proscribed acts."  Aur. Mun. Code § 62-26.

Plaintiffs have alleged that Defendants engaged both in conduct that constituted a

proscribed act under the code, as well in violations of the Code that "adversely affects the health,

safety, or welfare of the residents of the city."  One such proscribed act is disturbing the peace.

Aur. Mun. Code § 62-26(8).  Disturbing the peace, in turn, includes contributing to conduct

where a "person knowingly or recklessly. . . not being a peace officer, displays a deadly

weapon. . . in a public place in a manner calculated to alarm."  Aur. Mun. Code § 94-110.

---

[8] *See* LuckyGunner Motion to Dismiss at 11-12; The Sportsman's Guide Motion to Dismiss at 14-15.

Defendants also contributed to other conduct that comprises violations of the Code that "adversely affects . . . health, safety, or welfare." *See* Aur. Mun. Code § 94-154 ("The carrying of firearms in or upon public facilities is unlawful when said facilities are posted with notification that the carrying of firearms is prohibited."); Aur. Mun. Code § 94-146 ("It shall be unlawful for any person to fire, shoot, or discharge any firearm . . . or any weapon whatsoever within the city limits."); Aur. Mun. Code § 94-151 ("It is unlawful for any person. . . to possess or have under that person's control any firearm, other than a pistol or revolver, in or on any motor vehicle unless the chamber of such firearm is unloaded."). The PLCAA requires that the action alleges participation in such conduct, and that the governing law is "applicable" to the sale or marketing of the product. 15 U.S.C. § 7903(5)(A)(iii). Here the relevant laws all are applicable to the sale and marketing of firearms and ammunition, and the Amended Complaint alleges that Defendants' conduct directly contributed to violations of these laws.

The relevant nuisance laws in this case are distinguishable from the more general nuisance laws that the courts analyzed in the cases cited by Defendants. The nuisance laws reviewed in *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) and *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d. Cir. 2008) were held not to contain provisions "applicable" to firearms under the specific facts of those cases. In contrast, the public nuisance laws in this case specifically address effect of firearms on the health, safety, and welfare of the public.

Other courts have concluded that the PLCAA permits public nuisance claims to proceed. For example, the City of Gary, Indiana brought suit against gun manufacturers and sellers for, *inter alia*, public nuisance. In an initial round of appeals that were brought prior to the enactment of the PLCAA, the Indiana Supreme Court held that public nuisance laws applied to

gun sellers and manufacturers. *City of Gary ex rel. King*, 801 N.E.2d at 1241. In a subsequent appeal after passage of the PLCAA, the Indiana Court of Appeals held that public nuisance claims fell within the PLCAA's predicate exception, and the Supreme Court of Indiana denied review of that decision, letting it stand. *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. Ct. App. 2007), *review denied*, 915 N.E.2d 978 (Ind. 2009). The court held that the plain meaning of "applicable" in 15 U.S.C. § 7903(5)(A)(iii) is "capable of being applied." *Id*. at 434-44. The court also concluded that the public nuisance claim "is not an attempt to expand the common law and that it is not an attempt to circumvent the legislative branch of government." *Id*. at 444. Thus, the court held that the PLCAA did not bar the public nuisance claim and that the trial court had properly denied the gun seller's motion to dismiss. *Id*.

C. **The Colorado Statute Does Not Provide Gun Retailers Immunity from their Own Misconduct**

C.R.S. § 13-21-504.5 also does not bar this case. Defendants suggest that Colorado law provides greater immunity to negligent sellers of firearms and ammunition than other state or federal law. Defendants are incorrect. C.R.S. § 13-21-504.5 prohibits claims that are based on the discharge of a firearm and that would hold a dealer liable for another party's conduct. It does not bar claims that would hold a dealer accountable for its own negligent conduct or which result from the violation of law. As with the PLCAA, it shields otherwise blameless sellers of firearms and ammunition from lawsuits that allege liability based exclusively on the wrongful acts of others.[9]

---

[9] No reported cases have interpreted the Colorado statute. Only *Hilberg v. F.W. Woolworth Co.*, 761 P. 2d 236 (Colo. App. 1988), discussed *infra* Part II.A, references the statute in the context of claims against a gun seller.

The Colorado statute bars actions "for any remedy arising from physical or emotional injury, physical damage, or death caused by the discharge of a firearm or ammunition." C.R.S. § 13-21-504.5(1). Similar to the PLCAA's bar on holding gun companies liable for harm solely caused by the criminal actions of others, the Colorado statute prohibits an ammunition dealer from being "held liable as a third party for the actions of another person." *Id.* § 13-21-504.5(2). Thus, in and of itself, "placement of a firearm or ammunition in the stream of commerce, even if such placement is found to be foreseeable, shall not be conduct deemed sufficient to constitute the proximate cause of injury, damage, or death resulting from a third party's use of the product." C.R.S. § 13-21-504(2).

The Colorado statute responded to concern that certain actions would hold gun manufacturers liable for gun violence merely because they placed weapons into the stream of commerce. The circumstances of this action are different. The claims are against retailers for harm caused by their negligent sales; the claims do not arise solely from the fact of the discharge of the firearms, or from the fact that Defendants placed the products into the stream of commerce. The claims seek to correct Defendants' negligent business practice of selling ammunition, body armor, and tear gas online without any human interaction and without any safety checks on the transaction, even when the transaction should be subject to some level of scrutiny.[10]

---

[10] On separate grounds, it would be unjust to permit Defendants to seek shelter under Colorado's immunity statute. Discovery has not commenced in this case, but a search of the Colorado Secretary of State website indicates that Defendants are not registered Colorado corporations that are regulated by the state or that pay taxes in the State of Colorado. Defendants conduct business in Colorado and seek to shield themselves with the benefits of Colorado law, but do not otherwise participate as citizens of the state. Plaintiffs should be able to seek discovery on Defendants' sales practices and explore whether they have been conducting sales in the State of Colorado in compliance with applicable laws and regulations.

