IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

SANDY PHILLIPS, individually and as
surviving parent of Jessica Ghawi, decedent;
LONNIE PHILLIPS, individually and as
surviving parent of Jessica Ghawi, decedent

   Plaintiffs

  v.

BRIAN PLATT, d/b/a BTP Arms, *et al.*

   Defendants

Civil Action No. 1:14-cv-02822-RPM

---

## DEFENDANT PLATT'S REPLY MEMORANDUM

The Defendant, Brian Platt d/b/a BTP Arms ("Platt"), through counsel, in response to Plaintiffs' Opposition to Defendant Platt's Motion to Dismiss, submits the following Reply Memorandum.

### I. PLAINTIFFS' OPPOSITION DOES NOT ADDRESS THE FACTUAL DEFICIENCIES IN THE AMENDED COMPLAINT

The statutes that Plaintiffs attack and rely on concern the sale of firearms and ammunition, not tear gas. It is not a crime to sell or possess any form of tear gas in Colorado. Platt did not sell "mass quantities" of tear gas. (Plfs' Opp. to Def.'s Mot. To Dismiss at p. 36)(hereafter cited as "Opp."). Yet, Plaintiffs casually lump Platt together with the other Defendants when many of their arguments do not apply to Platt.

Plaintiffs' entire case is premised on the proposition that "face-to-face" transactions provide "inherent" safeguards that are not present with internet transactions and that online transactions "without human interaction" and the

questioning of purchasers present a heightened risk of harm to others. (Opp. at p. 2). Yet, Plaintiffs offer no explanation why the supposedly inherent safeguards in "face-to-face" transactions failed to prevent the sale of firearms, ammunition and other equipment to Holmes at Gander Mountain stores and Bass Pro Shops on five different occasions between May and July 2012 (Amended. Comp. at ¶s 40-42, 45 and 49).

Plaintiffs seem incapacable of committing to whether this case is about what actually happened or what theoretically could happen in the future. If this case is about what happened, Plaintiffs do not allege facts in their Amended Complaint that show that Holmes exhibited signs of "dangerousness" or "mental instability" on or before May 10, 2012 (the date Plaintiffs allege Holmes purchased the tear gas) or that the use of tear gas was the predominant cause of any injury.[1]

Plaintiffs assert that Platt knew or should have known that selling tear gas to a private citizen "without inquiry" poses an unreasonable risk of harm to others. (Am. Comp. p. 18, ¶175). But Plaintiffs do not cite any facts to support that conclusion.

Plaintiffs also contend that the sale of tear gas creates a public nuisance (Amended. Compl. p. 25, ¶ 241). But this incident did not occur on "public property" or in a "public space." Plaintiffs do not allege that they use Colorado public spaces or

---

[1] No facts are set forth the Amended Complaint that show (1) any injury was actually caused by exposure to tear gas; (2) persons injured as a result of gunfire would have avoided injury had tear gas not been thrown into the theater; (3) decedent Jessica Ghawi was injured by the tear gas or would have avoided injury had tear gas not been used; or (4) any inquiry by Platt of Holmes at the time of purchase would have yielded information making the sale of tear gas illegal or inappropriate.

public property. Plaintiffs' Opposition fails to point to any facts alleged in the Amended Complaint that support their assertion that the sale of tear gas by Platt has increased the number or severity of crimes in Colorado. (See Amended. Comp. ¶ 246). Even if Platt's conduct is characterized as a public nuisance, as private citizens Plaintiffs have no civil remedy for harm caused by a public nuisance.

### II. PLAINTIFFS' NEGLIGENT ENTRUSTMENT CLAIM, WHICH IS BASED ON A DUTY TO INVESTIGATE AND INQUIRE, FAILS AS A MATTER OF LAW

In their Opposition, Plaintiffs make clear that their negligent entrustment claim is based on a failure to investigate and inquire. That claim fails as a matter of law because in Colorado negligent entrustment cannot be predicated on a duty to investigate.

The Colorado does not employ the negligent entrustment definition cited by Plaintiffs in 15 U.S.C. §7903(5)(B). (Opp. at 27). Instead, Colorado uses section 390 of the Restatement (Second) of Torts as a "useful framework" for resolving what duty is owed by a supplier of chattels. *Peterson v. Halsted*, 829 P. 2d 373, 377 (Colo. 1992).

Plaintiffs assert that whether Defendants "should have known or *exercised reasonable care to* determine that another person was likely to and in fact did use the dangerous materiel in a manner involving unreasonable risk of injury to others" is a question of fact for the jury. (Opp. at 28)(emphasis added). Yet Plaintiffs cite no Colorado case to support that contention.

