## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-2822-RPM

SANDY PHILLIPS, individually and as surviving parent
of Jessica Ghawi, decedent; LONNIE PHILLIPS,
individually and as surviving parent of Jessica Ghawi,
decedent.

Plaintiffs,

v.

LUCKY GUNNER, d/b/a/ BULKAMMO.COM,
THE SPORTSMAN'S GUIDE,
Brian Platt, d/b/a/ BTP ARMS,
Gold Strike E Commerce LLC d/b/a/
BULLETPROOFBODYARMORHQ.COM,
and JOHN DOES 1 through 10, unknown individuals.

Defendants.

---

## DEFENDANT LUCKYGUNNER'S REPLY IN SUPPORT OF MOTION TO DISMISS

---

Defendant, LuckyGunner, LLC ("LG"), by its undersigned attorneys, files this reply in

support of its Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 3, "LG's Mot.").

## <u>INTRODUCTION</u>

Both Congress and the Colorado Legislature have made clear that, subject to narrow

exceptions, those engaged in the business of selling ammunition are not to be held legally

responsible when criminals misuse ammunition to cause harm. This legislative policy is consistent

with well-established tort law in Colorado: One is generally not responsible for harm caused by

others.

Plaintiffs nevertheless ask this Court to disregard this clearly expressed legislative policy

and established legal principle. Throughout their Opposition brief (Doc. 27, "Pls.' Br."), Plaintiffs

say their case is not about the crimes committed by James Holmes, and they do not seek to hold LG responsible for Holmes' criminal conduct. Instead, Plaintiffs argue their case is only about the manner in which LG sold ammunition allegedly used by Holmes in the commission of his crimes. But Plaintiffs cannot recast the central role that Holmes played in the death of their daughter— Holmes' criminal acts and the harm he caused are the reasons the parties are before the Court. Pushing Holmes' conduct into the background is not only improper, it perverts the analytical framework in which tort cases arising from harm caused by third parties have been decided for decades under Colorado law.

Plaintiffs not only ask the Court to disregard Colorado law, and the policy choices already made by Congress and the Colorado Legislature. They ask the Court to perform a distinctly legislative task: Draft a set of requirements by which ammunition sellers are to conduct business, including a requirement that sellers somehow investigate and ascertain the character and intentions of their customers, and evaluate whether those customers should be trusted to use ammunition lawfully. Neither Congress nor the Colorado Legislature has seen fit to impose such an obligation on ammunition sellers (against online sellers or those selling from storefront premises). And Plaintiffs do not suggest how any ammunition seller, online or otherwise, could reliably evaluate and predict a buyer's true intentions. The notion that a buyer would acknowledge criminal intent to a seller is naïve. In the end, Plaintiffs' desire that Defendants employ unspecified "safeguards" is a step toward imposition of absolute liability for selling firearms and ammunition later used in crime. There would be no way for Defendants to conduct their businesses without fear of liability.

This reality is precisely why both Congress and the Colorado Legislature have created broad immunities for sellers of firearms and ammunition. This Court's task is to apply those immunities as a threshold legal matter. Plaintiffs' invitation to create new state law in an area in

which legislatures are already active, and clearly delineated immunities exist, should be rejected.

## ARGUMENT

### I.     The Colorado Immunity Statute Bars Plaintiffs' Claims Against LG.

Plaintiffs have not pled an action for "damages," which is the *only type of remedy* available to a plaintiff under the exceptions to ammunition seller immunity under Colorado law. C.R.S. § 13-21-504.5(4) (seller "may be sued in tort for damages"). As a result, Plaintiffs' claims for "injunctive" relief against LG is categorically barred. Plaintiffs do not dispute this plain language interpretation of the Colorado statute. For this reason alone, Plaintiffs' claims are barred.

### II.    The PLCAA Bars Plaintiffs' Ordinary Negligence and Public Nuisance Claims.

Plaintiffs argue that "[n]o court has ever held that … the PLCAA … provides the breadth of immunity claimed by Defendants." (Pls.' Br. at 16.) Plaintiffs are wrong. As explained below, courts have held that the PLCAA provides immunity against common law negligence and public nuisance claims, and courts addressing Plaintiffs' argument that immunity is only warranted in actions in which a criminal "solely" causes the harm have uniformly rejected it.[1] And while the PLCAA does not provide ammunition seller immunity against a negligent entrustment claim, Plaintiffs' negligent entrustment claim against LG must still be properly pleaded. Facts demonstrating that LG actually knew of the danger posed in selling ammunition to Holmes or from which LG's knowledge can be reasonably inferred must be set forth. Plaintiffs have not pleaded these facts and cannot plausibly do so given their theory of liability against LG—that is,

---

[1]     Plaintiffs make the same type of "solely" argument with respect to the Colorado immunity statute in arguing that that statute does not apply. (Pls. Br. at 15.) This argument should be rejected with respect to C.R.S. § 13-21-504.5 for the same reasons as it fails regarding the PLCAA.

ammunition was sold to Holmes without knowledge of Holmes' character or discovering his intentions.

        **A.**      **Plaintiffs' argument that the PLCAA immunizes ammunition sellers only when the harm is "solely" caused by a third-party's misuse of the ammunition should be rejected.**

Plaintiffs argue that the PLCAA does not apply here because Congress only provided immunity in suits in which the harm was "solely" caused by a third-party's criminal use of ammunition. (Pls.' Br. at 5-6.) Plaintiffs' argument is flawed because it disregards the structure of the PLCAA and is based on an incorrect reading of its operative provision—namely, the definition of a "qualified civil liability action" that "may not be brought in any Federal or State Court." 15 U.S.C. § 7902(a). Any civil action (subject to potential exceptions) for damages or other relief "resulting from the criminal or unlawful misuse of a qualified product by … a third party" shall be immediately dismissed. 15 U.S.C. § 7902(b) & § 7903(5)(A).

Every appellate court that has addressed Plaintiffs' argument has rejected it, and for good reason: If PLCAA immunity could be avoided through the mere allegation that criminal misuse of a firearm or ammunition was not the sole cause of a plaintiff's damages, the purpose behind the PLCAA would be entirely frustrated. Seller immunity under the PLCAA would never be addressed by courts as a threshold legal matter, as it should be, but only after a jury has deliberated and decided the question of causation. In enacting the PLCAA, however, Congress expressed its concern that without the immunity afforded by the Act, a "petit jury" in an action arising from the criminal misuse of a firearm or ammunition could "expand civil liability in a manner" not contemplated by the law. 15 U.S.C. § 7901(7). Congress also expressed concern that the "judicial branch" not be used "to circumvent" the legislative branches of government in regulating commerce in firearms and ammunition "through judgments and judicial decrees." 15 U.S.C. §

7901(8). Plaintiffs' incorrect interpretation of the PLCAA does exactly that, and it opens the door to the types of lawsuits that Congress plainly intended to prohibit.

*Estate of Kim ex rel. Alexander v. Coxe*, 295 P.2d 380 (Alaska 2013), is directly on point. There the plaintiff argued, as Plaintiffs argue here, that based on language found in the congressional findings and purposes sections of the PLCAA, the act "provides immunity only in cases where the harm is caused solely by others." 295 P.2d at 386. Stated differently, the plaintiff argued that the PLCAA does not apply in cases alleging that a firearm seller and a criminal concurrently caused harm. The Alaska Supreme Court flatly rejected the argument, finding that the plaintiff's construction of the PLCAA "seeks to elevate the preamble over the substantive portion of the statute, giving effect to one word in the preamble at the expense of making the enumerated exceptions meaningless." *Id*. at 387. The court properly recognized that "a statutory preamble 'can neither restrain nor extend the meaning of an unambiguous statute; nor can it be used to create doubt or uncertainty which does not otherwise exist.'" *Id*. at 386 (citing *H.J., Inc. v. Nw. Bell Telephone Co*., 492 U.S. 229, 245 (1989) (explaining that Congress's expressed purpose does not alter plain statutory language)).

The *Estate of Kim* court further held that the "plain reading" of Congress's definition of a qualified civil liability action "supports a prohibition on general negligence actions – including negligence with concurrent causation." *Id*. *Cf. Gilland v. Sportsmen's Outpost, Inc*., 2011 Conn. Super. LEXIS 1320, *42 (Conn. Super. May 26, 2011) (rejecting plaintiff's argument that "solely caused" language in congressional findings and purposes reflected legislative intent to preserve actions where a firearm seller's alleged negligence contributed to the harm: "it is clear that … a 'qualified civil liability action' ... includes cases where it is alleged that gun sellers negligently cause harm.").

