# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:14-cv-02822 - RPM

SANDY PHILLIPS, individually and as surviving
parent, of Jessica Ghawi, decedent;

LONNIE PHILLIPS, individually and as surviving
parent of Jessica Ghawi, decedent,

Plaintiffs,

v.

LUCKY GUNNER d/b/a/ BULKAMMO.COM,
THE SPORTSMAN'S GUIDE,
BRIAN PLATT d/b/a/ BTP ARMS,
GOLD STRIKE E COMMERCE LLC d/b/a/
BULLETPROOFBODYARMORHQ.COM, and
JOHN DOES 1 through 10, unknown individuals,

Defendants.

---

## DEFENDANT THE SPORTSMAN'S GUIDE'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

---

Defendant The Sportsman's Guide, Inc. ("Sportsman's Guide") submits this Reply Brief

in support of its Motion to Dismiss all counts against it in the Amended Complaint.

## ARGUMENT

I. **COUNT 5 OF THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS' NEGLIGENCE CLAIM IS A "QUALIFIED CIVIL LIABILITY ACTION" AND IS BARRED UNDER THE PLCAA.**

According to Plaintiffs, Count 5 of their Amended Complaint, which asserts a common-

law negligence claim against Sportsman's Guide, is not barred by the PLCAA because the

statute uses the word "solely" in its preamble and only bars claims that are caused "solely" by a

third-party's criminal conduct.  (Plaintiffs' Opp. Memo. (ECF 27), at 5.)  As such, Plaintiffs

argue they should be permitted to proceed with their common-law negligence claim against Sportsman's Guide since they have alleged that Sportsman's Guide's actions of selling ammunition to Holmes online *contributed* to the alleged harm they suffered—*i.e.,* it was not the "sole" cause of the harm. Plaintiffs' interpretation of the statute is without basis and should be rejected.[1]

### A.     Plaintiffs Have Not Alleged Any Facts Showing Sportsman's Guide was Negligent.

As a preliminary matter, Plaintiffs clearly have not alleged facts sufficient to plausibly claim that Sportsman's Guide was causally responsible—either solely or partially—for the harm they allege. Nowhere in their Opposition Brief do Plaintiffs argue, or even suggest, that Sportsman's Guide participated in the events of July 20, 2012, nor do they claim Sportsman's Guide had any actual knowledge of Holmes' mental illness, his alleged drug use, or his intentions to commit criminal acts. In addition, the fact that Sportsman's Guide sells its products online can hardly be evidence by itself that Sportsman's Guide contributed to the harm alleged by Plaintiffs. Indeed, Plaintiffs' Amended Complaint alleges that Holmes purchased both ammunition and the actual firearms used by him in his attack from Gander Mountain stores in Aurora, Colorado, and from Bass Pro Shops in Denver, Colorado *in person*. (See Amended Complaint, ¶¶ 40-42, 49.) As such, Plaintiffs have failed to adequately plead facts plausibly

---

[1]  In their Opposition Brief, Plaintiffs also argue that both the PLCAA and the Colorado Statute are unconstitutional. (See Plaintiffs' Opp. Memo., at 20-26.) As outlined by Defendant Lucky Gunner ("LG") it its Reply Memorandum in Support of Motion to Dismiss, however, none of the arguments from Plaintiffs in this regard has merit. As such, Sportsman's Guide adopts and incorporates herein by reference the arguments made by LG with regard to the Constitutionality of the PLCAA and the Colorado Statute. (LG Reply Memo. (ECF 32), at 17-30.)

supporting a claim that Sportsman's Guide contributed to any harm (and it clearly fails to meet the standard of *Iqbal* and *Twombly*).

**B.      The PLCAA Unequivocally Bars Plaintiffs' Common-Law Negligence Claim.**

Even if Plaintiffs were somehow able to allege facts sufficient to plausibly assert that Sportsman's Guide's actions contributed to any harm, the clear language in the PLCAA indicates that common-law negligence claims are barred by the statute.  In a portion of the preamble not cited by the Plaintiffs, the statute indicates that Congress enacted the PLCAA in response to "[l]awsuits … commenced against manufacturers, distributors, dealers and importers of firearms that operate as designed and intended, which seek money damages and other relief *for the harm caused by the misuse of firearms by third parties, including criminals*."  15 U.S.C. § 7901(a)(3) (emphasis added).  In another section of the preamble, the statute indicates that Congress found that businesses engaged in the sale of ammunition in interstate commerce "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse…ammunition products."  15 U.S.C. § 7901(a)(5).  Neither of these sections even remotely suggests that a common-law negligence claim against an ammunition dealer is permitted so long as there is an allegation that the actions of the dealer were a contributory cause of the alleged harm.  On the contrary, they suggest that the aim of the statute was precisely as argued by Sportsman's Guide—to prohibit *all* claims against ammunition dealers, other than those specifically enumerated in the statute, "for the harm caused by those who criminally or unlawfully misuse…ammunition products."  15 U.S.C. § 7901(a)(5).

