**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-2822-RPM

SANDY PHILLIPS, individually and as surviving parent
of Jessica Ghawi, decedent; LONNIE PHILLIPS,
individually and as surviving parent of Jessica Ghawi,
decedent,

Plaintiffs,

v.

LUCKYGUNNER, d/b/a/ BULKAMMO.COM,
THE SPORTSMAN'S GUIDE,
Brian Platt, d/b/a/ BTP ARMS,
Gold Strike E Commerce LLC d/b/a/
BULLETPROOFBODYARMORHQ.COM,
and JOHN DOES 1 through 10, unknown individuals,

Defendants.

---

**UNITED STATES' MEMORANDUM IN SUPPORT OF THE CONSTITUTIONALITY
OF THE PROTECTION OF LAWFUL COMMERCE IN ARMS ACT**

---

The United States of America intervenes in this case for the limited purpose of defending the constitutionality of the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-7903 (the "Protection Act" or "Act"), which plaintiffs challenge in their Opposition to Defendants' Motion to Dismiss ("Pl. Opp.") (ECF No. 27). The Protection Act stands on firm constitutional footing. Virtually identical arguments to those advanced by plaintiffs here have already been rejected by courts in previous Protection Act litigation. See, e.g., Ileto v. Glock, 565 F.3d 1126, 1138-42 (9th Cir. 2009), cert. denied, 130 S. Ct. 3320 (2010); City of New York v. Beretta, 524 F.3d 384, 392-98 (2d Cir. 2008), cert. denied, 129 S. Ct. 1579 (2009); Estate of Charlot v. Bushmaster Firearms, Inc., 628 F. Supp. 2d 174, 182-86 (D.D.C. 2009); Estate of Kim

1

v. Coxe, 295 P.3d 380, 388-92 (Alaska 2013); Adames v. Sheahan, 909 N.E.2d 742, 764-65 (Ill.), cert. denied, 130 S. Ct. 1014 (2009); District of Columbia v. Beretta, 940 A.2d 163, 172-82 (D.C. 2008), cert. denied, 129 S. Ct. 1579 (2009).[1]

The Protection Act provides, among other things, that "[a] qualified civil liability action" against the manufacturers or sellers of firearms "may not be brought in any Federal or State court." 15 U.S.C. §§ 7902, 7903(5)(A). The Act defines a "qualified civil liability action" to include any "civil action or proceeding . . . against a manufacturer or seller of a qualified product . . . for damages, punitive damages, injunctive or declaratory relief . . . or other relief resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." Id. § 7903(5)(A). The Act creates a safe harbor permitting certain classes of actions to continue to be brought. See id. §§ 7903(5)(A)(i)-(vi). These include actions for negligent entrustment and negligence per se, and actions in which a manufacturer or seller knowingly violates a state or federal statute applicable to the sale or marketing of firearms, if the violation is a proximate cause of the complained-of harm. Id. §§ 7903(5)(A)(ii), (iii).

As a threshold matter, plaintiffs argue that their complaint falls within the Act's safe harbor and should not be dismissed on preemption grounds. Pl. Opp. at 4-14. In the alternative, plaintiffs raise a raft of challenges to the constitutionality of the Protection Act, in the event that defendants' interpretation of the Act prevails. Specifically, plaintiffs argue that the Act: (i) impermissibly infringes on Colorado's sovereign right to allocate its lawmaking function; (ii) violates the separation-of-powers principle by directing the outcome of a pending case; (iii)

---

[1] Only one court, a state trial court in Indiana, has concluded that the Protection Act is unconstitutional, City of Gary v. Smith & Wesson Corp., No. 45D05-005-CT-00243 (Ind. Super. Ct. Oct. 23, 2006), and while the intermediate appellate court affirmed the decision on appeal, it did so on statutory grounds, without reaching the constitutional issues, Smith & Wesson Corp. v. City of Gary, 875 N.E.2d 422 (Ind. Ct. App. 2007).

deprives plaintiffs of due process by eliminating their common law rights without providing any alternate remedy; (iv) violates their First Amendment right of access to the courts; and (v) violates equal protection by discriminating among victims of gun violence, allowing only those victims who have statutory, as opposed to common law, claims to proceed.  Pl. Opp. at 20-26.

In accordance with well-established precedents of the U.S. Supreme Court, this Court should first determine whether this action falls into the Protection Act's safe harbor before turning to plaintiffs' constitutional arguments.  If this action falls into the safe harbor, then the Court will not need to address plaintiffs' constitutional arguments.  The United States takes no position on whether or not plaintiffs' claims fall within the statutory safe harbor.

