IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Richard P. Matsch, Senior District Judge

Civil Action No. 14-cv-02822-RPM

SANDY PHILLIPS, individually and as surviving parent
of Jessica Ghawi, decedent; and
LONNIE PHILLIPS, individually and as surviving parent
of Jessica Ghawi, decedent.

     Plaintiffs,

v.

LUCKY GUNNER, LLC, d/b/a/ BULKAMMO.COM,
THE SPORTSMAN'S GUIDE,
BRIAN PLATT, d/b/a/ BTP ARMS,
GOLD STRIKE E COMMERCE, LLC,
d/b/a/ BULLETPROOFBODYARMORHQ.COM, and
JOHN DOES 1 through 10, unknown individuals.

     Defendants.

_____

## MEMORANDUM AND ORDER

_____

     Jessica Ghawi was one of 12 persons killed during a mass shooting at the Aurora Century 16 movie theater in Aurora, Colorado, on July 20, 2012. Her parents, Sandy and Lonnie Phillips, filed this civil action in the District Court, Arapahoe County, Colorado, alleging that defendants sold the shooter some of the equipment he used in the attack and that the shooter was James Holmes, described as a "patently dangerous homicidal man."

     Defendants sell sporting goods and tactical gear, such as ammunition magazines, ammunition, and body armor and all complained of sales are alleged to have been transacted online. Plaintiffs do not allege that any of the defendants had any

1

direct, personal contact with Holmes. Rather, they specifically allege that Holmes made his acquisitions "without any human interaction."

Plaintiffs allege that defendants' internet business practices do not include any reasonable safeguards to prevent dangerous people such as Holmes from purchasing the potentially harmful wares that they sell. Plaintiffs claim that defendants' business practices constitute negligence, negligent entrustment, and public nuisance under a Colorado statute[1] and the Aurora Municipal Code.  Plaintiffs seek an injunction requiring the defendants to change their business practices in an undescribed manner to be approved by the court and to enjoin their present business practices until such changes have been made. No other relief is requested. The named defendants, excluding Gold E Strike have, separately, moved to dismiss all claims under Fed.R.Civ.P12(b)(6) for failure to state a claim.

The plaintiffs live in Texas. Their daughter lived in Colorado. Defendants are Lucky Gunner, LLC d/b/a bulkammo.com ("Lucky Gunner"), the Sportsman's Guide, Brain Platt d/b/a BPT ARMS ("Platt"), Gold Strike E Commerce LLC d/b/a bulletproofbodyarmorhq.com[2], and John Does 1 through 10, identities unknown.   All defendants are citizens of states other than Texas and Colorado.  The case was removed to this court by the defendants, exercising diversity of citizenship jurisdiction provided by 28 U.S.C. § 1332.

---

[1]The Colorado statutory basis for public nuisance has been abandoned since the case was filed.

[2]The Clerk of Court filed an Entry of Default as to this Defendant on February 25, 2015. Gold Strike E Commerce has taken no further action since that time. For the reasons discussed herein, this case shall be dismissed in its entirety and no judgment will enter against Gold Strike E Commerce.

The Amended Complaint contains 256 paragraphs.  Paragraphs 17 through 37 are detailed allegations about Holmes's pre-incident behavior leading to this allegation. For example, plaintiffs allege that:

> 38.  Defendants in this case knew, should have known, or knew that it was substantially certain, that in this state of mental instability Holmes would present a danger to society if he were allowed to possess dangerous material.  Nonetheless, Defendants negligently supplied and entrusted him with the material he used to launch his assault.

Amended Complaint, p. 6.

Paragraphs 39-40 develop a sale history for the materials used by Holmes in the attack.  On June 13, 2012, Holmes purchased a high-capacity magazine, ammunition, hearing protection and a laser sight via the Sportsman's Guide's website. On June 28, 2012 Homes purchased at least 1050 rounds of .40 caliber ammunition, 2250 rounds of .223 caliber ammunition, and 25 rounds of 12 gauge shotgun shells via Lucky Gunner's website. On May 10, 2012 Holmes purchased two 6oz. tear gas grenades from BTP ARMS' website.  The firearms involved are alleged to have been purchased from brick and mortar firearms dealers in Colorado.

