## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  14-cv-2822-RPM

SANDY PHILLIPS, individually and as surviving parent
of Jessica Ghawi, decedent; LONNIE PHILLIPS,
individually and as surviving parent of Jessica Ghawi,
decedent,

Plaintiffs,

v.

LUCKYGUNNER, d/b/a/ BULKAMMO.COM,
THE SPORTSMAN'S GUIDE,
Brian Platt, d/b/a/ BTP ARMS,
Gold Strike E Commerce LLC d/b/a/
BULLETPROOFBODYARMORHQ.COM,
and JOHN DOES 1 through 10, unknown individuals,

Defendants.

---

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR
### ATTORNEY FEES AND COSTS

---

Pursuant to Fed. R. Civ. P. 54 and D.C.Colo.L.Civ.R. 54.3, Plaintiffs Sandy Phillips and

Lonnie Phillips ("Plaintiffs") oppose Defendants' Motions for Attorney Fees (Dkt. Nos. 47, 48,

50, and 55) and in support thereof state as follows.

### INTRODUCTION

Defendants seek a combined $263,321.46 in attorney fees and costs from Plaintiffs, a

staggering amount in a case that was disposed of after a single motion.  Defendants' requests are

unreasonable.  Their billing records reflect duplication of effort and inefficiency: they employed

attorneys to do overlapping work; utilized the highest-paid attorney to perform basic research

tasks that could be done by more junior attorneys; unnecessarily removed the case to federal

court; and briefed numerous issues that were not necessary for dismissal.

Defendants could have achieved the same result with minimal time and briefing.  For

example, they contended (and the Court agreed) that this case could be dismissed based on the

clear language of a Colorado immunity statute, about which very little attorney time was

required.  *See* LuckyGunner Rule 12(b)(6) Motion to Dismiss and Memorandum at 4-5 (making

the Colorado statute argument in 1½ pages with one cited case).  While Defendants are entitled

to expend resources how they wish, there is no requirement that Mr. and Mrs. Phillips must pay

for those expenditures.

Moreover, Mr. and Mrs. Phillips' lawsuit did not seek any monetary damages.  They

brought this action when Defendants did not change their business practices after they

discovered how easy it was for someone to arm himself with their products and use them to

commit an atrocity.  In response to that inaction, the Mr. and Mrs. Phillips brought this lawsuit in

the public interest, to help prevent others from suffering injury and death, like their daughter.[1]

In light of the posture of the case, the nature of the claims presented, and Mr. and Mrs.

Phillips' position as private individuals with limited resources, Plaintiffs oppose Defendants'

unreasonable fees and cost requests and ask the Court to use its discretion to eliminate or greatly

reduce the award.

---

[1]  Additionally, Mr. and Mrs. Phillips are of modest means, who are not working while they attend the
ongoing, months-long trial of their daughter's killer.

**ARGUMENT**

In its Order of March 27, 2015, the Court stated that Defendants LuckyGunner and the Sportsman's Guide "are entitled to reasonable attorney fees and costs" pursuant to C.R.S. §13-21-504.5.  Dkt. No. 45 at 19.  LuckyGunner and the Sportsman's Guide also seek fees pursuant to C.R.S. § 13-17-201, as does Defendant Platt d/b/a BTP Arms ("Platt").

Both the relevant statutes permit recovery for ***reasonable*** fees.  The Court has a duty to ensure that any award for attorney fees is reasonable.  *Ramos v. Lamm,* 713 F.2d 546, 553-54 (10th Cir. 1983).  The determination of whether the requested attorney fees are reasonable is made by calculating the "lodestar" amount.  *See Case v. Unified School Dist. No. 233,* 157 F.3d 1243, 1249 (10th Cir. 1998); *Payan v. Nash Finch Co.,* 310 P.3d 212, 217 (Colo. App. 2012).  The district court "has discretion in determining the amount of a fee award."  *Mares*, 801 F.2d at 1201; *Crandall v. City of Denver*, 238 P.3d 659, 661 (Colo. 2010).

The court determines the lodestar amount by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate.  *Id*.  The court "must then ensure that the winning attorneys have exercised 'billing judgment,' [which] consists of winnowing the hours actually expended down to the hours reasonably expended."  *Case*, 157 F.3d at 1249 (citing *Ramos*, 713 F.2d at 553).  After calculating the initial lodestar amount, the court should deduct any hours that were not "reasonably expended."  *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983); *Payan v. Nash Finch Co.,* 310 P.3d 212, 218 (Colo. App. 2012).  The Tenth Circuit has "likened the process to a senior partner in a private firm scrutinizing and adjusting time reported by subordinates.  As anyone who has been in private practice well knows, for billing purposes such adjustments can take many forms, including a general write-down of total hours logged."

*Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986).  Parties seeking attorney fees must show that the fees are reasonable.  *Case*, 157 F.3d at 1249-50.

LuckyGunner claims that it "reasonably" spent 526.7 hours on the case and incurred $151,574.70 in attorney fees and $3,695.00 in costs.  *See* Dkt. Nos. 48, 48-1, 48-2.  The Sportsman's Guide claims that it "reasonably" spent 249.4 hours and incurred $71,027.00 in attorney fees and $2,010.87 in costs.  *See* Dkt. Nos. 50, 51.  Platt d/b/a BTP Arms claims that it "reasonably" spent 121.2 hours and incurred $33,569.00 in attorney fees and $1,444.89 in costs.  *See* Exhibits 1, 2.[2]  In total, Defendants ask the Court to compensate them for 897.3 hours of work and award them a combined $263,321.46 in attorney fees and costs.

By contrast, lead counsel for Plaintiffs spent 180.7 hours responding to the three Motions to Dismiss and a brief from the Department of Justice ("DOJ") and preparing for and arguing the one hearing held in this case.  *See* Exhibit 3.  Most of that work (and all of the research and drafting) was done by an associate (145.7 hours).  An additional 35 hours of work was done by a partner with the firm.  *See id.*

Even setting aside this comparison, Defendants' requests for fees and costs is not reasonable.  Their requests ignore the special circumstances of this case.  Their requests are not supported by documentation adequate to show that the requests are reasonable.  And their requests are undermined by billing records that show unnecessary and duplicative work.

