## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:14-cv-02822 - RPM

SANDY PHILLIPS, individually and as surviving
parent, of Jessica Ghawi, decedent;

LONNIE PHILLIPS, individually and as surviving
parent of Jessica Ghawi, decedent,

Plaintiffs,

v.

LUCKY  GUNNER  d/b/a/  BULKAMMO.COM,
THE SPORTSMAN'S GUIDE,
BRIAN PLATT d/b/a/ BTP ARMS,
GOLD  STRIKE  E  COMMERCE  LLC  d/b/a/
BULLETPROOFBODYARMORHQ.COM,      and
JOHN DOES 1 through 10, unknown individuals,

Defendants.

---

## DEFENDANT THE SPORTSMAN'S GUIDE'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS

---

Defendant The Sportsman's Guide ("Sportsman's Guide") submits this reply memorandum in support of its Motion for the recovery of its reasonable attorneys' fees and costs as set forth in its Motion (ECF 50).

**1. PLAINTIFFS DO NOT CONTEST SPORTSMAN'S GUIDE'S REQUEST FOR ATTORNEYS' FEES AND COSTS UNDER C.R.S. § 13-17-201.**

As an initial matter, Plaintiffs have not opposed Sportsman's Guide's motion for an award of attorneys' fees under C.R.S. § 13-17-201.  (See ECF 50, 2 at ¶ 2.)  Because Plaintiffs do not challenge Sportsman's Guide's request for this relief, the Court should accordingly issue Sportsman's Guide's award of attorneys' fees under both C.R.S. § 13-17-201 and § 13-21-504.5.

**2. SPORTSMAN'S GUIDE'S COUNSEL FOLLOWED A STREAMLINED, EFFICIENT AND REASONABLE APPROACH IN OBTAINING DISMISSAL OF PLAINTIFFS' AMENDED COMPLAINT.**

Plaintiffs' primary argument throughout their opposition brief is that Sportsman's Guide made a "strategic, calculated choice" to "put on a full court press defense." (Opposition Brief (ECF 60), 5.)   In doing so, Plaintiffs argue that Sportsman's Guide employed a "Cadillac" approach to defending the case, for which Plaintiffs should not be required to "make the car payments." *Id.* at 5; *see also Grynberg v. Ivanhoe Energy, Inc.*, No. 08-CV-02528-WDM-BNB, 2011 U.S. Dist. LEXIS 83819, *2 (D. Colo. Aug. 1, 2011.)  This argument is neither supported by the facts upon which Plaintiffs rely, nor consistent with the court's decision in *Grynberg*.[1]

First, as a factual matter, Plaintiffs argue that Sportsman's Guide could have avoided fees altogether if it would have settled with Plaintiffs.  According to Plaintiffs, all Sportsman's Guide had to do was simply "call[] Plaintiffs' counsel and ask[] what sort of reforms to their business practices Plaintiffs were seeking." (Opposition Brief, 10.)  However, this argument is contrived and ignores the actual relief requested in the Amended Complaint.  Indeed, by their Amended Complaint, Plaintiffs requested that this Court award "injunctive relief enjoining Defendants from engaging in commercial activities related to the materiel described herein until their business practices have been changed and approved by the Court." (Amended Complaint, 27 at ¶ c.)  This is an extremely broad request and unquestionably would have affected virtually all of Sportsman's Guide's business operations.   Given the breadth of this request, Plaintiffs'

---

[1]   There is no dispute between the parties as to whether Sportsman's Guide's request for attorneys' fees is subject to the standard lodestar analysis. *See e.g., Gisbrecht v. Barnhart*, 535 U.S. 789, 801-802 (2002) ("the lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence") (internal quotations omitted).   Under the lodestar analysis, this Court must multiply a reasonable hourly rate by the number of hours reasonably incurred by Plaintiffs. *Id.* Rather, Plaintiffs challenge individual aspects of Sportsman's Guide's request for attorneys' fees, including, *inter alia*, hourly rate, amount of hours, sufficiency of billing records and proportionality of incurred fees to the dispute.

suggestion that they would have settled or dropped their case if Sportsman's Guide had simply "given their attorneys a call," is far-fetched at best.   Moreover, if Plaintiffs were not in fact seeking the expansive injunctive relief set out in their Amended Complaint, nothing would have stopped them from calling Sportsman's Guide to make that fact known.   Since they never made such a call, even after Sportsman's Guide file their motion to dismiss, their argument falls short.

