**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-2822-RPM

SANDY PHILLIPS, individually and as surviving parent
of Jessica Ghawi, decedent; LONNIE PHILLIPS,
individually and as surviving parent of Jessica Ghawi,
decedent.

Plaintiffs,

v.

LUCKY GUNNER, d/b/a/ BULKAMMO.COM,
THE SPORTSMAN'S GUIDE,
Brian Platt, d/b/a/ BTP ARMS,
Gold Strike E Commerce LLC d/b/a/
BULLETPROOFBODYARMORHQ.COM,
and JOHN DOES 1 through 10, unknown individuals.

Defendants.

---

**DEFENDANT LUCKYGUNNER'S REPLY IN SUPPORT OF
MOTION FOR FEES AND COSTS**

---

Defendant, LuckyGunner, LLC ("LG"), files this Reply in support of its Motion for Fees

and Costs (DE 48, "LG's Motion").

## I.  INTRODUCTION

As demonstrated by the Court's dismissal order, Plaintiffs' lawsuit proved to be without

merit on several levels.  The Court held that LG is "entitled to an award of reasonable attorney

fees" incurred to defend Plaintiffs' lawsuit. (DE 45 at 19.)   At this stage, the issue is not if fees

should be awarded but how much and against whom.  Nevertheless, Plaintiffs begin their Response

(DE 60) with a *non sequitur*:  That the Court should reverse course and award "zero" fees, contrary

to the mandatory language of both C.R.S. § 13-21-504.5(3) and C.R.S. § 13-17-201, which plainly

state that a prevailing defendant "shall" be awarded reasonable attorney fees.

Plaintiffs argue, alternatively, that some of LG's attorney fees were "unreasonable" and therefore the award of fees should be reduced. Plaintiffs' argument is riddled with contradictions and should be rejected. On the one hand, Plaintiffs claim that this was a "simple" lawsuit requiring little effort and only one argument based on the Colorado immunity statute was needed to secure complete dismissal (Pls.' Resp. at 15); but, on the other hand, Plaintiffs argue that their "claims were based on novel facts with no clear precedent under Colorado law" (*id*. at 6). Plaintiffs also argue that LG advanced too many legitimate grounds for dismissal—or as they call it, a "Cadillac" defense (*id*.)—when in their estimate only one solid ground would have sufficed. According to Plaintiffs, everything but the Colorado immunity statute was "overkill" (*id*. at 10-11). Plaintiffs confuse "overkill" with thoroughness, and a "Cadillac" defense with necessity in novel bet-the-company type litigation: LG, a lawfully operating internet retailer, faced a lawsuit brought by the legal arm of a national gun control organization seeking to enjoin LG from, of all things, the sale of lawful products over the internet.

Plaintiffs also claim that LG (and the other defendants) should have tried to settle rather than vigorously defend the case. This argument borders on absurd. Plaintiffs' own actions from the outset of the case belie their assertion that this case could have been resolved with little effort and no consequence to LG's lawful business. *First*, Plaintiffs held a press conference with their Brady Center Legal Action Project attorneys to announce their "landmark" lawsuit. Plaintiffs' threatening allegations were anything but conducive to early, effortless resolution of the case. *Second*, even after LG removed the case to federal court and simultaneously filed its so-called "Cadillac" motion to dismiss expressly warning Plaintiffs that, if a Rule 12 motion was granted, two Colorado laws required an attorney fees shift (DE 3 at 24), Plaintiffs never proposed

settlement.  *Third*, Plaintiffs fail to mention that they are continuing to press this case and have filed a notice of appeal in the Tenth Circuit. (DE 56; *see also* Pls.-Aplts.' Docketing Statement, attached as <u>Exhibit A</u>, at p. 4, identifying six "issues" on appeal.)

There is another overarching paradox in Plaintiffs' request for a substantial, across-the-board reduction of a fee award.  Plaintiffs say their attorneys completed their work with less effort than expended by defense counsel.  To bolster their position, Plaintiffs lump together all of co-defendants' attorney fees (and costs), to create the illusion that defendants were, collectively, unreasonable in vigorously defending the case.  But the "effort" of Plaintiffs' counsel, in a complete loss, is not a reliable guidepost to judge the propriety of defendants' counsels' effort.

While Plaintiffs contend that the "special circumstances" of this case justify a fee reduction (Pls.' Resp. at 4, 6), they never once mention the Brady Center Legal Action Project's central role in this case and its strategy to shut down lawful businesses that do not conform to its view of how firearm and ammunition sellers should conduct their businesses.  The Brady Center Legal Action Project's strategy is to end-run Congress and the state legislatures, ignore statutory immunities and distort tort law beyond recognition.  But now, Plaintiffs seek to distance themselves from the Brady Center, or, perhaps, *vice versa*:  the Brady Center seeks to distance itself from the Plaintiffs.  Under the circumstances, a joint and several award of fees against Plaintiffs and their attorneys is justified.

