IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Richard P. Matsch, Senior District Judge

Civil Action No. 14-cv-02822-RPM

SANDY PHILLIPS, individually and as surviving parent
of Jessica Ghawi, decedent; and
LONNIE PHILLIPS, individually and as surviving parent
of Jessica Ghawi, decedent.

      Plaintiffs,

v.

LUCKYGUNNER, LLC, d/b/a/ BULKAMMO.COM,
THE SPORTSMAN'S GUIDE,
BRIAN PLATT, d/b/a/ BTP ARMS,
GOLD STRIKE E COMMERCE, LLC,
d/b/a/ BULLETPROOFBODYARMORHQ.COM, and
JOHN DOES 1 through 10, unknown individuals.

      Defendants.

---

## ORDER AWARDING FEES AND COSTS TO DEFENDANTS

---

Although the time sheet billing method has become increasingly disfavored by those who pay for legal services, controlling precedent commands that counsel and trial judges use it in following the "lodestar" method as the starting point for determining a reasonable fee to be awarded pursuant to fee-shifting statutes.  That is reinforced by D.C.Colo.LCiv.R 54.3.  Appropriate adjustments may be made as fairness may require under the circumstances of the case.

As a result of the dismissal of all of the claims made in the amended complaint, removed from the District Court for Arapahoe County, Colorado, in the exercise of diversity of citizenship

jurisdiction, defendants LuckyGunner and Sportsman's Guide have moved for attorney's fees

and costs pursuant to C.R.S. § 13-21-504.5(3) and § 13-17-201.  Defendant Brian Platt, d/b/a

BTP Arms moved under C.R.S. § 13-17-201.  Those statutes provide as follows:

> The court, upon the filing of a motion to dismiss pursuant to rule 12(b) of the
> Colorado rules of civil procedure, shall dismiss any action brought against a
> firearms or ammunition manufacturer, importer, or dealer that the court
> determines is prohibited under subsection (1) or (2) of this section. Upon
> dismissal pursuant to this subsection (3), the court shall award reasonable attorney
> fees, in addition to costs, to each defendant named in the action.

C.R.S. § 13-21-504.5(3).

> In all actions brought as a result of a death or an injury to person or property
> occasioned by the tort of any other person, where any such action is dismissed on
> motion of the defendant prior to trial under rule 12(b) of the Colorado rules of
> civil procedure, such defendant shall have judgment for his reasonable attorney
> fees in defending the action....

C.R.S. § 13-17-201.

The named plaintiffs in their opposition ask that these motions be denied on several

grounds.  They say that the action could have ended expeditiously by settlement if the defendants

had initiated settlement discussions.  That is a strange plaint to make given the allegations of the

amended complaint accusing the defendants of a causal relationship with the criminal acts

resulting in the deaths and injuries in the armed attack on the moviegoers at the Aurora Century

16 movie theater in Aurora, Colorado on July 20, 2012.  The injunctive relief requested is to stop

all the defendants' commercial activities until their business practices have been changed and

approved by the court.  There is nothing in the record to indicate that the plaintiffs or the Brady

Center, the apparent sponsor of this case, made any attempt to persuade the defendants to make

any alterations of those practices before bringing this highly publicized lawsuit.  It would be

highly unlikely that the defendants would seek to emasculate their businesses to conform to an

undefined standard of care that would have prevented a purchaser of their products from using them in a barbaric assault on innocent people in an entertainment venue.[1]

The named plaintiffs have active roles in the Brady Center as shown in the attachments to LuckyGunner's reply and in press releases from the Brady Center heralding the filing of their lawsuit and identifying three of its lawyers as representing the plaintiffs.  Two of those attorneys attended oral argument on the defendants' motions and signed pleadings filed on behalf of the plaintiffs by the attorneys from Arnold & Porter.

It is apparent that this case was filed to pursue the political purposes of the Brady Center and, given the failure to present any cognizable legal claim, bringing these defendants into the Colorado court where the prosecution of James Holmes was proceeding appears to be more of an opportunity to propagandize the public and stigmatize the defendants than to obtain a court order which counsel should have known would be outside the authority of this court.

