IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

SANDY PHILLIPS AND LONNIE        )
PHILLIPS,                        )
                                 )
              Plaintiffs,        )
                                 )
         vs.                     )     1:14-cv-02822-RPM
                                 )
LUCKY GUNNER, THE SPORTSMAN'S    )
GUIDE, BRIAN PLATT, AND GOLD     )
STRIKE E. COMMERCE, LLC,         )
                                 )
              Defendants.        )
_____

MOTIONS HEARING
TRANSCRIPT OF PROCEEDINGS
_____

        Proceedings held before the HONORABLE RICHARD P.

MATSCH, U.S. District Judge for the District of Colorado,

on the 16th day of March, 2015, in Courtroom A, the United

States Courthouse, Denver, Colorado.


APPEARANCES

For the Plaintiffs:        Paul Wayne Rodney
                           Arnold & Porter LLP-Denver
                           370 Seventeenth Street
                           Suite 4400
                           Denver, CO  80202-1370



        Proceedings recorded by electronic sound recording;
        transcript produced by transcription service.

APPEARANCES: (Continued)

For the Plaintiffs:          Thomas William Stoever, Jr.
                             Arnold & Porter LLP-Denver
                             370 Seventeenth Street
                             Suite 4400
                             Denver, CO  80202-1370

                             Jonathan E. Lowy
                             Legal Action Project & Lawyers
                             for a Safer America
                             840 First Street, NE
                             Suite 400
                             Washington, DC  20002

                             Kelly Sampson
                             Legal Action Project & Lawyers
                             for a Safer America
                             840 First Street, NE
                             Suite 400
                             Washington, DC  20002


For the Defendant            James Brian Vogts
Lucky Gunner:                Swanson Martin & Bell LLP
                             330 North Wabash
                             One IBM Plaza
                             Suite 3300
                             Chicago, IL  60611-3604

                             Mark F. Colin
                             Bruno Colin & Lowe, P.C.
                             1999 Broadway
                             Suite 4300
                             Denver, CO  80202

                             Andrew A. Lothson
                             Swanson Martin & Bell LLP
                             330 North Wabash
                             One IBM Plaza
                             Suite 3300
                             Chicago, IL  60611-3604

For the Defendant            Patrick Joseph Rooney
The Sportsman's Guide:       Fafinski Mark & Johnson, P.A.
                             775 Prairie Center Drive
                             Suite 400
                             Eden Prairie, MN  55344

APPEARANCES (Continued)


For the Defendant                Bruce A. Montoya
Brian Platt:                     Messner & Reeves LLP
                                 1430 Wynkoop Street
                                 Suite 300
                                 Denver, CO  80202

                                 Phillip Robert Zuber
                                 Sasscer Clagett & Bucher
                                 5407 Water Street
                                 Suite 101
                                 Upper Marlboro, MD  20772


For the Intervenor:              M. Andrew Zee
                                 U.S. Department of Justice
                                 450 Golden Gate Avenue
                                 Room 7-5395
                                 San Francisco, CA  94102

1                    P R O C E E D I N G S

2        (At 1:58 p.m. on March 16, 2015, in the United States

3   District Court at Denver, Colorado, before the HONORABLE

4   RICHARD P. MATSCH, U.S. District Judge, with counsel for the

5   parties present, the following proceedings were had:)

6        THE COURT:  Please be seated.  Good afternoon.  We're

7   convened in Civil Number 14-cv-2822, Sandy Phillips and

8   Lonnie Phillips individually and on behalf of Jessica Ghawi,

9   decedent, against Lucky Gunner, d/b/a BulkAmmo.com, The

10  Sportsman's Guide, Brian Platt, doing business as BTP Arms,

11  Gold Strike E Commerce LLC, Bullet Proof Body Armor

12  Headquarters--something .com.

13          And we're here on the motions from the defendants

14  to dismiss the amended complaint which was filed in Arapahoe

15  County and we moved here on the basis of Diversity of

16  Citizenship.

17          So a lot of lawyers.  We'll ask you to enter--I'll

18  ask you to enter your appearances.

19       MR. STOEVER:  Good morning, Your Honor, Tom Stoever on

20  behalf of the plaintiffs Mr. and Mrs. Phillips.  With me from

21  my law firm Arnold & Porter is Paul Rodney.

22       THE COURT:  All right.

23       MR. LOWY:  Jonathan Lowy from the Brady Center to

24  Prevent Gun Violence also for plaintiffs and with me is Kelly

25  Sampson, also from the Brady Center.

1       THE COURT:  All right.

2       MR. VOGTS:  Your Honor, James Vogts on behalf of Lucky

3  Gunner, LLC, and with me from my firm is Andrew Lothson.

4       THE COURT:  Okay.

5       MR. ROONEY:  Good afternoon, Your Honor, Patrick Rooney

6  for Sportsman's Guide, with me is Mr. Ron Wackowski

7  (phonetic).