No court has ever held that either the PLCAA or any state law provides the breadth of immunity claimed by Defendants.[11]

### D. The Colorado Statute Does not Apply to the Claims in This Case Because It Is Preempted by the PLCAA

Even if the Colorado statute applied to the claims made in this case, it cannot shield Defendants. Through the PLCAA, Congress displaced state immunity laws like the Colorado statute and enacted a comprehensive federal scheme that governs the area of gun and ammunition dealer immunity.

### 1. Basic preemption principles apply to this action

The Supremacy Clause of the U.S. Constitution states that the laws of the United States "shall be the supreme Law of the Land . . . anything in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. For nearly two centuries, it has been settled that where state law conflicts with federal law, the state law is "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981).

The Supreme Court has recognized three types of federal preemption of state law claims: (1) where express language in a statute forecloses state action; (2) where congressional action occupies the legislative field; and (3) by implication because of a conflict with a congressional enactment. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001); *see also Cipollone v. Liggett Grp, Inc*., 505 U.S. 504, 514-29 (1992) (explaining express preemption); *Geier v. Am. Honda Motor Co*., 529 U.S. 861, 884 (2000) (explaining implied conflict preemption).

---

[11] An Indiana court recently rejected arguments similar to those made by Defendants, denying a motion to dismiss the claims against a gun dealer that contended an Indiana law provided broad immunity to firearms companies. *See Runnels v. KS&E Sports*, Case No. 49D11-1312 CT 044030 (Sup. Ct. Ind. 2014).

Under the doctrine of implied preemption, state law claims may be preempted "by implication because of a conflict" with federal law. *Reilly,* 533 U.S. at 541. Any conflict between state and federal law, regardless of its nature or degree, can invalidate state law. *Geier,* 529 U.S. at 873. State law claims or regulations are barred on implied preemption grounds where (1) they actually conflict with federal law; (2) they would stand as an obstacle to accomplishment of the full purposes and objectives of Congress or a federal agency under a federal regulatory program; or (3) it would be impossible for a party to comply with both state and federal requirements. *See Geier,* 529 U.S. at 869, 875. The intent to displace state law can be inferred from a framework of regulation "so pervasive that Congress left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012) (internal quotations omitted).

The Colorado statute conflicts with the PLCAA, and the PLCAA completely occupies the legislative field of immunity for gun and ammunition dealers.[12] The PLCAA applies to all "qualified civil liability action[s] . . . brought in any Federal or State Court." 15 U.S.C. § 7902(a). A qualified civil liability action is one "brought against a manufacturer or seller of a qualified product . . . for damages, . . . injunctive or declaratory relief, abatement, . . . or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." 15 U.S.C. § 7903(5)(A). The PLCAA excludes from the definition of a qualified civil liability action six kinds of actions, including actions for negligent entrustment, violation of

---

[12] The PLCAA was enacted in 2005, five years after Colorado enacted C.R.S. § 13-21-504.5. It is probative that since the passage of the PLCAA, no court has applied the Colorado statute.

a State or Federal statute, and product liability claims. *Id.* §§ 7903(5)(A)(i) - (vi). The PLCAA thus implements a regulatory scheme that specifies the bounds of gun and ammunition dealer immunity by permitting actions based on traditional causes of action while prohibiting actions that are "based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States." 15 U.S.C. § 7901(7).

The plain language of the PLCAA therefore sets both a floor and ceiling with respect to the scope of protection that can be afforded to gun and ammunition dealers and, under the Supremacy Clause, a state cannot go beyond those defined limits.[13] The PLCAA is a statutory scheme through which "Congress intended to preclude States from complementing the federal law, or enforcing additional or auxiliary regulations." *Arizona*, 132 S. Ct. at 2503 (internal quotations and citations omitted) (in relevant part holding that Arizona statute relating to unlawful aliens was preempted by Federal immigration laws). In fact, one of the objectives of Congress in enacting the PLCAA explicitly was to "preempt[] State law [and] to provide a uniform standard for such suits." 151 Cong. Rec. S. 8929 (July 26, 2005) (Statement of Sen. Hatch).

State laws may not impose greater restrictions than those imposed by a federal law that occupies the entire field of regulation. For example, in *23-34 94th St. Grocery Corp. v. New York City Bd. of Health*, 685 F.3d 174, 185-86 (2d Cir. 2012), the court held a City of New York resolution that required retailers to display graphic warnings about the health effects of smoking

---

[13] When federal law completely preempts the legislative field, it displaces state authority and establishes both "a floor and a ceiling." William W. Buzbee, *Asymmetrical Regulation: Risk, Preemption, and the Floor/Ceiling Distinction*, 82 N.Y.U. L. REV. 1547 (2007); *see also, e.g,* Robert L. Glicksman & Richard E. Levy, *A Collective Action Perspective on Ceiling Preemption by Federal Environmental Regulation: The Case of Global Climate Change*, 102 Northwestern U. L. Rev. 579, 583 (2008).

were preempted by the Federal Cigarette Labeling and Advertising Act ("FCLAA"). The federal

statute specified requirements and restrictions for promotion of cigarettes; by imposing

additional requirements, the City's resolution impermissibly imposed requirements that sought to

supplement the provisions of the FCLAA. *Id.* at 184. The court held that Congress manifested

its intent to preempt state laws through the overall statutory scheme of the FCLAA, as

"[a]llowing state or local authorities to mandate supplementary warnings on or near cigarette

displays risks the creation of diverse, nonuniform, and confusing regulations." *Id.* at 185. *See

also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 323 (2008) (holding that plaintiff's tort claims were

preempted by the Food, Drug, and Cosmetic Act because they would impose requirements

"different from, or in addition to, federal requirements").