One reason why Plaintiffs are unable to cite to any authority to support that contention is because Restatement Section 390 and Colorado law are to the contrary. The test in Colorado for negligent entrustment is what the Defendant actually knew or "had reason to know." *Baker v. Bratrsovsky,* 689 P.2d 722, 723-724 (Colo. App. 1984) (entrustor must have actual knowledge of condition or facts from which such knowledge can reasonably be inferred; no "duty to investigate"); *Liebelt v. Bob Penkhus Volvo-Mazda, Inc.*, 961 P.2d 1147, 1149 (Colo. App. 1998) ("reason to know" does not impose duty of diligence).

Because negligent entrustment focuses on what the supplier actually knew at the time of the transaction, Plaintiffs must allege facts showing that Platt knew at the time of sale that Holmes had a condition that made it *likely* that he would use the tear gas in connection with a plan to kill and maim people with firearms or that facts were available to Platt, at the time of the transaction, that would cause a reasonable person to come to such a conclusion. There are no facts in the Amended Complaint that remotely suggest that Platt knew, or had reason to know that Holmes was likely to use the tear gas in connection with a carefully planned mass murder.

Plaintiffs claim that the Defendants should have known that Holmes "posed a risk with guns, thousands of rounds of ammunition, a 100-round drum, [and] body armor…." (Opp. at p. 28). But, according to Plaintiffs' own account in the Amended Complaint, Holmes did not possess any of these things when he purchased tear gas from Platt.

Similarly, nothing alleged suggests that even if Platt asked questions during an internet sales process that Holmes would have revealed any plans (if he had any) to purchase firearms and ammunition.

Plaintiffs contend that they should be allowed to engage in discovery to explore whether the "quantity and nature of items purchased" or "other information" should have tipped off Platt (Opp. at 29). The quantity and nature of the items allegedly purchased from Platt are recounted in the Amended Complaint. The "other information" would be information gleaned from an investigation, something not required by negligent entrustment.

Plaintiffs say that a violation of a statute can support a negligent entrustment claim. (Opp. at 30). But Plaintiffs do not identify a single statute that Platt supposedly violated.

Plaintiffs have not stated a claim against Platt for negligent entrustment and therefore their negligent entrustment claim fails.

### III. PLATT OWED NO DUTY TO PLAINTIFFS OR THE DECEDENT

Whether Platt owed Plaintiffs a duty and the scope of that duty are questions of law for the Court. A negligence claim fails when it is based on circumstances for which no duty of care is owed by the Defendant. *HealthONE v. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002).

Under Colorado law, there is no general duty of reasonable care owed to the world at large. To survive the Motion to Dismiss, Plaintiffs must show that Platt owed Plaintiffs some type of duty. Plaintiffs' assertion that Platt owed them (or the decedent) a duty rests entirely on the claim that "The nature of the transaction here – one that takes place purely online and lacks human interaction – is fundamentally different from traditional retail sales and facilitates a dangerous purchaser's ability to acquire ammunition." (Opp. at p. 33). But the facts alleged by Plaintiffs belie this central proposition – there was extensive "human interaction" between Holmes and retailers in connection with the sale of firearms, ammunition and other equipment at various retail stores. Yet, none of the "human interaction" with those transactions prevented Holmes from buying what he need to carry out his carefully planned attack.

Plaintiffs' premise ignores the very significant distinction in Colorado between misfeasance and nonfeasance. *University of Denver v. Whitlock,* 744 P.2d 54, 57-58 (Colo. 1987)(no duty owed by university to student to protect him from using fraternity trampoline under unsafe conditions).[2] Where an action is bottomed on nonfeasance, a duty to protect arises only when a special relationship exists between the parties. *Id.* at 58. The law recognizes very few such special relationships, and Plaintiffs do not contend that any special relationship existed between them and Platt.

---

[2] Plaintiffs mischaracterize Defendants' arguments as one of "no duty when making anonymous online sales." Opp. at p. 31. No facts are alleged suggesting that the sales were "anonymous."

Since Platt owed no duty to Plaintiffs, the possibility that Platt could have designed a different website or made inquiries or conjured up possible misuses is of no legal consequence.

Plaintiffs cite no cases imposing the duty that they claim should be recognized. Plaintiffs do not distinguish or even address the decisions in other states holding that a seller like Platt owes no general duty of care to an indeterminate – world at large – number of people. See, *Valentine v. On Target*, 353 Md. 544, 727 A.2d 947 (1999)(inherent nature of guns suggests use may likely result in serious personal injury; that does not create a duty of gun dealers to all persons who may be the subject of the harm; that type of regulation is for the legislature); *Hamilton v. Beretta USA Corp.*, 96 N.Y.2d 222, 750 N.E.2d 1055, 727 N.Y.S.2d 7 (2001)(injured party must show that defendant owed not a general duty to the public at large but rather a specific duty to the plaintiff; without a duty directly running to the injured person, there is no liability, regardless of the carelessness of the conduct or the foreseeability of the harm).