To support their interpretation, Plaintiffs selectively cite statements made on the floor of the Senate during debate on passage of the PLCAA as evidence that Congress did not intend to immunize sellers if harm is not alleged to have been "solely" caused by a third-party. (Pls.' Br. at 6.) These statements broadly address what some congressmen believed to be the impact the PLCAA would have on lawsuits against firearm sellers. The statements do not shed light on the meaning of ambiguous language or support a plain meaning interpretation of statutory language. Consideration of these statements on the question of statutory meaning is improper.

Regardless, statements made by individual members of Congress have little value in interpreting the intent of Congress as a whole. *Medical Center Pharmacy v. Mukasey*, 536 F.3d 383 (5th Cir. 2008); *see also Chrysler Corporation v. Brown*, 441 U.S. 281, 311 (1979) ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history."). The reason is obvious: There are 535 members of Congress who may possess 535 different views of what a bill will accomplish following enactment. "'Cherry-picking' favorable snippets of legislative history to establish the meaning of subsequently enacted legislation is an enterprise rife with the potential for mischief and abuse." *In re Visteon Corporation*, 612 F.3d 210, 228 (3rd Cir. 2010); *see also Brock v. Pierce County*, 476 U.S. 253, 263 (1986) ("statements by individual legislators should not be given controlling effect" for purposes of discerning congressional intent); *Regan v. Wald*, 468 U.S. 222, 236-38 (1984) (statements of subcommittee hearings, mark up sessions, floor debates, and House and Senate reports cannot overcome the plain meaning of a statute); *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring) ("If one were to search for an interpretive technique that, on the whole, was more likely to confuse than clarify, one could hardly find a more promising candidate than legislative history."). Moreover, in extemporaneous floor debate, "the choice of words . . . is not always accurate or

exact." *In re Carlson*, 292 F.Supp. 778, 783 (C.D. Cal. 1968).

Plaintiffs are plainly cherry-picking a handful of comments made by congressmen advocating the bill's passage, who sought to assuage the full body that the sky was not falling. Others took the opposite view. For example:

> "This bill goes way beyond strict liability. It says that simple negligence is out the door…." [2]

> "This legislation we are debating today would wipe away their rights to make a negligence claim." [3]

> "This legislation generally bars all suits involving negligence and restricts the exemption to some categories of specific violations of Federal law, which arguably, in your hypothetical, it would not reach. The only exception, to be fair to the legislation, that might allow someone to go to court under the concept of negligent entrustment, which as drafted in the legislation, would say you have to have a suspect, know that person would use the weapon illegally, and that person has to use the weapon." [4]

> "This bill does allow some cases to move forward, as its supporters have pointed out, but these cases can proceed only in the narrowest of circumstances." [5]

These statements and others demonstrate the futility of looking to Senate floor debates for evidence of what Congress, as a whole, sought to accomplish through the PLCAA. Congressional intent is found in the statute's plain language, and as courts across the country have held, a seller is entitled immunity under the PLCAA even if the plaintiff has alleged the harm was not "solely" caused by the criminal acts of a third-party.

---

[2]   151 Cong. Rec. S9085 (July 27, 2005) (Sen. Reed).

[3]   151 Cong. Rec. S9092 (July 27, 2005) (Sen. Reed).

[4]   151 Cong. Rec. S9236 (July 28, 2005) (Sen. Reed). In fact, this Senator offered an amendment to the bill with the "overarching purpose, to preserve the right of an individual to sue for negligence when they have been harmed when that negligence can be fairly attributed to a gun manufacturer, gun dealer, or gun trade association." 151 Cong. Rec. S9374 (July 29, 2005).

[5]   151 Cong. Rec. S9070 (July 27, 2005) (Sen. Feinstein).

Contrary to Plaintiffs' argument, as made clear by the plain language of the PLCAA, Congress has not permitted firearm and ammunition sellers to "avoid liability for their own misconduct[.]" (*See* Pls.' Br. at 9.) Seller conduct falling within one of the six enumerated exceptions to immunity remains potentially actionable depending on applicable state law. But to add to the enumerated exceptions an additional exception that permits an action based on an allegation that inadequate sales practices contributed to the harm caused by criminal misuse of a firearm or ammunition, renders each of the enumerated exceptions meaningless.

**B.      No exception to PLCAA immunity applies against LG.**

**1.      Plaintiffs have failed to plead a negligent entrustment claim under Colorado law.**

Plaintiffs do not dispute that a seller does not have a common law duty to investigate the background of the person to whom he entrusts a chattel. (*See* LG's Mot. at 22-23.) Instead, Plaintiffs argue that Colorado law should be different: That a common law duty to affirmatively investigate the backgrounds and intentions of ammunition buyers in Colorado should be imposed. In Plaintiffs' view, ammunition sellers should be required to personally interact with ammunition buyers and "request information" from buyers in order to "assess the dangerousness of the transaction." (Pls.' Br. at 29.) Neither Congress nor the Colorado Legislature has imposed these requirements on either storefront or online ammunition sellers.

This Court should be reluctant to "create new standards of conduct for sellers when legislatures have declined to incorporate such standards into statutory schemes." *Heatherton v. Sears, Roebuck, Co.*, 445 F.Supp. 294, 304-05 (D.Del. 1978) (declining to impose duty to investigate on firearm sellers), *rev'd on other grounds*, 593 F.2d 526 (3d Cir. 1978); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1121 (Ill. 2004) ("[T]here are strong public policy reasons to defer to the legislature in the matter of regulating the manufacture, distribution,

and sale of firearms."); *Penelas v. Arms Tech., Inc.* 778 So. 2d 1042, 1045 (Fla. App. 2001) ("[T]he judiciary is not empowered to 'enact' regulatory measures in the guise of injunctive relief. The power to legislate belongs not to the judicial branch of government, but to the legislative branch."); *People v. Sturm, Ruger*, 761 N.Y. 2d 192, 203 (N.Y. App. 2003) ("As for those societal problems associated with, or following, legal handgun manufacturing and marketing, their resolution is best left to the legislative and executive branches."); *In re Firearms Cases*, 126 Cal. App. 4th 959, 985 (Cal. App. 2005) ("While plaintiffs' attempt to add another layer of oversight to a highly regulated industry may represent a desirable goal … [e]stablishing public policy is primarily a legislative function and not a judicial function, especially in an area that is subject to heavy regulation."); *Hamilton v. Beretta U.S.A Corp.*, 96 N.Y. 2d 222, 239-40 (N.Y. App. 2001) ("[W]e should be cautious in imposing novel theories of tort liability while the difficult problem of illegal gun sales remains the focus of a national policy debate.").[6]

Plaintiffs ask the Court to not only make policy choices best suited for the legislature, but to expand Colorado law through an "evolution of the principle articulated" in *Hilberg v. F.W. Woolworth Co.*, 761 P. 2d 236 (Colo. App. 1988). (Pls.' Br. at 29.) But this Court's task is to apply, not expand or create, Colorado law. "It is axiomatic that state courts are the final arbiters of state law." *United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004) (citing *Mullaney v. Wilbur*, 421 U.S. 684 (1975)); *Rael v. Sullivan*, 918 F.2d 874, 877 (10th Cir. 1990) (noting that federal court must interpret latest state pronouncement)). "It is not the role of a federal court to

---

[6]    To the extent that a goal of this litigation is to obtain a judicial determination that all ammunition sales should be subjected to law enforcement background checks, like firearms sales by federally licensed firearms dealers, such a decision is a policy matter best-suited for the legislative branches of government. And to be clear, neither federal nor Colorado law require ammunition sellers (selling online or from storefronts) to subject purchasers to law enforcement background checks.   Unattainable goals of the litigation notwithstanding, Plaintiffs have not adequately pled all of the elements of injunctive relief. (LG's Mot. at 16-17.)

expand or narrow state law in ways not foreshadowed by state precedent." *Camden Cnty. Bd. of Chosen Freeholders v. Beretta*, 273 F.3d 536, 541 (3d Cir. 2001) (affirming dismissal of negligence, negligence entrustment and public nuisance claims against firearm manufacturers alleged to have contributed to criminal misuse by third parties).

*Hilberg* established that "the supplier of the instrumentality entrusted must have actual knowledge either of the user's propensity to misuse the instrumentality or of facts from which such knowledge could be reasonably inferred." 761 P.2d at 238 (defendant firearm sellers had no knowledge of purchaser's "supervision habits, shortcomings, or qualities as a parent").[7] Contrary to Plaintiffs' argument, Colorado law shields businesses from claims that they should have discovered a buyer's intention to criminally misuse a product they sell.[8]

At bottom, Plaintiffs are attempting to add the duty of "reasonable care" to the law of negligent entrustment in Colorado. (Pls.' Br. at 28.) But the standard for negligent entrustment liability is narrower than the ordinary negligence standard because the manner in which the chattel is ultimately used is outside the supplier's control. Imposing the broader "reasonable care" standard on suppliers, encompassing obligations to inquire, investigate, screen, monitor and

---

[7]    Plaintiffs' attempt to distinguish *Ir. v. Jefferson Cnty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, (D. Colo. 2002), from *Hilberg*, to support finding a duty against LG, falls flat. (Pls.' Br. at 34.) In *Jefferson*, the seller, through direct personal interaction, was given reason to know the buyer was a minor, and even personally instructed the minor how to saw off a shotgun barrel. *Id.* at 1128-29. In contrast, the seller in *Hilberg* (as with LG) was not given knowledge by the buyer. Plaintiffs here affirmatively pled there was no personal interaction between LG and Holmes.