Moreover, the statutory construction offered by Plaintiffs is directly contrary to the holdings of other state and federal courts, which have explicitly found that the PLCAA bars

common-law negligence claims. *See, e.g.*, *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 46 (D.D.C. 2013) (finding that the PLCAA "unequivocally" bars negligence claims); *Ileto v. Glock*, 565 F.3d 1126, 1135 (9th Cir. 2009) (finding that "Congress intended to preempt general tort theories of liability even in jurisdictions . . . that have codified such causes of action."); *Estate of Kim v. Coxe*, 295 P.3d 380, 387-388 (Alaska 2013) (finding that the PLCAA bars a negligence claim); *Gilland v. Sportsmen's Outpost, Inc.*, No. X04CV095032765S Conn. Superior LEXIS 1320, *19-20 (Conn. Super. May 26, 2011) ("[U]nder the PLCAA, a 'qualified civil liability action,' … with certain enumerated exceptions, includes cases where it is alleged that gun sellers negligently cause harm."); *Adames v. Sheahan,* 909 N.E.2d 742, 760-62 (Ill. 2009).

Here, the plain language of the PLCAA indicates that it was intended to preempt common-law claims, including general tort theories of liability. Plaintiffs' construction of the PLCAA "seeks to elevate the preamble over the substantive portion of the statute, giving effect to one word in the preamble at the expense of making the enumerated exceptions meaningless." *Estate of Kim*, 295 P.3d 380, 387 (Alaska 2013). It is also premised on a demonstrably false allegation—that the sale of products by Sportsman's Guide through online transactions somehow "contributed" to Plaintiffs' harm. As such, Plaintiffs' argument that its Amended Complaint against Sportsman's Guide is not a "qualified civil liability action," and is therefore not barred under the PLCAA, cannot be supported, and Count 5 of the Amended Complaint should be immediately dismissed.

**C.    The Text of the PLCAA Contradicts Plaintiffs' Statutory Construction.**

Plaintiffs' interpretation is also contradicted by the structure of the statute itself.  Simply put, the PLCAA is structured such that it precludes *all* "qualified civil liability" actions (*15 U.S.C. §790(a)*), which it then defines to include all civil actions or proceedings "brought by any person against a manufacturer or seller of a qualified product . . . for damages . . . resulting from the criminal or unlawful misuse of a qualified product by the person or a third party" *except* certain claims (i.e., claims against a seller of ammunition under well-pled theories of negligent entrustment or negligence per se). *15 U.S.C. §7903(5)(A)(ii)*.  By structuring the statute in this manner, "Congress consciously considered how to treat all tort claims.  While Congress chose generally to preempt all common-law claims, it carved out an exception for certain specified common-law claims (negligent entrustment and negligence per se)." *Ileto,* 565 F.3d at 1135 n.6.  Thus, the structure of the PLCAA contradicts Plaintiffs' argument.

**D.    Plaintiffs' Legislative History Argument is Not Helpful on the Issue of Whether Common-law Negligence Claims are Barred by the PLCAA.**

Plaintiffs also attempt to support their interpretation of the PLCAA by citing various quotes from senators during the debate of the statute.  However, this approach is misguided.  Congressional intent is determined primarily from the plain language of the statute and only secondarily from the legislative history associated with the statute.  *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,* 548 U.S. 291, 296 (2006) ("When the statutory language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (quotations omitted); *Mass v. Martin Marietta Corp.,* 805 F. Supp. 1530, 1534 (D. Colo. 1992), citing *DeVargas v. Mason & Hanger-Silas Mason Co.,*

911 F.2d 1377, 1392 (10th Cir. 1990). Here, there is nothing ambiguous about the statute. As such, resort to legislative history is unnecessary.