If, however, the Court reaches the constitutional question, then it should uphold the Act.  First, as noted above, numerous courts have rejected the precise arguments plaintiffs advance here.  The Protection Act does not violate the Tenth Amendment or otherwise interfere with the sovereign rights of the State of Colorado.  The Act merely preempts inconsistent state laws.  The U.S. Court of Appeals for the Second Circuit and the Supreme Courts of Alaska and Illinois each rejected an identical Tenth Amendment challenge to the Protection Act.  Beretta, 524 F.3d at 397; Estate of Kim, 295 P.3d at 388-89; Adames, 909 N.E.2d at 764-65.  Second, plaintiffs' separation of powers fails because Congress has altered the substantive law underlying plaintiffs' action, and so has not impermissibly directed the outcome in a pending case.  Numerous other courts have rejected nearly identical arguments.  Ileto, 565 F.3d at 1139-40; Beretta, 524 F.3d at 396-97; Charlot, 628 F. Supp. 2d at 182-86; Estate of Kim, 295 P.3d at 389-90; District of Columbia v. Beretta, 940 A.2d at 172-73.  Third, plaintiffs' due process argument fails because they have no constitutionally-protected property interest in their unlitigated common-law claims.  Even assuming plaintiffs do have such a property interest, the Protection Act is rational, liability-

limiting legislation, and plaintiffs have not been deprived of all remedies. See, e.g., Ileto, 565 F.3d at 1140-44 (rejecting similar due process argument). Plaintiffs' First Amendment argument, claiming deprivation of access to the courts, fares no better. As the Second Circuit held in Beretta, the First Amendment ensures access to the courts to pursue valid claims, but does not ensure the existence of particular causes of action. 524 F.3d at 397-98. Finally, plaintiffs' equal protection argument is without merit. Congress rationally could have determined that common law claims pose a greater threat to the firearms industry than statutory claims. See Ileto, 565 F.3d at 1141. In short, the Protection Act is constitutional and, should this Court have occasion to address the constitutional issues, it should uphold the Act.

## STATUTORY BACKGROUND

The Protection Act was signed into law on October 26, 2005. The Act provides that "[a] qualified civil liability action" against the manufacturers or sellers of firearms "may not be brought in any Federal or State court." 15 U.S.C. §§ 7902, 7903(5)(A). The Act defines a "qualified civil liability action" to include "any civil action or proceeding . . . against a manufacturer or seller of a qualified product . . . for damages, punitive damages, injunctive or declaratory relief . . . or other relief resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." Id. § 7903(5)(A). The Act creates a safe harbor that allows certain classes of actions to continue to be brought. See id. §§ 7903(5)(A)(i)-(vi).

Congress enacted the Protection Act because, in part, "[b]usinesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms . . . are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm

products. . . ." Id. § 7901(a)(5). The Act further provides: "The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system . . . and constitutes an unreasonable burden on interstate and foreign commerce of the United States." Id. § 7901(a)(6). Congress also enacted the Protection Act "[t]o preserve a citizen's access to a supply of firearms and ammunition for all lawful purposes. . . ." Id. § 7901(b)(2).

## ARGUMENT

### I. The Court Should Resolve Plaintiffs' Non-Constitutional Argument First to Avoid, If Possible, Passing on the Constitutionality of the Protection Act

Plaintiffs argue that their suit is not barred by the Protection Act, contending that it falls within the statutory safe harbor because the Act permits actions for negligent entrustment and actions where defendants have violated state or federal law. Pl. Opp. at 10-14. The Court should resolve this issue first. If plaintiffs are correct—a matter on which the United States takes no position—then the Court can avoid deciding the constitutionality of the Protection Act.

The Supreme Court has long and consistently counseled that, wherever possible, courts should avoid resolving cases on constitutional grounds. "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." Spector Motor Serv. v. McLaughlin, 323 U.S. 101, 105 (1944); see also Nw. Austin Mun. Util. Dist. No. One v. Holder, 557 U.S. 193, 204-06 (2009); United States v. Wells Fargo Bank, 485 U.S. 351, 354 (1988). Thus, "[b]efore deciding the constitutional question, it [is] incumbent on [ ] courts to consider whether the statutory grounds might be dispositive." New York City Transit Auth. v. Beazer, 440 U.S. 568, 582 (1979). Thus, it is incumbent on this Court to determine whether plaintiffs' action falls within the Protection Act's statutory safe harbor—in which case it would not be preempted by the Act—before addressing any of plaintiffs' constitutional arguments.