There are many paragraphs alleging details of preparation for and execution of the attack on the theater using some of the material sold to Holmes by the defendants. The plaintiffs have also alleged other high-profile shootings and allege the following:

> 189.  The combination of (I) the highly-publicized preceding incidents of mass shootings perpetrated by the dangerous mentally ill; (ii) the federal and state laws recognizing the dangers of selling firearms to the dangerous mentally ill; (iv) the Defendant's knowledge of the risks posed by their products in the wrong hands and (v) common sense, lead to the undeniable conclusion that the Defendants knew, should have

> known, or knew that it was substantially certain that selling Holmes dangerous materiel would create a foreseeable risk of death or injury.
>
> 190. Despite this knowledge of the foreseeable risk that certain individuals with severe mental illness will cause serious injury to themselves and/or others when given access to this materiel, the Defendants failed to make reasonable inquiries, and instead negligently employed unreasonably dangerous sales practices that supplied a dangerous person with the means to engage in a mass attack, thereby causing 12 people to die and many more to be injured.

Amended Complaint, p. 20.

Well-pleaded allegations are taken as true for purposes of ruling on the instant motions, but the allegations have not been proven in Holmes's criminal trial, which is pending in the District Court of Arapahoe County, Colorado. The motions have been briefed and oral argument was heard. The plaintiffs argue that these motions are premature because discovery is necessary to develop information about the defendants' business practices and awareness of the dangers they present. On the theories plaintiffs present, however, no discovery is needed.

The Colorado General Assembly declared in 2000 the policy of the state that "civil actions in tort for any remedy arising from physical or emotional injury, physical damage, or death caused by the discharge of a firearm or ammunition shall be based only upon an actual defect in the design or manufacture of such firearm or ammunition or upon the commission of a violation of a state or federal statute or regulation and not upon any other theory of liability." C.R.S. § 13-21-501(1). This policy was codified in C.R.S. § 13-21-504.5, which provides:

    (1)    A person or other public or private entity may not bring an action in tort, other than a product liability action, against a firearms or ammunition manufacturer, importer, or dealer for any remedy arising from physical or emotional injury, physical damage, or death caused by the discharge of a firearm or ammunition.

    (2)    In no type of action shall a firearms or ammunition manufacturer, importer, or dealer be held liable as a third party for the actions of another person.

    (3)    The court, upon the filing of a motion to dismiss pursuant to rule 12 (b) of the Colorado rules of civil procedure, shall dismiss any action brought against a firearms or ammunition manufacturer, importer, or dealer that the court determines is prohibited under subsection (1) or (2) of this section. Upon dismissal pursuant to this subsection (3), the court shall award reasonable attorney fees, in addition to costs, to each defendant named in the action.

    (4)    Notwithstanding the provisions of subsection (1) of this section, a firearms or ammunition manufacturer, importer, or dealer may be sued in tort for any damages proximately caused by an act of the manufacturer, importer, or dealer in violation of a state or federal statute or regulation. In any action brought pursuant to the provisions of this subsection (4), the plaintiff shall have the burden of proving by clear and convincing evidence that the defendant violated the state or federal statute or regulation.

C.R.S. §13-21-504.5 (2000).

Words and phrases used in a statute should be given effect according to their plain and ordinary meaning. *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542, 545 (Colo. 1995). The only exceptions to the broad immunity granted to ammunition dealers are a product liability action in (1) and an action in tort for any damages proximately caused

by the violation of a state or federal statute or regulation in (4).  Plaintiffs have not pleaded a product liability action against defendants under the first exception and the second exception is not applicable because  Plaintiffs are not seeking "damages." The Colorado legislature specifically limited suits against ammunition sellers to those where the plaintiff requests "damages" for relief, except in a product liability action which includes "any remedy."  Section 13-21-504.5(1).  Subsection (2) precludes liability of the ammunition sellers for the actions of Holmes in any type of action.  The plaintiffs' claims of negligence, negligent entrustment and public nuisance based on the sales of ammunition to Holmes are barred and "shall" be dismissed. C.R.S. § 13-21-504.5(3).

The ammunition sellers are also protected by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901 *et seq.* ("PLCAA"). Enacted in 2005, the PLCAA generally prohibits claims against firearms and ammunition manufacturers, distributors, dealers, and importers for damages and injunctive relief arising from the criminal or unlawful misuse of firearms and ammunition, unless the suit falls within one of six enumerated exceptions.  15 U.S.C. §§ 7901–7903.  Plaintiffs make a failed suggestion that the PLCAA is unconstitutional. Every federal and state appellate court to address the constitutionality of the PLCAA has found it constitutional. *See Ileto v. Glock*, 565 F.3d 1126, 1138-42 (9th Cir. 2009), *cert denied*, 130 S.Ct. 3320 (2010); *City of New York v. Beretta*, 524 F.3d 384, 392-98 (2nd Cir. 2008), *cert denied*, 129 S. Ct. 3320 (2009); *District of Columbia v. Beretta*, 940 A.2d 163, 172-82 (D.C. 2008), *cert denied*, 129 S. Ct. 1579 (2009); *Estate of Kim ex rel v. Coxe*, 295 P.3d 380, 382-92 (Alaska 2013); *Adames v. Sheehan*, 909 N.E.2d 742, 764-65 (Ill. 2009), *cert denied*, 130 S.Ct.