---

[2] Counsel for Platt did not submit their billing records to the Court with their Motion, but they did provide copies to Plaintiffs.  Those records appear, as produced, in Exhibits 1 and 2.

I.      **Defendants' Requests for Fees Are Excessive and Unreasonable**

      A.      **Under the Circumstances of this Case, a Reasonable Fee Award Is Zero**

The combined fee request amount of $263,321.46 is unreasonable on its face and should be reduced to zero in light of the special circumstances in this case.  The Court should take account of the fact that the only relief Mr. and Mrs. Phillips sought was injunctive relief — a change in Defendants' business practices.  Rather than reach out to Plaintiffs to discuss the potential for a settlement, Defendants chose to put on a full court press defense.  That was their right.  But they do not have the right to ask Mr. and Mrs. Phillips to pay for that strategic, calculated choice.  As this court has observed, "[a] client may choose the 'Cadillac' of law firm representation, but such a client is not automatically entitled to have an opposing party make the car payments."  *Grynberg v. Ivanhoe Energy, Inc.*, No. 08-CV-02528-WDM-BNB, 2011 WL 3294351, at *6 (D. Colo. Aug. 1, 2011) (further citing *Praseuth v. Rubbermaid, Inc.,* 406 F.3d 1245, 1257 (10th Cir. 2005) ("[A]wards made under the authority of fee-shifting statutes are not intended to replicate fees which an attorney could earn through a private fee arrangement with a client.").  As discussed below, this case could reasonably have been defended for a tiny fraction of the cost, or nothing if successful efforts were made to agree on reasonable reforms, but Defendants made no effort to take a reasonable, more efficient, approach.

When calculating a lodestar amount, the court should "adjust the lodestar upward or downward to account for the particularities of the suit and its outcome."  *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012).  The lodestar "may in rare circumstances be adjusted to account for the presence of *special circumstances*."  *Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010) (emphasis added).  In addition, the

Court has inherent equitable powers that authorize it to achieve a proper end result.  *See Brown v. Plata*, 131 S. Ct. 1910, 1944 (2011) ("[T]he scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies.")  (internal citations omitted); *La Plata Med. Ctr. Associates, Ltd. v. United Bank of Durango*, 857 P.2d 410, 420 (Colo. 1993) ("the power to fashion equitable remedies lies within the discretion of the trial court").

Special circumstances abound in this case.  First, Defendants chose the "Cadillac" defense strategy and elected to brief every possible issue, even when a far more streamlined approach could have achieved the same result.  Second, Mr. and Mrs. Phillips already have suffered the loss of their child at the hands of Defendants' customer.  It is too great a price to now ask Mr. and Mrs. Phillips also to pay Defendants' attorneys' fees.  Third, this suit was brought in the public interest.  Mr. and Mrs. Phillips did not seek compensation for the loss of their daughter.  Rather they want to spare other families the tragedy they have suffered.  Public interest suits like this one are entitled to broad First Amendment protection.  *See, e.g., NAACP v. Button*, 371 U.S. 415, 429-430 (1961).  There is a tension between furthering the Colorado law's purpose to deter unnecessary tort claims and chilling the First Amendment rights to engage in good faith litigation aimed at seeking reforms to protect the public.  Particularly here, where Plaintiffs' claims were based on novel facts with no clear precedent under Colorado law, Plaintiffs suggest that the First Amendment interest is predominant.

Mr. and Mrs. Phillips therefore ask the Court to use its discretion to determine that a reasonable fee amount in this case is zero.  No cases interpreting C.R.S. § 13-21-504.5 prohibit

such a result.  In fact, there are no cases interpreting the fee provisions of that statute, and thus no cases limit the Court's discretion in this regard.

**B.      Defendants' Billing Records Are Insufficient to Demonstrate the Reasonableness of the Fees Requests**

Even if the Court determines that it must award some amount of fees, Defendants have not demonstrated what that amount should be. The billing records submitted by Defendants are deficient in multiple ways.

Counsel for all three Defendants use block billing.  This practice is notorious because it "camouflage[s] the work a lawyer does naturally and quite correctly raise[s] suspicions about whether all the work claimed was actually accomplished or whether it was necessary.  This concern is particularly important in a situation where a party is seeking to have his opponent pay for his own lawyer's work." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998). Because counsel for Defendants utilize block billing, it is difficult, if not impossible, to determine how much time Defendants spent on any one task.

The problems with LuckyGunner's block billing are compounded by its redactions. Lucky Gunner has blacked out the names of people or entities it does not want to identify.  This individual or entity does not appear to be a client or co-counsel. *See* Exhibit 4 (chart of LuckyGunner time entries with inappropriate redactions).[3]  As the burden is on Defendants to justify their fees, LuckyGunner is not entitled to any blocks of fees with communications with an undisclosed person who may be wholly unnecessary to the litigation, even if those

---

[3] Further, Plaintiffs are entitled to full disclosure of whether the defense of LuckyGunner or other Defendants is being directed by other individuals or whether other parties are indemnifying Defendants for their legal fees, as such facts affect the reasonableness of the fees request.  Requiring disclosure of Defendants' retainer letters and indemnification agreements would address this point.

communications may relate to broader gun industry efforts. *Johnson v. Liberty Mut. Fire Ins. Co.*, No. CIVA08CV01137MSKMJW, 2009 WL 3530379, at *3 (D. Colo. Oct. 23, 2009) ("[T]he factual circumstances surrounding a privileged communication are not privileged. The date on which a privileged communication took place, and the people involved in the communication generally are not privileged.").