Second, Plaintiffs suggest that Sportsman's Guide could have instead filed a motion to dismiss based on "a strong argument that the case could and should be dismissed based on the Colorado firearms immunity statute alone and that such a case for dismissal could be made in an elegant but short brief, in state court."   (Opposition Brief, 11.)   In making this argument, however, Plaintiffs all but concede that the Amended Complaint was subject to dismissal under the Colorado immunity statute, and that they were aware of this fact at the time of the motion. This argument does not support Plaintiffs' contention, and instead calls into direct question whether Plaintiffs had a good-faith basis to assert these allegations in the first place.

Given Plaintiffs' concession that their allegations "could and should be dismissed," Plaintiffs' appeal of this Court's March 27, 2015 Order and Memorandum (ECF 45) is equally suspect.   It has been Plaintiffs' conduct by first filing a 27-page Amended Complaint, and then vigorously opposing Sportsman's Guide's motion to dismiss with myriad legal arguments that has caused Sportsman's Guide to incur a substantial amount of attorneys' fees.

Finally, Plaintiffs invoke *Grynberg* in support of their blanket statement that Sportsman's Guide has adopted a "Cadillac" approach.   *Grynberg*, however, is inapposite.   There, the defendants' counsel claimed $809,074.50 in attorneys' fees and $41,893.25 in costs based on their successful motion to dismiss for lack of personal jurisdiction.   2011 U.S. Dist. LEXIS 83819, at *3, 17.   The *Grynberg* court took issue with defendants' use of six attorneys from

Baker Botts, Washington D.C., that charged rates of $230-$700 per hour. *Id.* at * 15. The two senior attorneys at Baker Botts charged between $600-$650 and $675-$700 per hour (for time incurred in 2008 and 2009). *Id.* The defendants sought reimbursement of 1,860.45 hours of attorneys' fees incurred by four separate firms. The *Grynberg* court rejected these rates, finding that the "hourly rate should be based on the local or Denver market." *Id.* In their place, the court agreed with plaintiffs that reduced rates of $230-$500 per hour, with a blended rate of $330 per hour for all time incurred (though on the high side), was reasonable. *Id.* at * 21-22. Second, the court substantially pared down the hours and awarded $329,831.25 out of the $809,074.50 requested. *Id.* at * 32.

Clearly, the fees and billing incurred by Sportsman's Guide in the instant matter are not even remotely comparable to those requested by the defendants in *Grynberg*. In contrast to *Grynberg's* $650-$700 per hour charged by the senior partners six to seven years ago, Sportsman's Guide's partners charged just $325 per hour, less than one-half the rate charged by the Baker Botts partners. Likewise, *Grynberg's* counsel at Baker Botts requested reimbursement of 1,393.9 hours of time for six different attorneys—*five times the amount of hours, and twice the number of attorneys, sought here by Sportsman's Guide* Based on an actual review of Sportsman's Guide's motion and the *Grynberg* decision, despite Plaintiffs' assertion (no matter how many times they repeat it), there is no merit to the argument that Sportsman's Guide undertook a "Cadillac" defense.

### 3. SPORTSMAN'S GUIDE'S BILLING RECORDS PROVIDE DETAILED AND COGENT SUMMARIES OF THE WORKS SPORTSMAN'S GUIDE'S COUNSEL PERFORMED.

Plaintiffs also oppose Sportsman's Guide's request to recover attorneys' fees on the grounds that Sportsman's Guide's counsel used "block billing." Plaintiffs rely on *Robinson v. City of Edmond* in support of their contention that block billing is "notorious" and that

Sportsman's Guide's billing invoices allegedly camouflage the work actually performed. 160 F.3d 1275, 1284 (10th Cir. 1998). *Robinson*, however, does not prohibit block-billing, and instead clarifies that lawyers are only required to "keep meticulous time records that reveal…all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* (internal quotations omitted) (reversing the district court which erred by finding that plaintiffs had engaged in block billing).  The Tenth Circuit subsequently confirmed that it had "not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block billing." *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (affirming district court's conclusion that the time "records sufficiently allowed the court to determine the time allotted by her attorneys to specific tasks and the reasonableness of that time").