## II.  <u>BACKGROUND</u>

Plaintiffs' argument that this lawsuit was a simple, non-complex matter, requiring only one persuasive argument to reach complete dismissal is belied by their own pleadings and strategy throughout the case.  To downplay the work required of LG (and the rest of the defendants), Plaintiffs omit discussion of multiple facets of this lawsuit.  The following is provided to fill in the

gaps left by Plaintiffs.

### A.   The Initial Proceedings and Removal.

On July 18, 2014, Plaintiffs filed their Original Complaint, which totaled 31 pages and 268 paragraphs of allegations pleaded as a putative "class" action. (DE 1-1; DE 7.)  The perpetrator of the crimes at the heart of this lawsuit, James Holmes, and a grouping of "John Does" were also named defendants. (*Id.*)  As for relief, Plaintiffs sought, *inter alia*, compensatory and punitive damages, attorney fees, and injunctive relief.  Plaintiffs' general statement that their lawsuit sought only "injunctive" relief is inconsistent with the Original Complaint.  (Pls.' Resp. at 5.)   On September 16, 2014, two months after filing the lawsuit, Plaintiffs amended and served their complaint. (DE 1-2; DE 8.)  Co-defendant Holmes, the putative "class" allegations and the compensatory damages were dropped.   What Plaintiffs initially pled, while no longer the operative allegations, could still impact the case.  *See, e.g., Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent.").[1]

The amendments also impacted the removal analysis. For example, while removal under the Class Action Fairness Act was prevented, the dismissal of Holmes created diversity of citizenship.   And whether equitable relief, without monetary damages, satisfies the amount in

---

[1] Not only was analysis of the Original Complaint appropriate, the apparent strategically motivated amendments raised issues, including, *e.g.*, whether the lawsuit was timely given that the amended complaint was filed after the 2-year limitations period expired; whether Holmes' dismissal helped Plaintiffs side-step Colorado law on proximate cause and the two immunity statutes; and whether the Original Complaint, which also sought compensatory damages, ran afoul of Colorado's Wrongful Death Act limitation of only one such lawsuit.

controversy depends on the value of the object of the litigation.  As demonstrated in the Notice of Removal, filed with unanimous co-defendant consent including a defendant without the means to appear and defend itself, the amount in controversy was satisfied.  (DE 1 at ¶¶ 14-15; and DE 1-5, Decl. in Supp. of Not. of Removal.)   This was, by no means, a simple removal.

Plaintiffs also suggest removal could have been streamlined by obtaining consent of the Plaintiffs. (Pls.' Resp. at 18 n. 10.)  To the extent Plaintiffs imply that their consent was required or had any impact on removal, they are mistaken.   Plaintiffs also plainly mischaracterize LG's billing entries on removal.  For instance, Plaintiffs tally every LG billing entry that even mentioned "removal" between the filing of the amended complaint and the date of removal, notwithstanding the fact that the entries also plainly detail work required to simultaneously file, *inter alia*, the motion to dismiss. (DE 60-5.)  Plaintiffs' self-serving approximation of "150" hours of work by LG to remove the case (Pls.' Resp. at 18) is misleading and inaccurate.

### B.       The Motions to Dismiss and Intervention by the Department of Justice.

On October 16, 2014, the same day as removal, LG filed its Rule 12(b)(6) motion to dismiss. (DE 3.)  The motion was predicated on multiple legitimate grounds (almost all of which were embraced by the Court in its dismissal order) and fronted several arguments that the Brady Center had raised in other litigation, including that the federal immunity statute ("PLCAA") somehow permits public nuisance and mere negligence actions, and is otherwise unconstitutional. (For example, LG identified the litany of other federal and state appellate courts that had rejected constitutional challenges to the PLCAA (DE 3 at 6, n. 2).)   On October 22 and 23, 2014, two of the other co-defendants, Sportsman's Guide and Brian Platt, filed motions to dismiss, which advanced similar grounds for dismissal as LG's motion to dismiss. (DE 21, 22.) The body-armor defendant (Gold Strike E Commerce LLC) never appeared and responded to the complaint.  The

impact of such inaction and a potential default (which Plaintiffs eventually moved for) also required analysis because of the nature of the equitable relief sought and the impact of any estoppel arguments.

LG also filed several initial pleadings including a notice of related cases under Local Rule 3.2 which required identification of the Plaintiffs' other lawsuit stemming from the Aurora movie theater shooting incident (DE 15; *see also* DE 1-8 at 14).  Not only was it prudent, it was necessary for LG to analyze legal and factual assertions made in the other related lawsuits, especially given that Plaintiffs were a party, because of the real possibility of duplicative action, judicial admissions, and rulings that impact collateral estoppel and *res judicata*.