LuckyGunner has made the argument that because this civil action was a meritless "political lawsuit," plaintiffs' counsel should have joint liability for the fees and costs.  The procedural requirements under Fed.R.Civ.P. 11(c) have not been followed and for this court to take the initiative to issue an order to show cause under Rule 11(c)(3) would prolong this matter which is on appeal.  Ruling now on these fee applications may enable any disagreements to be added to the issues on appeal.

There is no dispute that the Colorado statutes cited above provide for recovery of the moving defendants' reasonable attorney's fees incurred in defending this action.  By employing

---

[1]It is ironic that the entertainment being provided at that venue featured the same kind of violence that occurred in actuality.

the mandatory word "shall," those statutes require that fees be awarded.  It may be presumed that whatever hardship is imposed on the individual plaintiffs by these awards against them may be ameliorated by the sponsors of this action in their name.

Plaintiffs' counsel voiced the suspicion that non-parties have provided financial support for the defense of this action.  Counsel for the defendants assert that their clients are responsible for these fees and it is irrelevant whether their need for legal representation to defend their businesses may have been supported by others.

The court is responsible for determining the reasonableness of the fee requests and to meet that responsibility the detailed time reports and billing rates have been reviewed, giving consideration to the plaintiffs' objections and comments.

Initially the plaintiffs contend that the amounts claimed are disproportionate to the issue and characterize the defense as a "Cadillac" approach to litigation.  This was an all conceivable claims attack on these internet sellers, attempting to destroy their legitimate businesses and invalidate the federal and state statutes protecting them.  Defeating this action at the threshold was important not only for the continuation of their business model, it avoided the probability of negative publicity attendant to the discovery opportunities available under the procedural rules. Those who ignite a fire should be responsible for the cost of suppressing it before it becomes a conflagration.  The Brady Center may be pursuing a righteous cause, but the defendants should not have to bear the burden of defending themselves in this inappropriate forum.

The lodestar analysis follows.

**Defendant Platt's request**

Platt, a citizen of Maryland, employed the services of two law firms – Sasscer, Clagett & Bucher, a Maryland law firm, and Messner Reeves, LLP, a Denver law firm. Platt seeks attorney's fees in the following amounts:

$22,480.00 for fees billed by Sasscer, Clagett & Bucher, and

$9,645.00 for fees billed by Messner Reeves.

Platt seeks costs and expenses in the following amounts:

$1,234.99 for costs and expenses billed by Sasscer, Claget & Bucher, and

$209.90 for expenses billed by Messner Reeves.

(Zuber Aff. and Montoya Aff.). The total amount of attorney's fees and costs/expenses requested by Platt is $33,569.89. Platt also seeks payment for approximately six hours of time incurred in filing the subject motion.

Platt states that he paid for all of the legal work performed by his counsel and no other entities were involved in its defense of this action.

The affidavit of Phillip R. Zuber, a partner in the Sasscer firm [Dkt. #55-2], says that he devoted 69.60 hours of work to this action, and billed his time at an hourly rate of $300. The Sasscer firm also employed the services of a paralegal, who spent 12.8 hours on this action, billed at an hourly rate of $125. Zuber's affidavit generally describes the work that he and the paralegal performed.

The affidavit of Bruce Montoya, a partner in the Messner Reeves firm [#55-1], says that he devoted 15.20 hours of work on this action, billing his time at the hourly rate of $300. Two

associates in that firm also worked on the case.  Their time (19.5 hours and 4.10 hours) was billed at an hourly rate of $225.

Platt's attorneys did not provide their billing records, but those records were provided to plaintiffs' counsel and are attached to the Plaintiffs' response [Dkt. #60-1 and #60-2].

The cost and expense items requested by Platt are described in the affidavits and invoices.  Platt did not submit a bill of costs pursuant to D.C.Colo.LCiv.R 54.3, so there is no concern about a duplicate cost award.

The Plaintiffs do not question the hourly rates charged by Platt's attorneys.  Those billing rates are reasonable.

The plaintiffs object to redactions in these records and those of other counsel.  Given the professionalism shown by all of the counsel for the defendants the court does not question the propriety of those redactions.

There is some duplication of effort.  Three Platt lawyers charged a total of 3.1 hours for reviewing the complaint; three lawyers charged a total of 3.5 hours for reviewing the motion to dismiss; two attorneys charged a total of 4.3 hours for reviewing the co-defendants' motions, and three attorneys charged a total of 1.4 hours for reviewing the United States' notice of intervention and supporting brief.  On the day of the motions hearing (3/16/2015), three attorneys for Platt (Zuber, Montoya and Whitney) billed a total of 13.7 hours for time associated with that hearing (which lasted 37 minutes).