8       THE COURT:  Okay.

9       MR. COLIN:  Good morning, Your Honor, Mark Colin on

10  behalf of Lucky Gunner and Bulk Ammo.

11       THE COURT:  Okay.

12       MR. MONTOYA:  Good afternoon, Your Honor, Bruce Montoya

13  on behalf of BTP Arms.

14       THE COURT:  It is afternoon.  Yes.

15       MR. ZUBER:  Phillip Zuber on behalf of Mr. Platt as

16  well.

17       THE COURT:  Thank you.

18       MR. ZEE:  Good afternoon, Your Honor, Andrew Zee for the

19  Department of Justice on behalf of intervenor United States

20  of America.

21       THE COURT:  All right, Mr. Zee.  Well, the--there's been

22  extensive briefing here and the--one of the--Mr. Zee, you're

23  here on behalf of the government because of the claim of

24  unconstitutionality, the Protection of Lawful Commerce in

25  Arms Statute.

1        The plaintiff has not made--plaintiffs have not

2   made a valid constitutional claim in this case either for the

3   unconstitutionality of federal statute or the state statute

4   so I don't need argument on the unconstitutionality of it.

5        Now, most of the briefing has been addressing the--

6   those two statutes and the immunity provided by both federal

7   and state law.  But I want to--I could rule on those probably

8   on the briefs, but I set this down because I want to be clear

9   as to what exactly the plaintiffs are claiming in this case.

10        And so I'll call on plaintiffs counsel first

11   because as I interpret this case now different from the

12   original complaint in Arapahoe County that under the amended

13   complaint--if you'll come up please--to the amended complaint

14   what is being sought here is an equitable remedy which

15   requires some changes in the business practice of these

16   defendants, all of whom are online sellers of ammunition,

17   tactical gear, tear gas, so forth.  So that it seems the most

18   interesting claim in the case is this public nuisance claim,

19   your last claim for relief because you're not seeking

20   damages, you're seeking a form of relief that alters these

21   business practices because your assertion is they create a

22   public danger; is that it?

23        MR. STOEVER:  Yes, sir.

24        THE COURT:  And is the relief being sought primarily the

25   same as what is required of gun dealers under the Federal

1   Firearms Statute?

2       MR. STOEVER:  Well, the relief that we're seeking--I--

3   the answer to that question specifically is I can't answer

4   that because one of the reasons why we believe we should

5   survive a Motion to Dismiss here is because we need some

6   discovery to determine precisely what kind of relief is

7   required and--

8       THE COURT:  Well--

9       MR. STOEVER:  --and can be imposed.

10      THE COURT:  --what--what would discovery be about?

11      MR. STOEVER:  Well, discovery would be about a number of

12  things including whether or not these defendants could

13  foresee the risk associated with the sale of ammunition, body

14  armor, and tear gas in the volumes that it was sold and--and

15  would that have been enough to require someone to say, hey,

16  maybe we ought to call this fellow before we send him, you

17  know, a thousand rounds of armor piercing bullets.

18      THE COURT:  Well, what research have you done into the

19  defendants' practices?

20      MR. STOEVER:  We've visited the websites and that's as

21  far as we've been able to get because there's no other

22  information that's available to the public.

23      THE COURT:  Well, did you visit Lucky Gunner's website?

24      MR. STOEVER:  Excuse me?

25      THE COURT:  Did you visit Lucky Gunner's website?

1      MR. STOEVER:  Yes, Your Honor.

2      THE COURT:  Well, this is contrary to my usual practice

3  by I had someone visit it and I see that they do--this

4  defendant does under terms of sale require considerable

5  disclosure.

6           And, you know, as the defendants also point out in

7  their briefing that this trial of Holmes did indeed buy the

8  firearms in question from brick and mortar stores, which of

9  course I presume complied with the Federal Firearms Act

10  requiring him to--Holmes--to sign an affidavit, make these

11  disclosures and did require I presume a CBI investigation,

12  right?

13      MR. STOEVER:  We have now reason to doubt that all of

14  that occurred.

15      THE COURT:  So--but you didn't sue them.

16      MR. STOEVER:  No, we didn't.

17      THE COURT:  Well, not in this case, I don't know maybe

18  you did sue them.

19      MR. STOEVER:  Not in this case; not in this case that's

20  right.  To your--to your point about the Lucky Gunner

21  website, there's--we don't know when--

22      THE COURT:  I mean, you know, that's outside the scope

23  but it's referred to.