State laws also are preempted where it is impossible to comply with both federal and

state laws and where the state law "stands as an obstacle to the accomplishment and execution of

the full purposes and objectives of Congress." *Arizona*, 132 S. Ct. at 2501 (citing *Hines v.

Davidowitz*, 312 U.S. 52, 67 (1941)). Here, such a conflict exists between the PLCAA and the

Colorado statute. The PLCAA defines the qualified civil liability actions against which gun and

ammunition dealers are immunized; the PLCAA excludes from that definition certain causes of

action. *See* 15 U.S.C. § 7903(5)(A)(iii) (expressly excluding, in relevant part, violations of state

and federal statutes, actions for negligent entrustment, and actions for negligence per se). The

Colorado statute, in contrast, excludes only one of the causes of action excluded by the PLCAA,

impermissibly narrowing the provisions of the PLCAA. *See* C.R.S. § 13-21-504.5(4) (excluding

an action based on violation of state or federal statute or regulation). The Colorado statute thus

conflicts with the PLCAA's comprehensive federal statutory regime for the regulation of liability

claims against gun and ammunition dealers. The framework that Congress has created does not permit the States to adopt their own civil liability programs in this area, and therefore the Colorado statute is preempted.

### E.    The PLCAA and the Colorado Statute Are Unconstitutional

Even if the PLCAA and the Colorado statute are found to apply here, they should not bar Plaintiffs' claims because both statutes are unconstitutional.

#### 1.    The court should construe laws narrowly to avoid constitutional issues

The doctrine of constitutional avoidance instructs that Defendants' broad reading of PLCAA and the Colorado statute should be rejected,[14] for "when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail — whether or not those constitutional problems pertain to the particular litigant before the Court." *Clark v. Martinez,* 543 U.S. 371, 381, 385 (2005). As Defendants' constructions "would raise a multitude of constitutional problems," Plaintiffs' constructions "should prevail" because they are "plausible." *Id.* In the alternative, the Court should hold that the PLCAA and the Colorado statute are unconstitutional.

#### 2.    The PLCAA impermissibly infringes on Colorado's sovereign right to allocate its lawmaking function

As construed by Defendants, the PLCAA impermissibly infringes on state sovereignty by

---

[14] This discussion of constitutional issues assumes, *arguendo*, that the Court accepts Defendants' reading of the Acts as providing Defendants with immunity from common law claims. A trial court in Gary, Indiana found the PLCAA unconstitutional, *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222 (Ind. 2003). Several courts have found that PLCAA is constitutional. *See, e.g., Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009); *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 351 (E.D.N.Y. 2007); *Kim v. Coxe*, 295 P.3d 380 (Alaska 2013).

dictating how Colorado must conduct its lawmaking function with respect to gun dealer liability. Defendants contend that Congress prohibited Colorado courts from applying common law negligence standards established by the judiciary, while allowing liability to be imposed in identical circumstances (under subsection iii) where there is a knowing violation of standards established by the legislature. This does not preempt liability; rather, Congress has dictated the branch of state government that must determine liability standards for gun dealers.

Such federal tinkering with state governance is not permitted under our federalist system. "It is an essential attribute of the States' retained sovereignty that they remain independent and autonomous within their proper sphere of authority." *Printz v. United States*, 521 U.S. 898, 928 (1997). "[T]he Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions." *New York v. United States*, 505 U.S. 144, 162 (1992) (*citing Coyle v. Smith*, 221 U.S. 559, 565 (1911)). "It would make the deepest inroads upon our federal system for this Court now to hold that it can determine the appropriate distribution of powers and their delegation within the forty-eight states." *Sweezey v. State of New Hampshire*, 354 U.S. 234, 256 (1957) (Frankfurter, J., concurring).

While Congress may pre-empt state law and require states to apply federal law, the PLCAA violates the principle that "the States are free to allocate the lawmaking function to whatever branch of state government they may choose." *Minnesota v. Clover Leaf Creamery Company*, 449 U.S. 456, 463 n.6 (1981) (citations omitted).

### 3. The PLCAA impermissibly requires state courts to dismiss valid cases based on congress's finding that they are unsupported by state law

The PLCAA's dictate requiring courts to dismiss actions that Congress deems unsupported by state law "passe[s] the limit which separates the legislative from the judicial

power." *United States v. Klein*, 80 U.S. 128, 146-47 (1871); *see also ex rel. Schindler v. Schiavo*, 404 F.3d 1270, 1275 (11th Cir. 2005) (en banc) (Birch, J., specially concurring) (legislation was unconstitutional because, "the Act purports to direct a federal court in an area traditionally left to the federal court to decide"). In the PLCAA, Congress has made the judicial "finding" that "qualified" gun liability actions are "without foundation in hundreds of years of the common law and jurisprudence of the United States." 15 U.S.C. § 7901(a)(7). Putting aside the fact that this finding is incorrect, it runs afoul of the "deeply rooted" principle "that it is the province and duty of the judicial department to say what the law is." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995) (*citing Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). The PLCAA requires a "construction of the law according to [Congress's] own views" and "direct[s] what particular steps shall be taken in the progress of judicial review," which the Supreme Court has recognized is impermissible. *Id.* at 225 (internal citation omitted).

Further, "even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts." *New York*, 505 U.S. at 166 (citations omitted). Congress may enact generally applicable laws, but it may not direct the action of state governments or state officials.

The PLCAA violates these principles. No other preemption statute of which Plaintiffs are aware directs state courts to dismiss state law claims based on a Congressional pre-determination that they are unsupported by state common law, or interferes with the allocation of state lawmaking functions as the PLCAA purports to. As commentators have noted, PLCAA's dismissal command "cannot be reconciled with Congress's legitimate authority to define

substantive laws enforceable by state courts under the Supremacy Clause."[15]

### 4.    The PLCAA and the Colorado statute deprive plaintiffs of their right to seek redress in the courts

Both statutes violate Plaintiffs' right to seek redress in the courts as guaranteed by the

U.S. and Colorado Constitutions.