Absent a special relationship, a duty to control or regulate the conduct of another does not arise even if, for example, a website could be revised or questions could be asked about the purpose for which something is being purchased.[3] Because Platt did

---

[3] Plaintiffs misstate the second factor in the duty considerations. They then confound the difference between foreseeability as a part of a duty assessment with foreseeability for purposes of causation. The second consideration for duty is not just foreseeability but "the foreseeability and likelihood of injury weighed against the social utility." *HealthONE, supra*, 50 P.3d at 888. Foreseeability for proximate cause involves whether it is foreseeable that the conduct will cause injury. *Build It and*

not owe a general duty to the public at large to screen and prevent persons with murderous intent from purchasing products with either legal or harmful uses, Plaintiffs' negligence claim fails as a matter of law.

### IV. PLAINTIFFS DO NOT ALLEGE FACTS SHOWING CAUSATION

For Plaintiffs' claim to survive the Motion to Dismiss, Plaintiffs' must present facts showing that Platt's actions were the direct and proximate cause of Plaintiffs' injuries. Causation is not established if the victim's injury would have occurred anyway even though the defendant's conduct increased the risk that it would occur.

All of the facts set forth in the Amended Complaint point to the fact that the injuries would have occurred regardless of the sale of the tear gas. When there is more than one cause, but-for causation is not enough. Colorado requires that the Defendant's actions be a predominant cause. Anything less – i.e., causes that are casual or insubstantial -- are not actionable. *Castaldo v. Stone,* 192 F.Supp.2d 1124, 1171 (D. Colo 2001); *Ireland v.. Jefferson County Sheriff's Dep't*, 193 F.Supp. 2d 1201, 1231-32 (*North Colo. Med. Ctr v. Committee on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996).

---

*They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 306 (Colo. 2011)(Dram Shop Act does not require foreseeability).

Nothing in the Amended Complaint invites a reasonable inference that internet marketing techniques used for the sale of tear gas was a predominant cause of Holmes's rampage.[4]

Plaintiffs have not alleged facts from which proximate cause could be found. That omission is fatal to their negligence claim and requires dismissal.

### V.  THE AMENDED COMPLAINT DOES NOT ALLEGE FACTS SHOWING AN AN ENTITLEMENT TO RELIEF FOR PUBLIC NUISANCE

Tacking away from the Amended Complaint, Plaintiffs now argue that violations of various municipal laws form the basis for their public nuisance claims. (Opp. at 12-13, 30). Those statutes do not relate to the use of tear gas.

Platt did not create any kind of nuisance. Instead, Plaintiffs seek to stretch nuisance law into a cause of action that is unrecognized in Colorado – that a person may be held liable in nuisance by merely "contributing" to a third party causing a nuisance.

Generally, a public nuisance is the doing of or failure to do something that injuriously affects the safety, health, or morals of the public or works substantial annoyance, inconvenience, or injury to the public. *Echave v. City of Grand Junction*, 193 P.2d 277 (Colo. 1948). To abate a public nuisance, an action by a governmental entity

---

[4] Indeed, the facts alleged suggest the opposite: no one was directly injured by tear gas; a number of individuals injured in the attack were not in the same theater as the tear gas; and none of the injuries alleged could have been caused by tear gas alone.

is generally required. In rare situations, a tort action may be brought by a private individual where a public nuisance causes special damage to an individual, different from the harm sustained by the general public. *Liber v. Flor*, 160 Colo. 7, 415 P.2d 332, 35 A.L.R.3d 1165 (1966) (storage of dynamite in county building only 50–70 feet from paved highway was public nuisance, as a matter of law); *City of Lakewood v. DeRoos*, 631 P.2d 1140 (Colo. App.), *cert. denied* (1981) (in action against city, plaintiff was unable to show that he was damaged in any way distinct from the harm sustained by others; construction and operation of public highway are activities that cannot be abated as public nuisance).