[8]    In their brief, Plaintiffs use ellipses to change language used by the court in *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489 (Colo. App. 2011). (*See* Pls.' Br. at 27.) The court in *Draper*, citing Restatement § 390, stated that "specific knowledge is not required if the supplier of chattel 'had reason to know … *because of [the entrustee's] youth, inexperience, or otherwise*' that the entrustee was likely to use the chattel in a manner involving an unreasonable risk of physical harm." 282 F.3d at 499 (emphasis added). The italicized phrase that Plaintiffs eliminated is important because it underscores the requirement that a supplier *must be given* reason to know that the buyer poses a risk. It is not enough to allege that a supplier, in the absence of specific knowledge, should have discovered a risk posed by a buyer.

evaluate buyers and their intentions, would potentially create limitless supplier liability. This is the very reason why suppliers of chattel are required to act only on their actual knowledge or facts from which knowledge may be reasonably inferred. No Colorado court has held otherwise.

Plaintiffs have not responded to LG's argument that they fail to plead facts demonstrating LG's actual knowledge of Holmes' drug use or mental instability, or facts from which that knowledge could be reasonably inferred—the standard under which a negligent entrustment claim must be pleaded. *See Hilberg*, 761 P.2d at 238. Instead, Plaintiffs invoke variations on ordinary negligence standards and contend there is a "question of fact whether Defendants should have known or exercised reasonable care to determine" Holmes' character and intentions. (Pls.' Br. at 28.) In doing so, Plaintiffs effectively concede that they have not and cannot plead facts supporting a negligent entrustment claim under Colorado law.

### 2. Plaintiffs have not invoked the exception for a knowing violation of a state or federal statute "applicable to the sale or marketing" of ammunition.

The exception to immunity in 15 U.S.C. § 7903(5)(A)(iii) requires facts demonstrating that a seller "knowingly violated a State or Federal statute applicable to the sale or marketing" of firearms or ammunition.[9] While Plaintiffs allege in conclusory fashion that LG violated 18 U.S.C. § 922(d)(3) by selling ammunition to an unlawful drug user, they do not plead facts that in any way support their allegation that the statute was "knowingly" violated by LG. Rather, they plead facts directly contradicting the existence of a "knowing violation" by complaining that LG conducts online ammunition sales *without acquiring knowledge* about buyers and their intentions. Plaintiffs cannot plausibly plead that LG is liable because it knew Holmes was an unlawful drug

---

[9] Courts have described the § 7903(5)(A)(iii) exception as the "predicate" exception, and statutes falling within the exception as "predicate" statutes. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1132 (9th Cir. 2009) (string citing cases).

user while pleading that LG is liable because *it did not know* about Holmes' unlawful drug use. Circumventing PLCAA immunity and dismissal through a contradictory, implausible and wholly unsupported allegation of a "knowing" statutory violation is not permitted under the applicable pleading standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[10]

Plaintiffs' argument that they have invoked the § 7903(5)(A)(iii) exception by alleging violations of "state and municipal nuisance laws" (Pls.' Br. at 12), is riddled with inaccuracies and ultimately fallacious. First, Plaintiffs resort to a broadly worded "common law" definition of public nuisance, not a statutory nuisance standard, as the predicate for their statutory violation claim. (Pls.' Br. at 12.) Plaintiffs then erroneously state that the "City of Aurora Municipal Code has adapted" the common law standard, by incorrectly suggesting that anything affecting "the safety, health or morals of the public" is a statutory criminal nuisance in Aurora. (*Id*.) But the section of the Aurora City Code cited by Plaintiffs says something much different. An activity alleged to be a public nuisance in Aurora must be defined as a nuisance in Code Section 62-26, or *another provision of the Code* which adversely affects the health, safety, or welfare of residents. Aurora City Code § 62-27 (emphasis added). Section 62-26 is of no help to Plaintiffs because no activity defined as a public nuisance in Section 62-26, or the Code generally, even remotely addresses the "sale or marketing" of ammunition.

---

[10]   The political motivation behind this lawsuit is evidenced by the fact that Plaintiffs did not sue two storefront sellers, Bass Pro Shops and Gander Mountain, both of which allegedly sold Holmes firearms and ammunition. (Am. Compl. at ¶¶ 40, 41, 42, 45, 49.)  Both Bass Pro Shops and Gander Mountain would have seen Holmes in person and initiated law enforcement background checks in connection with the sale of such firearms, which Holmes presumably passed. (*Id*.)  And yet, Plaintiffs sued LG, an online seller, arguing that LG failed to "implement any reasonable safeguards to prevent dangerous people from obtaining" ammunition and selling the ammunition "without any human interaction or screening." (*Id*. at ¶ 5.)  Despite what they say, Plaintiffs and their counsel seek to put an end to online sales of ammunition by judicial fiat rather than in the legislative arena, where firearms-related law and policy is appropriately made.

Plaintiffs' contention that a violation of Code Section 62-26(8) prohibiting "disturbing the peace" is the type of statutory violation contemplated by Congress when it created the § 7903(5)(A)(iii) exception is absurd. And Plaintiffs' contention that those potentially guilty of "disturbing the peace" and other Code violations include those "contributing to conduct" is completely without basis. (Pls.' Br. at 12.) There is no language in the Aurora City Code remotely suggesting that those who might "contribute" to another person disturbing the peace, carrying a firearm in public contrary to a posted prohibition, discharging a firearm in the city limits, or possessing a loaded firearm in a vehicle, is guilty of creating a public nuisance. (*See* Pls.' Br. at 12-13.) Plaintiffs' assertion these Code provisions (that LG plainly did not violate) are "applicable to the sale or marketing of ammunition" and can serve as the statutory predicate to an action within the § 7903(5)(A)(iii) exception contravenes the plain language of the PLCAA and the cases applying it. *See, e.g.*, *City of New York v. Beretta U.S.A. Corp*, 524 F.3d 384, 403 (2d Cir. 2008), *cert denied*, 129 S.Ct. 3320 (2009) (§ 7903(5)(A)(iii) exception encompasses only those statutes that "expressly regulate firearms" or "that clearly can be said to implicate the purchase and sale of firearms."); *Ileto*, 565 F.3d at 1135-36 ("Congress had in mind only ... statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry"); *Cf. Adames v. Sheahan*, 880 N.E.2d 559, 586 (Ill. App. 2007) (Congress, in passing the PLCAA, was primarily concerned about the proliferation of public nuisance suits against members of the firearms industry).[11]

Plaintiffs' representation that "other *courts* have concluded that the PLCAA permits public

---

[11] Plaintiffs have apparently abandoned their claim that the Colorado public nuisance statute is "applicable" to the sale or marketing of ammunition and that LG violated the statute. (*See* Am. Compl. ¶ 250; *see also* LG's Mot. at 13-15.) And Plaintiffs do not address the argument that private rights of action do not exist under either the Colorado nuisance statute or the public nuisance provisions in the Aurora City Code. (LG's Mot. at 13 n. 9.)

nuisance claims to proceed" is incorrect. (Pls.' Br. at 13) (emphasis added.) Just *one court* has permitted a public nuisance claim to proceed, an intermediate Indiana appellate court in *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. Ct. App. 2007). While that court held the broadly worded Indiana nuisance statute was "applicable" to the sale or marketing of firearms, it did not reach its conclusion through a reasoned analysis of the PLCAA or application of any canon of statutory interpretation. Instead, its conclusion was based solely on a previous ruling in the case by the Indiana Supreme Court, before the PLCAA became law, holding the plaintiff had stated a cause of action against defendants under the public nuisance statute. *Smith & Wesson Corp.*, 875 N.E. 2d at 432-33. The Indiana Supreme Court did not have occasion to consider the plain language of the § 7903(5)(A)(iii) exception and decide, as have other courts, that Congress did not intend for alleged violations of broadly worded statutes of general application to serve as the statutory predicate for the exception to immunity. *See, e.g.*, *Ileto*, 565 F.3d at 1135-36. Moreover, in finding the term "applicable" in § 7903(5)(A)(iii) to be unambiguous in applying the statute, the Indiana Appellate Court relied on a similar conclusion by the District Court in *City of New York v. Beretta*, 401 F.Supp.2d 244, 261-64 (E.D.N.Y. 2005), a decision that was reversed by the Second Circuit in *City of New York*, 524 F.2d at 403 (relying on canons of statutory construction to find that "applicable" statutes are those that "expressly regulate firearms" or that "clearly … implicate the purchase and sale of firearms.").[12]

---

[12] Plaintiffs also cite cases in which public nuisance claims against firearm manufacturers and sellers survived motions to dismiss, but each of those cases were decided before the PLCAA was enacted in 2005. (*See* Pls.' Br. at 31.) Indeed, the cases cited by Plaintiffs were the primary reason why Congress acted to provide statutory immunity for firearm industry members for harm "caused by the misuse of firearms by third parties." 15 U.S.C. § 7901(3). The cases were the "liability actions commenced . . . by the Federal government, States, municipalities, private interest groups and others" seeking "to use the judicial branch to circumvent the Legislative branch of government." 15 U.S.C. § 7901(8).