In addition, even if a review of legislative history is determined to be appropriate, it does not clearly support Plaintiffs' interpretation. For one thing, many of the quotes referenced by Plaintiffs do not state, or even suggest, that common-law negligence claims are not preempted by the PLCAA.[2] Moreover, there are other statements from lawmakers, including some of the same lawmakers quoted by the Plaintiffs in their Opposition Brief, which reflect a fundamentally different interpretation of the statute.[3] It is in large part because of this exact type of confusion that courts have long cautioned against the use of extemporaneous statements from single lawmakers to establish Congressional intent. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 118, (1980) ("[O]rdinarily even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history."); *see also Murphy v. Empire of Am., FSA,* 746 F.2d 931, 935 (2d Cir. 1984) (explaining that "isolated remarks are entitled to little or no weight, particularly when they are unclear or conflict with one another."); *Thompson v. Calderon,* 151 F.3d 918, 928-29 (9th Cir. 1998) ("[I]ndividual senators

---

[2]  For example, the quote from Senator Craig that the PLCAA only stops lawsuits "that attempt to force the gun industry to pay for the crimes of third parties over which they have no control," (Plaintiffs' Opp. Memo., at 8), does not support Plaintiffs' interpretation that the statute allows simple, common-law negligence claims.

[3]  In addition to the quotes cited by the Plaintiffs, Senator Craig also stated that the PLCAA "does not shield [those who] . . . have violated existing law . . . *and I am referring to the Federal firearms laws.*"   151 Cong. Rec. S9087-01 (statement of Sen. Craig) (emphasis added). Similarly, Senator Rick Santorum stated that the statute "provides carefully tailored protections that continue to allow legitimate suits *based on knowing violations of Federal or State law related to gun sales.*"  151 Cong. Rec. S9246-02 (emphasis added).  These statements suggest a belief that the protections of the PLCAA covered all claims except claims relating to federal or state laws regulating the sale of firearms.

do not make laws; majorities of the House and Senate do."). As such, Plaintiffs' arguments regarding legislative history are unhelpful and accordingly must be disregarded.

## II. PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM UNDER ANY OF THE EXCLUSIONS TO THE PLCAA.

As suspected, Plaintiffs argue that their remaining claims against Sportsman's Guide, including their claims for negligent entrustment (Count 2) and public nuisance (Count 7), are not subject to dismissal under the PLCAA because those claims fit in one of the narrow exclusions from the PLCAA's coverage. *See* 15 U.S.C. § 7903(5)(A)(i)-(vi). However, a review of Plaintiffs' arguments shows that none of these exceptions apply, and dismissal is required.

### A. Plaintiffs Have Not Pled a Valid Claim for Negligent Entrustment.

In their Opposition Brief, Plaintiffs acknowledge—as they must—that in order to state a viable claim for negligent entrustment under the PLCAA, they are required to plead facts showing that Sportsman's Guide "[knew], or reasonably should [have known]," that Holmes was likely to use the product sold to him in a manner "involving unreasonable risk of physical injury to" others. (Plaintiffs' Opp. Memo, at 27); *see also* 15 U.S.C. § 7903(5)(B).[4] However, Plaintiffs have not alleged *any* facts showing that Sportsman's Guide had "actual knowledge" of Holmes' condition or his intentions. Nor have Plaintiffs alleged any facts showing that

---

[4] In addition, Plaintiffs do not refute Sportsman's Guide's argument that, under Colorado law, a plaintiff must allege facts showing that the supplier of the instrumentality entrusted had "'*actual knowledge*' of the individual's recklessness or incompetence or of facts from which such knowledge could reasonably be inferred." *Baker v. Bratrsovsky,* 689 P.2d 722, 723 (Colo. Ct. App. 1984) (emphasis added) (affirming trial court's directed verdict in negligent entrustment case where defendant car salesman had no actual knowledge of the purchasers' pattern of reckless or incompetent driving prior to the sale); *see also Hilberg v. F.W. Woolworth Co.,* 761 P.2d 236, 238 (Colo. Ct. App. 1988), *overruled on other grounds by Casebolt v. Cowan,* 829 P.2d 352 *(Colo. 1992)* (affirming summary judgment where defendant firearm sellers had no knowledge of purchaser's "supervision habits, shortcomings, or qualities as a parent.")

Sportsman's Guide knew anything at all about Holmes' purposes in purchasing the ammunition or other items. Instead, Plaintiffs argue that their negligent entrustment claim should be permitted to proceed simply because Sportsman's Guide sold its products "exclusively online." (Plaintiffs' Opp. Memo., at 28.) As Plaintiffs state:

> Defendants are retailers that have chosen to conduct business solely online, without any human interaction, and without any attempt to obtain any information about their purchasers, their experience, or their intended uses of the highly dangerous materiel that Defendants sell.

(Plaintiffs' Opp. Memo., at 3.)