5

## II. The Protection Act Is Constitutional

If the Court reaches the constitutional questions, then it should follow the established precedents of the numerous federal and state courts to have decided these issues and uphold the Protection Act.

### A. Under the Constitution's Supremacy Clause, the Protection Act Preempts "Qualified Civil Liability Actions"

The Commerce Clause and the Supremacy Clause provide the constitutional authority for the Protection Act. See U.S. Const. art. I, § 8; id. art. VI. The Commerce Clause grants Congress the authority "[t]o regulate commerce with foreign nations, and among the several states," id. art. I, § 8, which entails "the power to regulate activities that substantially affect interstate commerce," Gonzales v. Raich, 545 U.S. 1, 17 (2005). Congress enacted the Protection Act because it concluded that "[l]awsuits [that] have been commenced against manufacturers, distributors, [and] dealers . . . of firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties . . . constitute[ ] an unreasonable burden on interstate and foreign commerce of the United States." 15 U.S.C. §§ 7901(a)(3), (6).

While state tort law issues are generally left to the states, Congress can, pursuant to the operation of the Supremacy Clause, preempt state tort law if the state law imposes a burden on interstate commerce and Congress clearly manifests its intent to preempt it. See U.S. Const. art. VI ("[T]the Laws of the United States . . . shall be the Supreme Law of the Land."); Wyeth v. Levine, 555 U.S. 555, 565 (2009); BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 571-72 (1996); Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996). The Protection Act manifests Congress' clear intention to preempt certain state tort actions, i.e., "qualified civil liability actions." See Ileto, 565 F.3d at 1135 (noting that "Congress clearly intended to preempt common-law claims,

6

such as general tort theories of liability"). The first listed purpose of the Protection Act is "[t]o prohibit" victims of gun violence from bringing "causes of actions against manufacturers, distributors, [and] dealers . . . of firearms." 15 U.S.C. § 7901(b)(1). Moreover, the Act mandates that "[a] qualified civil liability action may not be brought in any Federal or State court" and that such an action pending as of October 26, 2005 "shall be immediately dismissed." Id. § 7902. Plaintiffs do not challenge Congress' authority to act under the Commerce Clause, and several courts have held that Congress lawfully acted within this authority in preempting qualified civil liability actions in the Protection Act. See Beretta, 524 F.3d at 394-95 ("Congress explicitly found that the third-party suits that the Act bars are a direct threat to the firearms industry," and "rationally perceived a substantial effect on the industry of the litigation that the Act seeks to curtail"); Ileto, 565 F.3d at 1140-41 (having "no trouble concluding that Congress rationally could find that, by insulating the firearms industry from a specified set of lawsuits, interstate and foreign commerce of firearms would be affected").

    **B.**   **The Protection Act Comports With the Tenth Amendment**

  Although plaintiffs do not couch their claims in Tenth Amendment terms, they essentially argue that the Protection Act violates the sovereignty of the State of Colorado in violation of the Tenth Amendment in two ways. First, plaintiffs maintain that Congress infringed Colorado's right to allocate its lawmaking function because the Act preempts common law actions but allows, through the safe harbor, actions predicated on state statutory law. Pl. Opp. at 20-21. Second, plaintiffs assert that the Act impermissibly mandates the dismissal of cases that are legally valid under state law. Id. at 21-23. These arguments are unpersuasive. The Act leaves the state free to allocate the regulation of firearms and related products among its branches as it pleases. Moreover, the purported "direct[ion] of state . . . officials," id. at 22, is nothing more

than the necessary consequence of preemption.

The Protection Act does not dictate to Colorado how it must allocate its lawmaking authority. That the law does not preempt certain state statutes applicable to firearms means simply that Congress has chosen to limit the preemptive scope of the Act. The Protection Act does not mandate that states enact laws one way or another. Colorado may regulate firearms through whichever branch of government it chooses, although different choices may have different effects vis-à-vis preemption. Notably, at least four courts have rejected the same type of argument plaintiffs advance here. Beretta, 524 F.3d at 396-97; Estate of Kim, 295 P.3d at 388-89; Adames v. Sheahan, 909 N.E.2d 742, 764-65 (Ill. 2009); City of New York v. Beretta U.S.A. Corp., 401 F. Supp. 2d 244, 293-94 (E.D.N.Y. 2005).