1014 (2009). The Court finds these decisions sound and rejects plaintiffs' argument that the PLCAA is unconstitutional for substantially the same reasons as set forth in the cited case law.

Among the findings made by Congress was that "[t]he manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State and local laws" and those engaged in firearms and ammunition sales "are not, and should not be, liable for the harm caused by those who criminally misuse" firearms and ammunition. 15 U.S.C. §§ 7901(a)(4) & (a)(5).

The operative language of the PLCAA states that "[a] qualified civil liability action may not be brought in any Federal or State court" against, *inter alia*, any seller of ammunition and "shall be immediately dismissed[.]" 15 U.S.C. § 7902. Congress defined a "qualified civil liability action" as:

> [A] civil action or proceeding or an administrative proceeding brought by any person against any manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or by a third party…."

15 U.S.C. § 7903(5)(A).

A "qualified product" includes ammunition as defined in 18 U.S.C. § 921(a)(17)(A) ("The term 'ammunition' means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm."). A "seller" includes a person "engaged in the business" of selling ammunition in interstate commerce at the

wholesale or retail level. 15 U.S.C. § 7903(6)(C). "'Engaged in the business'… as applied to a seller of ammunition, means a person who devotes time, attention, and labor to the sale of ammunition as a regular course of trade or business with the principal objective of livelihood and profit." 15 U.S.C. § 7903(1).  There is no dispute that Defendants Lucky Gunner and Sportsman's Guide are "sellers" of "qualified products" under the PLCAA.

In the statute's "Findings; purposes" section, Congress stated a purpose of enacting the PLCAA was:

> To prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm *solely* caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.

15 U.S.C. § 7901(b)(1)(emphasis added).

Plaintiffs posit that the purposes specified in 15 U.S.C. § 7901 inform the meaning of the phrase "resulting from the criminal or unlawful misuse" in 15 U.S.C. § 7903(5)(A) and argue that the harm they seek to prevent results from the defendants' conduct contributing to the shooting and therefore was not solely caused by Holmes. That same argument was made and rejected by the Supreme Court of Alaska in *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.2d 380, 384 (Alaska 2013).

In *Estate of Kim*, the estate of a deceased shooting victim brought a wrongful death action against the victim's shooter and the gun store from which the shooter obtained the weapon used in the killing of the victim. *Id.* The plaintiff alleged that the

8

gun store negligently or illegally provided the shooter with the rifle.  *Id.* at 385. The plaintiff argued, as plaintiffs argue here, that based on language found in the congressional findings and purposes sections of the PLCAA, the act "provides immunity only in cases where the harm is caused solely by others." *Id.* at 386. In other words, the plaintiff argued that the PLCAA does not apply in cases alleging that a firearm seller and a criminal actor concurrently caused harm.

The Alaska Supreme Court rejected the argument unequivocally, stating that the plaintiff's construction of the PLCAA ""seeks to elevate the preamble over the substantive portion of the statute, giving effect to one word in the preamble at the expense of making the enumerated exceptions meaningless." *Id.* at 387.  The court noted that a statutory preamble "can neither restrain nor extend the meaning of an unambiguous statute; nor can it be used to create doubt or uncertainty which does not otherwise exist."  *Id.* at 386 (quoting *Commercial Fisheries Entry Comm'n v. Apokedak*, 680 P.2d 486, 488 n. 3 (Alaska 1984)(internal quotations omitted).  The court held that the "plain reading" of the PLCAA's "qualified civil liability action" definition "supports a prohibition on general negligence actions – including negligence with concurrent causation." *Id.*

That ruling is persuasive.

There are statutory exceptions to immunity in the PLCAA.  The plaintiffs rely on § 7903(5)(A)(iii) for "actions in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the

9

product." This exception has come to be known as the "predicate exception," requiring proof of a knowing violation of a "predicate statute." *Ileto v. Glock*, 565 F.3d 1126, 1132 (9th Cir. 2009). Plaintiffs allege that the ammunition selling defendants violated a federal criminal statute prohibiting "any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person —is an unlawful user of or addicted to any controlled substance," 18 U.S.C. § 922(d)(3).