Further, fee-shifting statutes are for the benefit of defendants, so should not be applicable if other entities besides the defendants are paying the fees. It is the Defendants' burden to prove that their counsel is not being paid by other entities. That is a distinct possibility here, especially given the redactions in LuckyGunner's invoices; it is not unprecedented for the firearms industry to contribute to defense costs, and LuckyGunner's lead counsel in particular has represented the industry and an industry trade association.

Because of these deficiencies in their records, Defendants cannot establish that their attorney fees requests are reasonable, thus they are not entitled to any award of fees.

### C.     The Billing Rates for Non-Colorado Counsel Should Be Reduced to Match the Rate Charged by Colorado Counsel

If the Court does not determine that a reasonable amount of attorney fees is zero, Plaintiffs ask the Court to make appropriate reductions to the hourly rate charged by counsel for Defendants. This case involves multiple attorneys whose principal places of business are outside Colorado. The hourly rate charged by these counsel at the partner level should be adjusted downward to match the most reasonable rate of Colorado counsel.

"The setting of a reasonable hourly rate is within the district court's discretion." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). Hourly rates must reflect the "prevailing

market rates in the relevant community." *Blum v. Stenson,* 465 U.S. at 895; *Ramos v. Lamm,* 713 F.2d at 555.

Each Defendant is represented both by local counsel in Colorado and by counsel with primary offices outside of Colorado.  In this case, the rates charged by Colorado counsel provide the best benchmark for the prevailing market rates in Colorado.  Defendant Platt is represented by Mr. Montoya of Messner Reeves, LLP as local counsel.  Dkt. No. 55 at 3.  Mr. Montoya has practiced law since 1984, has practiced before this Court since that time, and has over 30 years of trial experience.  He charges a rate of $300/hour.  Defendant the Sportsman's Guide is represented by Mr. Wilcox of Peters Mair Wilcox as local counsel.  Mr. Wilcox has practiced law since 1983 and also has over 30 years of trial experience.  He also charges a rate of $300/hour.  Given that two of the three local counsel charge $300/hour at the partner level and have comparable experience to that of non-local counsel, this rate reflects a prevailing market rate in this community.  *See Ramos*, 713 F.2d at 555.

Accordingly, Plaintiffs ask the Court to adjust all partner billing rates to be $300/hour. This adjustment will affect the billing rates of four attorneys.  For Defendant LuckyGunner:  Mr. Vogts (principal place of business in Chicago, IL) with a billing rate of $390/hour; and Mr. Colin (principal place of business in Denver, CO) with a billing rate of $325/hour.  For Defendant the Sportsman's Guide:  Mr. Mark (principal place of business in Eden Prairie, MN) with a billing rate of  $325/hour; and Mr. Rooney (principal place of business in Eden Prairie, MN) with a billing rate of $325/hour.

**D.      Defendants' Fee Request Is Grossly Disproportionate to the Case and Should Be Significantly Reduced**

Even if the Court elects not to use its discretion to determine that a reasonable attorney fees amount in this case is zero, any fee award should be significantly reduced from the amount requested by Defendants.  The number of hours that Defendants claim for this matter is disproportionate to the case:  they seek payment collectively for 897.30 hours.  This number should be reduced to achieve a reasonable and equitable result as a matter of course.  Mr. and Mrs. Phillips should not be expected to foot the bill for Defendants' choice to engage in litigation overkill.  *See Praseuth,* 406 F.3d at 1257; *Grynberg*, 2011 WL 3294351, at *6.

**1.      Plaintiffs Should Not Be Asked to Subsidize Defendants' Choice for the "Cadillac" Approach to Litigation**

In considering what is reasonable, the Court should consider what defense counsel reasonably could have charged if ordinary individuals or small businesspeople were paying those fees — people like Mr. and Mrs. Phillips, from whom defendants seek payment.  Under such a real-world scenario, counsel would explain to his clients their options and would have ended up with a far less costly result.

The first option for defense counsel would be a defense scenario involving virtually no fees.  Counsel could have explained that Plaintiffs were not seeking any money in the case, only reforms to their business practices to make it harder for dangerous people, such as the man who killed their daughter, to obtain the means to harm others.  Therefore the only financial risk to which Defendants were exposed were their own counsel's attorneys' fees and costs.  To minimize those expenses, their counsel could have called Plaintiffs' counsel and asked what sort of reforms to their business practices Plaintiffs were seeking.  It is possible that after a relatively

10

brief round of negotiation the parties could have agreed to reforms, and Plaintiffs would have voluntarily dismissed their lawsuit.  That reasonable approach would have resulted in no litigation costs.

A second option would be for defense counsel to explain that in his view there was a strong argument that the case could and should be dismissed based on the Colorado firearms immunity statute alone, and that such a case for dismissal could be made in an elegant but short brief, in state court. This option would have been accomplished with a few hours work drafting a motion to dismiss by an associate and a lesser amount by a partner (such as the 1 ½ pages dedicated to the argument in LuckyGunner's brief), and additional time for a responsive pleading and argument.  Even using Defendants' block billing, adding up all of the blocks that include any mention of Colorado's immunity law or related preemption issues (but also include other work), LuckyGunner and the Sportsman's Guide's fees total $34,781.50,[4] with partners' rates reduced to a more reasonable $300/hour.[5]  Deducting block time entries that include the unnecessary removal motion, or communications with the redacted, unknown person who may not be necessary to the case,[6] that total is $25,106.50.  As these are block bills, that include items that were not necessary and do not carry Defendants' burden to show their fees are reasonable, that amount should be reduced substantially.  A 60% reduction (which is generous to Defendants,

---

[4] The Colorado immunity statute only takes a small fraction of these blocks of time, but allowing 40% of each block recognizes work on arguments regarding negligent entrustment and PLCAA, which counsel for LuckyGunner has briefed previously.

[5] *See supra* Part I.C for a discussion of billing rates.

[6] *See supra* Part I.B for a discussion of redactions related to communications with unidentified individuals.

given their block billing and the fact that no case law existed to support this simple argument) equals $10,042.60.