A careful reading of Plaintiffs' opposition brief confirms that their position is limited to the blanket assertion that Sportsman's Guide's block billing makes it "difficult, if not impossible, to determine how much time Defendants spent on any one task."  (Opposition brief, 7.) Plaintiffs have not bothered to identify any specific time entry they believe is problematic.  This is not surprising given the detailed descriptions and entries included by Sportsman's Guide's counsel.  For instance, here is one typical time entry from Sportsman's Guide's counsel:

| Date | Attorney | Hours | Hourly Rate | Amount Billed | Description of legal services |
|------|----------|-------|-------------|---------------|-------------------------------|
| 10/1/2014 | Patrick J. Rooney | 2.5 | 325 | $812.50 | Analysis of information regarding 2013 Colorado legislation concerning background checks and law banning magazines that hold more than 15 rounds; review of proposed Notice of Removal and Consent form sent by co-defendant's counsel; legal research on effect of jurisdictional allegation based on "information and belief;" exchange of emails with co-defendant's counsel regarding same; continued work on motion to dismiss and related issues. |

(See Affidavit of Donald Chance Mark, Jr. (ECF 51-1), Ex. A, at 2.)   Plaintiffs' generic

argument based on block billing must be rejected.[2]   Sportsman's Guide has submitted detailed

and meticulous time records that show the work performed by counsel and the hours for which

compensation is requested and should be awarded.  *See Robinson*, 160 F.3d at 1284.

### 4. SPORTSMAN'S GUIDE'S TRIAL COUNSEL PARTNER BILLING RATES ARE REASONABLE AND CONSISTENT WITH, IF NOT BELOW, THE RATES CHARGED BY SIMILARLY EXPERIENCED COUNSEL IN COLORADO.

Plaintiffs limit their opposition on this issue to whether Sportsman's Guide's trial

counsel's partner rate of $325 per hour is reasonable.  Plaintiffs do not contest, and therefore

acknowledge, that Sportsman's Guide's trial counsel associate rate of $235 per hour is

reasonable.  Plaintiffs' argument hinges on its comparison of Sportsman's Guide's partner rates

to the $300 per hour rate charged by Sportsman's Guide's local counsel.  While Sportsman's

Guide's local counsel may have charged a lower hourly rate, his individual billing rate does not

create a mandatory ceiling for Sportsman's Guide's trial counsel.  Plaintiffs have not cited any

case supporting this mandatory reduction of fees based on local counsel's rates.

Nor is there any merit to Plaintiffs' argument that Sportsman's Guide's trial counsel

partner rate of $325 per hour is unreasonable.  In determining reasonableness of rate, this Court

may rely on its own knowledge of the prevailing market rate, *Guides, Ltd. v. Yarmouth GRP.*

*Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002), or look to other sources of evidence,

including decisions in this District that address contested hourly rates.  *Xtreme Coil Drilling*

*Corp. v. Encana Oil & Gas Corp.*, 958 F. Supp. 2d 1238, 1256 (D. Colo. 2013).  Other courts in

---

[2] Plaintiffs also make the baseless suggestion that Sportsman's Guide may not in fact be paying its own attorneys' fees.  This point is directly contradicted by Sportsman's Guide's counsel's affidavit which states that the attorneys' fees incurred are billed specifically to Sportsman's Guide.  (See Affidavit of Donald Chance Mark, Jr. (ECF 51) at ¶ 6.)  Plaintiffs' other arguments in this section relate solely to Lucky Gunner and no response is necessary.

this District considering this issue have recently concluded that rates of $430 and $405 for attorneys with comparable (or less) experience are reasonable in the Denver legal market. *Hitchens v. Thompson Nat'l Props., LLC*, 12-cv-02367-LTB-BNB, 2014 U.S. Dist. LEXIS 73186, * 6-7 (D. Colo. May 29, 2014); *Xtreme Coil Drilling*, 958 F. Supp. 2d at 1256 (collecting cases and concluding that $450 per hour, though at the high-end, is a reasonable rate for lead counsel with some experience in commercial litigation but little specialized knowledge); and *Ryals v. City of Engelwood*, 12-cv-02178-RBJ, 2014 U.S. Dist. LEXIS 77304, *31-32 (D. Colo. June 6, 2014) (collecting cases and concluding that a rate of $435 for a partner-level attorney with 13 years of experience is reasonable and consistent with prevailing rates in Denver, Colorado as it relates to civil rights and constitutional rights matters.)