After seeking and obtaining additional time (DE 25, 26), Plaintiffs filed their response to the motions to dismiss on December 3, 2014 (DE 27).  During the seven weeks between the filing of LG's motion to dismiss and Plaintiffs' response, Plaintiffs never proposed any terms of settlement.  Nor did Plaintiffs voluntarily dismiss the lawsuit, which would have absolved them of the mandatory fee shift accompanying a Rule 12 dismissal under Colorado law.  Instead, Plaintiffs took an "everything but the kitchen sink" approach, raising what ultimately proved to be futile arguments, including: (1) the lawsuit was outside the scope of both the Colorado and federal immunity statutes; (2) both immunity statutes were unconstitutional (and that the Colorado immunity statute violated the Colorado Constitution); and (3) the federal immunity statute impliedly preempted the Colorado immunity statute. (DE 27 at 4-26.)  On the constitutionality issue alone, Plaintiffs challenged the federal immunity statute under the Tenth Amendment, the Separation of Powers doctrine, the First Amendment right to access of courts, and the Fifth Amendment guarantee of equal protection and due process.  The scope and constitutionality of the Colorado immunity statute had never been litigated before; nor had the issue of whether the federal

statute impliedly preempted the Colorado statute.  And Plaintiffs' analysis of Colorado tort law, while strained, nonetheless required significant work to adequately address and refute.

On January 9, 2015, LG filed its Reply brief. (DE 32.)   As demonstrated in its detailed Billing Invoices (DE 48-1, 48-2) and the briefing, LG took the lead for the defendants in addressing the constitutionality of both the Colorado and federal immunity statutes, and the complex preemption arguments made by Plaintiffs. (For example, co-defendant The Sportsman's Guide adopted and incorporated by reference LG's constitutional analysis (*see* DE 33 at 2, n. 1).)   The United States Department of Justice ("DOJ") responded to Plaintiffs' Notice of Constitutional Challenge (DE 29) and informed the Court that it would seek the Solicitor General's approval to intervene (DE 30).   The DOJ eventually obtained approval and moved to intervene and file a brief in support of the constitutionality of the PLCAA on February 2, 2015, which largely comprised similar arguments to those advanced in LG's Reply. (DE 34.)  Plaintiffs' suggestion that the "DOJ brief" supporting the constitutionality of the PLCAA "reduced" LG's "work" is inaccurate. (Pls.' Resp. at 15.)  The DOJ brief was filed *after* LG's Reply, and did not address the constitutionality of the Colorado immunity statute.[2]

The Court scheduled the oral argument for March 16, 2015. (DE 35.)   In the interim, Plaintiffs filed another brief on the constitutional issues. (DE 37.)   The appearances of *four* attorneys for the March 16 oral argument on behalf of the Plaintiffs (*i.e.*, Thomas Stoever and Paul Rodney of Arnold & Porter; and Jonathon Lowy and Kelly Sampson of the Brady Center),

---

[2] Plaintiffs' "duplication" and "inefficiency" arguments are also muddled. While on the one hand, Plaintiffs contend that the defendants should have "pool[ed] resources" to avoid inefficiency (Pls.' Resp. at 19), they then go on to acknowledge that LG shared drafts of briefing with co-defendants and turnaround and argue this is evidence of duplication (*id*. at 20, n. 12).  Plaintiffs even speculate that the sharing of work-product "only added to the time spent," which is a baseless stretch. (*id*.)  Plaintiffs' attempt to use collaboration as both a sword and a shield should be rejected.

undercuts Plaintiffs' argument that LG's **three** attorneys in attendance at the hearing was unreasonable. (*See* DE 44, Minute Entry for Oral Argument.)  LG's counsel thoroughly prepared for the substantial number of complex constitutional, preemption, statutory construction, legislative history, and common law tort issues raised in the briefing to be ready for oral argument. That defense counsel were, ultimately, not required to argue at length has no bearing on the appropriateness of the time they expended to prepare for the hearing.

C.     **The Brady Center Legal Action Project.**

There is no dispute that this lawsuit to enjoin operation of defendants' businesses was spearheaded by the Brady Center Legal Action Project.  On the date the amended complaint was filed, the Brady Center issued a press release titled, "*Brady Center Sues Online Sellers of Ammunition and Equipment Used in Aurora Movie Theater Massacre*" which speaks for itself as to who was the driving force behind this lawsuit.  (*See* Brady Center Press Release, attached as Exhibit B.)  The Brady Center's website specifically included this lawsuit as one of the "14 Brady Center Victories of 2014" accomplished by its Legal Action Project. (Brady Center website, attached as Exhibit C.)  The Brady Center touted this lawsuit as the "FIRST-EVER CASE FILED AGAINST ONLINE AMMUNITION SELLERS!" and a "landmark" seeking to hold the defendants "accountable for selling lethal products to dangerous people." (*Id*. at p. 2, ¶ 5.)  The Brady Center has aggressively publicized its national litigation strategy to make firearms-related businesses "change the way they do business, or shut down those who refuse to act responsibly." (Brady Center E-mail, attached as Exhibit D.)  The political motivation behind this lawsuit was underscored by the fact that multiple brick-and-mortar sellers who also allegedly sold Holmes products used to carry out his crimes, including firearms and ammunition, were not named as defendants. (DE 1-2 at ¶¶ 40, 41, 42, 45, 49.)