Some duplication is unavoidable when the party employs local counsel and out-of-state counsel. While the Maryland lawyers were admitted to the bar of this court, the assistance of

local counsel is prudent given the importance of an awareness of the practices of individual judges.

While it is common practice for law firms to include paralegal time in billing clients, their time is essentially time spent on administrative tasks and not for legal services.  That time is excluded.

Platt requests $1,231.07 for travel expenses, $3.92 for postage and $209.90 for computerized legal research.  Those are recoverable costs and are reasonable.

<u>Summary – total award to Platt</u>

The award to Platt is $20,880.00 for fees billed by Sasscer, Claget & Bucher; $9,645.00 for fees billed by Messner Reeves; $1,234.99 for costs billed by Sasscer, Claget & Bucher, and $209.90 for costs billed by Messner Reeves, for a total award of $31,969.89.  That is a reasonable amount for Platt's defense, including its fees incurred in connection with this motion.

**Defendant The Sportsman's Guide's request**

The Sportsman's Guide employed the services of two law firms – Fafinski Mark & Johnson, P.A. ("FMJ"), a Minnesota law firm, and Peters /Mair/Wilcox ("PMW"), a Denver law firm.

The Sportsman's Guide seeks $69,887.00 for fees of the FMJ law firm, and $1,140.00 for fees of the PMW law firm (i.e., total fees of $71,027.00) billed through March 31, 2015.  The Sportsman's Guide also requests its fees incurred in connection with this motion, stating it will amend its supporting documentation to include those amounts.

The Sportsman's Guide seeks $2,010.87 for costs and expenses.

The Sportsman's Guide request is supported by the affidavit of Donald Chance Mark, Jr. and attached time records.  Mark is a shareholder of the FMJ law firm.  His affidavit describes the qualifications of the three FMJ attorneys who provided services in connection with this action; their hourly rates, and total hours billed.  His affidavit summarizes their billing records as follows:

| Attorney | Total Hours Billed | Hourly Billing Rate | Total |
|---|---|---|---|
| Donald C. Mark, Jr. | 11.2 | $325 | $3,640.00 |
| Patrick J. Rooney | 168.1 | $325 | $51,512.50 |
| Peter A. T. Carlson | 70.1 | $235 | $14,734.50 |
| | | TOTAL: | $69,887.00 |

Mark's affidavit states that Ronald Wilcox of the PMW firm devoted 3.8 hours of time to this action, and his time was charged at the hourly rate of $300, for a total of $1,140.00  *See* Exs. C and D to Mark aff.

Mark's affidavit states that the time records submitted have already been adjusted to exclude more than $8,000 of attorney's fees.

The Plaintiffs argue that for the lodestar calculation, the maximum hourly rate attributable to any partner's time should not exceed the $300 rate charged by the Denver attorneys.  That is, they assert the hourly rate attributable to the work of Mssrs. Mark and Rooney should be reduced from $325 to $300.

This court has some knowledge and experience with respect to prevailing market rates in the Denver area.  An hourly rate of $325 is reasonable for attorneys with experience and credentials comparable to those of Mark and Rooney.  Also, Defendant LuckyGunner submitted

an affidavit of Richard A. Westfall, Esq. with its reply.  Westfall, an experienced trial lawyer,

states that his hourly rate is $425 and many large firms in Denver charge hourly rates that are

higher than his.  (Westfall Aff. ¶ 5).

The plaintiffs object that some of the billing entries of The Sportsman's Guide's

attorneys are in "block billing" format.

"Block billing is a form of time-keeping that involves stating the total daily time spent on

a case, rather than separating out the time into individual entries describing specific activities."

*Payan v. Nash Finch Co.,* 310 P.3d 212, 218 (Colo. App. 2012).  Block billing is not prohibited.

Lawyers should not be required to punch in and out during the day and disrupt their focus by

separately recording what they are doing.  This court is willing to accept the representation of

counsel that their recorded time was for service in the defense of this case.

The plaintiffs contend that hours spent on removal should be excluded, asserting that

removal was unnecessary.