24      MR. STOEVER:  It is.  It is.  It's outside the scope of

25  the pleadings--

```
 1       THE COURT:  But it's referred to.
 2       MR. STOEVER:  --but--but it is referred to.  But--but
 3   the important point, Your Honor, is--the question that I
 4   would have is when did that go on their website.  Is that
 5   something that went on their website a month ago, a year
 6   ago--
 7       THE COURT:  Well, supposedly--
 8       MR. STOEVER:  --two years ago.
 9       THE COURT:  --it was on their website before Holmes
10   made--
11       MR. STOEVER:  It may well have been and if that's the
12   case, Your Honor, you may rule on a Motion for Summary
13   Judgment against us.  But at this stage of the pleadings
14   where, you know, you're obligated to take the allegations as
15   true and draw all reasonable inferences in our favor, we
16   should have the opportunity to determine when that statement
17   went on their website.
18           Moreover I--I would submit, Your Honor, that we
19   should have the opportunity to have experts take a look at
20   that and make a determination and provide opinions that the
21   Court could use as it's evaluating the Motion for Summary
22   Judgment or evaluating a request for relief as to whether or
23   not that's adequate.
24       THE COURT:  In your public nuisance arguments--briefing
25   you refer to the Colorado statute on abatement of public
```

1    nuisance.

2        MR. STOEVER:  We do, Your Honor.

3        THE COURT:  And you also refer to the Aurora Municipal

4    Code--

5        MR. STOEVER:  Yes, Your Honor.

6        THE COURT:  --with respect to a definition of nuisance.

7    With respect to the state statute and I'm certainly no expert

8    on it having just read it, is there a provision for private

9    parties to seek abatement of a public nuisance under that

10   statute.

11       MR. STOEVER:  Your Honor--

12       THE COURT:  It refers to the district attorney doing it.

13       MR. STOEVER:  Right.  And, Your Honor, you have--you

14   have put it out one of the problems that we have with the

15   State Public Nuisance Statue.  And we have in our briefings

16   dropped that statute as a basis for a claim.  I believe the

17   defendants have pointed that out.

18           We do think that the Aurora Public Nuisance Statute

19   however is applicable here.  Aurora is a Home Rule City in

20   the State of Colorado and by constitution its ordinances have

21   the weight and effect of state law.

22       THE COURT:  Well, the question then that I have is, how

23   does a person or an entity violate that statute when they're

24   not within Aurora?

25       MR. STOEVER:  By putting items into the stream of

1   commerce that they are sending to Aurora.

2       THE COURT:  Well, do you have some precedent for

3   stretching it that way?

4       MR. STOEVER:  Not as I'm standing here, Your Honor, no,

5   I don't.

6       THE COURT:  This would be it.

7       MR. STOEVER:  Excuse me?

8       THE COURT:  This case would be it.

9       MR. STOEVER:  This would be it; this would be it.  And

10  that's true for many of the points that are being made by

11  both sides, this case would be it.  There is no case in

12  Colorado that is on point with the issues raised in this

13  case.  There is no reported case in Colorado that interprets

14  the Colorado Statue that presumes to give an exemption from

15  liability to the defendants here and there--there is no case

16  in Colorado that would apply the Public Nuisance Statute in

17  this form.

18      THE COURT:  And one of the things in looking at the two

19  statutes that we have that's been briefed--that had been

20  briefed I think fully but we're here and--and that is this

21  word liability.  And, you know, liability for damages is one

22  thing and I think that's what these statutes are primarily

23  addressing, liability in the sense of paying damages--you're

24  not seeking damages.

25          What you're here is--you're not seeking liability

1    per se but a reformation of business practices based on

2    nuisance, is that--am I reading it right?

3         MR. STOEVER:  You are, Your Honor.

4         THE COURT:  Okay.  So if you were to--and I don't know

5    that you make this argument as--as explicitly as I'm trying

6    to make it now which is that, okay, it's immunity from

7    liability but we're not seeking liability we're seeking a

8    change, am I right?  I mean is that what you're saying?

9         MR. STOEVER:  Frankly, no, it's not.

10         THE COURT:  Okay.

11         MR. STOEVER:  And--and I would say just to go back to a

12    point you made a moment ago, it is not uncommon in the

13    context of a public nuisance for a court to provide

14    injunctive relief to abate the public nuisance.

15              So in the context of the nuisance claim--

16         THE COURT:  Well, that's what--yeah, that's what's

17    ordinarily is done.

18         MR. STOEVER:  Right.  So--but to go to your question,

19    Your Honor, what we're claiming with respect to this lawsuit

20    is that it is the actions of these defendants--not some third

21    party--it is the action of these defendants that gives rise

22    to our claim for negligence, negligence entrustment, and

23    public nuisance.