The First Amendment's petition clause protects the fundamental right to seek redress

through the courts. *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 513

(1972).[16] Because the statutes infringe on this right, they must withstand strict scrutiny. But no

compelling federal interest warrants shielding from liability gun dealers who fail to sell their

products in a reasonable fashion. The PLCAA could not even withstand the rational basis test, as

it shields from liability negligent gun sellers whom the legislation's sponsors stated should not be

shielded, while allowing unlimited liability against gun dealers in negligent entrustment actions.

A prohibition on actions that Congress wanted to preserve, while preserving actions Congress

wanted to prohibit, is so over-inclusive and under-inclusive as to lack basic rationality. *See, e.g.*,

*Burlington Northern Railway Co. v. Ford,* 504 U.S. 648, 653 (1992).

Under Defendants' interpretation, Congress and the Colorado legislature have taken the

unprecedented step of wholly eliminating the common law rights of a class of victims injured by

---

[15] *See also,* Patricia Foster, *Good Guns (and Good Business Practices) Provide All the Protection They Need: Why Legislation to Immunize the Gun Industry From Civil Liability is Unconstitutional*, 72 U. CIN. L. REV. 1739, 1765 (2004). *See also* Wendy E. Parmet, *Stealth Preemption: The Proposed Federalization of State Court Procedures*, 44 VILL L. REV. 1, 41 (1999) ("Taken together, *New York* and *Printz* can be read to suggest that the federalization of state court procedures applicable to the adjudication of state law issues is problematic."); Martin H. Redish, et al., *Federal Power to Commandeer State Courts: Implications for the Theory of Judicial Federalism*, 32 IND. L. REV. 71, 108 (1998) (suggesting Tenth Amendment concerns with laws whereby "Congress would in effect direct state courts to employ specific procedures in enforcing their own substantive tort law in their own courts").

[16] *See also Chambers v. Baltimore & Ohio R.R. Co.,* 207 U.S. 142 (1907); *United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n,* 389 U.S. 217 (1967); *Bill Johnson's Restaurants v. NLRB,* 461 U.S. 731 (1983).

particular tortfeasors, without providing an alternate remedy. The Court has never approved, and neither legislative body has ever enacted, such a complete deprivation of remedies.[17] This overly broad and irrational shield violates the U.S. Constitution. *See Marbury v. Madison,* 5 U.S. (1 Cranch) at 163 (*quoting* Sir William Blackstone, Commentaries 23 (1869)) ("where there is a legal right, there is also a legal remedy by suit or action at law"); *Poindexter v. Greenhow*, 114 U.S. 270 (1885) ("No one would contend that a law of a state, forbidding all redress by actions at law for injuries to property, would be upheld in the courts . . . , for that would be to deprive one of his property without due process of law.").

The Colorado statute also violates the Colorado Constitution's guarantee of judicial review. Because Colorado so highly values the ability to access the justice system, it "is one of thirty-seven states which diverged from the federal constitutional model by creating an express right of access to courts independent of constitutional due process guarantees." *State Farm Mut. Auto. Ins. Co. v. Broadnax*, 827 P.2d 531, 535 (Colo. 1992). The Colorado Constitution states that "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay." Colo. Const. art. II § 6. If the legislature can simply wipe out civil remedies for victims of gun company negligence, as Defendants contend is done through this law, then it is hard to see what rights are protected by art. II § 6. Colorado courts could be ordered to throw

---

[17] Other federal statutes provide for some means of compensation. *See, e.g*., 42 U.S.C. §§ 300aa-1-34 (providing no-fault compensation plan); Pub.L. No. 107-42, 115 Stat. 230 (creating compensation fund and allowing alternative of tort suit). *See also* 15 U.S.C. §§ 6601-17 (capping damages and limiting venue to federal court); 42 U.S.C. § 2210(c), (n) (setting maximum liability in exchange for companies agreeing to waive legal defenses); 49 U.S.C. § 28103 (limiting punitive damages while requiring liability insurance).

out of court all negligence claims against companies or industries that have especially strong political clout. That would neuter Colorado's open courts provision.

Any legislation restricting causes of action can only be upheld if it is "rationally founded on differences that are real and not illusory and that such classification be reasonably related to a legitimate state interest." *Tassian v. People*, 731 P. 2d 672, 675 (Colo. 1987). C.R.S. § 13-21-504.5 does not satisfy these requirements. First, the statute makes distinctions that are "attenuated and illusory [so] as to render the classification . . . arbitrary and irrational." *Id.* at 676. The statute bars claims related to the "discharge of a firearm or ammunition." § 13-21-504.5(1). But it would permit, for example, actions related to armed robbery or an assault where the victim was pistol whipped with a gun. There is no rational basis to deny victims of negligence a remedy based solely on the type of injury they suffer. Second, barring suits arising from the discharge of a firearm or ammunition does nothing to protect public safety. *See Estate of Stevenson v. Hollywood Bar & Café, Inc.*, 832 P. 2d 718, 723 (1992) (recognizing that liquor license law is reasonable, the court stated, "[w]e have recently recognized the validity of the General Assembly's interest in preventing injuries from negligence arising in the context of the provision, sale and consumption of alcoholic beverages."). C.R.S. § 13-21-504.5 does not protect public safety. In fact, it inhibits public safety by removing incentives for dealers to act responsibly.