Plaintiffs have no right by statute or otherwise to bring an action for public nuisance.[5]

The Aurora Municipal Code offers Plaintiffs no solace. In section 62-26 public nuisance is defined as the act of "any *property owner* owning property within the City of Aurora" to engage in certain specified behavior. Aurora, Colorado Municipal Code § 62-26 (emphasis added). The Aurora Municipal Code also prohibits "a public nuisance, as defined in section 62-26, or any other violation of this Code which adversely affects the health, safety, or welfare of the residents of the city." Aurora, Colorado Municipal Code § 62-27. Plaintiffs confuse the difference between any act which adversely affects the

---

[5] An action to abate a public nuisance in violation of the state statute can only be brought by the district attorney. See Colo. Rev. Stat. §16-13-302. Violations of the Aurora public nuisance law are to be brought by the city attorney who is authorized to institute suit for common-law nuisance or other acts as enumerated in section 62-26. Aurora, Colorado Municipal Code §62-29.

health, safety, or welfare of the residents of the city with an act *in violation of the Code* which adversely affects the health, safety, or welfare of the residents of the city. Plaintiffs do not allege any specific violation by Platt of the Aurora Municipal Code.

Plaintiffs have no claim for public nuisance.

### VI. PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

What Plaintiffs seek through invocation of the Court's injunction power is for the Court to step into the arena of internet sales, make policy decisions concerning its regulation and then permanently police that conduct – all acts that are legislative and executive in nature. Many legislatures have considered issues concerning the sale of tear gas and passed legislation concerning its sale and use. Such policy decisions are not an appropriate use of the Court's injunctive power.

To be entitled to injunctive relief, the Plaintiffs must be at risk of suffering irreparable harm unique to them. Plaintiffs have not alleged facts showing that they are at risk for an injury which they individually will potentially suffer, let alone an injury that is certain, great, actual, and not theoretical.

Furthermore, Plaintiffs have not identified any facts showing that they "surely" will be the victim of the illegal and criminal use of tear gas absent an injunction. Plaintiffs' conclusory assertions that "they and the public face irreparable harm unless Defendants' sales practices change" (Opp. at 37) are not enough to stave off dismissal.

Finally, Plaintiffs do not recite any facts showing that an injury from the use of tear gas is so imminent that there is a clear and present need for an injunction. These failures are fatal to Plaintiffs' claim.

### V. CONCLUSION

Plaintiffs have not alleged actionable claims in negligent entrustment, negligence or for public nuisance. Plaintiffs do not satisfy the requirements for an injunction, the only relief requested. These failures require dismissal of the claims against Platt. Accordingly, Platt requests dismissal of all claims against him, as well as any other remedy that the Court finds equitable.

Respectfully submitted,

\_\_\_/s/\_\_ Phillip R. Zuber_____
Phillip R. Zuber, Esquire
Sasscer, Clagett & Bucher
5407 Water Street, Suite 101
Upper Marlboro, MD 20772
(301) 627-5500/ (301) 627-4156 fax
pzuber@scblawyers.com

\_\_\_/s/\_\_ Bruce A. Montoya\_(w/consent)\_\_
Bruce A. Montoya, Esq.
Messner Reeves, LLP
1430 Wynkoop St., Suite 300
Denver, CO 80202
(303) 623-1800
bmontoya@messner.com
*Attorneys for Defendant Brian Platt, d/b/a BTP Arms*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of January 2015, I electronically filed the foregoing **Defendant Platt's Reply Memorandum** with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

Thomas W. Stoever, Jr., Esq.
Paul W. Rodney, Esq.
Arnold & Porter, LLP
370 Seventeenth St., Suite 4400
Denver, CO 80202
Thomas.Stoever@aporter.com
paul.rodney@aporter.com
*Counsel for Plaintiffs*

Andrew A. Lothson, Esq.
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
alothson@smbtrials.com
*Counsel for Lucky Gunner*

Marc F. Colin, Esq.
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 3100
Denver, CO 80202
mcolin@brunolawyers.com
*Counsel for Lucky Gunner*

Patrick J. Rooney, Esq.
Donald Chance Mark, Jr., Esq.
Peter A.T. Carlson, Esq.
Fafinski, Mark & Johnson
775 Prairie Center Dr., Suite 400
Eden Prairie, MN 55344
Patrick.rooney@fmjlaw.com
Donald.mark@fmjlaw.com
peter.carlson@fmjlaw.com
*Counsel for The Sportsman's Guide, Inc.*

and hereby certify that I have mailed via U.S. mail, postage prepaid, to the following non-CM/ECF participants:

Jonathan E. Lowy, Esq.
Elizabeth Burke, Esq.
Kelly Sampson, Esq.
Brady Center to Prevent Gun Violence
840 First St., N.E., Suite 400
Washington, D.C. 20005

      Gold Strike E Commerce, LLC
      d/b/a bulletproofbodyarmorhq.com
      Christopher E. Russell, Agent for Service
      1546 West Vine Ave.
      Mesa, AZ 85202

                                      /s/ Phillip R. Zuber
                              Phillip R. Zuber, Esquire

{