### 3. Plaintiffs' "duty" analysis is flawed and Plaintiffs ignore Colorado law on "predominate" cause altogether.

Regardless of how Plaintiffs characterize their case, they are accusing LG of failing to take affirmative steps to prevent James Holmes from acquiring the ammunition he allegedly used, and thereby failing to protect their daughter from Holmes' criminal acts. In their discussion of the duty question, Plaintiffs have not addressed a fundamental question: Whether a "special relationship" existed—between Holmes and LG, or LG and Plaintiffs' daughter—of such a nature that LG had a duty to take affirmative steps to protect Plaintiffs' daughter from Holmes. Nonfeasance cases, such as this case, require a special relationship, and Plaintiffs' failure to argue (or more importantly plead) the existence of such a relationship is a critical concession that LG did not owe a duty to protect Plaintiffs' daughter against Holmes' criminal acts.

Rather than address long-standing Colorado law governing when duties are owed to prevent third-party criminal attacks, Plaintiffs argue that a traditional duty analysis should not apply to "an online" business. (Pls.' Br. at 32.) Instead they contend that whether a duty exists should be analyzed by "weigh[ing]" various "factors." (*Id.*) Plaintiffs rely almost entirely on a medical-negligence lawsuit holding that "a non-treating physician who acts negligently in a hospital setting may owe a common law duty of reasonable care to a non-patient who is receiving treatment at the hospital[,]" *HealthONE v. Rodriguez*, 50 P.3d 879, 883 (Colo. 2002), as the proper guidepost for whether a duty exists between LG and victims of James Holmes' murderous acts.

The court in *HealthONE* was careful to limit its holding to "the particular facts and circumstances" of the case. 50 P.3d at 889. Those facts were that, in violation of hospital policy, the defendant left a remaining dose of potentially toxic nerve block medication on a nerve block cart shared by other physicians. Hospital policy required the defendant to dispose of remaining doses to avoid the risk that it would be mistakenly used by another physician. Plaintiff's treating

physician did just that and mistakenly injected the wrong medication resulting in serious injury. 50 P.3d at 884. In holding that the defendant owed a duty to the plaintiff, the court relied on its decision in *Greenberg v. Perkins*, 845 P.2d 530 (Colo. 1993), in which it cautioned:

> We describe the duty no more broadly than necessary to resolve the case before us, recognizing as we do that the scope of the physician's duty of care to a non-patient … raises difficult issues that should be resolved in the context of each individual case presenting such issues.

50 P.3d at 889. *HealthONE* has no application beyond its facts, and plainly has no application to the question of whether a product seller owes a duty to protect another from criminal misuse of a product by a third-party.[13]

The magnitude of the burden that Plaintiffs seek to impose on LG, and by extension any retailer of firearms, ammunition or any other potentially dangerous product, is extraordinary. It is entirely legal for products, including ammunition, to be sold via the internet, even if such products can be misused by some to cause harm. Ensuring that persons who purchase ammunition do not use the product for criminal purposes are burdens that any retailer—whether online or storefront— could never meet, as demonstrated by Plaintiffs' own allegations. (*See* Am. Compl. at ¶¶ 40, 41, 42, 45, 49.) The consequence of placing such burdens on websites would effectively put them out of business.[14]

While Plaintiffs' duty analysis is, at best, flawed, their analysis of proximate cause is non-

---

[13] Plaintiffs mistakenly rely on *Build It & They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 306 (Colo. 2011), a case decided under the Colorado dram shop liability statute, to support their argument LG owed their daughter a duty of ordinary care because the risk that Holmes would misuse the ammunition was "foreseeable". (*See* Pls.' Br. at 33.) But the court in *Strauch* addressed "foreseeability" in the context of proximate cause, not the duty question. 253 P.3d at 305-06. *Strauch* does not stand for the proposition that a general duty to protect against third party criminal acts may be imposed if the criminal act is "foreseeable."

[14] The analysis of whether a duty is owed further underscores the purpose of the PLCAA—that is, to bar the very lawsuit that LG now faces.

existent. They failed to refute the clearly expressed Colorado policy that an ammunition seller's "placement of … ammunition in the stream of commerce, even if such placement is found to be foreseeable, shall not be conduct deemed sufficient to constitute the proximate cause of injury, damage, or death resulting from a third party's use of the product." C.R.S. § 13-21-504(2). Plaintiffs also failed to distinguish the substantial body of Colorado case law addressing third-party conduct as the "predominant" cause of an event. (LG's Mot. at 20-21.) Ignoring the law of proximate cause cannot diminish the overwhelmingly predominant role Holmes had in causing senseless deaths and injuries. The chain of causation from Holmes' criminal acts in the movie theatre back to LG, one of the many sellers of ammunition allegedly possessed by Holmes, is, as a matter of law, simply too attenuated to impose liability on LG. *See Largo Corp. v. Crespin*, 727 P.2d 1098, 1103 (Colo. 1986); *see also Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1171 (D. Colo. 2001) ("Harris' and Klebold's actions on April 20, 1999 [at Columbine High School] were the predominant, if not sole, cause of Plaintiffs' injuries. 'Colorado's proximate cause rule is intended to ensure that casual and unsubstantial causes do not become actionable.' [Citation omitted] As a matter of law, Plaintiffs have failed to allege that the individual School Defendants' conduct was a legal cause of Plaintiffs' injuries.").

III.    **The PLCAA and the Colorado Immunity Statute are Constitutional.**

A.    **Plaintiffs' invitation to invoke the "Constitutional Avoidance" doctrine should be declined.**

Plaintiffs argue that under the doctrine of constitutional avoidance, their construction of the PLCAA "should prevail" because application of the statute to this case "would raise a multitude of constitutional problems." (Pls.' Br. at 20.) However, the doctrine applies only when there are "grave doubts" about the constitutionality of the statute. *Almendez-Torres v. United States*, 523 U.S. 1219 (1998). A weak constitutional claim will not support reliance on the doctrine. *Empressa*

*Cubana Exportadora v. United States*, 638 F.3d 794, 801 (D.C. Cir. 2011). In *Ileto v. Glock*, 565 F.3d 1126, 1143-44 (9th Cir. 2009), the court declined to apply the doctrine to avoid addressing the constitutionality of the PLCAA because it did not have "grave doubts" regarding the constitutionality of the statute. Nor should this Court have "grave doubts" about the constitutionality of the PLCAA and the Colorado immunity statute.

### B. Plaintiffs' constitutional challenges should be rejected.

The PLCAA is on firm constitutional footing. The Commerce Clause and the Supremacy Clause are the constitutional authority for the PLCAA. *See* U.S. Const. art. I, § 8 ("Commerce Clause"); and art. VI ("Supremacy Clause"). A central purpose for enactment of the PLCAA was that "[l]awsuits [that] have been commenced against manufacturers, distributors, [and] dealers [of firearms and ammunition] that operate as designed and intended, which seek money damages or other relief for the harm caused by the misuse of firearms by third parties . . . constitute[] an unreasonable burden on interstate and foreign commerce of the United States." 15 U.S.C. §§ 7901(a)(3), (6).[15]

Under the Supremacy Clause, "the Laws of the United States . . . shall be the Supreme Law of the Land[.]" U.S. Const. art. VI. If Congress clearly manifests intent, it can preempt state tort law that imposes a burden on interstate commerce. *Wyeth v. Levine*, 129 S.Ct. 1187, 1194-95 (2009); *BMW v. Gore*, 517 U.S. 559, 571-72 (1996). The PLCAA plainly demonstrates Congress' intent to preempt certain types of state tort actions, namely "qualified civil liability actions." *See Ileto*, 565 F.3d at 1135. Indeed, a central purpose of the PLCAA is "[t]o prohibit" victims of firearms violence from asserting "causes of action against manufacturers, distributors, [and]

---

[15] Plaintiffs have not challenged Congress' authority to enact the PLCAA under the Commerce Clause.

dealers . . . [of] ammunition products." 15 U.S.C. § 7901(b)(1). Any such "qualified civil liability

action . . . shall be immediately dismissed." *Id.* at § 7902.[16]

Nevertheless, Plaintiffs challenge the PLCAA under (1) the Tenth Amendment, (2) the

Separation of Powers doctrine, (3) the First Amendment right to access of courts, and (4) the Fifth

Amendment guarantee of equal protection and due process. Plaintiffs also challenge the Colorado

immunity statute, C.R.S. § 13-21-504.5, under iterations of arguments (3) and (4). The arguments

advanced by Plaintiffs have been rejected by every federal and state appellate court to address the

constitutionality of the PLCAA. *See, e.g., Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009)

(rejecting separation of powers, due process, equal protection and Fifth Amendment takings

challenges); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008) (rejecting First

and Tenth Amendment challenges as well as separation of powers challenge); *Estate of Charlot v*

*Bushmaster Firearms, Inc.*, 628 F.Supp.2d 174 (D.D.C. 2009) (rejecting separation of powers

challenge); *Estate of Kim v. Coxe*, 295 P.3d 380 (Alaska 2013) (rejecting separation of powers,

court access, equal protection and Tenth Amendment challenges); *Adames v. Sheahan*, 909 N.E.2d

742 (Ill. 2009) (rejecting Tenth Amendment challenge).