In effect, Plaintiffs suggest this Court should permit them to proceed with a negligent entrustment claim against Sportsman's Guide not because of any actual knowledge it had regarding Holmes, but rather because it engaged in a "form of transaction [that] has none of the safeguards inherent in a traditional face-to-face transaction," and because it did not investigate Holmes to obtain further information about him, including his "experience [and] intended uses" of the products he was purchasing. (Id.) In short, Plaintiffs are demanding that this Court create a new legal duty that would require retailers who sell firearm ammunition and accessories via the internet to affirmatively investigate each of their customers, obtain information about their experience and the intended uses of the items they intend to purchase, and presumably deny some customers the right to purchase if they—the retailers—are not satisfied with the answers they receive. The imposition of such a duty, however, is unwarranted.

First, Plaintiffs have cited no cases from Colorado or any other jurisdiction in which the courts have found that a retailer who sells its products online has a duty to investigate its customers. Instead, they attempt to extrapolate from two inapposite Colorado cases— *HealthONE v. Rodriguez*, 50 P.3d 879 (Colo. 2002) and *Build it & They Will Drink, Inc. v.*

*Straunch,* 253 P.3d 302 (Colo. 2011)—to create this duty out of whole cloth. However, neither of these cases analyzes the duties of online retailers or the obligations of those retailers to investigate their customers to determine their intentions with respect to the products being purchased.[5] As such, the duty Plaintiffs are requesting the Court to impose is without precedent.

Second, Plaintiffs have not addressed or even discussed the cases which have specifically considered, and rejected, whether such a duty should be imposed on retailers. *See e.g., Heatherton v. Sears, Roebuck and Co.*, 445 F. Supp. 294, 304-05 (D. Del. 1978), *rev'd on other grounds*, 593 F.2d 526 (3d. Cir. 1978) (rejecting the plaintiffs' request to expand common-law principles to recognize a firearm retailers' duty to investigate their customers on grounds that "it is difficult to define the limits of a possible duty to investigate on the part of firearms sellers."); *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1065 (N.Y.S.2d 2001) (finding that gun manufacturers had no affirmative duty to investigate and identify corrupt dealers.) As argued by Sportsman's Guide in its supporting Memorandum, these courts have generally declined to find a duty on the part of retailers, including retailers in the gun industry, to investigate their customers. (Sportsman's Guide Memo. (ECF 22), at 20.) Plaintiffs' failure to even acknowledge these cases is telling.

Third, Plaintiffs have not presented a compelling argument for creating such a duty here. As noted above, according to the allegations in Plaintiffs' Amended Complaint, the firearms used by Holmes in his attack were purchased *in person* from retailers in Colorado, not from Sportsman's Guide or any other defendant via online transactions. As such, based on the

---

[5] *HealthONE* concerned an anesthesiologist who left a dangerous drug on a tray which was mistakenly later used on the plaintiff by another physician. *HealthONE*, 50 P.3d. at 885. *Straunch* concerned a dram shop claim against a nightclub by an injured patron based on the fact that the nightclub served alcohol to a visibly intoxicated assailant. *Straunch,* 253 P.3d 303-304.

Plaintiffs' own factual allegations, there is no basis to believe that an investigation by Sportsman's Guide would have yielded a different result or outcome. The retailers who sold Holmes the firearms he used in his attack were under a duty to—and presumably did—initiate a criminal background check on Holmes.[6] Since he obtained the firearms in question from these retailers, it can only be assumed that he was cleared to do so by the FBI or other appropriate law enforcement agencies. In light of this, as a matter of law, no amount of further "investigation" by Sportsman's Guide (under this newly created online retailer duty) would have made a difference when Holmes was cleared through the higher-level scrutiny required to purchase a firearm.

Finally, Plaintiffs have offered no explanation as to why the fabrication of this new "duty" is something properly undertaken by this Court at all. Indeed, given the highly regulated nature of the firearms industry, many courts have recognized that imposing new standards of conduct in this arena is best left for the legislative and executive branches. As the California Court of Appeals noted: "While plaintiffs' attempt to add another layer of oversight to a highly regulated industry may represent a desirable goal . . . [e]stablishing public policy is primarily a legislative function and not a judicial function, especially in an area that is subject to heavy regulation." *In re Firearms Cases*, 126 Cal. App. 4th 959, 985 (Cal. App. 2005); *see also Heatherton v. Sears, Roebuck, Co*., 445 F. Supp. 294, 304-05 (D. Del. 1978) ("This Court feels

---

[6] Under federal law, firearms importers, dealers and manufacturers must be licensed by the Federal government, must initiate criminal background checks on purchasers, and may sell only to those who have been cleared by the FBI or other appropriate law enforcement agencies. 18 U.S.C. § 922(a)-(c); § 923(a); 27 CFR 178.41(a).