Furthermore, the Protection Act does not direct the action of state officials by requiring dismissal of "qualified civil liability actions." The Second Circuit rejected an argument virtually identical to plaintiffs' argument here, concluding that the Act "does not commandeer any branch of state government because it imposes no affirmative duty of any kind on any of them." Beretta, 524 F.3d at 397. The Alaska Supreme Court reached the same result when confronted with this argument. Estate of Kim, 295 P.3d at 389-90. While "Congress may not require the legislative or executive branches of the States to enact or administer federal regulatory programs, it may require state courts of adequate and appropriate jurisdiction to enforce federal prescriptions, insofar as those prescriptions relate to matters appropriate for judicial power." Alden v. Maine, 527 U.S. 706, 752 (1999) (internal alternations and citations omitted). The Protection Act merely requires state courts to "enforce federal prescriptions" regarding which firearms-related common law tort actions may go forward. That is, by ordering that such cases be dismissed, the Act "simply imposes the [Supremacy Clause dictated] consequences of the

court's application of the new legal standard," Miller v. French, 530 U.S. 327, 349 (2000), for dismissal is the sole action a court can take when federal law bars a state tort action. See generally Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 886 (2000).

### C. The Protection Act Does Not Violate Separation of Powers Principles Because It Changes Underlying Law

Plaintiffs also contend that the Protection Act impermissibly "requir[es] courts to dismiss actions that Congress deems unsupported by state law," and thereby "'passe[s] the limit which separate the legislative from the judicial power.'" Pl. Opp. at 21-22 (quoting United States v. Klein, 80 U.S. 128, 146-47 (1871)). This apparent separation-of-powers argument is meritless. Through the Act, Congress changed the underlying law by defining a category of tort actions that are prohibited (i.e., "qualified civil liability actions"). If there is a general prohibition on directing the outcome of a case, this "prohibition does not take hold when Congress amends applicable law." Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218 (1995) (quotation marks and citation omitted); see also Miller, 530 U.S. at 348-49; Robertson v. Seattle Audubon Soc'y, 503 U.S. 429, 441 (1992). As the Second Circuit recognized, "[t]he definition of qualified civil liability action permissibly sets forth a new legal standard to be applied to all actions." Beretta, 524 F.3d at 395; see also Ileto, 565 F.3d at 1139. The new standard is that qualified civil liability actions may not be brought, and pending ones must be dismissed. In this context, a dismissal "simply imposes the consequences of the court's application of the new legal standard." Miller, 530 U.S. at 349.

### D. The Protection Act Does Not Deprive Plaintiffs of Any Rights Without Due Process of Law

Plaintiffs contend that the Protection Act violates the Constitution by "wholly eliminating the common law rights of a class of victims injured by particular tortfeasors, without providing

9

any alternate remedy." Pl. Opp. at 23-24. As an initial matter, plaintiffs have not established that they have a constitutionally-protected property interest in their unlitigated common-law claims. See Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 88 n.32 (1978) ("Our cases have clearly established that a person has no property, no vested interest, in any rule of the common law.") (internal alteration and citation omitted). In any event, even assuming plaintiffs do have a property interest protected by the Due Process Clause, their arguments are flawed. Economic legislation, such as the Act, is reviewed under a deferential rational-basis standard. See id. at 83-84. The Act constitutes a rational effort to shield firearms manufacturers, distributors, and dealers from widespread tort liability. Moreover, given its safe harbor provisions, the Act does not eliminate all means of legal redress plaintiffs may obtain.

Liability-limiting legislation is "a classic example of an economic regulation—a legislative effort to structure and accommodate the burdens and benefits of economic life." Id. at 83 (quotation marks and citation omitted). Such laws enjoy "a presumption of constitutionality," and the "burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." Id. The enactment of the Protection Act was neither arbitrary nor irrational. Congress reasonably could conclude, as it did, that holding firearms manufacturers, distributors, and dealers liable for the unlawful acts of third parties constituted an unreasonable burden on interstate commerce, and it could permissibly move, as it did, to lift this burden by freeing the firearms industry from potentially ruinous verdicts premised on the unlawful acts of such third parties. 15 U.S.C. §§ 7901(a)(3), (6), 7902. Congress thought certain tort actions posed a serious threat to the firearms industry, so it decided to insulate the industry from those actions. See Ileto, 565 F.3d at 1140 ("There is nothing irrational or arbitrary about Congress' choice [in enacting the Protection Act]."); Beretta, 524 F.3d at 395 ("Congress

10

rationally perceived a substantial effect on the industry of the litigation that the Act seeks to curtail.").