Plaintiffs have not pleaded facts that support their allegation that the federal statute was "knowingly" violated. There is no allegation that the defendants had any knowledge of the allegations made about Holmes's conduct and condition before the shootings. Plaintiffs issue with the sales is that the sellers had no human contact with the buyer and made no attempt to learn anything about Holmes. It is the indifference to the buyer by the use of electronic communication that is the business practice that this court is asked to correct. Notably, the plaintiffs have not sued the sellers of the firearms for non-compliance with the regulatory requirements applicable to over-the-counter sales.

The liability of each of the defendants must be considered separately. There is nothing to suggest that the separate defendants had any knowledge of the sales made by the others or by the local firearms dealers. Looked at in the aggregate and retrospectively, it could be inferred that Holmes's purchases were consistent with planning criminal activity but such an inference is unreasonable under the facts pleaded.

The plaintiffs also urge reliance on the public nuisance prohibitions in the Aurora Municipal Code (the "Code") to claim exception under § 7903(5)(A)(iii). Residents of Aurora are protected under the code from anyone (a) "knowingly or recklessly" displaying "a deadly weapon . . . in a public place in a manner calculated to alarm;" (b) carrying firearms in or upon public facilities "when said facilities are posted with notification that the carrying of firearms is prohibited;" (c) firing, shooting or discharging a firearm " within the city limits;" and (d) possessing a "firearm, other than a pistol or revolver, in or on any motor vehicle unless the chamber of such firearm is unloaded." Aur. Mun. Code § 62-26(8); § 94-154; § 94-146 and § 94-151.

The Code does not authorize private party actions to abate a public nuisance. That authority is granted to the city attorney. Aur. Mun. Code § 62-29. Where a nuisance presents an imminent danger of physical injury, "the chief of police shall bring such circumstances to the attention of the municipal court." Aur. Mun. Code § 62-30.

The Code does not make anyone other than the offending actor responsible for a violation. Most importantly, none of the Code provisions is "applicable to the sale or marketing" of firearms or ammunition.

Even if plaintiffs could bring a public nuisance suit under the Code, their theory suffers other dispositive infirmities. First, it is not alleged that defendants themselves violated any of the Code provisions, but rather that they "contributed" to their violation. Plaintiffs must allege facts showing that defendants "knowingly violated" the Code nuisance provisions. Plaintiffs have not, however, alleged any facts showing how

11

defendants knew that their selling of materials to Holmes would contribute to Holmes's violation of Aurora nuisance statutes. Again, plaintiffs claim that defendants were "ignorant of the threats posed by certain purchasers."

The second of the six enumerated exceptions to the PLCAA is negligent entrustment. "Negligent entrustment" under the PLCAA means "supply[ing] a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others." 15 U.S.C. § 7903(5)(B). Although the PLCAA identifies negligent entrustment as an exception to immunity, it does not create the cause of action. 15 U.S.C. § 7903(5)(C) (PLCAA does not create "public or private cause[s] of action or remed[ies].") Accordingly, the claim arises under state law. Negligent entrustment under Colorado law is based on the Restatement of Torts (Second) §§ 308 and 390. *See, e.g., Casebolt v. Cowan*, 829 P.2d 352, 358 (Colo. 1992) ("electing to utilize sections 308 and 390 of the Restatement to guide us in our analysis"). Section 390 states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Restatement (Second) of Torts*, § 390 (1965). Thus, negligent entrustment, under Colorado law, requires that "the supplier of the instrumentality entrusted must have

actual knowledge either of the user's propensity to misuse the instrumentality or of facts from which such knowledge could be reasonably inferred." *Hilberg v. F.W. Woolworth Co.*, 761 P. 2d 236, 239 (Colo. App. 1988), *reversed on other grounds*, *Casebolt v. Cowan*, 829 P. 2d 352, 359-60 (Colo. 1992).  The standard of care in negligent entrustment cases does not include a duty to investigate the background of the person to whom chattel is entrusted. *See, e.g.*, *Connes v. Molalla Transport Systems, Inc.*, 817 P.2d 567, 570-71 (Colo. 1991) (no duty to investigate employee driver's non-vehicular criminal record), *affirmed*, 831 P. 2d 1316 (Colo. 23 1992); *Liebelt v. Bob Penkhus Volvo-Mazda, Inc.*, 961 P.2d 1147, 1171 (Colo. 1998) (no duty to inquire whether potential automobile purchasers have liability insurance); *accord Heatherton*, 445 F.Supp. 294, 304-05 (D. Del. 1978), *rev'd on other grounds*, 593 F.2d 526 (3d. Cir. 1978) (no duty on firearm seller to investigate background of purchaser).