A third option would be to not seek a settlement, not seek consent to removal, and instead remove the case to federal court and then engage in extensive briefing on numerous issues — the Defendants' "Cadillac" approach.  Even if this most costly option were exercised, reasonable parties could have agreed to efficiencies to save time and money, such as by filing a joint motion, or one central motion with smaller additional motions to make distinguishing points concerning specific parties.  Defendants' decision to opt for the most inefficient approach resulted in over $260,000 in fees.

While Defendants were entitled to choose to take this third approach, Plaintiffs contend that option 1 was reasonable — in fact, the most reasonable — approach, and option 2 also was far more reasonable than the approach taken by Defendants.  Indeed, in the real world, with real people of limited means (or frugal people of considerable means) paying attorneys' fees, it is hard to imagine a client rushing to have his lawyers jump into the $260,000 option rather than the $0.00 option, followed up (if settlement talks failed) with the far less costly option 2.

While Colorado law differs from the traditional American rule by entitling the prevailing party to reasonable fees and costs in such cases, this Court can determine that this case could have been reasonably litigated without such fees.  In determining what is reasonable, efficiency and cooperation should be incentivized; choosing the most costly route should not be rewarded — and these Plaintiffs should not have to pay for those decisions.  This Court should also consider the equities of this case, including that Mr. and Mrs. Phillips did not seek any money for themselves or anyone else.  All they wanted was to reform business practices for the public good,

and to spare others the harm they suffered when their daughter was killed with the arms obtained from defendants.

Finally, there is a tension between the fundamental First Amendment right to seek redress through the courts, which is "an aspect of the First Amendment right to petition the Government for redress of grievances," *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 741, (1983)[7]; and fee and cost-shifting statutes.   *See California Teachers Assn v. State of California*, 975 P.2d 622, 636 (Cal. 1999) (striking down statute assessing hearing costs as violative of First Amendment, noting, "A litigant's nonfrivolous assertion of a procedural right may not be chilled through fear of subsequent reprisals in the form of monetary penalties.")

That tension is greater with public interest noncommercial litigation, which is subject to heightened First Amendment protection more than common litigation involving private disputes. *In re Primus*, 436 U.S. 412, 431-32, (1978) (such litigation "often depends on the ability to make legal assistance available to suitable litigants . . . The First and Fourteenth Amendments require a measure of protection for advocating lawful means of vindicating legal rights") (internal citation omitted) .  Awarding unreasonable "Cadillac" fees against a public interest litigant who is not seeking monetary damages raises Constitutional concerns that are not present in most cases.

### 2.    The Court Has Discretion to Reduce Attorney Fees to a Reasonable Amount

The Court has authority to reduce the number of hours claimed in a fee application to achieve a reasonable end result. *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1147

---

[7] *See also California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 223 (1967); *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731 (1983).

(10th Cir. 2006). A "general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." *Id.* (citing *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1203 (10th Cir. 1986)); *Case,* 157 F.3d at 1253 ("there are legitimate cases in which a large general reduction in requested fees is warranted"); *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1203 (10th Cir. 1986) (affirming district court's reduction of the hours claimed by the prevailing party by 77%); *Jane L. v. Bangerter,* 61 F.3d 1505 (10th Cir. 1995) ("the requested hours far exceed[ed] the hours that reasonably would be required by reasonably competent attorneys in handling this litigation").

A reduction in hours is appropriate here, given the posture of the case, the relative positions of the parties, counsel's use of block billing and redaction of non-privileged information (which prevents analysis of many aspects of the billing invoices) and the high fees sought by Defendants.

LuckyGunner's claim in particular is excessive when compared with the work done by others on this case. LuckyGunner seeks compensation for over 526 hours spent on this case, representing time spent on an unnecessary notice to remove, one motion and reply, and one hearing. By contrast, counsel for Plaintiffs required 189 hours (with a smaller fraction spent by partners) to respond to three Motions to Dismiss (addressing multiple grounds for dismissal raised by Defendants) and a Brief from the Department of Justice ("DOJ") and to prepare for and attend the one hearing held in this case. *See* Exhibit 3. And Plaintiffs' counsel's time would have been far less than 189 hours if Defendants acted more efficiently, such as by attempting to seek a settlement, focusing on the immunity statute, and consolidating their briefs.

LuckyGunner's claim likewise is excessive when compared with the work of counsel for the other Defendants.  LuckyGunner's request for 526.7 hours is more than double the already high number of hours spent on the case by counsel for Co-Defendant the Sportsman's Guide. The Sportsman's Guide occupied the same position as LuckyGunner in this action and had the exact same claims and defenses available to it, yet claims 249.4 hours of work.  *Compare* Dkt. No. 48 at 3-4 *with* Dkt. No. 51 at 3.  And LuckyGunner's request is more than four times the number of hours claimed by counsel Pratt, who seeks compensation for 121.2 hours.[8]  *Compare* Dkt. No. 48 at 3-4 *with* Dkt. Nos. 55-1, 55-2.

Further, contrary to the statement made by LuckyGunner's counsel, this case did ***not*** cause Defendants to engage in "extensive briefing and motion practice."  Colin Affidavit, Dkt. No. 48-1, at 3-4; Vogts Affidavit, Dkt. No. 48-2, at 3.  Rather, Defendants filed a notice of removal, a single motion, and a reply.  It is irrelevant that the briefing included "intervention of the Department of Justice and constitutional and preemptive challenges to the federal and state," *id.*, given that none of the Defendants, including LuckyGunner, responded to the DOJ brief at all. The DOJ brief supported their positions and reduced their work, as DOJ defended the Constitutionality of PLCAA.  The Court disposed of this case after the initial motion and before any discovery was taken.  While Defendants chose to seek dismissal on multiple grounds, that was not necessary to achieve the same result.  As noted, Defendants could have filed a simple motion which reproduced the Colorado immunity law and demanded dismissal with a few

---

[8] The distinction between Pratt and LuckyGunner is that the latter claimed immunity under the Colorado statute and PLCAA.  It is unreasonable to assume that the arguments relating to those two statutes required hundreds of additional hours of work, especially in light of the fact the Sportsman's Guide addressed those same issues and still billed fewer than half as many hours at LuckyGunner.

sentences of argument, as they did in their first argument.  *See, e.g.*, LuckyGunner Memorandum at 4-5.  That would have achieved dismissal with a few hours of work.  While Defendants were certainly entitled to pay for attorneys to provide far more extensive briefing on additional issues, that does not mean that those fees are reasonable for Mr. and Mrs. Phillips to pay.