In addition, Sportsman's Guide's trial counsel's partner rate of $325 per hour lands well within (and on the low-end) of the rates recognized by the National Law Journal in its 2010 billing survey of Colorado firms. (*See Biax Corp v. NVIDIA Corp.*, 09-cv-01257-PAB-MEH, ECF 957-2, at 4) (identifying range of $285 and $810 per hour for partners in Denver, Colorado.) Based on the extensive body of caselaw in this District, and the range identified in the National Law Journal's 2010 billing survey, Sportsman's Guide's trial counsel's partner rate is eminently reasonable.

It is conspicuous that Plaintiffs have not identified the rates charged by their counsel at Arnold and Porter LLC. It is certain that if Sportsman's Guide's trial counsel's partner rate of $325 per hour was in fact higher than Plaintiffs' counsel's rate, they would have informed the Court of this fact. The reasonable conclusion is clear: Plaintiffs' counsel's rate is equal to or greater than $325 per hour. Finally, Plaintiffs' argument also fails to take into account the additional and substantial experience possessed by both of Sportsman's Guide's trial counsel.

Those details are set forth in the Affidavit of Donald Chance Mark, Jr. (ECF 51).  However, it bears mentioning that Mr. Mark is certified as a civil trial specialist by the Minnesota Bar association, and alone has practiced law for 42 years and tried over 100 trials.  Similarly, Mr. Rooney is a graduate of Duke University School of Law and has a sophisticated commercial litigation practice spanning nearly 30 years.  Given the record before this Court, it is abundantly clear that Sportsman's Guide's trial counsel's partner rate of $325 is reasonable and consistent with the rates charged in Denver, Colorado.

**5. SPORTSMAN'S GUIDE'S COUNSEL'S FEES ARE NOT DISPROPORTIONATE TO THE DISPUTE AND OUTCOME.**

Again, Plaintiffs argue that Sportsman's Guide employed the "Cadillac" approach to defending the case.  As set forth *supra*, the reference to (and repeated reliance on) *Grynberg* misses the mark.  The quantitative differences between rates ($650-$700/hour versus $325/hour) and hours (1,860.45 versus 249.40) underscores the fact that Sportsman's Guide (and the other Defendants) did not operate under a "Cadillac" approach.

From a qualitative standpoint, the "Cadillac" reference is similarly inapt.  Plaintiffs allege that Sportsman's Guide elected to "engage in extensive briefing on numerous issues" when it could have filed a joint motion or a central motion with smaller additional motions.  (Opposition Brief, 12.)  However, Sportsman's Guide's initial brief was very streamlined.  (See Motion (ECF 22).)  In it, Sportsman's Guide made three straightforward arguments:  (1) the claims should be dismissed under the Protection of Lawful Commerce in Arms Act ("PLCAA"); (2) even if the PLCAA did not apply, the claims should be dismissed under the Colorado firearms immunity statute (C.R.S. § 13-21-501); and (3) even if both statutes were inapplicable for some reason, Plaintiffs failed to allege sufficient and plausible facts to justify injunctive relief.  (Sportsman's Guide's Motion, 5-22.)

In response, Plaintiffs took an aggressive approach and exponentially increased the complexity and cost of the Motion, by arguing in their 38-page Opposition Brief (ECF 27) virtually every issue that they could think of, including (a) that the legislative history of the PLCAA did not justify its application to a case like this; (b) that the Aurora Municipal Code dealing with "disturbing the peace," rather than the Colorado public nuisance statutes, governed the public nuisance claims; (c) that the Colorado firearms immunity statute was preempted by the United States Constitution; (d) that both the PLCAA and the Colorado firearms immunity statute were unconstitutional; and (e) that even though Colorado law, as explicitly set forth in the case of *Hilberg v. F.W. Woolworth Co.*, clearly did not support Plaintiffs negligent entrustment claim, the court should essentially overturn that case and find in favor of "the evolution of the principle articulated in [the Hilberg] case."   (Opposition Brief.)  In short, it was Plaintiffs themselves, not the Defendants, that forced Defendants to undertake a more intense defense strategy to respond to Plaintiffs' excessive briefing.  It is highly hypocritical for Plaintiffs to now claim that Sportsman's Guide should not be permitted to recover for briefing and responding to the very issues that Plaintiffs aggressively litigated in their opposition brief.