The Brady Center is the real party in interest. According to Lonnie Phillips' LinkedIn professional profile, he is an "Operations Manager" for the Brady Center and has been since January 2013.  (*See* Phillips LinkedIn Profile, attached as <u>Exhibit E</u>.)  Sandy Phillips has identified herself as a "Campaign Manager" of the Brady Center.  (*See* Brady Center website, Letter from Sandy Phillips, attached as <u>Exhibit F</u>.)  The connections do not stop with the Plaintiffs and the Brady Center.  The Brady Center recognizes the "Arnold & Porter" firm as a member of its "LSA Leadership Council" (LSA stands for Lawyers for a Safer America).  (*See* Brady Center LSA Leadership Council, attached as <u>Exhibit G</u>.)

Plaintiffs based much of their argument that the defendants' attorney fees were unreasonable by comparing the hours "billed" by two Arnold & Porter attorneys, Thomas Stoever and Paul Rodney (180+ hrs.), with the total combined hours billed of all defense counsel. (Pls.' Resp. at 14.)  But Plaintiffs' proposed benchmark is, at best, incomplete, and, at worst, misleading. The Affidavit of Thomas Stoever identifies *only* tasks worked on by Stoever and Rodney, "including" the "Amended Complaint," motion practice, oral argument preparation/attendance and reviewing the Court's dismissal order. (DE 60-3 at ¶ 4.)  The Arnold & Porter time "billed" does not account for what was surely a significant effort by attorneys from the Brady Center; two of whom appeared at the oral argument (Jonathan Lowy and Kelly Sampson, *see* DE 44) and three of whom appeared on the pleadings (Lowy, Sampson and Elisabeth Burke, *see* DE 1-2).  A logical conclusion is that the Brady Center Legal Action Project lawyers provided significant assistance in drafting pleadings and briefs, strategizing with co-counsel and traveling to the hearing from Washington D.C.  Consideration of *only* Arnold & Porter time to assess the reasonableness of the time billed by LG's counsel is unreasonable.

**D.      Plaintiffs' Calculations are Inaccurate.**

Plaintiffs misstate that LG incurred "$151,574.70 in attorney fees and $3,695.00 in costs." (Pls.' Resp. at 4.)  LG's Motion plainly articulated that the attorney fees of Swanson, Martin & Bell totaled $137,597.50 and the attorney fees of Bruno, Colin & Lowe totaled $10,281.50.  (LG's Mot. at ¶¶ 7, 9.)  LG also sought $2,278.20 for travel expenses to and from the oral argument.  (*Id.* at ¶ 8.)   (Travel expenses are analyzed as "fees" rather than "costs" in the Tenth Circuit.) Accordingly, the total fees sought by LG are **$150,157.20**.

It is equally as unclear as to how Plaintiffs calculated "$3,695.00 in costs." (Pls.' Resp. at 4, 24.)  Plaintiffs mischaracterize LG's costs as "excessive[.]"  (*Id.* at 24.)   LG plainly stated that it sought only $400 of Swanson, Martin & Bell costs, and $1,018 of Bruno, Colin & Lowe costs. (LG's Mot. at ¶ 10.)   Total costs sought are **$1,418.00**.   As a result, LG total fees *and* costs is $151,574.70.  (*Id.* at p. 5, "Conclusion".)

Plaintiffs also mistakenly contend that LG is seeking "double recovery" because it summarized its "costs" in its Motion and also itemized such costs in its Bill of Costs.  (Pls.' Resp. at 24.)  This argument is specious.   Per the Court's Order, LG filed its motion for fees and costs "pursuant to D.C.Colo.L.Civ.R. 54.3." (DE 45 at 19.)  Nonetheless, "costs" also require the filing of a Bill of Costs under a separate procedure outlined in D.C.Colo.L.Civ.R. 54.1.   LG made clear in its Motion (DE 48 at ¶ 10) and the Itemization accompanying the Bill of Costs (DE 49-1) that the Itemization in the Bill of Costs was supported by documentation that was attached to the attorney affidavits attached to LG's Motion.  LG is not seeking double recovery.

While Plaintiffs' attack on the reasonableness of LG's "costs" would be appropriately addressed by the Clerk at a hearing on the Bill of Costs, their arguments warrant comment here, too.  First, because removal of this case to federal court was reasonable, so too was the $400 filing

fee. (DE 49-1 at ¶ 4.a.)  Second, Plaintiffs claim that photocopying of "pleadings in unrelated state court cases against the theater at which the Aurora shooting took place" are unrecoverable. (Pls.' Resp. at 24-25.)  The other cases were anything but "unrelated."  The Plaintiffs are a party to those lawsuits, and the existence of such lawsuits is a required disclosure to this Court under D.C. Colo. L. Civ. R. 3.2. (DE 15.)  And positions taken by the Plaintiffs in those other lawsuits were pertinent to LG's defense of this case. (*See, e.g.*, DE 32 at 25, 28 (identifying Plaintiffs' *other* lawsuit as a ground to deny constitutional challenges).)