The defendants' entitlement to federal jurisdiction is provided by statute, and the

defendants should not be penalized for invoking diversity jurisdiction and removing this case

from the court in which Holmes was being prosecuted.  The billing records of the FMJ and

PMW law firms show that four attorneys for The Sportsman's Guide spent approximately 9.8

hours considering that strategy and reviewing removal papers.  Some of that time may have

duplicated the work of LuckyGunner's counsel who took the lead on removal.  It was not,

however, unreasonable.

The plaintiffs contend that hours devoted to preparing the briefs should be greatly

reduced, asserting that a reasonable defense approach would have been to submit an "elegant but

short brief," seeking dismissal on the basis of the Colorado firearms immunity statue alone.  That argument ignores the challenge to the constitutionality of that statute and the fact that the amended complaint was anything but elegant and simple.

The amended complaint was 29 single-spaced pages, containing 268 numbered paragraphs, and the claims were obviously styled to avoid the immunity provided by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901 et seq. ("PLCAA").  The Sportsman's Guide's opening brief addressed three main points:  (1) the plaintiff's claims are precluded by the PLCAA; (2) the plaintiff's claims are precluded by C.R.S. § 13-21-501, and (3) the factual allegations of the amended complaint are insufficient to support injunctive relief.  Those arguments necessarily involved discussion of Colorado law regarding negligence, negligent entrustment and public nuisance and the sufficiency of the complaint's factual allegations with respect to those claims.

The Sportsman's Guide's opening brief was not unnecessarily complex or overly long (21 pages).  In contrast, the plaintiffs' response brief was 38 pages in length.  The reply briefs submitted by The Sportsman's Guide and LuckyGunner were necessary to respond to arguments advocated by the plaintiffs in their opposition brief.  The Sportsman's Guide's briefing strategy is more accurately described as thorough, rather than "overkill."  A thorough opening brief was necessary to ensure that all issues would be preserved for appeal in the event of an adverse ruling.

The plaintiffs assert The Sportsman's Guide's invoices reflect duplication, pointing out that two attorneys reviewed the complaint for a combined 7.2 hours; three attorneys reviewed plaintiffs' opposition to the Motions to Dismiss for a combined 5.5 hours; two attorneys

reviewed motion for default for a combined 2.7 hours.  According to the plaintiff's calculations,

attorneys for The Sportsman's Guide spent 143.8 hours researching and drafting its motion to

dismiss and reply.

The plaintiffs also point out that the defendants' time records show that counsel for

LuckyGunner and Sportsman's Guide collaborated during the defense of this action by, for

example, sharing drafts of their Motions to Dismiss, which raised many of the same points.  The

plaintiffs assert that collaboration did not result in efficiency, and instead increased the time

billed by counsel for both defendants.

There is some merit to these contentions.  This court could not undertake a detailed

analysis of the work of these lawyers without invading the work product and attorney client

privileges.  The total being claimed is high.  A reduction of 20% to the fees billed by the FMJ

law firm is a fair adjustment.

The Sportsman's Guide requests $2,010.87 for costs and expenses.  Those items are set

forth on Exhibit B to Mark's affidavit [#51-2].  Travel and related expenses account for $824.47.

The remaining are Pacer charges ($89.40) and online research charges ($1,097.00), which are

described in more detail in an affidavit of Peter A.T. Carlson [#53].  These are reasonable.

Summary – total award to The Sportsman's Guide

The total award to The Sportsman's Guide is $55,910.00 for the fees of Fafinski Mark &

Johnson, P.A., and $1,140.00 for fees of the Peters/Mair/Wilcox law firm, and $2,010.87 for

costs, for a total award of $59,060.87.  That amount is reasonable for The Sportsman's Guide's

defense, including fees incurred in connection with this motion.

**Defendant LuckyGunner's request**

Defendant LuckyGunner employed the services of attorneys from two law firms –
Swanson, Martin & Bell, LLP (located in Chicago, Illinois) and Bruno, Colin & Lowe, P.C.
(located in Denver, Colorado).  LuckyGunner seeks $137,597.50 for fees billed by the Swanson
firm through March 31, 2015, and $10,281.50 for fees billed by the Bruno firm through April 8,
2015.  LuckyGunner seeks $3,696.20 for costs and expenses.