24              It is--it is their placing extremely dangerous

25    ammunition, body armor, tear gas, into the stream of commerce

1   in a way that makes it possible for someone who would choose

2   to do so to misuse them without any check that rises to the

3   level of negligence or negligence--negligent entrustment or

4   public nuisance.

5          So our claim is not that we are exempted from PLCAA

6   or from the Colorado statute by virtue of the relief that

7   we're claiming, our claim is that this lawsuit is different.

8   And it's--this is the same type of lawsuit that was brought

9   in Indiana where the court there allowed it to go forward.  A

10  similar lawsuit was brought in New York, again where the

11  court allowed it to go forward.  And--and allowed the public

12  nuisance claims to go forward alongside the claims for

13  negligence and negligent entrustment, so that's the kind of

14  claim that we're bringing here.

15      THE COURT:  And what is it that, you know, you got all

16  the detail and the amended complaint about Holmes and why it

17  would be foreseeable that Holmes may do something violent,

18  but one of the things that's troubling to me to your argument

19  is you would have to have the individual defendants know what

20  the other defendants are doing because you're--it's the

21  combination of purchases.

22          If this were just bulk ammunition--we'll take that

23  defendant--would you have a case?

24      MR. STOEVER:  Yes, Your Honor.

25      THE COURT:  Why?

1      MR. STOEVER:  Well, because the ammunition was used in

2  this horrific shooting out in Aurora.

3      THE COURT:  Well--

4      MR. STOEVER:  Because--because--

5      THE COURT:  --a lot of people buy bulk ammunition.

6      MR. STOEVER:  Well, but we don't know that, Your Honor.

7      THE COURT:  Well, we do.

8      MR. STOEVER:  Well, we know--we know that a lot of

9  people buy ammunition, but we have no idea whether they buy

10  it in the quantities that Mr. Holmes bought it in.  And--

11      THE COURT:  Well, if they didn't they wouldn't be

12  patronizing this website.

13      MR. STOEVER:  Well, we don't--

14      THE COURT:  The website is offering bulk ammunition

15  rates.

16      MR. STOEVER:  That's the name of the website.  I--I

17  don't know if the Holmes purchase was extraordinary, was

18  average, was below average.  And again this goes back to the

19  point of why we need discovery.

20      THE COURT:  Well, tell me what your discovery would

21  consist of?

22      MR. STOEVER:  Well, these online sellers operate

23  electronically so they have databases and those databases can

24  probably tell you how much ammunition they ship into any one

25  of, you know, 50 different zip codes in the metro Denver

1    area.

2         THE COURT:  So what?

3         MR. STOEVER:  And it may be possible for us to determine

4    that the Holmes purchase was five times the average purchase.

5    And maybe there's an argument to be made at the summary

6    judgment stage that if that's the case then indeed given the

7    Colorado statutes with respect to what duty is and weighing

8    the different factors that go into it then indeed we may be

9    able to persuade Your Honor that an injunction that says when

10   you buy ammunition that is five times the average someone

11   needs to pick up the phone and call the buyer and say, I just

12   want to confirm--you know, and go through a checklist, one,

13   two, three, four, five.

14        THE COURT:  Well, so they'd do the same thing that the

15   gun dealers did, so he lied to the gun dealers--

16        MR. STOEVER:  Your Honor--

17        THE COURT:  --and he would lie to these defendants.

18        MR. STOEVER:  Absolutely.

19        THE COURT:  So what--

20        MR. STOEVER:  And there's no way--and, Your Honor, we

21   have laws--federal and state laws throughout the books where

22   people can get around them by lying and that doesn't mean

23   that we don't observe the law and that doesn't mean that we

24   don't ask people to fulfill their obligations, it just means

25   that if you've taken the steps to make sure that you're not

1  creating a public nuisance, that you're not acting

2  negligently, and you are lied to, well, then that's probably

3  a defense if someone comes in and tries to sue you and says

4  you did something irresponsible.

5      THE COURT:  Yeah, but I'm separating this out and this

6  is why I asked questions of you first here and that is, you

7  know, these--this isn't really to recover damages because

8  you're not seeking damages.

9      MR. STOEVER:  That's right.

10     THE COURT:  So this really doesn't depend upon the fact

11 that this woman was killed in the shooting incident.  It--it

12 is--I guess you're asserting that that gives standing but

13 this is really on behalf of the public generally, right?

14     MR. STOEVER:  Well, it's on behalf of these individuals

15 who are members of the public.