      **5.**     **The PLCAA and the Colorado statute violate the Due Process and the Equal Protection guarantees of the Fifth Amendment**

The statutes violate the U.S. Constitution's Due Process guarantee. "The United States Supreme Court has consistently held that due process requires some form of hearing — the opportunity to be heard at a meaningful time, and in a meaningful manner." *State Farm*, 827 P.

2d at 536.  A meaningful hearing includes an opportunity to present evidence.  *See id.* at 537

(holding that a statute requiring alternative dispute resolution did not violate due process because

"[u]nder the statutory scheme, State Farm clearly has the right to a hearing in which State Farm

can present all the evidence, and raise all the defenses available to it." ).  Neither statute provides

Plaintiffs with a meaningful opportunity to be heard.  Mandatory dismissal means that, unlike in

*State Farm*, plaintiffs are not even allowed to obtain discovery and gather evidence, let alone

present argument in court.

The statutes also violate the central tenet of equal protection that "all persons similarly

situated should be treated alike."  *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439

(1985); *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (classifications burdening exercise of

fundamental rights receive "the most exacting scrutiny").  With the PLCAA, Congress has

deprived certain victims of gun industry wrongdoing of any right to a remedy, while others may

recover on identical facts, so long as the tortfeasor is not a licensed gun seller or the victim was

shot in a state with statutes applicable to the sale or marketing of firearms.  While *states* may

choose to have different liability standards than other states, the *federal government* has no

legitimate interest in discriminating between victims based on the branch of state government

employed to establish those standards.  Similarly, with C.R.S. § 13-21-504.5, the Colorado

General Assembly has denied certain victims the ability to pursue their claims, while permitting

others to maintain actions where a specific statute was violated.

## II.    PLAINTIFFS HAVE ADEQUATELY STATED EACH CAUSE OF ACTION

Defendants contend that Plaintiffs have not adequately stated causes of action in the Amended Complaint.[18]  To the contrary, Plaintiffs have adequately pleaded their causes of action and should be permitted to obtain discovery to develop the claims.[19]

### A.    Plaintiffs Have Adequately Pleaded the Negligent Entrustment Claim

"Negligent entrustment" means "supply[ing] a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others."  15 U.S.C. § 7903(5)(B).  Colorado case law relies on Restatement of Torts (Second) §§ 308 and 390 in evaluating negligent entrustment claims.  *See, e.g., Casebolt v. Cowan*, 829 P.2d 352, 358 (Colo. 1992) ("electing to utilize sections 308 and 390 of the Restatement to guide us in our analysis"); *Payberg v. Harris*, 931 P.2d 544, 544 (Colo. App. 1996) (using § 308 to analyze negligent entrustment claim against parents who had stored and then delivered rifle to their son).  "[S]pecific knowledge is not required if the supplier of a chattel had reason to know . . . that the entrustee was likely to use the chattel in a manner involving an unreasonable risk of physical harm."  *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 499 (Colo. App. 2011) (citing Restatement of Torts (Second) § 390).

Defendants do not dispute that they supplied ammunition and tear gas through sales on their web sites or that they continue to sell these materials.[20]  Instead, Defendants argue that they

---

[18] *See* LuckyGunner Motion to Dismiss at 18-24; The Sportsman's Guide Motion to Dismiss at 14-16; Platt's Motion to Dismiss at 8-16.

[19] Federal courts adjudicating diversity jurisdiction claims should apply substantive state law and federal procedural law.  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 (1938); *see also Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998).

were under no obligation to monitor their sales or take affirmative steps to acquire information about the purchaser of products from their web sites.[21]  Defendants seek to remain willfully blind regarding the risks posed by their sales, even when their existing sales data may alert them to dangerous purchasers.

The cases Defendants cite are inapposite.  Prior cases have not examined circumstances analogous to the facts of this case, where a retailer sells hazardous items exclusively online, without the kind of human interaction that naturally is involved in a traditional retail transaction. The sales technology here is different than traditional transactions for ammunition or other dangerous materials and presents novel questions about when the purchase of thousands of rounds of ammunition, 100-round ammunition drums, body armor, or tear gas should be subject to reasonable safety checks or when such a purchase should raise red flags for the seller.

The negligent entrustment claims are not subject to dismissal because it is a question of fact whether Defendants should have known or exercised reasonable care to determine that another person was likely to and in fact did use the dangerous materiel in a manner involving unreasonable risk of injury to others.  Plaintiffs have alleged that Defendants should have known that the accused killer posed a risk with guns, thousands of rounds of ammunition, a 100-round drum, body armor, and tear gas, as would have been evident in a traditional sales transaction involving human interaction.  *See, e.g.*, Am. Compl. ¶ 27 (alleging the owner of the Lead Valley

---

Footnote continued from previous page

[20] *See* LuckyGunner Motion to Dismiss at 21-24; The Sportsman's Guide Motion to Dismiss at 9; Platt's Motion to Dismiss at 5.  Defendant Platt challenges the sufficiency of the allegations relating to whether the tear gas caused injury, but Plaintiffs have pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.

[21] *See* LuckyGunner Motion to Dismiss at 23-24; The Sportsman's Guide Motion to Dismiss at 14-16; Platt's Motion to Dismiss at 9.

Range realized, based on minimal interaction with the accused killer, that the accused killer's unusual behavior required extra attention for his application to join the private gun range). Plaintiffs should be permitted to propound discovery on this issue. Discovery will show whether the quantity and nature of items that the accused killer purchased or other information gathered during the transaction should have raised red flags for Defendants when compared to other transactions through their websites, or whether if Defendants had instituted reasonable business practices they would have known of the foreseeable danger posed by supplying the accused killer with this materiel.