---

[16]   Courts that have addressed the issue have held that Congress was well-within its authority in granting immunity for qualified civil liability actions. *City of New York*, 524 F.3d at 394-95 ("Congress explicitly found that the third-party suits that the Act bars are a direct threat to the firearms industry," and "rationally perceived substantial effect on the industry of the litigation that the Act seeks to curtail."); *Ileto*, 565 F.3d at 1140-41 ("Congress rationally could find that, by insulating the firearms industry from a specified set of lawsuits, interstate and foreign commerce of firearms would be affected"). There are many examples of Congress' permissible preemption of state tort causes of action. *See, e.g., Cipollone v. Ligget Group, Inc.*, 505 U.S. 504, 516 (1992) (express preemption of state common law failure-to-warn claims by Federal Cigarette Labeling Act); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884-86 (2000) (conflict preemption of state statutory and common law negligent design claims by federal minimum safety standards); *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 673-76 (1993) (preemption of state negligence standard by federal regulations of maximum speed on railways).

## 1. The PLCAA does not violate the Tenth Amendment.

Under the Tenth Amendment, the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Although Plaintiffs relegate mention of the Tenth Amendment to a footnote (Pls.' Br. at 23 n. 15), they have essentially challenged the PLCAA on Tenth Amendment grounds, arguing: (1) the PLCAA "impermissibly infringes on Colorado's sovereign right to allocate its law making function" (*id*. at 20-21); and (2) the PLCAA "impermissibly requires" Colorado state courts to dismiss "valid cases" under state law (*id*. at 21-22). Plaintiffs' are wrong on several levels.

First, Plaintiffs lack prudential standing to challenge the PLCAA on Tenth Amendment grounds based on the "sovereign right" of Colorado. *See Tennessee Elec. Power Co. v. Tennessee Valley Authority*, 306 U.S. 118, 144 (1939) (holding no standing for individuals' Tenth Amendment challenge based on sovereign rights of state). The Tenth Circuit has followed this rationale. *United States v. Parker*, 362 F.3d 1279, 1284-85 (10th Cir. 2004) (holding no standing for individual to argue that government's use of Assimilative Crimes Act to prosecute state-defined firearm offenses allegedly "violates the Tenth Amendment" as it "interferes with the state's Second Amendment powers"), *cert denied*, 543 U.S. 874 (2004).

Second, the PLCAA does not "dictate[] how Colorado must conduct its lawmaking function with respect to gun dealer liability." (Pls.' Br. at 21.) Plaintiffs' unsupported argument is based on a flawed understanding of the statute itself. The PLCAA merely immunizes firearm industry members against some state law-based causes of action. The PLCAA does not dictate that the Colorado Legislature establish "liability standards for gun dealers[,]" as Plaintiffs contend. (Pls.' Br. at 21.) As Plaintiffs acknowledge elsewhere and as the PLCAA plainly provides,

ammunition sellers, like LG, may be sued for claims that fall within enumerated exceptions recognized by state law. Congress clearly did not "prohibit[] Colorado courts" from finding ammunition sellers responsible for causing injuries, it only required that any liability allowed under state law meet a minimum threshold established by federal law. Notably, Plaintiffs' fail to mention that this very argument has been rejected by multiple courts. *City of New York*, 524 F.3d at 396-97 (holding that the PLCAA "does not commandeer any branch of state government because it imposes no affirmative duty of any kind on any of them"); *Estate of Kim*, 295 P.2d at 388 (PLCAA does not violate protections of the Tenth Amendment); *Adames*, 909 N.E.2d at 764-65 (same); *City of New York v. Beretta*, 401 F.Supp.2d 244, 293-94 (E.D.N.Y. 2005) (same).

The cases relied on by Plaintiffs do not support their argument that Congress cannot impose an obligation on state court judges to enforce federal law. In *Printz v. United States*, 521 U.S. 898 (1997) (Pls.' Br. at 21), the Court found a federal statute requiring state executive officials to conduct firearm purchaser background checks unconstitutional. The Court held that the federal government "may not compel the States to enact or administer a federal regulatory program". *Id* at 926 (citing *New York v. United* States, 505 U.S. 144, 188 (1992) (Congress could not constitutionally require States to enact legislation providing for the disposal of radioactive waste)). In so holding, the Court drew a distinction between unconstitutional intrusions on state sovereignty that require state executive officials to administer federal laws, and constitutionally permissible requirements that state court judges enforce federal law. *Printz* 521 U.S. at 907. Plaintiffs cannot refute this important distinction, so they ignore it. The PLCAA does not in any sense dictate how Colorado must govern or what laws it must enact.[17]

---

[17] The other cases Plaintiffs cite are not helpful because they involved issues unrelated to the question of whether the federal government may constitutionally require state courts to apply federal laws. (*See* Pls.' Br at 21.) In *Minnesota v. Clover Leaf Creamery Co*., 449 U.S. 456

## 2. The PLCAA does not violate the Separation of Powers doctrine.

Plaintiffs' argument that the PLCAA violates separation-of-powers principles is equally unfounded. (*See* Pls.' Br. at 22.) The PLCAA does not direct how to decide pending cases under existing law. Rather, it creates a new federal minimum standard to be applied by all courts in all pending and future cases that limits the circumstances in which ammunition sellers, among others, may be sued for harm resulting from the criminal and unlawful use of qualified products (*e.g.*, ammunition). Courts are left to apply the PLCAA to particular cases and decide whether a case is a "qualified civil liability action" that "may not be brought", or a case falling within an exception to immunity. 15 U.S.C. §§ 7902, 7903(5); *see Ileto*, 565 F.3d at 1139-40 (Because Congress has amended the applicable law, the PLCAA does not violate separation-of-powers principles); *City of New York*, 524 F.3d at 395-396 ("Because the PLCAA does not merely direct the outcome of cases, but changes the applicable law, it does not violate the doctrine of separation of powers").[18]

---

(1981), the Court held that a state statute banning nonreturnable plastic milk containers did not violate the Equal Protection Clause of 14th Amendment. The Court observed that states "are free to allocate the lawmaking function" among the branches of state government. The question of whether a federal statute infringed on a state's sovereignty was not before the Court. In *Sweezey v. State of New Hampshire*, 354 U.S. 234 (1957), the question was whether the state Attorney General exceeded his state statutory authority and violated a college professor's Due Process and First Amendment rights by holding the professor in contempt for refusing to answer certain questions. Again, the Court was not confronted with the question of whether a federal statute infringed on a state's sovereign law-making function. Justice Frankfurter's concern that the Court not become involved in determining "the appropriate distribution of powers" among state legislative, executive and judicial branches, is immaterial to the question of whether Congress may impose an obligation on state court judges to enforce federal law.

[18] Plaintiffs wrongly rely on the "immediate dismissal" language in § 7902(b) of the PLCAA (or as Plaintiffs call it: "dismissal command" (Pls.' Br. at 22)) to support their position that the PLCAA infringes on the role of the judiciary by directing state courts to dismiss cases. First of all, the "immediate dismissal" language applies only to cases that were pending on October 26, 2005, when the PLCAA became law. This case was not pending when the PLCAA was enacted. More importantly, Congress only directed that pending "qualified civil liability" actions be dismissed thus requiring the courts to first make determinations that any pending case fits the definition of claims that should not proceed. The *Ileto* and *City of New York* cases were both pending when the PLCAA was enacted into law and the district courts in both cases

Plaintiffs' reliance on *United States v. Klein*, 80 U.S. 128 (1871) is misplaced. In *Klein*, the Court held that a federal law was unconstitutional because it prohibited courts from considering post-civil war presidential pardons as evidence of loyalty to the Union and directed that such pardons be "taken and deemed . . . conclusive evidence" barring a claimant's right to return of property seized during the war. The Court found the law to be an impermissible attempt by Congress to prescribe "rules of decision to the Judicial Department of the government in cases pending before it . . . ." *Id.* at 146. Here, the PLCAA does not direct courts' consideration of evidence, does not direct the outcome of particular cases and does not contravene the rule announced in *Klein*.