some reluctance to create new standards of conduct for sellers when legislators have declined to incorporate such standards into the statutory schemes.")[7]

**B.      Plaintiffs Have Not Pled a Valid Claim for Public Nuisance.**

Despite the fact that the PLCAA contains no exception for public nuisance claims, Plaintiffs claim they should be permitted to proceed with their public nuisance claim here based on the provisions contained in the City of Aurora Municipal Code which prohibit "disturbing the peace." (Plaintiffs' Opp. Memo., at 12.)[8]  Under these code provisions, residents of Aurora are prohibited from (a) "knowingly or recklessly" displaying "a deadly weapon . . . in a public place in a manner calculated to alarm;"  (b) carrying firearms in or upon public facilities "when said facilities are posted with notification that the carrying of firearms is prohibited;" (c) firing, shooting or discharging a firearm " within the city limits;" and (d) possessing a "firearm, other than a pistol or revolver, in or on any motor vehicle unless the chamber of such firearm is unloaded."  Aur. Mun. Code § 62-26(8); § 94-154; § 94-146 and § 94-151.  The argument fails.

---

[7]   Plaintiffs have also failed to even attempt to define the scope of this new legal duty, or how it would work.  For example, would it apply to all retailers who sell products on-line, or only to retailers in the firearms industry?  And if the latter, would it apply to all products in the firearms' industry or just ammunition and guns?  Would the retailers be obligated to conduct an investigation every time a purchaser buys a product, or only the first time?  What types of information would the retailer be obligated to collect and assess?  How would the retailer know if the information received was accurate?  Because of these types of questions, at least one Court, when looking at the question of whether a legal duty to investigate should be imposed on "brick and mortar" firearms sellers, has rejected the idea outright at least in part on grounds that its limits would be "difficult to define."  *Heatherton*, 445 F. Supp. at 294, 304.

[8]   Interestingly, Plaintiffs have made no argument that Count 7 of the Amended Complaint should be permitted to proceed based on the Colorado public nuisance statute.  As such, it would appear that they have abandoned that portion of their claim entirely.  *See McMeil v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 173382 *6 (D. Colo. December 11, 2013 (finding that plaintiff's "failure to argue a required element" of her claim necessitates that the court grant summary judgment to the defendant on that claim.)

First, for a statute or code to form the basis of a "predicate exception" to the PLCAA, the statute or code being relied upon by the plaintiff must be "applicable to the sale or marketing of the product." 15 U.S.C. § 7903(5)(A)(iii). As outlined in Sportsman's Guide's Memorandum, in this context the term "applicable to" means statutes "that clearly can be said to regulate the firearms industry." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 402 (2d. Cir. 2008) (applying PLCAA to bar claims against sellers of firearms under New York's criminal nuisance statute); *see also Ileto*, 565 F.3d at 1137 (9th Cir. 2009) ("We find it more likely that Congress had in mind only these types of statutes—statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry—rather than general tort theories that happened to have been codified by a given jurisdiction.") None of the Aurora Code provisions cited by the Plaintiffs comes close to meeting this standard. They all involve or relate to the conduct and actions of individuals, not the sale or marketing of firearms or ammunition or the regulation of the firearms industry. Indeed, nothing in these Code provisions so much as mentions the sale or marketing of firearms or ammunition. Instead, the Code provisions prohibit conduct of individuals, not retailers. As such, they cannot form the basis for a "predicate exception" claim under the PLCAA. To rule otherwise, "would be to allow the exception to preemption to eviscerate the PLCAA and its stated intent and purpose." *Woods v. Steadman's Hardware*, 2012 Mont. Dist. LEXIS 27, *4 (Mont. Dist. March 14, 2012).[9]

---

[9] Plaintiffs cite one case—the 2007 Indiana Court of Appeals decision of *Smith & Wesson v. City of Gary*, 875 N.E.2d 422 (Ind. App. Ct. 2007)—in support of their argument that the PLCAA "permits public nuisance claims to proceed." (Plaintiffs' Opp. Memo., at 13.) However, in *City of Gary* the plaintiff explicitly alleged activity on the part of the defendant-manufacturers that facilitated unlawful sales and violated regulatory statutes. *City of Gary*, 875 N.E.2d at 432 n. 7. Specifically, the City alleged that the dealer-defendants "*knowingly* sold to illegal buyers through intermediaries in 'straw purchases,'" and "*knowingly* participate[d] in a