Moreover, the Protection Act does not eliminate all means of redress for plaintiffs' injury. Ileto, 565 F.3d at 1143 (explaining that the Act "does not completely abolish Plaintiffs' ability to seek redress"); id. at 1144 (noting that "Congress has left in place a number of substitute remedies"); District of Columbia v. Beretta, 940 A.2d at 177 n.8 (declining to consider claim that due process requires Congress to supply alternative remedy because "Congress did not deprive injured persons of all potential remedies against manufacturers or sellers of firearms that discharge causing them injuries."). Plaintiffs can sue the individual who committed the shooting, and they can pursue actions against manufacturers, distributors, and dealers, if they fall within the statutory safe harbors. 15 U.S.C. § 7903(5)(A)(i)-(iii). The Act, therefore, rationally *limits* a category of tort actions (i.e., those premised on the wrongdoing of a third-party) that may be brought against a specific class of defendants (i.e., gun manufacturers, distributors, and dealers) in furtherance of a reasonable goal – eliminating an undue burden on interstate commerce. This scheme is constitutionally unobjectionable.[2]

---

[2] The Supreme Court has upheld laws that *eliminated* a category of tort actions with respect to a specific class of defendants. See Martinez v. California, 444 U.S. 277, 281-83 (1990) (rejecting due process challenge to state statute that categorically immunized the state and state officers from liability for any injuries that follow from the decision of whether to grant parole); Silver v. Silver, 280 U.S. 117, 122 (1929) (upholding law that eliminates negligence actions by automobile driver's guest on the ground that "the Constitution does not forbid the creation of new rights or the abolition of old ones recognized by the common law, to attain a permissible legislative object"). As the Supreme Court has explained, the legislature may "create substantive defenses or immunities for use in adjudication – or [ ] eliminate its statutorily created causes of action altogether. . . . In each case, the legislative determination provides all the process that is due." Logan v. Zimmerman Brush Co., 455 U.S. 422, 432-33 (1982). Plaintiffs' argument that the Protection Act violates due process by abrogating common law claims fails in light of these cases. See also, e.g., Gronne v. Abrams, 793 F.2d 74, 78 (2d Cir. 1986) ("The authority of the legislature to abolish entirely a common law right to sue . . . is well established."); Ducharme v. Merrill-Nat'l Labs., 574 F.2d 1307, 1310 (5th Cir. 1978) (collecting cases upholding liability-

### E. The Protection Act Does Not Infringe on Plaintiffs' First Amendment Right to Access the Courts

Plaintiffs argue that the Protection Act infringes on their First Amendment right to seek redress through the courts. Pl. Opp. at 23. It does no such thing. Plaintiffs confuse the right of access to the courts with a nonexistent right to assert a specific cause of action. See Duke Power, 438 U.S. at 88 n.32 ("Our cases have clearly established that a person has no property, no vested interest, in any rule of the common law.") (internal alterations and citation omitted).

The First Amendment right to petition "extends to all departments of the Government," including the courts. Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). In other words, plaintiffs have a "right of access to the courts." Id. However, a cognizable claim for the right of access to the courts depends on the existence of an underlying claim. See Christopher v. Harbury, 536 U.S. 403, 415 (2002) ("Our cases rest on the recognition that the right [of access to the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered an injury by being shut out of court."). Here, should plaintiffs' causes of action fall within the Act's definition of a qualified civil liability action, Congress has merely preempted those causes of action; it has not barred plaintiffs from using the courts to vindicate valid claims. This does not constitute an unconstitutional denial of access to the courts. The Second Circuit concluded as much in Beretta: "The right to petition exists in the presence of an underlying cause of action and is not violated by a statute [such as the Protection Act] that provides a complete defense to a cause of action or curtails a category of causes of action." 524 F.3d at 397; see also Hammond v. United States, 786 F.2d 8, 13 (1st Cir. 1986) (holding that congressional alteration of "prior rights and remedies" does not amount to a deprivation of the

---

limiting legislation "where no remedy was substituted in place of the cause of action that was taken away").

right of access to the courts because "[t]here is no fundamental right to particular state-law tort claims").