Plaintiffs acknowledge that to state a viable claim for negligent entrustment under the PLCAA, they are required to plead facts showing that defendants "[knew], or reasonably should [have known]," that Holmes was likely to use the product sold to him in a manner "involving unreasonable risk of physical injury to" others.  Furthermore, plaintiffs do not dispute that a seller does not have a common law duty to investigate the background of the person to whom he entrusts a chattel.  Despite their recognition of the relevant legal standards, plaintiffs have not alleged any facts showing that defendants had "actual knowledge" of Holmes's mental condition or his intentions and have not alleged any facts showing that defendants reasonably should have known anything about Holmes's purposes in making his online purchases.   They have not

13

shown any factual basis for an exception to the established law that there is no duty to investigate the purchaser.

Instead, plaintiffs argue the existing law should evolve new standards applicable where the facts involve retailers who sell "hazardous items exclusively online, without the kind of human interaction that naturally is involved in a traditional retail transaction." Plaintiffs assert that "it is a question of fact whether Defendants should have known or exercised reasonable care to determine that another person was likely to and in fact did use the dangerous materiel in a manner involving unreasonable risk of injury to others." Plaintiffs' assertion attempts to inject the duty of "reasonable care" to the law of negligent entrustment in Colorado. But the standard for negligent entrustment liability is narrower than the ordinary negligence standard because the manner in which the chattel is ultimately used is outside the supplier's control. Imposing the broader "reasonable care" standard on suppliers, encompassing obligations to inquire, investigate, screen, monitor and evaluate buyers and their intentions, would potentially create limitless supplier liability. This is the very reason why suppliers of chattel are required to act only on their actual knowledge or facts from which knowledge may be reasonably inferred. No Colorado court has held otherwise, and plaintiffs have cited no cases from any jurisdiction in which a court has found that a retailer who sells its products online has a duty to investigate its customers.

The only fact that plaintiffs offer to suggest that defendants should have questioned Holmes is the amount of ammunition and other potentially dangerous materials that he purchased, but there is nothing inherently suspicious about large internet orders. Consumers often buy large quantities of goods over the internet for the

convenience of one transaction and to secure a better price.  Indeed, one of the defendants' trade names is htttp://www.*Bulk*Ammo.com (emphasis added).  Tellingly, there are no allegations that the quantities purchased by Holmes exceed any state or federal law placing limits on the amount of ammunition or other dangerous material a person may possess at any one time.

Also, no defendant is alleged to have had any idea about what Holmes was purchasing from other defendants or from the brick and mortar stores that supplied weapons and other materials that Holmes is alleged to have used in the theater attack. Thus, plaintiffs allegations that "Defendants should have known that the accused killer posed a risk with guns, thousands of rounds of ammunition, a 100-round drum, body armor, and tear gas, as would have been evident in a traditional sales transaction involving human interaction" not only incorrectly assumes that the quantities in and of themselves give enough reason to infer that Holmes posed a risk but also incorrectly suggests that the defendants knew that Holmes had all these items, regardless of whether they sold them to Holmes or some other entity did.

The federal and state immunity statutes prohibit the claims of liability for the sales of ammunition in this case.  They do not affect the sale of a high capacity magazine, hearing protection and a laser sight by Sportsman's Guide and the two .6 oz. Tear gas grenades by Platt.  The analysis of negligent entrustment law of Colorado precludes liability for those sales.

The plaintiffs assert preemption of the Colorado Immunity Statute by the PLCAA under both  the doctrines of implied field preemption and conflict preemption. The Court disagrees. State laws or regulations are barred on these grounds where preemption is

inferred because Congress extensively regulates conduct in an entire field, or where the federal interest clearly dominates, or "where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 791 (10th Cir.2000)(internal quotations omitted). "In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, [the Court's] sole task is to ascertain the intent of Congress." *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280(1987) (citations omitted).