Therefore, the Court should exercise its discretion to reduce Defendants' attorney fees request.

### E.     Defendants' Billing Records Reflect Unreasonable Duplication, Redundant Charges, and Unnecessary Work

Additionally, and on separate grounds, reducing the attorney fees sought by Defendants is appropriate here because Defendants' billing records reflect unreasonable lack of efficiency, duplication, redundant charges, and unnecessary work.  *Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 956 (10th Cir. 1994) (the district court may reduce the reasonable hours awarded if "the number [of compensable hours] claimed by counsel include[s] hours that were unnecessary, irrelevant and duplicative.").  "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Fox v. Vice,* 131 S.Ct. 2205, 2217 (2011).  In reducing the number of hours claimed to a more reasonable level, the court need not identify and justify each identified hour.  *Mares*, 801 F.2d at 1203.

Here, lead counsel for Defendants tout their extensive litigation experience.  *See* Dkt. No. 48-1 at 1-2; Dkt. No. 48-2 at 1-2; Dkt.  No. 51 at 2-5; Dkt. No. 55-1 at 2; Dkt. No. 55-2 at 2-3, 8.  For example, for "nearly three decades" lead counsel for LuckyGunner has defended arms dealers in multiple jurisdictions, including suits that involved immunity issues that are identical to those presented in this case.  *See* Dkt. No. 48-2 at 1.  This experience should have resulted in

more efficient litigation effort, including less time spent drafting and researching. *See, e.g.,*

*O'Brien v. Airport Concessions, Inc.*, No. 13-CV-01700-CMA-BNB, 2015 WL 232191, at *4 (D.

Colo. Jan. 16, 2015) (reducing award based on duplication of effort and "especially in light of

[counsel's] professed eighteen years of experience in commercial class action litigation and the

fact that electronic research allows attorneys to quickly determine whether cases have been

overruled"). Counsel had the ability to reuse arguments from previous briefs in other cases

relating to immunity for arms dealers. But despite that experience, there was no efficiency of

effort. Rather than have more junior attorneys draft pleadings by utilizing work done by

LuckyGunner's lead counsel in previous cases, LuckyGunner used its highest-paid attorney to do

basic research and drafting. Nor does it appear that LuckyGunner and Sportsman's Guide

avoided duplication of effort by pooling resources; they made the same arguments regarding the

same statutes, and even cited many of the same cases. This work did not have to be done twice,

in separate motions.

LuckyGunner seeks compensation for twice as many hours as Sportsman's Guide and

more than four times as many hours as Platt. Sportsman's Guide seeks compensation for twice

as many hours as Platt. The billing records show that counsel did not achieve efficiency in

practice or avoid duplication of effort, and did not reduce their fees appropriately.[9]

### *Excessive Time Spent on Removal Papers*

Defendants spent an excessive amount of time researching and drafting removal papers.

Defendants ***chose*** to remove the case. Removal was not only unnecessary; it was a simple

---

[9] The records show inefficiency and duplication of effort notwithstanding the Sportsman's Guide's
statement that it wrote off $8,000 in fees. *See* Dkt. No. 51 at 3.

matter and involved a short filing. Indeed, Plaintiffs did not oppose removal or seek remand.[10]

Yet three LuckyGunner attorneys spent nearly 150 hours researching the law relating to removal

and drafting removal papers. *See* Dkt. No. 48-1 at 8, 48-2 at 7-12, 15-21; *see also* Exhibit 5

(chart of LuckyGunner time entries reflecting work on removal).[11]  "Time spent reading

background material designed to familiarize the attorney with the area of the law would normally

be absorbed into a firm's overhead and that, therefore, attempting to charge an adversary with

time spent conducting background research is presumptively unreasonable." *Case*, 157 F.3d at

1253 (citing *Ramos*, 713 F.2d at 554).  Then, four additional attorneys for Sportsman's Guide

spent an additional 9.8 hours reviewing the removal papers and strategy.  Dkt. No. 51-1 at 2, 51-

4 at 2.  As removal was unnecessary, could have been achieved without objection, and involves

well-established principals of law, fees related to removal should not be paid by Mr. and Mrs.

Phillips.

### *Inefficiency of Partners Billing for Research and Drafting*

Lead counsel for LuckyGunner took a substantial role in researching and drafting the

Motion to Dismiss and Reply.  LuckyGunner's counsel spent 294.4 researching and drafting its

Motion to Dismiss and Reply.  Twenty-nine percent of that time (85.6 hours) was time spent by

partners on researching and drafting their papers.  *See* Dkt. No 48-2 at 11, 15-16, 18, 20; 34-35;

38.  The Sportsman's Guide spent 143.8 hours researching and drafting its Motion to Dismiss

---

[10] Defendants never contacted Plaintiffs to determine whether they would object to removal.

[11] Because counsel for Defendants utilize block billing, the precise amount of hours spent on removal is uncertain; nearly 150 hours of time entries have narratives that include work on or review of removal issues.  To the extent Defendants disagree with Plaintiffs, they should be denied all fees within a block, as it is their burden to produce time records showing how much time was spent on each particular task.  *See Robinson*, 160 F.3d at 1284.

and Reply.  While the total number of hours spent on the motion was slightly less unreasonable

than for LuckyGunner, 67% of the time was billed by partners.  *See* Dkt. No. 51-1 at 2-3, 6-7.

By contrast, counsel for Plaintiffs made far more extensive use of associate effort

compared to partner effort — 35.0 partner hours and 145.7 associate hours — responding to the

three Motions to Dismiss and a brief from the Department of Justice ("DOJ") and preparing for

and arguing the one hearing held in this case, with the bulk of those partner hours spent on

preparation for the hearing on the Motions to Dismiss.

Defendants also had multiple attorneys research the same or overlapping issues.  *See,*

*e.g.*, Dkt. No. 48-2 at 7-10 (three attorneys for LuckyGunner researched nuisance issues for 15.6

hours); *id*. at 32-3 (two attorneys for LuckyGunner researched preemption issues for 37.2 hours;

Dkt. No. 51-1 at 2-3, 10-11 (reflecting two attorneys for the Sportsman's Guide researched the

same attorney fees issues).

In short, too much time was spent on the research and briefing, there was little or no

effort to avoid duplication or pool resources, and partners, rather than associates, were doing

much of the work.

### *Duplication of Effort Reviewing Pleadings and Motions*

Counsel also should take steps to avoid duplication of effort in activities like reviewing

pleadings and motions.  *Nero v. Am. Family Mut. Ins. Co.*, No. 11-CV-02717-PAB-MJW, 2013

WL 5323191, at *12 (D. Colo. Sept. 23, 2013) (finding that defendant's use of three different

attorneys to review the same motion to dismiss is unreasonable).  Nonetheless, examples of such

duplication are present throughout the billing invoices.

This duplication is reflected throughout LuckyGunner's invoices.  *See* Dkt. No. 48-1 at 6, 48-2 at 7 (reflecting four attorneys reviewed complaint for 11.8 hours); Dkt. No. 48-1 at 10, 48-2 at 21-22 (reflecting three attorneys reviewed co-defendants' draft and final Motions to Dismiss for 9.7 hours); Dkt. No. 48-1 at 14, 48-2 at 29-30, 46 (reflecting four attorneys and one paralegal reviewed Plaintiffs' opposition to Motion to Dismiss for 20.0 hours); Dkt. Nos. 48-1 at 18, 48-2 at 45 (reflecting three attorneys reviewed DOJ brief and in support of constitutionality of PLCAA and Plaintiffs' response for 4.2 hours); Dkt. No. 48-2 at 52 (reflecting three attorneys reviewed Court's order on Motions to Dismiss for 2.2 hours).

It also is reflected throughout Sportsman's Guide's invoices.  *See, e.g.,* Dkt. No. 51-1 at 1 (reflecting two attorneys reviewed the complaint for 7.2 hours); *id*. at 2, 51-4 at 2 (reflecting three attorneys reviewed and commented on removal papers for 6.8 hours); Dkt. No. 51-1 at 5, 51-4 at 4 (reflecting three attorneys reviewed Plaintiffs' opposition to the Motions to Dismiss for 5.5 hours); Dkt. No. 51-1 at 8 (reflecting two attorneys reviewed motion for default for 2.7 hours).[12]

This duplication is reflected throughout Platt's invoices, too.  *See* Exhibit 1 at 1, Exhibit 2 at 1, 4 (reflecting three attorneys reviewed complaint for 3.1 hours); Exhibit 2 at 1, 4, 6 (reflecting three attorneys reviewed Motion to Dismiss for 3.5 hours); Exhibit 1 at 4, 6, Exhibit 2 at 4 (reflecting two attorneys reviewed co-defendant motions for 4.3 hours); Exhibit 1 at 10, Exhibit 2 at 2, 5 (reflecting three attorneys reviewed DOJ brief for 1.4 hours).

---

[12] Despite the fact that counsel for LuckyGunner and the Sportsman's Guide communicated during the drafting process, shared drafts of the Motions to Dismiss, and raised many of the same points, there appears to have been no conservation of effort resulting from this communication.  See generally Dkt. Nos. 3, 22.  Indeed, it only added to the time spent, as they seek payment for the time spent reviewing the other defendants' briefs.

Mr. and Mrs. Phillips should not be expected to pay for this widespread duplication of effort.

### *Excessive Billing for Attendance at Hearing*

The lack of efficiency is typified in Defendants' approach to the hearing on the Motions to Dismiss.  Defendants claim a total of 62.6 hours for multiple attorneys to travel to and attend the hearing.  LuckyGunner sent three attorneys to the hearing (Vogts, Lothson, and Colin) and asks Mr. and Mrs. Phillips to pay for a combined 36.3 hours for them to travel to and attend the hearing (at which only one of the attorneys argued).  Dkt. No. 48-1 at 20, 48-2 at 51-52.  Platt sent three attorneys to the hearing (Zuber, Montoya, and Whitney) and asks Mr. and Mrs. Phillips to pay for a combined 13.7 hours.  Exhibit 1 at 10-11, Exhibit 2 at 2, 5.  Such duplicated and unnecessary fees are patently unreasonable.  *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983) (" [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time."); *Watson v. Dillon Companies, Inc.*, No. 08-CV-00091-WYD-CBS, 2013 WL 6023692, at *4 (D. Colo. Nov. 13, 2013), *appeal dismissed* (Mar. 6, 2014) (reducing fee award to account for multiple attorneys traveling to and attending hearings).  Only one attorney was needed to argue for Defendants.  Again, Defendants made a choice, and it was their right to do so.  Mr. and Mrs. Phillips should not, however, be asked to pay for that choice.

### *Excessive Billing for Travel Time*

Counsel for each Defendant billed his standard time and rate to travel to the hearing on the Motions to Dismiss.  Such time "is essentially unproductive and, therefore, compensable" — if at all — at "a reduced hourly rate."  *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990) (affirming award of 25% of standard hourly rate for travel time).  A total of 60.8 hours is

recorded in billing entries associated with travel to the hearing.[13] *See* Dkt. Nos. 48-1 at 20, 48-2 at 51-52; Dkt. No. 51-2 at 9; Exhibit 1 at 2, 5, Exhibit 2 at 10-11.

### ***Excessive Billing for Administrative Tasks***

Defendants also ask the Court to force Mr. and Mrs. Phillips to pay for excessive or unnecessary charges for administrative tasks.  For example, LuckyGunner seeks compensation for 15.1 hours spent on downloading pleadings from the state court case against the Aurora theater.[14]  *See* Dkt. No. 48-1 at 8.  Platt seeks compensation for 0.6 hours for out-of-state counsel's paralegal to book airline flights and make hotel reservations.  *See* Exhibit 1 at 11. These charges are well beyond those that would typically be charged to a client, and Mr. and Mrs. Phillips should not have to pay for them here.

*   *   *

Because of the inefficiency and duplication of effort reflected in the invoices of Defendants' counsel, Mr. and Mrs. Phillips ask the Court to reduce the number of compensable hours for each Defendant.

---

[13] Again, due to block billing practices, the exact portion of the time for travel as opposed to appearing at the hearing is unclear from Defendants' records.  The Court's records, however, reflect that the hearing itself took 37 minutes.  *See* Dkt. No. 44.

[14] The theater case had limited issues of fact in common with the instant case, but the predominant questions of law and factual issues were distinct between the two cases.

**F.      There Is No Basis to Assess Fees against Counsel**

Defendant LuckyGunner argues that this action was "a political lawsuit" and that counsel for Plaintiffs should be jointly liable for fees.  Dkt. No. 48 at 2.  There is no authority for such a contention.  LuckyGunner's request should be denied.[15]

LuckyGunner cites a single case to support this argument.  *See* Dkt. No. 48 at 2 (citing *Glass v. Pfeffer*, 849 F.2d 1261 (10th Cir. 1988)  That case is inapposite.  In *Glass*, the attorneys were made liable for fees as a sanction for improper conduct, not because the case was "political."  *Glass*, 849 F.2d at 1263-64.  *Glass* involved civil rights claims brought pursuant to 28 U.S.C. §§ 1983 and 1985, and the court expressly sanctioned counsel for failure to dismiss a certain defendant after his deposition revealed he had not been present during the incident in which the alleged civil rights violations had occurred.  *Id.*  LuckyGunner makes no argument and points to no authority suggesting that sanctions are appropriate in this case.

LuckyGunner's request for joint and several liability should be denied.

**II.     Defendants' Requests for Costs Are Excessive**

Each Defendant also seeks costs from Mr. and Mrs. Phillips.  LuckyGunner seeks costs in both a Bill of Costs (Dkt. Nos. 49) and in its Motion for Fees.  Dkt. Nos. 48.  The Sportsman's Guide and Platt seek costs in their Motion for Fees.  Dkt. Nos. 47, 50, 51, 55.[16]  Defendants bear the burden of providing the court with "sufficient information and supporting documentation" to

---

[15] Further, the request itself unnecessarily creates a division between Plaintiffs and their counsel, potentially making Plaintiffs adverse to their counsel and undermining their ability to maintain consistent representation.  Further, as a matter of public policy, Defendant's request asks the Court to establish bad public policy that would hinder public interest lawsuits.  Defendant's request for the award to be made against both Plaintiffs and counsel should be rejected.

[16] After conferring with Plaintiffs, the Sportsman's Guide withdrew its Bill of Costs (Dkt. No. 54) as duplicative of its request for costs in its Motion for Fees.  See Dkt. No. 57 (Letter to Clerk withdrawing Bill of Costs).

allow it to "make a reasoned decision for each cost item presented." *Grynberg v. Ivanhoe Energy, Inc.*, No. 08-CV-02528-WDM-BNB, 2011 WL 3294351, at *6 (D. Colo. Aug. 1, 2011) (citing *Brody v. Hellman,* 167 P.3d 192, 206 (Colo. App. 2007)).  Because Defendants fail to carry this burden, and ask for excessive costs, Plaintiffs ask the Court to reduce the costs awarded to Defendants as specified below.

      **A.**      **LuckyGunner seeks excessive costs**

Defendant LuckyGunner seeks $3,695.00 in costs.  This request for costs is excessive in several ways.  First, LuckyGunner's Motion for Fees includes the same expenses itemized in its Bill of Costs, and it cannot receive double recovery.  Compare Dkt. No. 49 with Dkt. No. 48 at 3-4.

Second, in its Motion for Fees, LuckyGunner asks Mr. and Mrs. Phillips to pay for the travel expenses of two attorneys to attend the hearing on the Motion to Dismiss.  Dkt. No.  48 at 3-4; Dkt. No. 48-2 at 55-67.  These costs include the travel expenses for lead attorney James Vogts ($951.85), and associate attorney Andrew Lothson ($1,326.35).  Only Vogts argued at the hearing.  Plaintiffs ask that the Court reject the expenses associated with Lothson's travel to attend the hearing.  *See Ramos v. Lamm*, 713 F.2d at 554.  Additionally, Plaintiffs ask that expenses associated with Vogts' travel be reduced by $150, which represents the premium seat fee charged by the airline to upgrade Vogts' seating preference and reduced compensation for an expensive meal purchased during travel.  Dkt. No. 48 at 63, 67.

Third, in its Bill of Costs, LuckyGunner asks Mr. and Mrs. Phillips to pay expenses for photocopying 4,300 copies at 20 cents per copy.  Dkt. No. 49-1 at 2.  Based on billing narratives, 3,892 of these pertain to making photocopies of pleadings in unrelated state court cases against

the theater at which the Aurora shooting took place, and Defendant makes no explanation of why it would be appropriate to charge Plaintiffs for these expenses.[17]  Dkt. No. 48-1 at 6-7.  Plaintiffs therefore ask the Court to strike these costs in their entirety ($778.40).  If the Court elects not to strike the costs, Plaintiffs ask that the cost be reduced, as copying costs for voluminous copies should be reduced when they can be done at a lower cost than in-house copies.  *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1191 (Colo. App. 2011).

Fourth, in its Bill of Costs, LuckyGunner asks Plaintiffs to pay the $400 fee for removing the case to federal court.  Defendants chose to remove the case, which could have remained in state court.  Plaintiffs should not be required to pay for this fee.

In total, Mr. and Mrs. Phillips ask that the Court reduce LuckyGunner's costs by $1,445.35 to a total of $2,250.85.

**B.     The Sportsman's Guide seeks excessive costs**

Defendant the Sportsman's Guide seeks $2,010.87 in costs as presented in its Motion for Fees.  Dkt. Nos. 50, 51.[18]  This request for costs is excessive, as well.  The Sportsman's Guide claims expenses related to computerized research fees for Pacer and LexisNexis totaling $1,186.40.  *See* Dkt. No. 51-2.  The request for costs is inadequate.  A party seeking compensation for computerized legal research expenses must demonstrate "(1) the client was billed for computerized legal research expenses separate from attorney fees; (2) the computerized legal research was necessary for trial preparation; and (3) the requested costs were reasonable."

---

[17] Even if Defendant had to review other cases to identify potentially related actions, such an activity would not require the review of every single page filed in a different case.

[18] The Sportsman's Guide withdrew its Bill of Costs as duplicative of its request for costs in its Motion for Fees.  *See* Dkt. No. 57.

*Brody v. Hellman*, 167 P.3d 192, 206 (Colo. App. 2007).   Sportsman's Guide makes no effort to address these factors therefore its request for these expenses should be rejected.

> C.     **Platt d/b/a BTP Arms seeks excessive costs**

Defendant Platt seeks $1,444.89 in costs.  This request for costs is excessive.  First, Platt asks Mr. and Mrs. Phillips to pay for computerized legal research fees. Dkt. No. 55-1 at 4, 55-2 at 5.  Platt, too, makes no effort to fulfill the required showing to justify this request, therefore his request for these expenses should be rejected.  *See Brody*, 167 P.3d at 206.

Second, Platt provides absolutely no documentation or receipts to demonstrate that he actually incurred the claimed expenses.  Even if this documentation were present, the expenses were high, including airfare totaling $1,056.20 and hotel expenses totaling $297.20 related to travel to the hearing on the Motion to Dismiss; these purported expenses were higher than expenses incurred by other counsel traveling to Denver for the hearing.

Because the claimed expenses are not supported by appropriate documentation or explanation, Mr. and Mrs. Phillips ask that the expenses be rejected in their entirety.

## CONCLUSION

Defendants are not asking for reasonable fees and costs, but rather a windfall.  For the reasons set forth above, Plaintiffs oppose Defendants' Motions for Fees and Costs and request that the Court reduce the requested awards substantially, to a reasonable level given the circumstances of this case.

Dated:   May 1, 2015.

Respectfully submitted,

ARNOLD & PORTER LLP

By: s/ Thomas W. Stoever, Jr.

Thomas W. Stoever, Jr.
Paul W. Rodney
370 Seventeenth Street, Suite 4400
Denver, CO 80202-1370
Telephone: 303.863.1000
Email:  Thomas.Stoever@aporter.com
Email:  Paul.Rodney@aporter.com

THE BRADY CENTER TO PREVENT GUN
VIOLENCE

Jonathan Lowy
Kelly Sampson
840 First Street, NE, Suite 400
Washington, DC 20002
Email: jlowy@bradymail.org
Email: ksampson@bradymail.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 1, 2015 a copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR ATTORNEY FEES** was filed and served via CM-ECF on:

| | |
|---|---|
| Marc Colin<br>Bruno, Colin & Lowe, P.C.<br>1999 Broadway, Suite 3100<br>Denver, Colorado 80202<br>(303) 831-1099<br>(303) 831-1088 FAX<br>MColin@brunolawyers.com<br><br>Andrew A. Lothson<br>James B. Vogts<br>Swanson, Martin & Bell, LLP<br>330 North Wabash, Suite 3300<br>Chicago, IL 60611<br>(312) 321-9100<br>(312) 321-0990 FAX<br>alothson@smbtrials.com<br>jvogts@smbtrials.com<br><br>**Attorneys for Defendant LuckyGunner, LLC** | Peter A. T. Carlson*<br>Donald Chance Mark, Jr.*<br>Patrick J. Rooney*<br>Flagship Corporate Center<br>775 Prairie Center Drive, Suite 400<br>Eden Prairie, MN 55344<br>(952) 995-9500<br>peter.carlson@fmjlaw.com<br>donald.mark@fmjlaw.com<br>patrick.rooney@fmjlaw.com<br>*Admitted in Dist. of Colorado<br><br>**Attorneys for The Sportsman's Guide, Inc.** |
| Phillip R. Zuber, Esquire<br>5407 Water Street, Suite 101<br>Upper Marlboro, MD 20772<br>(301) 627-5500<br>(301) 627-4156 Fax<br>pzuber@scblawyers.com<br><br>Bruce A. Montoya, Esq., Bar No. 14233<br>Messner Reeves LLP<br>1430 Wynkoop Street, Suite 300<br>Denver, Colorado 80202<br>303-623-1800<br>bmontoya@messner.com<br><br>**Attorney for Defendant Brian Platt, d/b/a BTP Arms** | M. Andrew Zee (CA # 272510)<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>450 Golden Gate Avenue, Room 7-5395<br>San Francisco, CA 94102<br>Telephone: (415) 436-6646<br>Fax: (415) 436-6632<br>E-mail: m.andrew.zee@usdoj.gov<br><br>**Attorney for Intervenor United States of America** |

And a courtesy copy by U.S. Mail upon:

Defendant Gold Strike E Commerce LLC
d/b/a/ BULLETPROOFBODYARMORHQ.COM
Christopher E. Russell, Agent for Service
1546 West Vine Ave.
Mesa, AZ  85202

                           s/  Rebecca A. Golz