Plaintiffs' contention that Sportsman's Guide's fees could have been reduced if it would have engaged in discussions with Plaintiffs is also meritless.  Sportsman's Guide's recovery of its attorneys' fees under C.R.S. § 13-21-504.5 and C.R.S. § 13-17-201 is not contingent upon Sportsman's Guide first soliciting Plaintiffs in the hopes of an armistice agreement.  Indeed, it is Plaintiffs who were aware then that their allegations "could and should be dismissed," and not Defendants, that should shoulder the burden for seeking a resolution.  Instead, after seeing Sportsman's Guide's Motion, Plaintiffs doubled-down and proceeded to zealously litigate this matter, including by making a meritless constitutional challenge and preemption argument.

Finally, Plaintiffs argue that any award of fees should be reduced or eliminated based on the tragic circumstances that give rise to Plaintiffs' allegations.  (Plaintiffs Opposition, 12-13.) Sportsman's Guide sympathizes with Plaintiffs for the loss of their daughter, and for the other atrocities committed by James Holmes.  Sportsman's Guide's present Motion, however, is based on legislation enacted by the Colorado legislature.  The fee provision in the relevant Colorado statutes was not unknown or a surprise.  Given that Plaintiffs commenced a lawsuit which they knew "could and should be dismissed," application of Colorado law is warranted.   Sportsman's Guide is entitled to its full attorneys' fees.

**6.  SPORTSMAN'S GUIDE BILLING RECORDS DEMONSTRATE AN EFFICIENT AND REASONABLE DEFENSE.**

Plaintiffs make the additional argument that Sportsman's Guide's billing records reflect duplication, redundant charges and unnecessary work.   Plaintiffs' argument is unavailing. Sportsman's Guide properly and efficiently managed the litigation.   The senior counsel was involved in assessing the strategy throughout the course of the litigation and was required to review and analyze the pleadings and correspondence in order to determine the course of action. While Plaintiffs would have preferred that Sportsman's Guide handle the defense differently, doing so would not have been reasonable or proper.  There is a significant difference between the so-called "Cadillac" level of defense, and the necessary defense required of counsel in order to prosecute an effective and successful defense.  Here, the records reveal that Sportsman's Guide's counsel properly prosecuted an effective and successful defense.[3]

---

[3]  Plaintiffs also suggests that because their trial counsel incurred 180.7 hours in responding to the three Motions to Dismiss and a brief from the Department of Justice and preparing for and attending the hearing, while Sportsman's Guide's counsel spent 249.4 hours in preparing their motion and attending the hearing, that factor somehow indicates that Sportsman's Guide's attorneys' fees are excessive.  (Opposition Brief, 4.)  Notably, however, Plaintiffs do *not* disclose how much time their co-counsel at The Brady Center to Prevent Gun Violence ("Brady Center")

Plaintiffs also make the inconsistent argument that Sportsman's Guide should have collaborated with co-Defendants in order to more efficiently defend the matter (Opposition Brief, 12). Ironically, however, they also contend that the time incurred by Sportsman's Guide and Lucky Gunner, LLC ("Lucky Gunner") "communicat[ing] during the drafting process, shar[ing] drafts of the Motion to Dismiss, and rais[ing] many of the same points" was duplicative. (Opposition Brief, 20.) This argument is erroneous and contradicted by the record. Sportsman's Guide's records show that Sportsman's Guide was able to minimize its attorneys' fees by collaborating in part with Lucky Gunner on the removal and certain aspects of the Motion. Plaintiffs benefited from this collaboration; they should not now be heard to complain because it was allegedly duplicative.

Plaintiffs' additional arguments related to specific instances of supposed duplication are also lacking. Plaintiffs identify only two instances where they can point to an amount of time they claim was unreasonably duplicative. First, Plaintiffs claim that four of Sportsman's Guide's attorneys spent 9.8 hours related to the removal papers and strategy. (*Id.* at 18.) Given that local counsel was involved, and given the questions of whether to remove, the procedure for effecting the removal, and the concomitant strategy, a total of 9.8 hours on this issue is entirely reasonable. Similarly, Plaintiffs claim that Sportsman's Guide's counsel incurred a total of 22.2 hours of duplicate time related to pleadings and motions. (*Id.* at 20.) Plaintiffs claim Sportsman's Guide's records show its counsel spent 7.2 hours related to reviewing the Amended Complaint, 6.8 hours regarding the removal papers (which Plaintiffs already identified as allegedly

---

incurred assisting in the research, drafting, and preparation for oral argument. Nor have Plaintiffs disclosed how much time was spent by trial counsel and the Brady Center in drafting and preparing the Amended Complaint. It is neither an accurate nor relevant comparison when Plaintiffs have omitted this critical information. As such, the Court should disregard Plaintiffs' argument in this regard.

duplicative), 5.5 hours for three attorneys to review Plaintiffs' 38-page opposition to the Motion to Dismiss, and 2.7 hours for two attorneys to review the motion for default.  (*Id.*)  All total, and subtracting out the repeated time related to removal, this totals 25.2 total hours of time which was allegedly duplicative.  The amount at issue, reduced in half to account for the claimed duplication, constitutes only a small fraction (roughly 5%) of the total of 249.40 hours which Sportsman's Guide's counsel spent on this matter.  This confirms that Sportsman's Guide's billing and defense strategy was both effective and efficient.

Plaintiffs make a number of additional arguments related to excessive billing for multiple attorneys to appear at the oral argument and for travel time.  These arguments are not directed at Sportsman's Guide, which billed for only one lawyer's time[4] at the oral argument, and whose billing shows that he was engaged in preparation for oral argument as he travelled to Colorado. (See Affidavit of Donald Chance Mark Jr. (ECF 51-1, 9.)  All total, with preparations, appearing at the hearing, drafting communications following the hearing, and travel, Sportsman's Guide's trial counsel only billed 14.9 hours.

In short, Sportsman's Guide's counsel should be awarded its full attorneys' fee claim. The records and law support Sportsman's Guide's billing rate, the amount of time, and the efficient, effective, and tailored work performed by its counsel.

## 7. SPORTSMAN'S GUIDE SHOULD BE AWARDED ITS REASONABLE COSTS AND DISBURSEMENTS.

Finally, Plaintiffs challenge Sportsman's Guide's entitlement to its costs and disbursements.  (Opposition Brief, 25-26.)  Plaintiffs do not challenge Sportsman's Guide's

---

[4]  Sportsman's Guide's local counsel did not seek reimbursement for the time incurred for attending the oral argument on the Motion to Dismiss.

request for $824.47 related to Sportsman's Guide's counsel's appearance before the Court on its Motion to Dismiss.  As such, those disbursements should be awarded.

Plaintiffs' sole argument is based on its contention that Sportsman's Guide has not adequately demonstrated its entitlement to online research costs.[5]  This is erroneous.  Under *Brody v. Hellman*, Sportsman's Guide must show that 1) the client was billed for the computerized research separately from the attorneys' fees; 2) that the research was necessary for trial preparation; and 3) the requested costs were reasonable.  167 P.3d 192, 206 (Colo. Ct. App. 2007).  Here, Sportsman's Guide's affidavit filed in support of its Motion clearly states that the "costs and disbursements described in Exhibit B…have been billed to [Sportsman's Guide] and actually incurred.   In total, [Sportsman's Guide] has incurred $2,010.87 in costs and disbursements."  (Affidavit of Donald Chance Mark, Jr., ¶ 10.)  Likewise, this Court is aware from the extensive briefing of legal issues, that Sportsman's Guide was required to conduct legal research to prepare its Motion to Dismiss and reply related to the intricate web of caselaw arising from the PLCAA.

In total, Sportsman's Guide seeks $1,186.40 for its online research costs.  This amount is reasonable in light of the highly complex spectrum of legal issues before the Court related to the PLCAA, the constitutionality of the Colorado firearms immunity statute, preemption arguments, Colorado and Aurora ordinance laws, and the issues related to Plaintiffs' claim for negligent entrustment.  Indeed, the reasonableness of Sportsman's Guide's request is further confirmed by reference to *Grynberg*, where the defendants requested a collective $18,674.19 in computerized

---

[5]  Plaintiffs inaccurately and misleadingly state that Sportsman's Guide withdrew its Bill of Costs because it was duplicative.  In fact, Sportsman's Guide expressly withdrew its Bill of Costs because "the parties have agreed that the matters set forth in the Bill of Costs should be considered by the District Court in connection with TSG's Motion for Fees and Costs." (ECF 57.)

legal research costs.  *Grynberg*, 2011 U.S. Dist. LEXIS, 83819, *27.  The *Grynberg* court, even after reducing the attorneys' fee request due to its "Cadillac" nature, still awarded the defendants their full $18,674.19 in online research costs.  *Id.* at *29-30.  Sportsman's Guide's request is less than 10% of the legal research requested, and received, in *Grynberg*; Sportsman's Guide's request is most certainly reasonable.  Sportsman's Guide has met the necessary elements to justify their request for costs and it should be awarded accordingly.

<u>**CONCLUSION**</u>

Sportsman's Guide submits this reply memorandum in support of its submission for attorneys' fees and costs.  For the foregoing reasons, Sportsman's Guide's Motion should be granted in its entirety and it should be awarded its fees in the amount of $71,027.00 and costs in the amount of $2,010.87.

Respectfully submitted,

**FAFINSKI MARK & JOHNSON, P.A.**

Dated:  May 14, 2015

s/ Patrick J. Rooney
Donald Chance Mark, Jr. (MN #67659) (Admitted in Dist. of Colorado)
Patrick J. Rooney (MN #198274) (Admitted in Dist. of Colorado)
Peter A. T. Carlson (MN #0350448) (Admitted in Dist. of Colorado)
Flagship Corporate Center
775 Prairie Center Drive, Suite 400
Eden Prairie, MN  55344
(952) 995-9500
*donald.mark@fmjlaw.com*
*patrick.rooney@fmjlaw.com*
*peter.carlson@fmjlaw.com*

and

Ronald L. Wilcox
**PETERS MAIR WILCOX**
1755 Blake Street, Suite 240
Denver, CO  80202
(303) 393-1704
*rwilcox@peterslaw.net*

***Attorneys for The Sportsman's Guide, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of May, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas W. Stoever, Jr.
Paul W. Rodney
Arnold & Porter LLP
370 Seventeenth Street, Suite 4400
Denver, CO  80202

***Counsel for Plaintiffs***

Marc F. Colin, Esq.
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 3100
Denver, CO  80202

Andrew A. Lothson, Esq.
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL  60611

***Counsel for Lucky Gunner d/b/a* BULKAMMO.COM**

Phillip R. Zuber, Esq.
Sasscer, Clagett & Bucher
5407 Water Street, Suite 101
Upper Marlboro, MD  20772

Bruce A. Montoya, Esq.
Messner Reeves, LLP
1430 Wynkoop St., Suite 300
Denver, CO  80202

***Counsel for Defendant Brian Platt d/b/a BTP Arms***

I hereby further certify that I have mailed the foregoing via U.S. mail, postage prepaid, to the following non-CM/ECF participants:

Jonathan E. Lowy
Elizabeth Burke
Kelly Sampson
Brady Center to Prevent Gun Violence
840 First Street, NE, Suite 400
Washington, DC  20005

***Counsel for Plaintiffs***

Joyce R. Branda, Acting Assistant Attorney General
Diane Kelleher, Assistant Branch Director
Lesley Farby
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave NW
Washington, D.C.  20530

***Counsel for Interested Party – United States of America***

John W. Suthers
Attorney General
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203

***Attorney General for Colorado***

Gold Strike E Commerce, LLC
d/b/a bulletproofbodyarmorhq.com
Christopher E. Russell, Agent for Service
1546 West Vine Ave.
Mesa, AZ  85202

s/ Patrick J. Rooney
Patrick J. Rooney (MN #198274) (Admitted in Dist.
    of Colorado)