## III.  ARGUMENT

### A.    LG's Attorney Fees and Costs Are Entirely Reasonable.

Two Colorado statutes mandate the attorney fees shift in this case, C.R.S. § 13-21-504.5(3) and C.R.S. § 13-17-201.  Plaintiffs cite no cases in support of the proposition that the Court has discretion to disregard the mandatory language of the Colorado statutes (*i.e.*, "shall") and instead award "zero" fees.  For good reason: no such cases exist.  Plaintiffs' interpretation would impermissibly void the mandatory language of the Colorado statutes.[3]

Nor is Plaintiffs' argument that they brought this lawsuit in an attempt to fundamentally change Colorado law a persuasive argument to avoid or reduce a fee award.  To the contrary, the "mandatory attorney fees award provision of § 13-17-201 contains no express exclusion for claims brought in a good faith attempt to establish a new rule of law in Colorado." *Houdek v. Mobile Oil Corp.*, 879 P.2d 417, 425 (Colo. App. 1994); *Tunget v. Bd. of County Comm'rs*, 992 P.2d 650, 653 (Colo. App. 1999) (fees awarded "jointly and severally" against plaintiffs and their counsel under

---

[3]  *Cf. Nero v. Am. Family Mut. Ins. Co.*, 11-cv-02717-PAB-MJW, 2013 U.S. Dist. LEXIS 135669, *23 (D. Colo. Sept. 23, 2013) ("To the extent plaintiff argues that requiring him to pay an award of attorneys' fees for claims brought on behalf of a class is unfair, the Court has ***no discretion*** to deny attorneys' fees in this case because, once it has been shown that § 13-17-201 applies, the award of attorneys' fees is mandatory.") (emphasis added).

§ 13-17-201).

Plaintiffs' suggestion that LG should have tried to settle the case rather than vigorously defend is not a basis to eliminate or reduce a mandatory fee award. Indeed, it was the Plaintiffs, not LG, who could have avoided a fee award by voluntarily dismissing the case or obtaining settlement prior to the Court's dismissal order. *See Houdek*, 879 P.2d at 425 ("By implication, § 13-17-201 allows a plaintiff to escape liability for attorney fees by seeking a voluntary dismissal or by filing a stipulation of dismissal, or by confessing to a defendant's motion to dismiss").

Plaintiffs' remaining arguments for why LG's attorney fees award should be significantly reduced fall into two categories: First, they contend that the partner rates of LG's counsel, Marc Colin of Denver ($325/hr.) and James Vogts of Chicago ($390/hr.), should be reduced to the co-defendants' local counsel rate of $300/hr. Second, Plaintiffs contend that the total amount of work to defend this lawsuit was unreasonable because of duplication and inefficiency. Both of Plaintiffs' arguments should be rejected.

### 1. The Partner Billing Rates of LG's Attorneys Are Well-Within the Bounds of Reasonableness.

Plaintiffs do not contest (a) the reasonableness of the billing rates for any of the defense firms' associates or paralegals, or (b) the qualifications and experience of any of the defense firms' partners, associates or paralegals. The dispute, therefore, is confined to partner billing rates. And even Plaintiffs' argument on the reasonableness of partner rates appears more one of convenience than conviction.

While Plaintiffs willingly offered the total "billed" hours of two of their attorneys— namely, Thomas Stoever and Paul Rodney of Arnold & Porter—for the purpose of comparison with all of the defense counsels' hours "billed," they offer no evidence of the Arnold & Porter attorneys' customary billing rate. The Stoever Affidavit's silence on the issue is telling. (DE 60-

3.) Whether Arnold & Porter partner Thomas Stoever's hourly billing rate is higher than any single attorney for the defense is unknown.  But Arnold & Porter's profits per partner in 2014 were $1.385 million and the firm's gross revenue was $694.5 million.[4]

Setting aside Mr. Stoever's undisclosed hourly billing rate, Plaintiffs' argument for an across-the-board partner billing rate reduction to $300/hr. is still meritless.  This was a complex case involving novel arguments for extension of tort liability to online sellers of lawful products.  The Brady Center Legal Action Project attorneys' involvement underscores this point.   LG's hiring of Swanson, Martin & Bell of Chicago and specifically, James Vogts and Andrew Lothson, who have experience representing firearm and ammunition industry members on many of the issues raised by the Plaintiffs, is not a legitimate ground to reduce Mr. Vogts' hourly rate.

At bottom, Mr. Vogts' rate of $390/hr. and Marc Colin's rate of $325/hr. are well-within the bounds of reasonableness for attorneys practicing complex Constitutional and firearms-related law in Denver, Colorado. (Affidavit of Richard Westfall, at ¶¶ 4-5, attached as Exhibit H.)   *See also Nero*, 2013 U.S. Dist. LEXIS 135669 at *26-29 (collecting cases finding rates well in excess of $400 to be reasonable in Denver market); *Nova Leasing, LLC v. Sun River Energy, Inc.*, 11-cv-00689, 2013 U.S. Dist. LEXIS 44496 (D. Colo. Mar. 28, 2013) (unpublished) (finding $450/hr. rate reasonable); *Memoryten, Inc. v. LV Admin. Servs., Inc.*, 12-cv-00993, 2013 U.S. Dist. LEXIS 37801 (D. Colo. Mar. 19, 2013) (unpublished) (finding $465-$495/hr. for an experienced attorney and $275/hr. for a junior attorney reasonable in the Denver market).

## 2.     The Attorney Fees and Costs Incurred by LG Were Entirely Reasonable Under the Circumstances.

Courts in the Tenth Circuit use the "lodestar" method to determine reasonable attorney's

---

[4]   (*See*   http://www.americanlawyer.com/id=1202717423172/An-Early-Look-at-The-2015-Am-Law-100-?slreturn=20150407150047 (last visited, May 12, 2015).)

fees. *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355 (10th Cir. 1992).   In considering a reasonable fee award, courts analyze (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers. *See Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).

Colorado state courts analyzing mandatory fee shift statutes, *e.g.*, C.R.S. §§ 13-17-201 and 13-21-504.5(3), have applied similar factors:

> [The loadstar] amount may then be adjusted based upon several factors, including the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and the degree of success achieved.

*Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 608 (Colo. App. 2008).

Plaintiffs' analysis of these factors is inconsistent and should be rejected.  For instance, Plaintiffs contend that having more than one attorney work on any particular task is "duplication" and therefore is almost *per se* "unreasonable." (Pls.' Resp. at 16.)  But that is not the law: "Because utilizing more than one lawyer may be reasonable in some situations, such as during settlement conferences or during trial, we decline to require an automatic reduction of reported hours to adjust for multiple representation or potential duplication." *Ramos*, 713 F.2d at 554.   There is no rule requiring automatic reduction merely because a partner researched an issue or drafted arguments on a complex issue for inclusion in a brief.  Nor is it impermissible for attorneys to collaborate on complex, novel questions of law.  It is commonplace:  "time spent by two attorneys on the same general task is not . . . per se duplicative. Careful preparation often requires collaboration and rehearsal . . . ." *Lockard v. Pizza Hut*, 162 F.3d 1062, 1077 (10th Cir. 1998) (citation omitted).

Plaintiffs also criticize the defendants' invoices for instances of "block" entries, suggesting this practice is impermissibly "notorious" per the Tenth Circuit. (Pls.' Resp. at 7 (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998).)  Again, Plaintiffs' argument is not the rule:

> [Since *Robinson*,] the Tenth Circuit has refused to establish "a rule of law requiring a reduction in fees when attorneys have block billed." *Flying J Inc. v. TCH, LLC*, 322 Fed. Appx. 610, 617 (10th Cir. 2009); *Cadena v. The Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) ("This court has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney records which reflect block billing.").

*Earthgrains Baking Cos. v. Sycamore Family Bakery Inc.*, 2012 U.S. Dist. LEXIS 177698, *7-8 (D. Utah Dec. 14, 2012).   Indeed, the detailed and contemporaneously drafted Billing Invoices submitted by LG's attorneys are on all fours with the permissible billing invoices in *Earthgrains*:

> Unlike the block billing in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983), the time records were completed contemporaneous to the work. Many of the largest entries of time are on what the court would consider single tasks, such as researching and writing a brief, preparing several witnesses for trial, etc. The court does not find the nature of the block billing troubling in its review of the requested fees. Therefore, it concludes that ***no reduction*** in fees is required due to the block billing that exists in this case.

*Id*. at * 8 (emphasis added).  And to the extent Plaintiffs have nitpicks here or there about details in the entries, it is of little significance:

> "[I]t is neither practical nor desirable to expect the trial court judge to have reviewed each paper in the massive case file to decide, for example, whether a particular motion could have been done in 9.6 hours instead of 14.3 hours." *Copeland*, 641 F.2d at 903

*Case by Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).  Along these lines, the Supreme Court has cautioned that the trial court need not strive to "achieve auditing perfection" or "become green-eyeshade accountants[.]" *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011).

Plaintiffs say nothing about the work necessitated by their "everything but the kitchen sink" response to LG's motion to dismiss. *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("the [losing party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [winning party] in response"); *Ramos*, 713 F.2d at 554 (noting that the district court "should consider that what is reasonable in a particular case can depend upon factors such as . . . the responses necessitated by the maneuvering of the other side").[5]

To the extent Plaintiffs suggest that the only recoverable attorney fees must be connected to the motion to dismiss briefing and oral argument, they are mistaken.  Recovery of attorney fees is not limited "only" to "[f]ees incurred in preparing the motion to dismiss.  Section 13-17-201 *does not* so limit an award and instead expressly authorizes 'attorney fees in defending the action'." *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 607 (Colo. App. 2008) (emphasis added).  As a result, LG is well-within the bounds of reasonableness to recover attorney fees for removal; analysis of jurisdiction, venue, and choice-of-law issues; assessment of the impact of the co-defendants' arguments; and the plethora of other work completed "in defending the action" as demonstrated in the detailed Billing Invoices (DE 48-1 and 48-2).  (Westfall Aff. at ¶¶ 4, 6-12.)

The first-rate outcome achieved by LG's counsel, a complete dismissal of all claims, is also a factor to consider. *See Ramos*, 713 F.2d at 555 ("the quality of the lawyer's performance in the case should also be considered in placing a value on his or her services").  Indeed, the arguments advanced by LG with respect to the Colorado common law claims and defenses (*e.g.*, no duty, no proximate cause, etc.), were persuasive to the point that the Court also ordered

---

[5] Plaintiffs' general characterization of the motion practice as simple is misleading. Literally hundreds of cases, involving complex analyses of the intricacies of Colorado tort law, equitable relief, legislative history and deference, a century's worth of constitutional law and the many nuances of the implied preemption doctrine, were analyzed and cited in the briefing.

dismissal of all claims against the co-defendant that never appeared in the case—namely, Gold Strike E Commerce LLC ("Gold Strike"). (DE 45 at 2, n. 2.)  Even if Gold Strike appeared and asserted similar defenses, the outcome could not have been any better for that defendant, but the fees potentially owed by Plaintiffs because of that appearance and defense would have been multiplied.

To exceed its burden of proof, LG attached each Billing Invoice even though it was not required under local rule or case law.  *Cf. Alpine Bank v. Hubbell*, 05-cv-025-CMA-KLM, 2010 LEXIS 39141, *7 (D. Colo. Mar. 24, 2010) (movant tendered copies of invoice summaries and supporting affidavits).  Plaintiffs nonetheless complain of minor "redactions" in LG's Billing Invoices. (Pls.' Resp. at 7.)   But it is entirely permissible to redact confidential and privileged information. *Hubbell*, 2010 U.S. Dist. LEXIS 39141 at *17-19 (redactions were permissible, not unnecessarily abundant, and did not inhibit the court's analysis of whether the fees were reasonable).

For comparison, the permissibly redacted bills in *Hubbell* omitted a far greater level of detail than LG's Billing Invoices:

> "Conference regarding [redacted]", "Legal research regarding [redacted]", and "Revisions to Combined response per [redacted]" (Doc. # 446, Ex. 3A, Parts 1-5), "Communicate with [redacted]," "Meet with [redacted]," "Review, analyze and strategize with [redacted]," "Prepare for and attend conference with [redacted]," "Outline arguments [redacted]," "Prepare for [redacted]," and "Work on [redacted]"

*Hubbell*, 2010 U.S. Dist. LEXIS 39141 at *20 n. 8.  At bottom, "the essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 131 S. Ct. at 2216. Trial courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

Plaintiffs also mistakenly contend they are "entitled" to know whether LG's defense "is being directed by other individuals or whether other parties are indemnifying" it for legal fees, and that LG should disclose its "retainer letters and indemnification agreements[.]" (Pls.' Resp. at 7 n. 3.)  Plaintiffs even add this inquiry to the analysis of reasonableness of the fee award—that is, whether "other entities besides defendants are paying the fees." (*Id*. at 8.)  According to the Tenth Circuit, however, these issues are irrelevant to the reasonableness of a fee award. *Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, 335 F. App'x 707, 717 (10th Cir. 2009) ("There is, however, no requirement in Section 13-17-201 that a defendant demonstrate that it has paid its attorneys in order to recover its attorney fees and costs.").  Nevertheless, the answer to Plaintiffs' inquiry is simple—LG paid for its entire defense and has neither sought nor received indemnity, payment, or assistance from any insurance company or firearms industry trade association or interest group.[6]

Plaintiffs also request a reduction in fees associated with travel to and from the oral argument, claiming that travel of only *one* of LG's attorneys was permissible. (Pls.' Resp. at 21, 24.)  This argument is undercut by the fact that Plaintiffs had *four* attorneys present at the hearing, and the *two* Brady Center attorneys traveled from Washington D.C.  *Cf. Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*, 599 F. Supp. 509, 518 (S.D.N.Y. 1984) ("Although the defendants object to the plaintiffs' use of multiple attorneys, the defendants themselves were represented by more than one attorney at various times.").  LG's Billing Invoices provide detail of which attorneys traveled to and attended the hearing, analyzed key issues in preparation for that

---

[6] If anything, the "indemnification" inquiry is more appropriately directed towards Plaintiffs and their lawyers, including the Brady Center.  If the Court declines to extend the fee award to counsel, the question of whether Plaintiffs are to be indemnified by their attorneys will be relevant to collection of the award and subject to discovery. Plaintiffs' counsel has declined to voluntarily disclose this information.

hearing, collaborated on the litany of issues to address at the hearing, and strategized with counsel for the co-defendant. (*See* DE 48-2 at 51-52; DE 48-1 at 20.)  These are all permissible activities which furthered the defense of the lawsuit. "Careful preparation often requires collaboration and rehearsal . . . ." *Lockard*, 162 F.3d at 1077 (citation omitted).  LG's fees incurred for travel and related expenses are properly recoverable. *See Ward v. Siebel*, 2012 U.S. Dist. LEXIS 83171, *20 (D. Colo. June 15, 2012) (awarding, *inter alia*, airfare, hotel, meal, parking and taxi costs).

Finally, Plaintiffs do not dispute that LG is entitled to fees to litigate the fee dispute.  *Cf. Case by Case*, 157 F.3d at 1255 (eighty hours for fee petition).   And LG will also be entitled to fees incurred to successfully defend Plaintiffs' appeal to the Tenth Circuit. *Dubray*, 192 P.3d at 608 ("Because they were successful in defending this appeal, they are entitled to such an award."). The effort to prosecute this fee award has been significant (more than 50-hours thus far) and the Tenth Circuit appeal will only multiply LG's fees incurred to defend the Court's dismissal order.

**B.      The Fee Award Should Be Extended To Counsel Including the Brady Center.**

Plaintiffs argue that this case does not warrant extension of the fee award to counsel, including attorneys for the Brady Center Legal Action Project. (*See* Pls.' Resp. at 23.)   But Plaintiffs acknowledge that the Court has wide discretion on fee issues:  The Court has "inherent equitable powers that authorize it to achieve a proper end result." (Pls.' Resp. at 6 (citing *Brown v. Plata*, 131 S. Ct. 1910, 1944 (2011) and *La Plata Med. Ctr. Associates, Ltd. v. United Bank of Durango*, 857 P.2d 410, 420 (Colo. 1993).)  The "inherent equitable power" of the Court authorizes imposition of joint and several liability of the Plaintiffs and their attorneys for the fee award as the "proper end result."[7]

---

[7]   At least one Colorado trial court has awarded fees "jointly and severally" against plaintiffs and their counsel under C.R.S. § 13-17-201. *Tunget v. Bd. of County Comm'rs*, 992 P.2d 650, 653 (Colo. App. 1999).

While Plaintiffs also repackage one of their previously rejected arguments as to why the Colorado immunity statute and the PLCAA were unconstitutional, *i.e.*, the "First Amendment interest is predominant," as a ground here for reduction of fees (Pls.' Resp. at 6), Plaintiffs neglect to mention that there is also a Second Amendment interest in play—that is, selling ammunition is a constitutionally protected activity under the Second Amendment to the U.S. Constitution. *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (Second Amendment right to possess firearms implies a right to sell and obtain the ammunition necessary to use them).  Indeed, the immunity statutes, C.R.S. § 13-21-504.5 and the PLCAA, undeniably have Second Amendment underpinnings.

## CONCLUSION

For all of the foregoing reasons, LG requests the relief sought in its Motion for Fees and Costs be awarded, in full, and for any additional relief that the Court deems just and appropriate.

Respectfully submitted,

**LUCKYGUNNER, LLC**

By: /s/ *Andrew A. Lothson*
    One of Defendant LuckyGunner, LLC's Attorneys

Marc Colin
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 3100
Denver, Colorado 80202
(303) 831-1099
(303) 831-1088 FAX
MColin@brunolawyers.com

James B. Vogts
Andrew A. Lothson
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
(312) 321-0990 FAX
jvogts@smbtrials.com
alothson@smbtrials.com

**Attorneys for Defendant LuckyGunner, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 15th day of May, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

1.      Thomas W. Stoever, Jr.
        Paul W. Rodney
        Arnold & Porter LLP
        370 Seventeenth Street, Suite 4400
        Denver, CO 80202

**Counsel for Plaintiffs**

2.      Patrick J. Rooney, Esq.
        Donald Chance Mark, Jr., Esq.
        Peter A.T. Carlson, Esq.
        Fafinski, Mark & Johnson
        775 Prairie Center Dr., Suite 400
        Eden Prairie, MN 55344

**Counsel for The Sportsman's Guide, Inc.**

3.      Phillip R. Zuber, Esquire
        Sasscer, Clagett & Bucher
        5407 Water Street, Suite 101
        Upper Marlboro, MD 20772

4.      Bruce A. Montoya, Esq.
        Messner Reeves, LLP
        1430 Wynkoop St., Suite 300
        Denver, CO 80202

**Counsel for Defendant Brian Platt, d/b/a BTP Arms**

I hereby further certify that I have mailed the foregoing via U.S. mail, postage prepaid, to the following non-CM/ECF participants:

5.      Jonathan E. Lowy
        Elizabeth Burke
        Kelly Sampson

Brady Center to Prevent Gun Violence
840 First Street, NE, Suite 400
Washington, DC 20005

**Counsel for Plaintiffs**

6.      Gold Strike E Commerce, LLC
        d/b/a bulletproofbodyarmorhq.com
        Christopher E. Russell, Agent for Service
        1546 West Vine Ave.
        Mesa, AZ 85202


                                        */s/  Andrew A. Lothson*
                                        Andrew A. Lothson