In sum, LuckyGunner requests the total amount of $151,574.70 for fees and costs.
Additionally, it seeks fees in connection with the filing of this motion.

The lead attorney for LuckyGunner is James Vogts, of the Swanson firm.  Vogts states in
an affidavit that three attorneys and one paralegal at the Swanson firm worked on this action.
Their time was billed at the following hourly rates:

James B. Vogts (partner) – $390;

Andrew A. Lothson (senior associate attorney)  – $245;

Steven L. Vanderporten (associate attorney)  – $210 for the Oct. 2014 invoice and
$220 thereafter, and

Gregory E. Mueller (paralegal) – $135.

The Swanson firm's billing invoices for the periods October 15, 2014 through April 8, 2015, are
attached to Vogt's affidavit.  The attorney and paralegal time billed by the Swanson firm are
summarized in LuckyGunner's motion as follows:

Vogts – 159.2 hrs. x $390 = $62,088.00;

Lothson – 261.6 hrs. x $245 = $64,092.00

Vanderporten – 33.7 hrs. x $220 = $7,414.00

Vanderporten – 11.8 hrs. x $210 = $2,478.00

Mueller – 11.3 hrs. x $135 = $1,525.50

Total fees billed by the Swanson firm = $137,597.50.

LuckyGunner also submitted an affidavit of Marc F. Colin of the Bruno firm.  Colin and two paralegals employed by the Bruno firm worked on this action.  Colin's time was billed at the hourly rate of $325.  The paralegal time was billed at the hourly rate of $110.  The Bruno firm's billing invoices are attached to Colin's affidavit.  The attorney and paralegal time billed by the Bruno firm are summarized in LuckyGunner's motion as follows:

Colin (attorney/shareholder)  – 22.7 hrs. x $325 = $7,377.50;

Lori Micucci (paralegal) – 24.3 hrs. x $110 = $2,673.00, and

Marla Brock (paralegal) – 2.1 hrs. x $110 = $231.00.

Total fees billed by the Bruno firm = $10,281.50.

The Plaintiffs argue that Vogts' hourly rate should be reduced from $390 to $300 and Colin's hourly rate should be reduced from $325 to $300.

As stated above, LuckyGunner submitted an affidavit of Denver trial attorney Richard A. Westfall, who opines that the rates charged by LuckyGunner's counsel are reasonable.

The hourly rates charged by Vogts and Colin are reasonable.

The billing records of LuckyGunner's attorneys include some hours that were excessive, redundant or otherwise unnecessary.

-13-

Paralegal time is excluded from the fee award.

The amount of time spent on removal appears to have been excessive, although the use of block billing makes it difficult to determine exactly how much time was allotted specifically to that effort.  (*See* Pls.' Ex. 5, compiling all time entries reflecting work on removal).  Some research time was necessary for issues such as whether a complaint seeking only declaratory and injunctive relief satisfies the $75,0000 jurisdictional threshold.  Still, it difficult to see why more than 15 hours were required to research such issues and accomplish removal.  The other Defendants consented to removal and the plaintiffs did not oppose it.

There was duplication of effort in the reviewing of pleadings.  For example:

•four attorneys reviewed the complaint for 11.8 hours[2];

•three attorneys reviewed co-defendants' draft and final Motions to Dismiss for

   9.7 hours[3];

•four attorneys and one paralegal reviewed Plaintiffs' opposition brief for 20.0 hours[4];

•three attorneys reviewed Department of Justice brief in support of the constitutionality

   of PLCAA and Plaintiffs' response for 4.2 hours[5], and

•three attorneys reviewed the Court's order on the motions to dismiss for 2.2 hours.[6]

---

[2] Dkt. #48-1 at 6; #48-2 at 7.

[3] Dkt. #48-1 at 10; #48-2 at 21-22.

[4] Dkt. #48-1 at 14; #48-2 at 29-30, 46.

[5] Dkt. #48-1 at 18; #48-2 at 45.

[6] Dkt. #48-2 at 52.

The plaintiffs also show that LuckyGunner's counsel spent 294.4 researching and drafting its motion to dismiss and reply, and there was duplication and inefficiency in that effort. For example, the plaintiffs show that two attorneys researched preemption issues for 37.2 hours,[7] and three attorneys researched nuisance issues for 15.6 hours.[8]  The plaintiffs also point out that 29 percent of the total time (85.6 hours) was spent by partners, whereas much of the work could have been accomplished at a lower cost by efficient use of associate time.

As discussed above, some duplication is unavoidable when the party employs local counsel and out-of-state counsel, and some duplication is also inevitable when work is delegated by a senior attorney to a junior attorney.  Still, comparison to the fee requests and billing records of the other defense counsel indicates that LuckyGunner's counsel could have done this work more efficiently.  A downward adjustment is appropriate.

LuckyGunner was billed for 36.3 hours for the combined travel time and attendance of three attorneys (Vogts, Lothson and Colin) at the hearing.  The plaintiffs point out that only Vogts argued and assert that the attendance of Lothson and Colin was unnecessary.  The plaintiffs' argument is belied by the fact that four attorneys attended the hearing on their behalf.

Time spent traveling is compensable, but a reduced rate should be applied to such time.

Although this action involved some novel issues, the total fees billed by LuckyGunner's counsel are high for a case that was resolved under Rule 12, without discovery, additional briefing, or trial preparation.  The Swanson, Martin & Bell law firm has significant experience in defending manufacturers and sellers of firearms and ammunition, and that experience should

[7]Dkt. #48-2 at 32-3.

[8]Dkt. #48-2 at 7-10.

have allowed those attorneys to defend this action much more efficiently than they did.  To adjust for the inefficiency and duplication discussed above, a downward adjustment of 25% is appropriate with respect to the total fees billed by Swanson, Martin & Bell, LLP.

LuckyGunner seeks $3,696.20 for the following three categories of costs and expenses:

>    (1) state and federal court filing fees ($558.00);

>    (2) copying charges ($860.00), and

>    (3) travel expenses ($2,278.20).

LuckyGunner also filed a proposed bill of costs, but does not seek double recovery.

LuckyGunner is entitled to the amount it paid for filing fees ($558.00).

The requested copying charges are excessive.  The billing invoices show charges for 4300 copies at 20 cents per copy.  Of those, 3,892 were for photocopies of pleadings in state court cases against the theater at which the shooting occurred.  Those papers were not necessary for use in this case.  LuckyGunner should receive only $81.60 for copying charges.

The requested travel expenses include $951.85 for expenses associated with Vogts' attendance at the hearing and $1,326.35 for expenses associated with Lothson's attendance.

The plaintiffs argue that no amount should be awarded for Lothson's travel expenses, asserting that his attendance at the hearing was unnecessary.  That argument is rejected, but there is no obvious reason for Lothson's airfare, hotel, and cab expenses to have been higher than Vogts'.

The plaintiffs assert that Vogts' travel expenses should be reduced by an additional $150, because his airfare included $119 for a seating upgrade and his meal expenses included an expensive meal on March 16, 2015.  *See* #48 at 63, 67.

-16-

A reasonable amount for Vogts' and Lothson's combined travel expenses is $1900.00

Summary – total award to LuckyGunner

LuckyGunner is awarded $102,054.00 for the fees of Swanson, Martin & Bell, LLP and $7,377.50  for the fees of Bruno, Colin & Lowe, P.C., and $2539.60 for costs, for a total award of $111,971.10.  An award of that amount is reasonable for work of this complexity, including fees incurred in connection with this motion.  *See* Westfall aff. ¶ 10 (stating that the cost of a principal appellate brief in cases of similar complexity ranges from $50,000 to $100,000 or more).

Accordingly, it is

ORDERED that Defendant LuckyGunner's motion for fees and costs [#48] is granted.  Defendant LuckyGunner, d/b/a/ Bulkammo.com is awarded the amount of $111,971.10 for its fees and costs of defending this action, and it is

FURTHER ORDERED that The Sportsman's Guide's motion for fees and costs [#50] is granted.  Defendant The Sportsman's Guide is awarded the amount of $59,060.87 for its fees and costs of defending this action, and it is

Further ORDERED that Defendant Platt's amended motion for attorneys fees [#55] is granted.  Defendant Brian Platt d/b/a BTP Arms is awarded the amount of  $31,969.89 for his fees and costs of defending this action.  Defendant Platt's original motion for fees [#47] is moot.

Dated:  June 17, 2015

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior Judge