16     THE COURT:  Yes, but--

17     MR. STOEVER:  So I suppose in that--in that sense I

18 suppose that this will have benefits to people beyond Mr. and

19 Mrs. Phillips; that doesn't mean that we are suing for the

20 public--on behalf of the public generally, we're suing on

21 behalf of the Phillips.

22         If Your Honor finds that--that our arguments are

23 persuasive and Your Honor orders the relief that we're

24 seeking would the public benefit, yes.

25     THE COURT:  Well, I don't see your claims other than the

1    nuisance claim.  I don't see how this goes to--this form of

2    relief goes to a negligent entrustment that results in death

3    or a negligence per se, I just don't see that.

4         MR. STOEVER:  Well, we're not making an argument for

5    negligence per se, so you're right that wouldn't--that

6    wouldn't be there.

7         THE COURT:  Yeah.

8         MR. STOEVER:  But as far as negligent entrustment is

9    concerned there's nothing in the law that suggests that

10   injunctive relief would be inappropriate in that context.

11   Plaintiffs--defendants haven't cited any cases to Your Honor

12   that says--

13        THE COURT:  Well, you haven't cited any cases in support

14   of either.

15        MR. STOEVER:  Well, that may be true, but again that may

16   be something that we reserve for a summary judgment phase--

17        THE COURT:  Yeah.

18        MR. STOEVER:  --when we've got specific relief crafted

19   to reflect what discovery tells us.

20        THE COURT:  You really want me to be the state

21   legislature or actually the Congress.

22        MR. STOEVER:  As--as--

23        THE COURT:  You're really asking me--

24        MR. STOEVER:  --intriguing as that possibility is, Your

25   Honor, no, I don't think--I don't think that's what we're

1    asking you to do.

2        THE COURT:  Well, that's what it is, you're asking me to

3    make--through injunctive relief a policy determination that

4    it's against public policy for these people to do business

5    the way you say they do them.

6        MR. STOEVER:  You know, I'm telling--

7        THE COURT:  That's it, isn't it?

8        MR. STOEVER:  --I'm telling you something you already

9    know, federal courts enter injunctions where judges impose

10   their judgment on actions whether they're business actions or

11   actions of the state all the time.

12            And--and we would have--we would leave it to your

13   discretion if you are--if you decide based on a full record

14   that we have not made our claim then you can make a ruling

15   that--that on summary judgment that we shouldn't be before

16   you.

17            On the other hand if we can persuade you and we can

18   provide a reasonable form of injunctive relief that is based

19   on the facts that we have developed through discovery there's

20   absolutely no reason why you couldn't enter an injunction to

21   require certain business practices be adopted.

22            And again I don't think that's something that, you

23   know, the Court is unfamiliar with.

24       THE COURT:  Well, I'm familiar with doing it in claims

25   of a violation of the United States Constitution.

1         MR. STOEVER:  Uh-huh.

2         THE COURT:  As for example the Equal Protection Act--

3         MR. STOEVER:  Uh-huh.

4         THE COURT:  --Equal Protection Clause.

5         MR. STOEVER:  Uh-huh.

6         THE COURT:  But I have never--I've been here awhile and

7    I've never done anything like this.  Well, I'll hear from

8    defendants, but I--you may be seated.

9              I don't know if you've elected a spokesman on the

10   defendants' side; I don't intend to hear duplicating

11   arguments from everybody, but, Mr. Vogts, are you--are you a

12   designated spokesperson?

13        MR. VOGTS:  Well, Your Honor, I will speak; I don't know

14   if any of my co-defendant counsels would like to have a word

15   also; I'm sure they won't repeat what I've said.

16        THE COURT:  Yeah.

17        MR. VOGTS:  But, Your Honor, I would like to address the

18   plaintiffs' professed need for discovery.

19        THE COURT:  Sure.  Yeah.

20        MR. VOGTS:  I think before we even get to that question

21   there has to be some theory of liability on which that

22   discovery latches on to.  And as Your Honor knows the

23   Colorado General Assembly passed a statute back in 2000--

24        THE COURT:  Yes.

25        MR. VOGTS:  --which very plainly said that a civil

1    action in tort for any remedy against an ammunition seller

2    can only fall into two categories, one, an action based on

3    actual defect of the manufacturer or design of the

4    ammunition, or two, a violation of a state or federal statute

5    or regulation.

6         The Colorado General Assembly has not opened the

7    door to a common law public nuisance claim.  And essentially

8    that's what the--

9    THE COURT:  I guess it's a common equity claim.

10   MR. VOGTS:  Correct.  And that's essentially what the

11   plaintiffs are arguing here.  Although they try to assert a

12   claim under the Aurora City Code.  If you look at that code

13   carefully and specifically City Code Section 62-27 it

14   provides that a public nuisance in the City of Aurora must be

15   one of the acts actually proscribed in the previous section,

16   62-26 or some other provision of the code.

17        The city code of Aurora cannot be used to create a

18   statutory public nuisance action and I don't believe that a

19   private citizen has a right to bring such a claim under that

20   code.  At least it's not clear from the face of--of those

21   code provisions.

22        So--and--and this idea that foreseeability is

23   somehow in play I think also ignores that the Colorado

24   General Assembly in Section 13-21-504, subparagraph 2,

25   provided that an ammunition seller's mere placement of

1   ammunition in the stream of commerce shall not be conduct

2   sufficient to constitute the proximate cause of an injury,

3   damage, or death, resulting from a third party's use of the

4   product even if such placement is found foreseeable.

5          So the general assembly has taken foreseeability

6   off the table because we're dealing with statutory actions

7   only in Colorado against ammunition sellers.  Common law

8   elements and principals are no longer in play in Colorado

9   when you sue an ammunition seller, you look to the statute

10  and the statute is clear.

11         The Federal Immunity Statute also does not provide

12  an exception for a public nuisance claim.  And we've cited to

13  Your Honor a number of cases around the country that have

14  held public nuisance statutes, in California, in New York,

15  are not the type of statutes that Congress envisioned would

16  form the basis of a statutory violation exception under the

17  act.

18         I think we've provided to the Court ample statutory

19  grounds to dismiss this case; we've also provided common law

20  grounds to dismiss this case in the event the statutory

21  grounds are found insufficient.

22         And--and I'd like to just kind of conclude I guess

23  my remarks by pointing out that, you know, the law of

24  approximate cause in Colorado is--is somewhat unique in my

25  experience but it's obviously the law that this Court is

1    bound to follow and--and that is that if a criminal's act or

2    conduct is found to be the predominant cause of an incident

3    like Eric Harris and Dylan Klebold's conduct in the Columbine

4    shooting was found to be the predominant if not the sole

5    cause of the horrible events that happened in that school.

6        THE COURT:  Yeah.

7        MR. VOGTS:  How can James Holmes' conduct in that movie

8    theater not be found to be the predominant cause of the

9    events that happened that evening?  If--if consistency in the

10   law and predictability of results is the goal of our court

11   system that same finding has to be made.  Thank you, Judge.

12       THE COURT:  All right.  Other counsel wish to be heard?

13       MR. ZUBER:  I'm Phillip Zuber on behalf of Mr. Platt.

14   I'm just going to touch on the Court's comments--

15       THE COURT:  All right.

16       MR. ZUBER:  --relating to nuisance.  There are no

17   ordinances cited by the plaintiff that Mr. Platt violated.

18   In my reading of the Aurora Nuisance Statute provides that

19   the city attorney is the one empowered to bring an

20   enforcement action not the plaintiff.

21           There is an exception as I understand Colorado law

22   that if the plaintiff has a special damage separate and apart

23   from the damage that the public in general would suffer there

24   are instances where a private cause of action may be

25   appropriate, they don't allege that.

1        And finally in essence, oiled down, the plaintiffs'

2   nuisance claim is trying to make these defendants liable for

3   providing the means for a third person to commit a nuisance.

4   The defendants didn't commit any nuisance.  They provided

5   just--

6        THE COURT:  No, I don't think that's what they're

7   arguing.

8        MR. ZUBER:  Well--

9        THE COURT:  I think what they're arguing is that your--

10  your business method--your business methodology is a

11  nuisance, that's my understanding of what I just heard from

12  them.  That it isn't that Holmes committed a nuisance,

13  obviously that isn't a nuisance case, but it is that you're

14  making these materials available indiscriminately that's a

15  nuisance.

16       MR. ZUBER:  And that goes to my central point which the

17  Court may or may not buy which is that's simply providing the

18  means for someone else to commit the nuisance.  And I believe

19  to apply nuisance law to those people that supply chemicals

20  to a company--to--that provide tires to a tire store, to make

21  all those people responsible--

22       THE COURT:  Yeah.

23       MR. ZUBER:  --is way beyond the bounds of nuisance.  And

24  I don't believe the plaintiffs can prevail on a nuisance

25  claim.

1     THE COURT:  Okay.

2     MR. ZUBER:  Thank you.

3     THE COURT:  Mr. Rooney?

4     MR. ROONEY:  Thank you, Your Honor, I'll be very short.

5  Sportsman's Guide is in essentially the same position as

6  Lucky Gunner and I therefore would adopt all the arguments

7  Mr. Vogts made.

8          I would point out this with respect to the public

9  nuisance issue, if--if you review the City of Aurora

10 ordinance regarding public nuisance, it starts out the

11 preface of that whole section states--and this is Section

12 62-26--

13    THE COURT:  Do I have that?

14    MR. ROONEY:  I--I don't know if that was submitted to

15 you, Your Honor.

16    THE COURT:  I don't think I have it.

17    MR. ROONEY:  I had to look it up myself.

18    THE COURT:  Yeah.

19    MR. ROONEY:  And I don't think it was--

20    THE COURT:  I don't think it's in the materials that

21 were provided.

22    MR. ROONEY:  No, I don't think it was, but--but I looked

23 it up and--and the statute which the plaintiffs are relying

24 on as sort of a springboard for their public nuisance

25 argument starts out by saying, It is hereby declared to be a

1    public nuisance and a crime punishable under the general

2    penalty provisions of Section 1-13 of the city code for any

3    property owner owning property within the City of Aurora to

4    do the following things.

5        THE COURT:  Yeah, that's why I didn't know that was

6    there but that's why I asked the question about whether--I

7    don't remember where your client is but--

8        MR. ROONEY:  My client is Minnesota.

9        THE COURT:  Minnesota, right.

10       MR. ROONEY:  It's not a property owner in the City of

11   Aurora.  So what the plaintiffs are trying to do is use that

12   statute as a springboard to argue that we had committed a

13   public nuisance in the City of Aurora despite the fact that

14   the statute that they rely on is limited to property owners

15   in the City of Aurora, which is obviously a logical thing for

16   the statute to do.  And because of that we just don't think

17   that that statute has any bearing on this case.

18       THE COURT:  It's a code--it's a code--municipal

19   ordinance, isn't it?

20       MR. ROONEY:  It's code, correct, I'm sorry.

21       THE COURT:  Yeah.

22       MR. ROONEY:  The code has any bearing on this case.  And

23   because the plaintiffs had dropped their argument with

24   respect to the Colorado nuisance statutes our argument would

25   be that there is no public nuisance claim that can be

1   asserted here.

2         So separate and apart from the limitations of the

3   federal and the state statutes, PLCAA and the Colorado

4   Immunity Statute they can't state a public nuisance claim

5   against a Minnesota company for simply selling a product

6   because this Minnesota company doesn't own the property--

7   doesn't own--this Minnesota company doesn't own property in

8   the City of Aurora so this statute--this code wouldn't apply.

9         THE COURT:  Okay.  Thank you, Mr. Rooney.

10        MR. ROONEY:  Thank you.

11        THE COURT:  Anyone else want to be heard beyond the

12   briefs that you've already filed?  Mr. Colin?

13        MR. COLIN:  No, sir, thank you.

14        THE COURT:  Okay.  All right.  Back to you then for the

15   plaintiff and specifically what Mr. Rooney has just pointed

16   out, do you have a response to that?

17        MR. STOEVER:  I do, Your Honor.  The section that he

18   just pointed to is the first part of the public nuisance

19   ordinance.

20        THE COURT:  Yeah, I don't--you know, where do I get the

21   full ordinance?

22        MR. STOEVER:  We will--we will make sure that a copy of

23   that is provided to Your Honor, to all defense counsel, we'll

24   do that today.

25        THE COURT:  All right.

1          MR. STOEVER:  The subsequent sections of the--of the

2    ordinance go beyond property owners in the City of Aurora and

3    they include violations of a variety of state and municipal--

4    state statutes and municipal codes, including having to do

5    with prostitution, professional gambling, repeatedly

6    disturbing the peace, and a violation of any provision of

7    C.R.S. Section 18-12-109 relating to the possession of use or

8    removal of explosive or incendiary devices or the possession

9    of components thereof.

10              There certainly is a provision of this ordinance

11    that applies strictly to property owners in the City of

12    Aurora.  The ordinance goes beyond that however in the

13    subsequent provisions, so that would be our response to that

14    --that particular issue.

15          THE COURT:  Did--did Holmes live in Aurora; is that why

16    we've got Aurora?

17          MR. STOEVER:  Your Honor, I'm--I'm doing this from

18    memory but I believe that is correct.

19          THE COURT:  Okay.  Well, you want to advance any other

20    arguments?

21          MR. STOEVER:  I--I would like to make--I would like to

22    address a couple of points.

23          THE COURT:  All right.

24          MR. STOEVER:  The Colorado statute was mentioned, and

25    this is the statute that purports to bar any claims against

1   arms--the sellers of--

2       THE COURT:  Right.

3       MR. STOEVER:  --guns and ammunition.

4       THE COURT:  Ammunition, right.

5       MR. STOEVER:  And I think one of the things that we

6   argue in our brief and I think it--the Court needs--needs to

7   address it if--if it's going to base an opinion on the

8   Colorado statute is whether or not that statute was preempted

9   by the federal statute.

10      THE COURT:  Well, I know you've got these arguments in

11  there that it's preemption.

12      MR. STOEVER:  Well, Your Honor, what the--what the

13  federal government did--indeed what these defendants have

14  advanced in their briefs is that the federal government

15  created a scheme that was designed to establish the

16  perimeters of liability that anyone who sells or manufactures

17  guns or ammunition would be subjected to.

18          And the federal government in creating that scheme

19  defined a qualified a civil liability.  And in that

20  definition the federal government said the following things

21  are not a qualified civil liability.

22      THE COURT:  Yeah.

23      MR. STOEVER:  It didn't create exceptions to the rule

24  rather it--it included these in the definition and one of

25  those was, in fact, negligent entrustment.

 1          And if the Colorado statute purports to--and I

 2   should also mention that the federal government--they went

 3   on--Congress then went on to actually define negligent

 4   entrustment so it must have been serious about wanting to

 5   include that.  If the Colorado statute is interpreted to, in

 6   fact, do away with negligent entrustment as a cause of action

 7   it is inconsistent with the federal statute and it should be

 8   preempted on that basis.

 9        THE COURT:  You make this argument about the word

10   solely--

11        MR. STOEVER:  Yes, Your Honor.

12        THE COURT:  --in the federal statute, I'm not clear

13   about that argument.

14        MR. STOEVER:  Okay.

15        THE COURT:  Because obviously if the--if the harm is

16   these defendants--I mean this goes to intervening criminal

17   cause--

18        MR. STOEVER:  Right.

19        THE COURT:  --that has already been mentioned in defense

20   counsel's argument.  And so I don't understand the solely

21   argument.

22        MR. STOEVER:  Well, Congress both--

23        THE COURT:  Go ahead.

24        MR. STOEVER:  I'm sorry.  Congress both in the statute

25   and in statements made by the sponsors of the statute made it

1   very clear that the statute was designed solely--pardon me--

2   was designed to limit liability for those--for negligence--

3   pardon me--for damages related solely to the action of third

4   party.

5           And our argument is that this claim is not based

6   solely on the action of a third party.

7       THE COURT:  Well--

8       MR. STOEVER:  This claim is based--

9       THE COURT:  --I know but if--if the defendant is a

10  cause, any of these defendants is a cause obviously it's not

11  solely.

12      MR. STOEVER:  That's right.

13      THE COURT:  I mean if you applied solely only Holmes

14  would be responsible.

15      MR. STOEVER:  That--no, Your Honor, what the--I'm sorry

16  I think that that is a misreading of the statute.

17      THE COURT:  Well, that's confusing.

18      MR. STOEVER:  Yeah, and I'm sorry if my explanation was

19  confusing.  The statute limits liability in those cases where

20  the damage is caused solely by the action of a third party.

21          Here the damage was caused by the negligence of

22  defendants when they sold ammunition, bulk ammunition, tear

23  gas, body armor, without taking a single step to try to

24  determine whether or not they were putting extremely

25  hazardous material in the hands of someone who is competent

1   to possess it.

2          And if you accept the defendants' argument in the

3   Motion to Dismiss what--what is essentially happening is that

4   you will establish in Colorado for the first time a very

5   broad ruling about what it is that the Colorado statute

6   means, perhaps what it is that the federal statute means

7   without giving the defendant--pardon me the plaintiffs the

8   opportunity to conduct some discovery, create a record, and

9   provide the Court with that record on which to make a fully

10  informed and narrow decision.

11      THE COURT:  Okay.  Thank you.

12      MR. STOEVER:  Thank you, Your Honor.

13      THE COURT:  Well, I'll issue a written order that

14  resolves the matter.  Thank you.

15      MR. STOEVER:  Thank you, Your Honor.

16      THE COURT:  The Court is in recess.

17      (Whereupon, at 2:35 p.m., the hearing was concluded.)

18

19

20

21

22

23

24

25

1                       <u>TRANSCRIBER'S CERTIFICATE</u>

2            I hereby certify that the foregoing has been

3    transcribed by me to the best of my ability, and constitutes

4    a true and accurate transcript of the mechanically recorded

5    proceedings in the above matter.

6            Dated at Aurora, Colorado, this 16th day of July,

7    2015.

8

9

10

11

12                              <u>/s/ Theresa Ornelas</u>

13                              Theresa Ornelas

14                              Federal Reporting Service, Inc.

15                              17454 East Asbury Place

16                              Aurora, Colorado  80013

17                              (303) 751-2777

18

19

20

21

22

23

24

25