The circumstances of this case are distinguishable from those in *Hilberg v. F.W. Woolworth Co.*, 761 P. 2d 236 (Colo. App. 1988), and require the evolution of the principle articulated in that case. In *Hilberg* the transaction was conducted in person at a traditional retail location and, through in-store interaction, the purchaser revealed no indication of his "supervision habits, shortcomings, or qualities as a parent." *Id.* at 238. The court held that "the supplier of the instrumentality entrusted must have actual knowledge either of the user's propensity to misuse the instrumentality or *of facts from which such knowledge could be reasonably inferred.*" *Id.* (emphasis added). *Hilberg* does not shield businesses that intentionally insulate themselves from discovering information that is easily discoverable, or from making reasonable assessments based on information they have. Here, Defendants established sales practices to prevent any in-person or telephonic interaction and chose not request any information by which they could make a reasoned determination about the dangerousness of the transaction, even though it is highly foreseeable that the materiel they sold would be used to cause harm. The retailer's ability to "reasonably infer" the risks posed by the

purchaser must be determined based on the facts specific to an online transaction and the reasonable care that must be exercised in such a transaction.

A violation of a statute also may support a negligent entrustment claim. *See Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 499 (Colo. App. 2011) ("violation of a statute may be relevant to a claim based on the theory of negligent entrustment"). Federal law recognizes that criminals and drug addicts are reasonably likely to use guns in an unreasonably dangerous manner; for that reason, drug users are prohibited from purchasing guns. 18 U.S.C. § 922(g); *Huddleston v. United States*, 415 U.S. 814, 825 (1974). Plaintiffs have alleged that the accused killer was a drug user at the time of the transactions and that Defendants knew or had reason to know that the accused killer was prohibited from possessing or receiving ammunition and that its sale of ammunition to him was illegal. *See, e.g.*, Am. Compl. ¶¶ 33-36, 186-188, 221.

Plaintiffs have adequately stated a claim for negligent entrustment and are entitled to discovery regarding whether the circumstances of the underlying transaction were sufficient to make Defendants aware or infer that the accused killer had a propensity to misuse the purchased items.

**B.      Plaintiffs Have Adequately Stated a Public Nuisance Claim**

A public nuisance is "[t]he doing of or failure to do something that injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public." *Docheff*, 623 P.2d at 71. The Aurora Code likewise defines a public nuisance as an act "which adversely affects the health, safety, or welfare of the residents of the city." Aur. Mun. Code § 62-27.

As discussed above, *supra* Part I, Plaintiffs have alleged that Defendants engaged in conduct that "adversely affects the health, safety, or welfare of the residents of the city." While no Colorado courts have addressed this issue, courts in multiple jurisdictions have upheld the application of public nuisance laws against gun manufacturers and sellers for their own conduct. *See, e.g., White v, Smith & Wesson,* 97 F. Supp, 2d 816, 829 (N.D. Ohio 2000) (denying motion to dismiss a public nuisance claim); *City of Gary ex rel. King,* 801 N.E.2d at 1232 (holding that public nuisance claim was adequately alleged against gun manufacturers, distributors, and dealers); *City of Boston v. Smith & Wesson Corp.,* No. 199902590, 2000 WL 1473568, at *14 (Mass. Super. Ct. July 13, 2000) (finding a sufficiently pled public nuisance claim against gun manufacturers, distributors, and sellers); *James v. Arms Tech,, Inc.,* 820 A.2d 27, 50-53 (N.J. Super. Ct. App. Div. 2003) (refusing to dismiss public nuisance claim brought against gun manufacturers, distributors, and dealers); *City of Cincinnati v. Beretta U.S.A. Corp.,* 768 N.E.2d 1136, 1144-45 (Ohio 2002) (plaintiff stated a public nuisance claim against gun manufacturers and distributor); *Johnson v. Bulls Eye Shooter Supply,* No. 03-2-03932-8, 2003 WL 21639244, at *4 (Wa. Super. Ct. June 27, 2003) (denying motion to dismiss because gun dealer may be liable for negligence and public nuisance to victims shot by gun negligently sold by dealer).

## C.     Plaintiffs Have Adequately Pleaded the Negligence Claim

Defendants contend that the negligence claim is subject to dismissal because Defendants owe no duty of care when making anonymous online sales of their products and that they cannot be the proximate cause of any harm here.[22]  Defendants are mistaken.

---

[22] *See* LuckyGunner Motion to Dismiss at 18-21; Brian Platt's Motion to Dismiss at 10-13.

Colorado courts have not addressed the duty owed by an online seller of dangerous materials or the issue of proximate cause in the context of negligence claims against such online sellers. They have, however, identified the factors that courts should weigh when evaluating whether a duty exists, all of which weigh in Plaintiffs' favor.

First, "the risk involved" is extraordinarily high and includes the misuse of the product by an unstable, mentally ill individual who was under the influence of illegal drugs. *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002). Such an individual poses an extreme risk to the health and safety of the public. Second, it was foreseeable that ammunition sold to such an individual would be used in a manner that would be harmful to other people. *Id.*; *see, e.g.*, Am. Compl. ¶¶ 2-3, 6, 176-190; *see also Build It & They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 306 (Colo. 2011) (internal quotation and citation omitted) ("[f]oreseeability is the touchstone of proximate cause, acting as a guidepost to delineate the extent to which a defendant may be held legally responsible for a plaintiff's injury"). Third, the "magnitude of the burden guarding against injury" is slight. Web-based technology makes it easy for Defendants to implement additional safeguards when selling their products. *HealthONE*, 50 P.3d at 888. Fourth, "the consequences of placing this burden" upon Defendants are minimal. Safeguards may be implemented through the same technology through which Defendants already conduct their sales and would not deter legitimate purchasers from conducting their business with Defendants. *Id.*

"[N]o single factor controls, [and] the question of whether a duty should be imposed in a particular case is essentially one of ***fairness under contemporary standards*** — whether reasonable persons would recognize a duty and agree that it exists." *Id.* (internal quotation and

citation omitted) (emphasis added).  Fairness under contemporary standards requires recognizing that an online seller of products that pose a foreseeable risk of injury to others when misused has a duty to use reasonable care when selling these products and to monitor for indications of potential misuse.  *Strauch*, 253 P.3d at 306 ("so long as it is foreseeable that an injury will occur, a defendant may be liable for the plaintiff's injuries even when the injury is directly produced by the intentionally tortious or criminal act of a third party").  In the absence of such a duty, retailers can use online sales as a way to circumvent their obligation to use reasonable care, by intentionally insulating themselves from relevant information.  The nature of the transaction here — one that takes place purely online and lacks human interaction — is fundamentally different from traditional retail sales and facilitates a dangerous purchaser's ability to acquire ammunition; recognizing a duty to use reasonable care in the sale of these products comports with contemporary standards of fairness in light of this new technology.

Recognizing a duty here conforms with Colorado cases.  For example, in *HealthONE v. Rodriguez ex rel. Rodriguez,* a patient brought a negligence action against an anesthesiologist with whom he did not have a doctor-patient relationship; the patient was mistakenly injected with a medication that the anesthesiologist had left on a medical cart.  50 P.3d at 888.  The Colorado Supreme Court acknowledged that the anesthesiologist did not owe the patient a traditional common law duty because he was not the patient's physician.  *Id*.  Nonetheless, the Court held that "a duty of reasonable care may arise, despite the absence of a physician-patient relationship, when there is a foreseeable risk of injury to a plaintiff from a defendant's failure to take protective action to prevent injury."  *Id*.  The Court used the factors discussed above to determine that the anesthesiologist did in fact owe the patient a duty of reasonable care.  *Id*.  The

question of whether the anesthesiologist had breached the appropriate standard of care and was the proximate cause of the plaintiff's injuries were questions of fact that could not be determined in a motion to dismiss. *Id.* at 890.

Similarly, the particular facts of this case require the recognition that Defendants owe a duty of reasonable care. Whether Defendants breached that duty and were the proximate cause of harm are questions of fact that cannot be decided on a motion to dismiss. *Id.; see also Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313, 318 (Colo. 1980).

The cases cited by Defendants do not require a different result. For example, in *Jefferson County Sheriff's Department*, 193 F.Supp. 2d 1201 (D. Colo. 2002), which involved the sale of one of the weapons used in the attack on Columbine High School, the claims against the seller of a shotgun at a gun show survived a motion to dismiss under the particular facts of that case. The seller knew the buyers were minors, and the buyers sought the seller's advice on how to shorten the length of the barrel; the court held it was reasonably foreseeable that the Defendants' conduct would result in the intentional misuse of the shotgun. *Id*. at 1231. The court distinguished *Hilberg* because the sellers in that case had no knowledge or basis to infer "the competence, maturity, judgment or propensity for carelessness or recklessness of either [the purchaser] or his son." *Id*. at 1228 (citing *Hilberg*, 761 P.2d at 238—39). Unlike the sales in *Hilberg*, the sale here did not take place at a retail location or a gun show. The evaluation of whether Defendants had knowledge of, or should have inferred, the likelihood that a purchaser would misuse the products is a question of fact that should be addressed through discovery in this case.

## III.    PLAINTIFFS HAVE ADEQUATELY STATED THEIR REQUEST FOR INJUNCTIVE RELIEF

Finally, Defendants contend that injunctive relief is not available in this case.[23] Defendants are mistaken and their argument is premature. Plaintiffs understand that this Court will not grant such a remedy lightly; accordingly, Plaintiffs do not seek a preliminary injunction but rather a permanent injunction after discovery and resolution of the merits of the case.

### A.    This Court Has Broad Discretion to Fashion Equitable Relief

This Court has broad discretion to fashion equitable remedies for the circumstances of this case. "[T]he scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies." *Brown v. Plata*, 131 S. Ct. 1910, 1944 (2011) (internal citations omitted); *see also La Plata Med. Ctr. Associates, Ltd. v. United Bank of Durango*, 857 P.2d 410, 420 (Colo. 1993) ("the power to fashion equitable remedies lies within the discretion of the trial court").

The Court's equitable powers allow it to craft relief specific to novel circumstances.

> [In] emphasizing the need for flexibility, for avoiding mechanical rules, we have followed a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity. The 'flexibility' inherent in 'equitable procedure' enables courts to meet new situations that demand equitable intervention, and to accord all the relief necessary to correct particular injustices.

---

[23] *See* LuckyGunner Motion to Dismiss at 16-18; The Sportsman's Guide Motion to Dismiss at 19-22; Platt's Motion to Dismiss at 17-19.

*Holland v. Florida*, 560 U.S. 631, 649-50 (2010).  The court's discretion thus extends to

"mould[ing] each decree to the necessities of the particular case."  *Winzler v. Toyota Motor Sales*

*U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012).

**B.      Defendants' Unreasonable Sales Practices Enable Purchases of Mass Quantities of Ammunition and Tear Gas Without Any Checks Whatsoever**

Defendants are incorrect that Plaintiffs have not adequately stated their request for

injunctive relief.  First, Defendants argue that Plaintiffs cannot demonstrate the prospect of

irreparable harm.[24]  "The concept of irreparable harm, unfortunately, does not readily lend itself

to definition."  *Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n,* 758 F.2d 669, 674

(D.C. Cir. 1985).  Irreparable harm is suffered when "the injury can[not] be adequately atoned

for in money or when the district court cannot remedy [the injury] following a final

determination on the merits."  *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234,

1250 (10th Cir. 2001) (internal quotations and citations omitted).  A court may find irreparable

harm "based upon evidence suggesting that it is impossible to precisely calculate the amount of

damage plaintiff will suffer."  *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir.

2009).

In addition, "an injury is not speculative simply because it is not certain to occur.  An

irreparable harm requirement is met if a plaintiff demonstrates a *significant risk* that he or she

will experience harm that cannot be compensated after the fact by monetary damages."  *Greater*

*Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (reversing denial of

preliminary injunction that sought to enjoin golf course development that would allegedly

_____

[24] *See* LuckyGunner Motion to Dismiss at 17; The Sportsman's Guide Motion to Dismiss at 20; Brian Platt's Motion to Dismiss at 18.

threaten habitat of bald eagle) (original emphasis); *see also French v. Am. Airlines, Inc.*, 427 F.

App'x 666, 670 (10th Cir. 2011) (affirming permanent injunction to prevent former employee

from bringing future lawsuits against former employer, even though such lawsuits had not yet

been filed); *Saint John's Church in Wilderness v. Scott*, 194 P.3d 475, 480-81 (Colo. App. 2008)

(enjoining demonstrators from staging protests that had not yet been planned).

Here, Plaintiffs have alleged that Defendants' unreasonable sales practices contributed to

the attack at the Aurora Century 16 Theater and that there is a significant risk that a similar

attack will be facilitated unless Defendants' sales practices are changed.  In effect, Defendants'

argument is that unreasonable sales practices can never be enjoined.  But under the specific

circumstances of this case, Plaintiffs have alleged that they and the public face irreparable harm

unless Defendants' sales practices change.

Second, the threatened injury — misuse of firearms, ammunition, body armor, and tear

gas — far outweighs the harm that the injunction may cause Defendants.  Defendants argue that

the only possible result is that they will be forced to stop doing business.[25]  That alarmist reaction

assumes too much about Plaintiffs' intentions and shortchanges the Court's ability to craft an

equitable remedy that will not require Defendants to shut their virtual doors.

Third, an injunction would not adversely affect the public interest.  Defendant

LuckyGunner argues that an injunction would prevent the public from buying ammunition

without any showing to support that claim.[26]  Indeed, the public could still buy ammunition from

hundreds of brick-and-mortar shops.  The only purchaser who would be restricted from

---

[25] *See* LuckyGunner Motion to Dismiss at 17; The Sportsman's Guide Motion to Dismiss at 21-22.

[26] *See* LuckyGunner Motion to Dismiss at 18.

purchasing ammunition would be one who is ineligible to make such a purchase or who poses danger to others. No one's constitutional rights would be infringed, and Plaintiffs have made clear that they do not seek to limit the legal ownership of guns or ammunition. *See, e.g.*, Am. Complaint ¶ 6. To the contrary, Plaintiffs seek safeguards that will help ensure the legal and constitutional purchase of ammunition continues.

## CONCLUSION

Defendants at once overstate the breadth of protection afforded by federal and state immunity statutes and inflate the relief sought by Plaintiffs. This action seeks reasonable safeguards for the online purchase of ammunition and related materials, and it presents causes of action well founded in the traditions of the common law. Questions of fact preclude dismissal at this early stage of the litigation. Therefore, Plaintiffs respectfully ask the Court to deny the Motions.

Dated: December 3, 2014

Respectfully submitted,

ARNOLD & PORTER LLP

By: s/ Thomas W. Stoever, Jr.

Thomas W. Stoever, Jr.
Paul W. Rodney
370 Seventeenth Street, Suite 4400
Denver, CO 80202-1370
Telephone: 303.863.1000
Email: Thomas.Stoever@aporter.com
Email: Paul.Rodney@aporter.com

THE BRADY CENTER TO PREVENT GUN
VIOLENCE

Jonathan Lowy
Kelly Sampson
840 First Street, NE, Suite 400
Washington, DC 20002
Email: jlowy@bradymail.org
Email: ksampson@bradymail.org

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on December 3, 2014 a copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** was filed and served via CM-ECF on:

| | |
|---|---|
| Marc Colin<br>Bruno, Colin & Lowe, P.C.<br>1999 Broadway, Suite 3100<br>Denver, Colorado 80202<br>(303) 831-1099<br>(303) 831-1088 FAX<br>MColin@brunolawyers.com<br><br>Andrew A. Lothson<br>Swanson, Martin & Bell, LLP<br>330 North Wabash, Suite 3300<br>Chicago, IL 60611<br>(312) 321-9100<br>(312) 321-0990 FAX<br>alothson@smbtrials.com<br><br>***Attorneys for Defendant LuckyGunner, LLC*** | Peter A. T. Carlson*<br>Donald Chance Mark, Jr.*<br>Patrick J. Rooney*<br>Flagship Corporate Center<br>775 Prairie Center Drive, Suite 400<br>Eden Prairie, MN 55344<br>(952) 995-9500<br>peter.carlson@fmjlaw.com<br>donald.mark@fmjlaw.com<br>patrick.rooney@fmjlaw.com<br>*Admitted in Dist. of Colorado<br><br>***Attorneys for The Sportsman's Guide, Inc.*** |
| Phillip R. Zuber, Esquire<br>5407 Water Street, Suite 101<br>Upper Marlboro, MD 20772<br>(301) 627-5500<br>(301) 627-4156 Fax<br>pzuber@scblawyers.com<br><br>***Attorney for Defendant Brian Platt, d/b/a BTP Arms*** | Bruce A. Montoya, Esq., Bar No. 14233<br>Messner Reeves LLP<br>1430 Wynkoop Street, Suite 300<br>Denver, Colorado 80202<br>303-623-1800<br>bmontoya@messner.com<br><br>***Attorney for Defendant Brian Platt, d/b/a BTP Arms*** |

And by U.S. Mail upon:

Defendant Gold Strike E Commerce LLC
d/b/a/ BULLETPROOFBODYARMORHQ.COM
Christopher E. Russell, Agent for Service
1546 West Vine Ave.
Mesa, AZ  85202

                                s/  Rebecca A. Golz