The distinction between *Klein* and this case is made even clearer by more recent Supreme Court precedent. In *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429 (1992), the Court held that statutory amendments implementing the Northwest Timber Compromise did not violate separation-of-powers principles. In the amendments, Congress provided that lands in compliance with certain statutory subsections were deemed to meet the requirements set forth in other subsections. *Id.* at 437-38. The Court held that the new law "compelled changes in law, not findings or results under old law" because the statute changed the standard for compliance with harvesting restrictions. *Id.* at 438.

*Miller v. French*, 530 U.S. 327 (2000), further illustrates the point. There, the Court considered the constitutionality of the Prison Litigation Reform Act, which set new standards for prospective relief in civil disputes over prison conditions. When prison officials moved to terminate an existing injunction, an automatic stay provision in the Act was applied pending

---

performed their adjudicatory function and decided the claims were preempted because they were "qualified civil liability actions".

resolution of the motion to terminate. The Court rejected the argument that the automatic stay provision violated *Klein* by mandating a particular outcome:

> Section 3626(e) operates in conjunction with the new standards for the continuation of prospective relief; if the new standards of § 3626(b)(2) are not met, then the stay 'shall operate' unless and until the court makes the findings required by § 3626(b)(3). Rather than prescribing a rule of decision, § 3626(e) simply imposes the consequences of the court's application of the new legal standard.

*Id.* at 349; *see also Axel Johnson Inc. v. Arthur Anderson & Co.*, 6 F.3d 78, 82 (2d Cir. 1993) (Section 27(a) of the Securities and Exchange Act did not interfere with judicial fact finding and left the determination of whether a claim falls within the ambit of the statute to the courts); *United States v. Sioux Nation of Indians*, 448 U.S. 371, 406 (1980) (federal statute providing for *de novo* review of an Indian Claims Commission judgment did not violate separation-of-powers principles because the court was "completely free" to conduct its review under the facts and law).

Here, as in *Robertson*, *Miller*, *Axel Johnson* and *Sioux Nation*, the PLCAA does not direct that specific legal or factual findings be made by the courts. Nor does it dictate the evidence to be received, the significance to attach to any evidence, nor the outcome of any case. The PLCAA simply establishes a federal minimum standard that courts must apply to claims brought against firearm and ammunition sellers and it leaves to those courts to apply the new standard. *See Estate of Charlot v. Bushmaster Firearms, Inc.*, 628 F.Supp.2d 174, 184 ("The PLCAA identifies particular types of claims that are not permissible and leaves it to the courts to apply those standards in the cases before them."); *District of Columbia v. Beretta*, 940 A.2d 163, 173 (D.C. 2008) ("nothing within the PLCAA controls a court's determination as to whether particular cases satisfy the new legal standard or its exceptions") (alterations omitted). The PLCAA is harmonious with separation-of-powers principles.

3. **The PLCAA and the Colorado Immunity Statute do not violate First Amendment and open access to court principles.**

While the First Amendment protects the right to petition the government for redress of grievances, the right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court". *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The right is not violated by a statute that provides a complete defense to a cause of action or curtails a category of causes of action. *City of New York*, 524 F.3d at 397-98 (holding that the PLCAA did not deprive the plaintiff of its First Amendment right of access to the courts).

Plaintiffs' claimed denial of court access is spurious. Plaintiffs have filed a wrongful death lawsuit in a Colorado court against the movie theater where the shooting occurred, seeking damages for the death of their daughter. (Doc. 15; Doc. 1-8 at 14.) And Plaintiffs concede court access remains available by acknowledging that the PLCAA allows for "liability against gun dealers in negligent entrustment actions." (Pls.' Br. at 23.) The PLCAA also allows for court access under other enumerated potential exceptions. 15 U.S.C. § 7903(5)(A). *See Hammond v. United States*, 786 F.2d 8, 13 (1st Cir. 1986) (Congressional alteration of prior rights and remedies does not create right of access concerns because "[t]here is no fundamental right to particular state-law tort claims").

Plaintiffs' reliance on *Poindexter v. Greenhow*, 114 U.S. 270 (1885) (Pls.' Br. at 24), is misplaced because a due process challenge was not even involved. Rather, there the challenge to a Virginia statute that prohibited state tax collectors from accepting previously issued coupons in payment of taxes was based on impairment of contract principles. The Court held the statute to be unconstitutional because it impaired a contract obligation owed by the Commonwealth under an earlier statute and the exclusive remedy provision in the statute provided no remedy at all. 114 U.S. at 300-01. In short, *Poindexter* stands for the basic proposition that under the Contracts

Clause of the federal constitution, a state statute cannot impede contractual obligations, an issue that is simply irrelevant to the present case.

Plaintiffs also claim that C.R.S. § 13-21-504.5 violates the Colorado Constitution's guarantee of open access to courts. (Pls.' Br. at 24-25.) It does not. First, as discussed above, Plaintiffs have filed a wrongful death action against the movie theater, and, earlier in this case, sued James Holmes for money damages. Second, Plaintiffs ignore that there are exceptions to ammunition/firearm seller immunity under C.R.S. § 13-21-504.5, including that a seller "may be sued in tort for any damages proximately caused by an act" of the seller "in violation of a state or federal statute or regulation." *Id*. at § 13-21-504.5(4).

Plaintiffs' argument confuses the right of access to the courts with a nonexistent right to assert a specific cause of action. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 88 n. 32 (1978) ("Our cases have clearly established that a person has no property, no vested interest, in any rule of common law.") (internal alterations and citation omitted); *see also Sigman v. Seafood Ltd, P'ship*, 817 P.2d 527, 533 (Colo. 1991) (Colorado Constitution open access to courts provision "does not prevent the legislature from changing the law which creates a right. Rather, this section simply provides that if a right does accrue under the law, the courts will be available to effectuate such right.") (citation omitted).

The challenged Colorado statute is presumed to be constitutional. *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 (Colo. 1992). Here, Plaintiffs have fallen well short of their burden of establishing unconstitutionality "beyond a reasonable doubt." *See id.* Relying on *Estate of Stevenson*, Plaintiffs go so far as to suggest that the purpose of a statute must include public safety in order to pass rational basis review. (*See* Pls.' Br. at 25.) *Estate of Stevens*, however, says nothing of the sort. Regardless, the Colorado Legislature could have rationally

concluded that "under no theory shall a firearms or an ammunition manufacturer, importer, or dealer be held liable for the actions of another person." C.R.S. § 13-21-501; *see also Sigman*, 817 P.2d at 532-33 (rejecting, among others, the plaintiffs' court access challenge to a Colorado statute significantly limiting dram shop liability).[19]

At bottom, Congress and the Colorado Legislature have merely barred some, but not all, of Plaintiffs' claims arising out of Holmes' shooting of their daughter. There has been no unconstitutional denial of court access. "The right to petition exists in the presence of an underlying cause of action and is not violated by a statute [*e.g.*, PLCAA and C.R.S. § 13-21-504.5] that provides a complete defense to a cause of action or curtails a category of causes of action." *City of New York*, 524 F.3d at 397. Because neither the PLCAA nor C.R.S. § 13-21-504.5 "impede, let alone entirely foreclose, general use of the courts by would-be plaintiffs," they do not deprive Plaintiffs of right of access to the courts. *See id*. at 398; *see also Estate of Kim*, 295 P.3d at 390.

> **4.    The PLCAA and the Colorado Immunity Statute do not violate the Fifth Amendment guarantee of equal protection and due process.**

Plaintiffs argue that Congress, in passing the PLCAA, violated their due process rights by "wholly eliminating the common law rights of a class of victims injured by particular tortfeasors, without providing an alternative remedy." (Pls.' Br. at 23-24.)    Plaintiffs' argument is illogical

---

[19]    Plaintiffs' critique of C.R.S. § 13-21-504.5(1) for immunizing sellers from claims related to a third-party's "discharge of a firearm or ammunition[,]" but permitting "actions related to armed robbery or an assault where the victim was pistol whipped with a gun" (Pls.' Br. at 25) is nonsensical. That the Colorado Legislature did not see pistol whipping-based tort actions as an unreasonable threat to the firearms industry has no bearing on the constitutionality of the C.R.S. § 13-21-504.5. *See also Sigman*, 817 P.2d at 531-33 (rejecting the plaintiffs' vagueness and equal protection challenges premised on liability distinctions in Colorado dram shop liability limiting statute). And Plaintiffs' suggestion that a firearm manufacturer/seller could be sued by pistol whipping victims underscores both Plaintiffs' fundamental misunderstanding of the scope of duties in tort law and the baselessness of the very claims asserted against LG, an ammunition seller.

given that the PLCAA eliminates some claims against ammunition sellers but not others. *See Ileto*, 565 F.3d at 1143 (PLCAA does not "completely abolish plaintiffs' ability to seek redress" because "[s]ome claims are preempted, but many are not"). Indeed, Plaintiffs can and have sued the movie theater where the shooting occurred in a related action (Doc. 15; Doc. 1-8 at 14), and Holmes in this action (but later dismissed him), as well as other defendants without immunity (*compare* Doc. 1-1, Original Complaint *with* Am. Compl.).

Even if the PLCAA eliminated *all* claims against ammunition sellers, it would not violate substantive due process. Tort rights do not vest until there is a final judgment. *See New York Cent. R.R. Co. v. White,* 243 U.S. 188, 198 (1917) ("No person has a vested right in any rule of law, entitling him to insist that they remain unchanged for his benefit"). Simply put, Plaintiffs have not and cannot establish a constitutionally protected property interest in an un-litigated common law claim. *See Duke*, 438 U.S. at 88 n. 32 ("Our cases have clearly established that a person has no property, no vested interest, in any rule of the common law.").[20]

Plaintiffs' brief omits the fact that economic regulations challenged on equal protection grounds need only satisfy the rational-basis standard—that is, the statute "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Brach Commc'ns, Inc.*, 508 U.S. 307, 313 (1996). Because of the enumerated exceptions, the PLCAA does not eliminate all means of redress. To the contrary, the PLCAA constitutes a rational "effort" to shield, among others, ammunition sellers

---

[20]    *See also Gavin v. Branstad*, 122 F. 3d 1081, 1090-91 (8th Cir. 1997) ("the doctrine of vested rights . . . . depends on the existence of a final judgment."); *Sowell v. American Cyanamid Co*., 888 F.3d 802, 805 (11th Cir. 1989) ("[A] legal claim affords no definite or enforceable [sic] property right until reduced to final judgment."); *Hammond v. United States*, 786 F.2d 8, 12 (1st Cir. 1986) (federal statute abolishing widow's wrongful death claim did not violate due process "[b]ecause rights in tort do not vest until there is a final, nonreviewable judgment.")

from wide-spread tort liability resulting from criminal or unlawful use of qualified products.  It is settled that judicial deference be given to legislative judgments in the area of economic regulation, and the PLCAA easily passes constitutional muster under the controlling rational basis test. *See Duke*, 438 U.S. at 83 (Liability-limiting provisions of the Price-Anderson Act are a "classic example of an economic regulation," that "come to the Court with a presumption of constitutionality," and are subject to rational basis review).   Here, Congress reasonably concluded that imposing liability on ammunition sellers, among others in the firearms industry, for the unlawful acts of third parties constituted an unreasonable burden on interstate commerce. *See* § 7901(a)(6). And Congress rationally could have concluded that common law actions "sustain[ed]" by a "maverick judicial offer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States." § 7901(a)(7). *Cf. Ileto*, 565 F.3d at 1140 ("There is nothing irrational or arbitrary about Congress' choice [in enacting the PLCAA]."); *City of New York*, 524 F.3d at 395 ("Congress rationally perceived a substantial effect on the industry of the litigation that the Act seeks to curtail.").  The same can be said with regard to the Colorado Legislature, *see* C.R.S. §§ 13-21-501 & 504.5(2).

There can be no dispute that legislatures may "create substantive defenses or immunities for use in adjudication—or eliminate its statutorily created causes of action altogether . . . . In each case, the legislative determinations provides all the process that is due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982).   Indeed, the Supreme Court has declared laws constitutional that, in fact, eliminate a whole category of tort actions with respect to a whole class of defendants.  *See, e.g.*, *Martinez v. California*, 44 U.S. 277, 281-83 (1980); *Silver v. Silver*, 280 U.S. 117, 122 (1929).   Nor does the Equal Protection Clause require a legislature to treat all types

of tort laws the same. *Minnesota v. Clover leaf Creamery Co.*, 449 U.S. 456, 466 (1981). The distinctions drawn by Congress and the Colorado Legislature easily satisfy rational-basis review.

### IV.     The PLCAA Does Not Impliedly Preempt The Colorado Immunity Statute.

Plaintiffs argue the PLCAA has "impliedly" preempted "state immunity laws like the Colorado statute [C.R.S. § 13-21-504.5]" because the PLCAA enacted a comprehensive federal scheme governing firearm and ammunition dealer immunity. (Pls.' Br. at 16.) Plaintiffs also claim the PLCAA "completely occupies the legislative field of immunity for gun and ammunition dealers" by setting a "floor and ceiling" with respect to the scope of protection afforded dealers— and that any state law deviating from this framework conflicts with federal law. (*Id*. at 17-18.) Plaintiffs also suggest that it would be "impossible to comply" with both the PLCAA and Colorado immunity statute. (*Id*. at 19.) Plaintiffs' arguments are wrong on several levels.

First, "[p]reemption is fundamentally a question of congressional intent." *Qwest Broadband Servs. v. City of Boulder*, 151 F.Supp.2d 1236, 1239 (D. Colo. 2001). Courts do not "lightly attribute to Congress . . . the intent to preempt state or local laws." *Ramsey Winch, Inc. v. Henry*, 555 F.3d 1199, 1204 (10th Cir. 2009) (citation omitted). The historic police powers of the State are not to be superseded unless that was the "clear and manifest purpose of Congress." *Id*. This assumption applies with greater force when the alleged conflict is in an area traditionally occupied by the States (such as tort law). *Id*. at 1205. Any ambiguity favors a finding against preemption. *See Altria Group Inc. v. Good*, 555 U.S. 70, 76-77 (2008).

The plain language of the PLCAA and its legislative purpose militate against a preemption finding because its stated purpose is to protect sellers against liability for "the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended" while "[p]reserve[ing] and protect[ing] . . . *State sovereignty*[.]" 15

U.S.C. §§ 7901(a)(5), (6) (emphasis added). Tenth Circuit precedent underscores that such congressional intent controls and that state laws that are not in direct conflict with even overarching federal schemes are permissible. *Cf. Henry*, 555 F.3d at 1204-06. Thus, Colorado can permit fewer exceptions to general immunity than the potential exceptions under the PLCAA.

The cases relied on by Plaintiffs do not support their position. For example, in *Arizona v. United States*, 132 S.Ct. 2492 (2012) (Pls.' Br. at 18), the Federal government sued the State of Arizona, claiming a controversial state law dealing with illegal aliens was preempted by federal law governing immigration. Implied preemption may be inferred from a framework of regulation "so pervasive that Congress left no room for the States to supplement it." *Id.* at 2501. Citing numerous federal statutes, the Supreme Court recognized that governance of immigration and alien status was both "extensive and complex." *Id.* at 2499. Besides the breadth of federal law on immigration, two federal agencies were assigned to play a major role in enforcing the country's immigration laws. Earlier precedent underscored that "[f]ederal law makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of alien's within the Nation's border." *Id.* at 2502. The Court held that Congress intended to occupy the entire field with respect to alien registration, and thus even complementary state regulation (*i.e.*, consistent with the federal scheme) was impermissible. The Court found other aspects of the Arizona law were also preempted by a theory of conflict preemption.

In contrast, the PLCAA is not a widespread regulatory scheme, as it addresses a single issue—immunity for manufacturers and sellers of firearms and ammunition from claims based on harm caused by third parties. Most importantly, the PLCAA does not create causes of action, but instead relies on state law to do so: "[N]o provision of this Act shall be construed to create a public

or private cause of action or remedy." 15 U.S.C. § 7903(5)(C). The PLCAA is not a "civil liability program," as Plaintiffs suggest. (Pls.' Br. at 20.)

Tellingly, there are no counterpart regulations to the PLCAA in the Code of Federal Regulations. *See, e.g.*, Title 8 of the CFR (dealing with Immigration and Naturalization). To the contrary, the PLCAA identifies that the "sale … of firearms and ammunition in the United States are heavily regulated by Federal, *State and local laws* ...." 15 U.S.C. § 7901(a)(4) (emphasis added.) And the PLCAA explicitly recognizes the role of states by expressly preserving the "Separation of Powers Doctrine and important principles of federalism, State sovereignty and comity between sister States" 15 U.S.C. § 7901(b)(6), and recognizing potential exceptions to immunity.

Unlike immigration laws, which have historically been the province of the federal government, federal firearms laws were crafted to accommodate state counterparts. *See* 18 U.S.C. § 927 (No provision of the Gun Control Act shall be construed as "indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter . . . unless the two cannot be reconciled or consistently stand together"). The same, of course, goes for tort law, which has traditionally been reserved to the states. *Couture v. Dow Chemical U.S.A.*, 804 F.Supp. 1298, 1301 (D. Mont. 1992) (preemption of tort law not to be lightly inferred).

The PLCAA's prohibition of certain claims is also unlike the regulation of cigarette warnings, an issue addressed in *23-24 94th St. Grocery Corp v. New York City Bd. of Health.*, 685 F.3d 174 (2d Cir. 2013) (*see* Pls.' Br. at 18-19). In *Grocery*, the Second Circuit considered a New York City resolution requiring tobacco retailers to display signs bearing graphic images of the adverse effects of smoking. The court held the resolution could not stand due to the existence of

federal labeling laws. The Federal Cigarette Labeling and Advertising Act's express purpose was "to establish a comprehensive Federal program to deal with cigarette labeling and advertising." *Id*. at 177 (citing 15 U.S.C. § 1331). The Act also included an express preemption clause. *Id*. at 181. Referencing the preemption clause, the Court found the statutory scheme barred state-required warnings which could affect cigarette retailers and manufacturers' promotional efforts. *Id*. at 184-85.

Contrary to Plaintiffs' suggestion, *Grocery* does not stand for the proposition that "state laws may not impose greater restrictions than those imposed by a federal law." (*See* Pls.' Br. at 18.) Rather, the Second Circuit held the opposite: "[W]e do not hold that supplementary warnings are, in and of themselves, preempted by the Labeling Act …. [States] remain free to impose time, place and manner restrictions on the advertising and promotion of cigarettes, and to engage in anti-smoking campaigns." *Id*. at 183 (emphasis added). Nor does *Riegel v. Medtronic, Inc.*, another case cited by Plaintiffs, stand for such a proposition. 552 U.S. 312, 323 (2008). The holding in *Riegel* was based on the language of the federal law at issue, which expressly prohibited state laws which were "different from, or in addition to, any requirement" of the federal law. *Id*. (citing 21 U.S.C. § 360).[21]

---

[21] The Tenth Circuit has recognized that state laws can permissibly supplement federal laws. In *Choate v. Champion Home Builders Co*., 222 F.3d 788, 790 (10th Cir. 2000), the plaintiff's mobile home caught fire, killing a man who attempted to rescue her. The plaintiff sued the manufacturer for installing a smoke detector without a battery backup or warning when it lost power. The defendants moved for summary judgment, claiming the Manufactured Housing Act and regulations promulgated under it expressly and impliedly preempted the plaintiffs' claims. *Id*. at 791. With respect to implied preemption, the Court recognized that while state laws could be preempted where they stand as "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[,]" the critical inquiry is whether the state rule could be enforced "without impairing the Federal superintendence" of manufactured homes as established by the Act. (*Id*. at 795. The Tenth Circuit held: Yes, the Act served "as a minimum standard for smoke detection." *Id*. Nothing in the Act suggested intent to provide manufacturers of mobile homes with relief from "potentially higher standards derived from

Plaintiffs' suggestion that the PLCAA sets both a "floor and ceiling" with respect to immunity for ammunition sellers is without merit. The law review article on which Plaintiffs rely underscores the rarity of a federal preemption ceiling, especially in the absence of expressed congressional intent: "laws and regulation that . . . prohibit more protective state regulation . . . have been rare." William W. Buzbee, *Asymmetrical Regulation: Risk, Preemption, and the Floor/Ceiling Distinction*, 82 N.Y.U.L. Rev. 1547, 1552 (2007) (*see* Pls.' Br. at 18 n. 13). Indeed, most federal laws establish so-called "floors," which allow for "additional and more stringent regulation." (*Id*. at 1554.) "[F]loor and ceiling preemption" (or what the author terms "unitary federal choice preemption") is usually limited to when Congress has defined its role as exclusive. And such complete preemption is more likely to occur with design mandates (products, or drugs), behavioral mandates, and performance standards (environmental laws). (*See id*. at 1604, 1615-18.)[22]

Finally, Plaintiffs' "impossible to comply" argument (*i.e.*, conflict preemption) is nothing more than an iteration of their "floor and ceiling" argument. This argument misses the mark by a wide margin. "Impossibility pre-emption is a demanding defense." *Wyeth v. Levine*, 555 U.S. 555, 573 (2009). Here, there can be no impossibility-based preemption because the PLCAA does not *require* an individual to do anything, it "only serves as a shield against a class of claims brought against manufacturers and sellers[.]" *Woods v. Steadman's Hardware, Inc.*, 2013 U.S. Dist. LEXIS

---

general state products liability law developed by state courts." *Id*. at 796. Because the state products liability claim would not thwart the federal policy in any material way, the Court found there was no implied preemption. *Id*.

[22] Notably, the article does not discuss firearms (or the PLCAA) as an area where the federal government has established a ceiling or a unitary choice. The PLCAA is harmonious with this analysis. While it prohibits certain tort suits, it also provides that "exceptions enumerated . . . shall be construed so as not to be in conflict, and no provision of this Act shall be construed to create a public or private cause of action or remedy." 15 U.S.C.S. § 7903(5)(C). The PLCAA is not a "floor and ceiling" statute.

26261, *10 (D. Mont. Feb. 26, 2013) (examining scope and purpose of PLCAA). Simply because a federal law exists on a subject matter, supplementation by state laws is permissible and not preempted if the state law does not "thwart the federal policy in a material way." *See Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 488-89 (10th Cir. 1998) ("Conflict preemption requires that the state or local action be a material impediment to the federal action") (citation omitted). Here, the Colorado immunity statute bolsters—and does not thwart in any material way—the purpose of the PLCAA, which is, *inter alia*, ammunition seller immunity in cases resulting from the criminal or unlawful misuse of ammunition by third-parties.

Because the PLCAA does not create causes of action, even for the enumerated exceptions, the fewer exceptions to immunity under the Colorado statute does not "sufficiently injure the objectives" of the PLCAA so as to warrant preemption. *McCarty v. McCarty*, 453 U.S. 210, 232 (1981). Plaintiffs' simply cannot escape the reality the Colorado immunity statute is *consistent*— not in conflict—with the PLCAA. *Tarrant Reg'l Walter Dist. v. Hermann*, 656 F.3d 1222 (10th Cir. 2011) (recognizing presumption against implied conflict preemption). Plaintiffs' implied preemption argument should be rejected.

**CONCLUSION**

For all of the foregoing reasons, Defendant LuckyGunner, LLC, requests that the Court grant its motion to dismiss, and for any further relief the Court deems appropriate.

**DATED: January 9, 2015**

Respectfully submitted,

**LUCKYGUNNER, LLC**

By: /s/ *Andrew A. Lothson*
       One of Defendant LuckyGunner, LLC's
       Attorneys

Marc Colin
Bruno, Colin & Lowe, P.C.

1999 Broadway, Suite 3100
Denver, Colorado 80202
(303) 831-1099
(303) 831-1088 FAX
MColin@brunolawyers.com

Andrew A. Lothson
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
(312) 321-0990 FAX
alothson@smbtrials.com

**Attorneys for Defendant, LuckyGunner, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of January, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

1.     Thomas W. Stoever, Jr.
       Paul W. Rodney
       Arnold & Porter LLP
       370 Seventeenth Street, Suite 4400
       Denver, CO 80202

**Counsel for Plaintiffs**

2.     Patrick J. Rooney, Esq.
       Donald Chance Mark, Jr., Esq.
       Peter A.T. Carlson, Esq.
       Fafinski, Mark & Johnson
       775 Prairie Center Dr., Suite 400
       Eden Prairie, MN 55344

**Counsel for The Sportsman's Guide, Inc.**

3.     Phillip R. Zuber, Esquire
       Sasscer, Clagett & Bucher
       5407 Water Street, Suite 101
       Upper Marlboro, MD 20772

4.     Bruce A. Montoya, Esq.
       Messner Reeves, LLP
       1430 Wynkoop St., Suite 300
       Denver, CO 80202

**Counsel for Defendant Brian Platt, d/b/a BTP Arms**

I hereby further certify that I have mailed the foregoing via U.S. mail, postage prepaid, to the following non-CM/ECF participants:

5.     Jonathan E. Lowy
       Elizabeth Burke
       Kelly Sampson
       Brady Center to Prevent Gun Violence
       840 First Street, NE, Suite 400
       Washington, DC 20005

**Counsel for Plaintiffs**

6.      Gold Strike E Commerce, LLC
        d/b/a bulletproofbodyarmorhq.com
        Christopher E. Russell, Agent for Service
        1546 West Vine Ave.
        Mesa, AZ 85202


                                        */s/  Andrew A. Lothson*
                                          Andrew A. Lothson