Second, to support a "predicate exception" argument, Plaintiffs must also allege facts showing that Sportsman's Guide "knowingly violated" the predicate statute. (Sportsman's Memo., (ECF 22) at 10.) Here, neither Plaintiffs' Amended Complaint nor their Opposition Memorandum allege any facts suggesting or showing that Sportsman's Guide participated directly in any way in the events of July 20, 2012, at the Aurora Theater. Because there is nothing in the Aurora Municipal Code in any way indicating that a party may be liable for "disturbing the peace" vicariously, the use of these code provisions as a "predicate statute" is problematic on its face. Moreover, even if this flaw is overlooked, Plaintiffs have failed to allege any facts showing how Sportsman's Guide knew that Holmes intended to violate the City of Aurora Municipal Code. On the contrary, the centerpiece of Plaintiffs' argument is just the opposite—that Sportsman's Guide was "willfully ignorant of the threats posed by" Holmes. (Plaintiffs' Opp. Memo., at 3). It goes without saying that one cannot "know" something is going to happen, while at the same time stand "ignorant" of its likely occurrence.

Finally, even if the Plaintiffs could somehow show that the Aurora Municipal Code provisions to which they cite were "'applicable' to the sale [or] marketing of firearms and ammunition," and the actions by Sportsman's Guide constituted a "knowing" violation of those Code provisions, the Plaintiffs have completely failed to allege *any* facts to support a claim that

---

distribution system that unnecessarily and sometimes even *intentionally* provide[d] guns to criminals, juveniles, and others who may not lawfully purchase them." *Id.* at 430 n. 6 (emphasis in original). As such, the factual allegations in *City of Gary* were fundamentally different than those alleged here. In addition, the Indiana Court of Appeals in *City of Gary* relied heavily on a prior Indiana Supreme Court decision rendered two years *before* the passage of the PLCAA, and on the 2005 Eastern District of New York decision of *City of New York v. Berretta*, 401 F. Supp. 244 (E.D.N.Y. 2005), which decision was subsequently overturned in *City of New York v. Beretta U.S.A. Corp.,* 524 F.3d 384 (2d. Cir. 2008). As such, the precedential value of *City of Gary* is suspect at best.

Sportsman's Guide's actions "proximately caused" their harm. This failure is particularly relevant in light of Colorado's stringent proximate cause standard. *See Hook v. Lakeside Park Co.*, 351 P.2d 261, 265 (Colo. 1960) ("[W]here . . . several events may have brought about the harm to plaintiff, and an event other than the defendant's negligence appears predominant, the alleged negligence cannot be considered a substantial factor."); *see also* C.R.S. § 13-21-504(2) ("The manufacturer's, importer's, or distributor's placement of a firearm or ammunition in the stream of commerce, even if such placement is found to be foreseeable, shall not be conduct deemed sufficient to constitute the proximate cause of injury, damage, or death resulting from a third party's use of the product.").

Here, the allegations in the Amended Complaint conclusively establish as a matter of law that Holmes' intervening criminal acts were the predominant and direct cause of the injury to Plaintiffs' daughter. As such, the Amended Complaint does not meet the proximate cause requirement for the predicate exception to apply, and Count 7 of Plaintiffs' Amended Complaint must therefore be dismissed. *See* 15 U.S.C. § 7903(5)(A)(iii).

## III. THE COLORADO IMMUNITY STATUTE IS NOT PREEMPTED BY THE PLCAA.

The Colorado Immunity Statute[10] provides broad immunity to ammunition dealers for physical injury or death claims arising out of the discharge of a firearm or ammunition. It specifically states that "no type of action" shall be permissible against a firearms or ammunition manufacturer, importer, or dealer as a result of the actions of a third party unless the claim is for "damages" and is based on (a) an alleged defect in the design or manufacture of the ammunition; of (b) an alleged violation of a state or federal regulation. C.R.S. § 13-21-504.5 (2000). In

---

[10] C.R.S. § 13-21-501 through 504.5 (the "Colorado Statute").

response to Sportsman's Guide's motion, Plaintiffs argue that the Colorado Statute is preempted by the PLCAA. They are wrong.

The basic principles of preemption law are both relatively straightforward and well-established. The Supremacy Clause of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Since *McCulloch v. Maryland, 17 U.S. (4 Wheat.)* 316, 427, 4 L. Ed. 579 (1819), it has been settled that state law that conflicts with federal law is "without effect." *Maryland v. Louisiana,* 451 U.S. 725 (1981). When determining if such a conflict exists, the "purpose of Congress" is the ultimate touchstone. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992).

There are in general three settings in which a state law conflicts with, and hence is preempted by, federal law: (1) express preemption, in which Congress "define[s] explicitly the extent to which its enactments pre-empt state law;" (2) field preemption, in which state law is pre-empted because "it regulates conduct in a field that Congress intended the federal government to occupy exclusively;" and (3) conflict preemption, in which, for example, complying with both federal and state law is a physical impossibility. *English v. Gen. Elec. Co.,* 496 U.S. 72, 78-79 and n. 5 (1990) (explaining that the three categories are not "rigidly distinct"); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001). Any reasonable review of the PLCAA and the Colorado statute shows that no preemption of any type is present here.

An express preemption must be explicit. *Second Amendment Arms v. City of Chicago*, 2012 U.S. Dist. LEXIS 136645, *5 (N.D. Ill. Sept. 25, 2012). There is nothing in the PLCAA

which suggests an intention by Congress to expressly preempt laws such as C.R.S. § 13-21-501. As such, any argument that the PLCAA explicitly preempted the Colorado statute must fail.

Similarly, there is no field preemption present here. Indeed, the stated purpose of the PLCAA is to limit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products "for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." 15 U.S.C. § 7901(b)(1). To achieve this purpose, Congress prohibited all causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products except those explicitly enumerated. It did not state, however, that state legislatures could not further narrow the causes of action permitted against manufacturers, distributors, dealers, and importers of firearms or ammunition products. As a result, any argument that Congress meant to occupy the entire field of regulation also fails.

Finally, conflict preemption is also absent. Conflict preemption exists where either (1) it "is impossible for a private party to comply with both state and federal requirements;" or (2) "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287 (1995) (quotations omitted). The Colorado statute presents neither problem. To the contrary, there is nothing in the Colorado statute that makes it impossible to comply with the PLCAA; in fact, the PLCAA does not require a person to do anything. Likewise, the Colorado statute in no way stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the PLCAA. Indeed, since the purpose and objective of the PLCAA is to "shield firearms manufacturers and dealers from liability for injuries caused by third parties using non-defective .

. . firearms," if anything, the Colorado statute promotes the purpose and objective of the PLCAA. As such, the Colorado statute is not preempted by the PLCAA. *See Ileto v. Glock*, 421 F. Supp. 1274, 1289 (C. D. Cal. 2006), *aff'd* 565 F.3d 1126 (9th Cir. 2009).

## IV. THE COLORADO STATUTE SPECIFICALLY BARS PLAINTIFFS' CLAIMS FOR NEGLIGENCE.

Not surprisingly, Plaintiffs do not argue that they fit within the exception to the Colorado statute which applies to claims based on an alleged defect in the design or manufacture of the ammunition. They also do not argue that dismissal is improper under the Colorado statute because they allege that Sportsman's Guide violated a state or federal regulation and they are seeking "damages." Instead, Plaintiffs' entire argument with respect to the Colorado statute centers on the suggestion that their claims against Sportsman's Guide are not barred because Sportsman's Guide sells their products "online without any human interaction." (Plaintiffs' Opp. Memo., at 15.) However, just as with the PLCAA, this argument is completely without basis.

There is nothing in the Colorado Statute which indicates an intention to differentiate between sales of ammunition conducted in person as compared to sales of ammunition conducted online. On the contrary, the Colorado Statute explicitly indicates that a distributor's placement of a firearm or ammunition "in the stream of commerce . . . *shall not be conduct deemed sufficient to constitute the proximate cause of injury, damage, or death resulting from a third party's use of the product*." C.R.S. § 13-21-504(2) (emphasis added).[11] Likewise, in the Legislative declaration portion of the statute, the Colorado legislature specifically declared that "under *no theory* shall a firearms or an ammunition manufacturer, importer, or dealer be held

---

[11] Presumably, since the Colorado Statute was passed in 2000, if the Colorado legislature intended to differentiate between in-store and on-line transactions, they could have done so.

liable for the actions of another person." C.R.S. § 13-21-501(2) (emphasis added). Finally, the statute specifically states that "*no type of action*" shall be permissible against a firearms or ammunition manufacturer, importer, or dealer as a result of the actions of a third party. C.R.S. § 13-21-504.5(2) (emphasis added).

Given these explicit statutory declarations by the Colorado legislature, there is no basis to argue that the claims by the Plaintiffs in their Amended Complaint should be permitted because the sales in question took place online. Plaintiffs' argument would have this Court legislate an online commerce exception to the statute that does not exist. This Court should reject the argument and uphold the clear statutory immunity created and enacted by the Colorado legislature.

## V. PLAINTIFFS HAVE NOT PROPERLY ALLEGED ANY OF THE NECESSARY FACTORS FOR INJUNCTIVE RELIEF TO BE GRANTED.

In its motion to dismiss, Sportsman's Guide argues that Plaintiffs' injunction claim must be dismissed because they have failed to allege sufficient facts to show that injunctive relief of the type requested would be appropriate. In response, Plaintiffs completely ignore their obligation to show a likelihood of success on the merits. Instead, they suggest that an injunction should be granted simply because "there is significant risk that a similar attack will be facilitated unless Defendants' sales practices are changed," and because the "threatened injury—misuse of firearms, ammunition, body armor, and tear gas—far outweighs the harm that the injunction may cause." (Plaintiffs' Opp. Memo., at 37.) These arguments are completely without basis.

First, Plaintiffs have pled no facts showing or even suggesting that there is significant risk that a "similar attack" will occur if Sportsman's Guide's "sales practices" are not changed. In fact, they have pled facts showing just the opposite. As noted above, given that the Plaintiffs

have alleged that Holmes purchased both the firearms and at least some of the ammunition used *in person* from Colorado retailers, it is speculative to suggest Sportsman's Guide's "sales practices" had anything to do with the attack. As such, there is no factual basis to support a belief that a "similar attack" is likely to occur, much less a "substantial risk" it will occur, if Sportsman's Guide's "sales practices" are not changed.

Likewise, Plaintiffs' "harm" argument is similarly undermined by their own allegations. Indeed, as Plaintiffs admit in Paragraph 78 of their Amended Complaint, "Holmes was identified by the police and arrested in the parking lot behind the Theater." (Am. Compl. at ¶ 78.). As such, the likelihood of further risk to the Plaintiffs from Holmes is virtually nonexistent. Plaintiffs have not met the elements for injunctive relief and their Amended Complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant The Sportsman's Guide, Inc. requests that the Court grant its Motion to Dismiss in its entirety, and enter an Order immediately dismissing all claims against it. In addition, pursuant to C.R.S. § 13-21-504.5(3) and C.R.S § 13-17-201, Sportsman's Guide requests that it be awarded its attorneys' fees for defending and obtaining dismissal of Plaintiffs' claims.

**FAFINSKI MARK & JOHNSON, P.A.**

Dated: January 9, 2015

s/ Patrick J. Rooney
Donald Chance Mark, Jr. (MN #67659) (Admitted in Dist. of Colorado)
Patrick J. Rooney (MN #198274) (Admitted in Dist. of Colorado)

Peter A. T. Carlson (MN #0350448) (Admitted in Dist. of Colorado)
Flagship Corporate Center
775 Prairie Center Drive, Suite 400
Eden Prairie, MN  55344
(952) 995-9500
*donald.mark@fmjlaw.com*
*patrick.rooney@fmjlaw.com*
*peter.carlson@fmjlaw.com*

and

Ronald L. Wilcox
**PETERS MAIR WILCOX**
1755 Blake Street, Suite 240
Denver, CO  80202
(303) 393-1704
*rwilcox@peterslaw.net*

***Attorneys for The Sportsman's Guide, Inc.***

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 9th day of January, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas W. Stoever, Jr.
Paul W. Rodney
Arnold & Porter LLP
370 Seventeenth Street, Suite 4400
Denver, CO  80202

***Counsel for Plaintiffs***

Marc F. Colin, Esq.
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 3100
Denver, CO  80202

Andrew A. Lothson, Esq.
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL  60611

***Counsel for Lucky Gunner d/b/a BULKAMMO.COM***

Phillip R. Zuber, Esq.
Sasscer, Clagett & Bucher
5407 Water Street, Suite 101
Upper Marlboro, MD  20772

Bruce A. Montoya, Esq.
Messner Reeves, LLP
1430 Wynkoop St., Suite 300
Denver, CO  80202

***Counsel for Defendant Brian Platt d/b/a BTP Arms***

I hereby further certify that I have mailed the foregoing via U.S. mail, postage prepaid, to the following non-CM/ECF participants:

Jonathan E. Lowy
Elizabeth Burke
Kelly Sampson
Brady Center to Prevent Gun Violence
840 First Street, NE, Suite 400
Washington, DC  20005

***Counsel for Plaintiffs***

Joyce R. Branda, Acting Assistant Attorney General
Diane Kelleher, Assistant Branch Director
Lesley Farby
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave NW
Washington, D.C.  20530

***Counsel for Interested Party – United States of America***

John W. Suthers
Attorney General
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO  80203

***Attorney General for Colorado***

Gold Strike E Commerce, LLC
d/b/a bulletproofbodyarmorhq.com
Christopher E. Russell, Agent for Service
1546 West Vine Ave.
Mesa, AZ  85202

s/ Patrick J. Rooney
Patrick J. Rooney (MN #198274) (Admitted in Dist.
   of Colorado)