### F. The Protection Act Accords With the Equal Protection Component of the Due Process Clause

Plaintiffs argue that the Protection Act violates the equal protection component of the Fifth Amendment's Due Process Clause by treating tort claimants differently based on whether the tortfeasor is a licensed gun seller and whether the victim was shot in a state with statutorily-established gun liability standards. Pl. Opp. at 26. These arguments do not withstand scrutiny. Economic regulations challenged on equal protection grounds need only satisfy the rational-basis standard. See FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993). Under this standard, legislation "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id.

The distinctions drawn by Congress easily satisfy this standard. See Ileto, 565 F.3d at 1140-41 (rejecting similar equal protection arguments). Congress rationally could have concluded that actions against licensed firearms manufacturers, distributors, and dealers for harm caused by the misuse of a qualified product by a third party pose a more serious threat than other kinds of claims. See 15 U.S.C. §§ 7901(a)(3), (6). Indeed, courts have consistently upheld legislation limiting the tort liability of participants in specific industries. In Duke Power, the Supreme Court rejected an equal protection challenge to legislation that limited the tort liability of producers of nuclear power. 438 U.S. at 93 ("The general rationality of the Price-Anderson Act liability limitations – particularly with reference to the important congressional purpose of encouraging private participation in the exploitation of nuclear energy – is ample justification for the difference in treatment between those injured in nuclear accidents and those whose injuries are derived from other causes."). Furthermore, Congress rationally could have concluded that

common law actions that could be allowed by a "maverick judicial officer" pose a greater threat to the firearms industry than do legislative enactments resulting from democratic processes.  See 15 U.S.C. § 7901(a)(7).  The Equal Protection Clause does not require the legislature to treat all types of tort lawsuits identically.  Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 466 (1981).

## CONCLUSION

For the foregoing reasons, if the Court reaches the issue, it should uphold the constitutionality of the Protection Act.

Dated:  February 2, 2015                                    Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director

 /s/ Lesley Farby
LESLEY FARBY (DC # 495625)
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 514-3481
Fax:  (202) 616-8470
E-mail: Lesley.Farby@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 2, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will electronically send notice to the following:

| | |
|---|---|
| Thomas W. Stoever, Jr.<br>Paul W. Rodney<br>Arnold & Porter, LLP<br>370 Seventeenth Street, Suite 4400<br>Denver, CO 80202<br>(303) 863-1000<br>Thomas.Stoever@aporter.com<br>Paul.Rodney@aporter.com<br><br>*Counsel for Plaintiffs* | Phillip R. Zuber<br>Sasscer Glagett & Bucher<br>5407 Water Street, Suite 101<br>Upper Marlboro, MD 20772<br>(301) 627-5500<br>pzuber@scblawyers.com<br><br>Bruce A. Montoya<br>Messner & Reeves LLP<br>1430 Wynkoop Street, Suite 300<br>Denver, Colorado 80202<br>303-623-1800<br>bmontoya@messner.com<br><br>*Counsel for Defendant Brian Platt, d/b/a BTP Arms* |
| Marc Colin<br>Bruno, Colin & Lowe, P.C.<br>1999 Broadway, Suite 3100<br>Denver, Colorado 80202<br>(303) 831-1099<br>MColin@brunolawyers.com<br><br>Andrew A. Lothson<br>Swanson, Martin & Bell, LLP<br>330 North Wabash, Suite 3300<br>Chicago, IL 60611<br>(312) 321-9100<br>alothson@smbtrials.com<br><br>*Counsel for Defendant LuckyGunner, LLC* | Peter A. T. Carlson<br>Donald Mark Chance, Jr.<br>Patrick J. Rooney<br>Fafinski Mark & Johnson, P.A.<br>775 Prairie Center Drive, Suite 400<br>Eden Prairie, MN 55344<br>(952) 995-9500<br>peter.carlson@fmjlaw.com<br>donald.mark@fmjlaw.com<br>patrick.rooney@fmjlaw.com<br><br>*Counsel for Defendant The Sportsman's Guide* |

      In addition, I served copies of same by deposit with the United States Postal Service on the following non-CM/ECF participants:

15

| | |
|---|---|
| John W. Suthers<br>Attorney General<br>Colorado Department of Law<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, CO 80203 | Jonathan E. Lowy<br>Kelly Sampson<br>Brady Center to Prevent Gun Violence<br>840 First Street, N.E., Suite 400<br>Washington, D.C. 20002<br><br>*Counsel for Plaintiffs* |

    <u>/s/ Lesley Farby</u>
    Lesley Farby