The plain language of the PLCAA and its stated legislative purpose is to protect firearms and ammunition sellers from liability for "the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended" while "[p]reserve[ing] and protect[ing] . . . *State sovereignty*[.]" 15 U.S.C. §§ 7901(a)(5), (6) (emphasis added). Addressing only immunity for manufacturers and sellers of firearms and ammunition from claims based on harm caused by third parties, the PLCAA does not represent a comprehensive regulatory scheme. It does not create any causes of action, but relies on state law to do so: "[N]o provision of this Act shall be construed to create a public or private cause of action or remedy." 15 U.S.C. § 7903(5)(C). There are no counterpart regulations to the PLCAA in the Code of Federal Regulations. While the Colorado Immunity Statute provides greater protection for sellers than the PLCAA, it does not interfere with federal policy in any material way. *See Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 488-89 (10th Cir. 1998) ("Conflict preemption requires that the state or local action be a

material impediment to the federal action") (citation omitted).  Both the Colorado statute and the PLCAA share the objective of shielding firearms manufacturers and dealers from liability for injuries caused by third parties using non-defective firearms.

As explained above, plaintiffs have not adequately alleged their claims for negligent entrustment and public nuisance.  Accordingly, these claims fail even if the sellers did not have statutory immunity.

A claim of negligence depends upon an identified duty of care. Whether a defendant owes a duty of care to prevent an injury to another is a threshold question of law. *Smith v. City & County of Denver*, 726 P. 2d 1125, 1126 (Colo. 1986).  Colorado law has long recognized there is no duty to act affirmatively to protect another from criminal attack by a third person unless there is some special relationship between the parties.  *Molosz v. Hohertz*, 957 P.2d 1049, 1050 (Colo. Ct. App. 1998) ("Generally, there is no duty to control the conduct of a third person so as to prevent him or her from causing physical harm to another unless a special relationship exists between the actor, here, the landlord, and the third person, which imposes a duty upon the actor to control the third person's conduct.")  Plaintiffs have not alleged that any defendant had a special relationship to either them or their daughter.  Plaintiffs attempt to premise their negligence claim on the "general duty imposed on all persons not to expose others to reasonably foreseeable risks of injury."  However, the risk of injury at issue was not "reasonably foreseeable," because plaintiffs have not sufficiently alleged that defendants knew or should have known or had reason to believe that Holmes presented such a risk.  As with their other claims, plaintiffs try to have it both ways by complaining that the injury was foreseeable to the defendants on the one hand, and complaining

that defendants knew nothing about their customer on the other.

Even were defendants found to have had a special relationship with plaintiffs' daughter such that it owed her a duty of ordinary care, plaintiffs' negligence theory cannot avoid Colorado's law of proximate cause, which "is intended to ensure that casual and unsubstantial causes do not become actionable." *North Colorado Medical Center v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996). To constitute proximate cause, alleged tortious conduct must be a "substantial factor in producing the injury." *Id.* If an event other than the defendant's alleged conduct appears predominant, the defendant's conduct cannot be a substantial factor. *Id.*; *see Castaldo v. Stone*, 192 F.Supp. 2d 1124, 1171 (D. Colo. 2001) (assailants' actions were the predominant, if not sole, cause of the injuries inflicted in the Columbine High School shooting). As discussed above in the context of public nuisance, the alleged chain of causation between Defendants and Holmes's acts is too attenuated to impose liability. There can be no question that Holmes's deliberate, premeditated criminal acts were the predominant cause of plaintiffs' daughter's death. Holmes meticulously prepared for his crime, arriving at the theater equipped with multiple firearms, ammunition, and other gear allegedly purchased from several distinct business entities operating both online and through brick and mortar locations. Neither the web nor the face-to-face sales of ammunition and other products to Holmes can plausibly constitute a substantial factor causing the deaths and injuries in this theater shooting.

The stated purpose of this civil action is to obtain a court order enjoining the defendants from conducting their online sales of the products sold to Holmes to protect the public from future harm until and unless they accept changes prescribed by this

court.  To grant such relief this court must conduct hearings and make policy decisions that are within the authority of the political branches of government responsive to the people under our constitutional structure of representative government.  The defendants' motions to dismiss must be granted because this court does not have the authority to grant the relief requested.

Upon the foregoing, it is ORDERED that plaintiffs' claims as to all defendants and this civil action are dismissed.  Pursuant to C.R.S. §13-21-504.5, defendants Lucky Gunner and the Sportsman's Guide are entitled to an award of reasonable attorney fees and costs to be determined after filing motions pursuant to D.C.Colo.L.Civ.R.54.3 within 14 days after entry of judgment pursuant to this order.

DATED:   March 27, 2015

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge